Trenton R. Kashima (SBN No. 291405)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
402 West Broadway St., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
tkashima@milberg.com

*Attorneys for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

'23 CV 1318 JES BGS

| | |
|---|---|
| LINDA SUNDERLAND and BENJAMIN BINDER individually and on behalf of all others similarly situated, | Case No.: █████████ |
| Plaintiffs, | **PLAINTIFFS' CLASS ACTION COMPLAINT** |
| v. | |
| PHARMACARE U.S., INC., a Delaware Corporation, and PHARMACARE LABORATORIES PTY LTD., an Australian company, | **JURY TRIAL DEMANDED** |
| Defendant. | |

COMPLAINT

Plaintiffs Linda Sunderland and Benjamin Binder (collectively "Plaintiffs"), through their undersigned attorneys, file this Class Action Complaint against Defendant PharmaCare U.S., Inc. and Pharmacare Laboratories PTY Ltd. ("Defendants"), individually and on behalf of all others similarly situated, and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1.    This class action is brought individually by Plaintiffs on behalf of consumers who purchased Defendants' Elderberry Original Syrup, Sambucol Black Elderberry Sugar Free, Sambucol Black Elderberry Syrup for Kids, Sambucol Black Elderberry Effervescent Tablets, Sambucol Black Elderberry Chewable, Sambucol Black Elderberry Pastilles, Sambucol Black Elderberry Daily Immune Drink Powder, and Sambucol Black Elderberry Advanced Immune Syrup (collectively the "Elderberry Products" or the "Products") in California, New York, and nationwide (the "Class").

2.    Black elderberry, which is derived from a flowering plant called *Sambucus*, has become a popular dietary supplement in recent years.  The increased popularity of "natural remedies" drives sales of elderberry products. According to a report published by the American Botanical Council in 2019, sales of elderberry supplements more than doubled in the United States between 2017 and 2018 to a total of nearly $51 million. Between January and March of 2018, elderberry supplement sales were more than $100 million dollars in the US alone. Elderberry sales in the first half of 2020 grew by triple digits compared to sales during the same period in 2019, showing the greatest growth in the mainstream dietary supplement market, where it is currently the third top-selling herbal ingredient.  The mainstream dietary supplement market includes grocery stores, drug stores, and mass

merchandisers such as club, dollar, and military stores.[1]

3.      According to IRI (now known as Circana), a market research firm that tracks retail sales of supplements, in March 2020, sales of elderberry supplements increased by 415% over the prior year as consumers sought products that might offer protection from the novel coronavirus.[2]  The "immune support" dietary supplement market, including supplements containing elderberry, is thus an extraordinarily fast-growing segment of the dietary supplement market, in part due to the Coronavirus Pandemic.

4.      With hundreds of elderberry supplement options available for consumers to purchase, in order to stand out from the competition, Defendants promote its Elderberry Products as "the most trusted brand sold worldwide" and prominently displays a badge on its website proclaiming that its Products are the "No. 1 Best Selling Black Elderberry in the US."[3]

5.      To further stand out from the competition, on the labels of its Elderberry Products, as well as on its website and in other marketing directed at consumers, Defendants state: "*Developed by a world renowned virologist*, Sambucol is the *unique* black elderberry extract that has been used in scientific studies.  By using a *proprietary method* of extraction, *only Sambucol can guarantee* consistent, immune supporting properties in every serving." (Emphasis added).  A reasonable consumer would understand such claims to mean that the Elderberry Products contain a unique elderberry extract, which has been developed by a virologist (thus, likely with anti-viral properties), using a method of extraction that cannot be found in other elderberry dietary supplements.

---

[1]  https://www.globenewswire.com/news-release/2020/08/31/2086400/0/en/US-Herbal-Supplement-Sales-Increase-by-8-6-in-2019-Record-Breaking-Sales-Predicted-for-2020.html.

[2]      https://www.nytimes.com/2020/03/23/well/live/coronavirus-supplements-herbs-vitamins-colds-flu.html.

[3]  https://sambucolusa.com/.

- 2 -

COMPLAINT





Thus, Defendants warrant that all of the Products contain its proprietary, virologist developed, elderberry extract. However, such claims are false and misleading.

6.    Here, Defendants advertise that the Elderberry Products were "developed by a world renowned virologist," a reference to Dr. Madeleine Mumcuoglu. Dr. Mumcuoglu and her company (Razei Bar Ltd.) originally trademarked the "Sambucol" branding, the same trademark that is currently owned by Defendants. *See* U.S. Trademark Nos. 75326070 and 74680785. Dr. Mumcuoglu also applied for patents for her Trademarked "Sambucol" Elderberry Extract. *See* U.S. Patent No. 4,742,046; Patent Application US2009/0186101 A1. This patented formulation was based on a specific cold pressed Elderberry Extract that contains a unique anti-viral compound, elderberry lectins.

7.    While uniformly marketing the product as a unique formulation developed by a world-renowned virologist, Defendants have argued that its "unique" and "propriety" Elderberry Extract is simply run-of-the-mill Elderberry Juice during

- 3 -

an ancillary litigation. Accordingly, Plaintiffs' counsel ordered testing to determine if the Defendants' so-called "unique" and "propriety" Elderberry Extract was actually the same "unique" and "propriety" formula developed by Dr. Mumcuoglu. The results confirm it is not. There are no lectins in the Elderberry Products.

8.   With knowledge of growing consumer demand for supplements containing elderberry, Defendants intentionally marketed and sold their illegal Elderberry Products using false and misleading labeling and advertising. Defendants' prominent and systematic mislabeling of the Products and its false and deceptive advertising form a pattern of unlawful and unfair business practices that harms the public and, if unstopped, could lead to substantial societal harm.

9.   Plaintiffs bring this suit to halt Defendants' unlawful sales and marketing of its Elderberry Products and for damages they sustained as a result of the illegal sales and false and misleading marketing. Declaratory and injunctive relief is of particular importance given the likely consequences of Defendants' actions.

## **PARTIES**

10.   Plaintiff Linda Sunderland is a resident and citizen of New York.

11.   Plaintiff Sunderland purchased Sambucol Black Elderberry Chewable Tablets over the last two years, with her last purchase in March 2023.

12.   Prior to and at the time of each purchase of the Sambucol Black Elderberry Chewable Tablets, Plaintiff Sunderland was exposed to, saw, and relied upon Defendants' materially misleading representations on the Products' packaging and labelling. She reviewed the product's labeling, where she saw and relied on Defendants' claims that its elderberry ingredient was developed by a world renowned virologist and was unique and propriety.

13.   By purchasing Defendants' illegally sold and falsely advertised Elderberry Products, Plaintiff Sunderland suffered injury in fact and lost money.

14.   Plaintiff Sunderland would like to continue purchasing Defendants'

- 4 -

Elderberry Products if they were legally sold supplements and if Defendants' false and misleading statements were true. Plaintiff Sunderland is, however, unable to rely on Defendants' representations in deciding whether to purchase Defendants' products in the future.

15.     Plaintiff Benjamin Binder is a resident and citizen of California.

16.     Plaintiff Binder purchased Sambucol Black Elderberry Original Syrup over the last four years, with his last purchase in June 2023.

17.     Prior to and at the time of each purchase of the Sambucol Black Elderberry Original Syrup, Plaintiff Binder was exposed to, saw, and relied upon Defendants' materially misleading representations on the Products' packaging and labelling.   He reviewed the product's labeling, where he saw and relied on Defendants' claims that its elderberry ingredient was developed by a world renowned virologist and was unique and propriety.

18.     By purchasing Defendants' illegally sold and falsely advertised Products, Plaintiff Binder suffered injury in fact and lost money.

19.     Plaintiff Binder would like to continue purchasing Defendants' Products if they were legally sold supplements and if Defendants' false and misleading statements were true. Plaintiff Binder is, however, unable to rely on Defendants' representations in deciding whether to purchase Defendants' products in the future.

20.     Defendant PharmaCare U.S., Inc. is a Delaware corporation with its principal place of business at 5030 Camino de la Siesta, Suite 200, San Diego, California 92108. Defendant PharmaCare U.S., Inc. is responsible for the marketing and distribution of the Elderberry Products in the United States.   Defendant PharmaCare U.S., Inc. is responsible for reviewing the accuracy of the Elderberry Products labels sold in the United States, and will make periodic changes to such labels.

21.     Defendant Pharmacare Laboratories Pty Ltd. (or Pharm-A-Care

COMPLAINT

Laboratories Pty. Ltd.) is an Australian company with its principal place of business at 18 Jubilee Ave Warriewood, 2102 Australia. Defendant Pharmacare Pty Ltd. (both individually and through its whole own subsidiaries) owns the Sambucol trademark, is responsible for the formulation and manufacturing of the Elderberry Products (both in the U.S. and internationally), and is responsible for the original labels on the Elderberry Products.

## JURISDICTION AND VENUE

22.    This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, there are tens of thousands of Class members, and there are numerous Class members who are citizens of states other than Defendants' states of citizenship.

23.    This Court has personal jurisdiction over Defendant PharmaCare U.S., Inc.'s in this matter because Defendant is a resident of California, and Defendants' acts and omissions giving rise to this action occurred in the state of California.

24.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and because Defendants transact business and/or has agents within this District and has intentionally availed themselves of the laws and markets within this district.

## FACTUAL ALLEGATIONS

25.    This dispute arises out of Defendants' marketing of the Sambucol branded dietary supplements, which contains as its primary dietary ingredient, Black Elderberry extract.

26.    Black Elderberry (also known as *Sambucus nigra*) is a flowering plant that produces small clusters of small black berries. Elderberries have been used for hundreds of years. However, raw elderberries, as well as elderberry seeds, stems, and leaves, contain a toxin, cyanogenic glycosides, that can cause serious illness and

COMPLAINT

even death.  Accordingly, elderberries have to be cooked before they can be used, in order to neutralize the cyanogenic glycosides.  This is traditionally done by boiling the elderberries, using the resulting juice or mash.  This method is also used to create traditional elderberry juices and extracts.

27.    In May 3, 1988, a patent was filed by Madeleine Bliah (later known as Madeleine Mumcuoglu), U.S. Patent No. 4,742,046.  Patent No. US4742046. This Patent described the use of *lectins* obtained from the *Sambucus nigra* plant for inhibiting the activity of enveloping viruses (particularly influenza virus type A). The Patent described the method of extraction for Dr. Mumcuoglu's therapeutic elderberry extract, which focused on isolating elderberry lectins (which Dr. Mumcuoglu claimed had anti-viral properties):

> elderberries from *Sambucus nigra I* may be pressed without crushing the seeds and the extract recovered by centrifugation and filtration. The extract should then be ultra-centrifuged. The lectins may be recovered from the extract by affinity chromatography on a Sepharose-galactose column followed by elution. The lactose may be removed (for example, by passage through a Sephadex G25 column). The desorbed material is then resubjected to affinity chromatography on a Sepharose-galactose column. The first two peaks recovered during desorption are dialyzed against water and lyophilized. The first peak comprises *Sambucus nigra II* lectin which is not appreciably adsorbed on to the Sepharose-galactose column and the second peak comprises *Sambucus nigra I* lectin

*Id.* at p. 4.  The Patent warns that "[d]uring the drug processing the temperature should not exceed 70º C. since some lectins are destroyed by heat at that level."  *Id.*

28.    This temperature limitation is an important note, as most pasteurization process for commercial juice products will normally exceed this temperature.  *See* FDA, Guidance for Industry: Juice Hazard Analysis Critical Control Point Hazards and Controls Guidance, First Edition (2004), available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-juice-hazard-analysis-critical-control-point-hazards-

and-controls-guidance-first (recommended pasteurization for fruit juice at a minimum of 71.1º C (160º F) for 6 seconds, but may be much higher).  This is likely the reason for Dr. Mumcuoglu's specific method of extraction.

29.     Accordingly, the formula that Dr. Mumcuoglu developed, which Defendants touted in its marketing and labeling of the Elderberry Products, was not traditional elderberry juice.  Instead, it was a method of isolating the lectins within elderberries for their anti-viral properties.

30.     During this period, Dr. Mumcuoglu also started an Israeli health products company, Razei Bar Ltd., to market her elderberry extract.  In April 1995, Razei Bar Ltd. applied for a U.S. trademark, No. 74680785, on the word "Sambucol" for "dietary supplements, namely liquid extracts and throat lozenges composed primarily of elderberry juice."  The "Sambucol" trademark would eventually become the property of Defendant PharmaCare Laboratories Pty Ltd.

31.     In 2009, Dr. Mumcuoglu would file a patent application, No. US2009/0186101 A1, to test this same elderberry extract discussed in the above patent as a novel method for the treatment of the avian flu virus.  Patent Application US2009/0186101 A1.  In this patent application, Dr. Mumcuoglu would specifically refer to her previous patented therapeutic elderberry extract using the trademarked term "Sambucol." *Id.*  Additionally, there is no doubt that these patents describe the unique "Sambucol" elderberry extract that Dr. Mumcuoglu developed and trademarked.

32.     In order to increase demand, the Elderberry Products' labeling specifically advertises that the Products contained a "unique" and "proprietary" elderberry extract "developed by a world renowned virologist."  The virologist referenced was Dr. Mumcuoglu.  Defendants originally included Dr. Mumcuoglu's name on some of the Products' labels, but this reference was removed.  It appears that there is currently no connection between Dr. Mumcuoglu and Defendants or the current version of the Elderberry Products.

- 8 -

COMPLAINT

33.    Nonetheless, Defendants continued to advertise on several of the Products' labels that the Products were in fact virologist developed.  For example, the label of the Products contained statements, such as:

- the Products were "Virologist developed"

- "Developed by a [world renowned] virologist, Sambucol® is the unique black elderberry extract that has been used in scientific studies. By using a proprietary method of extraction, only Sambucol® can guarantee consistent, immune supporting properties in every serving."

- "Developed by a world renowned virologist, Sambucol® is the unique manufacturing process preserves and maximizes the naturally occurring health benefits of the Black Elderberry."

- "Developed by a world renowned virologist, Sambucol® has been trusted by millions worldwide."

It is believed that Defendants included this language to build trust in the Sambucol brand and gain a competitive advantage in the marketplace.

34.    At all relevant times, Defendants marketed its Products in a consistent and uniform manner.  Each of the Class Products' labels specifically reference that they were virologist developed and contained the same elderberry extracts. Defendants sell the Products in all 50 states on its website and through various distributors and retailers across the United States.

35.    For the first time during an ancillary litigation, Defendants' counsel revealed that these claims may be false.  During a discovery hearing, where the plaintiffs were seeking formulations for the Products, Defendants' counsel claimed that:

> I don't know why plaintiff is saying he needs the formulation for it to determine chemical analysis. You literally have the manufacturing process for turning elderberries into elderberry juice, from which an expert should be able to opine on whether that results in any chemical alteration to the elderberry juice.

- 9 -

*Corbett et al. v. Pharmacare U.S., Inc.*, No: 3:21-cv-00137-JES-AHG, ECF No. 119, at p. 29:20-25. The import of this statement is significant, as it seems to be a judicial admission that the "unique" and "proprietary" Elderberry Extract in the Elderberry Products (touted to have been developed by a virologist), was simply elderberry juice.

36.    Notably, with respect to the virologist developed extract that Defendants tout on its marketing and labeling, Dr. Mumcuoglu (the referenced virologist) applied for two Patents for the use of an extract containing the *lectins* obtained from the *Sambucus nigra* plant for inhibiting the activity of viruses, namely the flu. Lectins are the defining component of Dr. Mumcuoglu's formula.

37.    Plaintiffs testing of the Elderberry Products confirm that there are no elderberry lectins in the Products. Therefore, Defendants are not using Dr. Mumcuoglu's unique and proprietary formulation, which was developed (in part) to retain the lectins. Accordingly, Defendants' "virologist developed" claims are demonstrably false.

38.    Defendants knew, or could not be unaware, of the falsity of the Elderberry Products' labels as alleged herein. Defendants both reviewed and created the labels on the Elderberry Products, as well as their formulations. Defendants also purchased the ingredients within the Elderberry Products, including the Elderberry Extract. Finally, Defendants were also aware of Dr. Mumcuoglu's Elderberry Extract formulation (as it was in a publicly available patent) and her involvement in the development of the Sambucol dietary supplements. Indeed, even during Defendants' ownership of the Elderberry Products, some of the Products' labels still referenced Dr. Mumcuoglu. Thus, Defendants could not have been unaware that the Elderberry Products did not contain an "unique" and "proprietary" Elderberry Extract, developed by a virologist. Instead, it contained simply elderberry juice.

39.    Defendants continue to falsely label its Elderberry Products as being "virologist developed" and containing an "unique" and "proprietary" Elderberry

Extract. Yet, without complex and costly scientific testing, consumers would be unable to determine that Defendant's labels are false. Without injunctive relief, consumers will be unable to determine if Defendants' labels remain incorrect or if the Elderberry Products actually use Dr. Mumcuoglu's formulation. Additionally, Plaintiffs and other consumers continue to be injured by Defendants' fraudulent business practices.

40.    Additionally, Defendants cause consumers to suffer a monetary injury. Each of the Elderberry Products do not contain the "unique" and "proprietary" virologist developed Elderberry Extract, as advertised and warranted. Accordingly, Plaintiffs and other claims members are entitled to the difference between the Elderberry Products provided and the Elderberry Products as warranted.

## **TOLLING AND ESTOPPEL ALLEGATIONS**

41.    Defendants have actual knowledge, or should have actual knowledge, that its Elderberry Products do not contain the "unique" and "proprietary" virologist developed Elderberry Extract, as advertised and warranted for the reasons stated above.

42.    Although Defendants were aware of the deception in their advertising, marketing, packaging, and sale of the Elderberry Products chemicals, it took no steps to disclose to Plaintiffs or Class Members that their Products do not contain the "unique" and "proprietary" virologist developed Elderberry Extract.

43.    Despite their knowledge otherwise, Defendants have fraudulently misrepresented the Elderberry Products contain the "unique" and "proprietary" virologist developed Elderberry Extract, actively concealing this fact from Plaintiffs and other Class Members.

44.    Defendants have made, and continue to make, affirmative false statements and misrepresentations to consumers, regarding the inclusion of the purported "unique" and "proprietary" virologist developed Elderberry Extract in the Elderberry Products.

COMPLAINT

45.     The exact formulation of the Elderberry Extract in the Elderberry Products is not reasonably detectible to Plaintiffs and Class Members.

46.     At all times, Defendants actively and intentionally misrepresented the qualities and characteristics of the Elderberry Products, while concealing the true nature of the Elderberry Extract in its Products. Accordingly, Plaintiffs' and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

47.     Defendants misrepresented the Elderberry Products and concealed the true nature of the Elderberry Extract in their Products for the purpose of delaying Plaintiffs and Class Members from filing a complaint on their causes of action.

48.     As a result of Defendants' intentional misrepresentations and active concealment of the true nature of the Elderberry Extract in their Elderberry Products, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendants are estopped from relying on any statutes of limitations in light of its intentional misrepresentations and active concealment of the true nature of the Elderberry Extract in their Elderberry Products.

49.     Further, the causes of action alleged herein did not occur until Plaintiffs and Class Members discovered that the Products contained PFAS chemicals. Plaintiffs only became aware of the true nature of the Elderberry Extract in their Products through Defendants' admission at a recent hearing before this Court. *Corbett et al. v. Pharmacare U.S., Inc*., No: 3:21-cv-00137-JES-AHG, ECF No. 119, at p. 29:20-25. Prior to this admission, there was no publicly available information regarding the exact formulation of the Elderberry Extract in Defendants' Elderberry Products which would contradict Defendants' assertion that the Elderberry Extract in their Elderberry Products was a "unique" and "proprietary" virologist developed formulation.

## CLASS ACTION ALLEGATIONS

50.     Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf

of the below-defined Classes:

**National Class:**

All persons in the United States who, during the relevant statute of limitations, purchased the Elderberry Original Syrup, Sambucol Black Elderberry Sugar Free, Sambucol Black Elderberry Syrup for Kids, Sambucol Black Elderberry Effervescent Tablets, Sambucol Black Elderberry Chewable Tablets, Sambucol Black Elderberry Pastilles, Sambucol Black Elderberry Daily Immune Drink Powder, and Sambucol Black Elderberry Advanced Immune Syrup for personal or household use and not for resale.

**California Subclass:**

All persons in California who, during the relevant statute of limitations, purchased the Elderberry Original Syrup, Sambucol Black Elderberry Sugar Free, Sambucol Black Elderberry Syrup for Kids, Sambucol Black Elderberry Effervescent Tablets, Sambucol Black Elderberry Chewable Tablets, Sambucol Black Elderberry Pastilles, Sambucol Black Elderberry Daily Immune Drink Powder, and Sambucol Black Elderberry Advanced Immune Syrup for personal or household use and not for resale.

**New York Subclass:**

All persons in New York who, during the relevant statute of limitations, purchased the Elderberry Original Syrup, Sambucol Black Elderberry Sugar Free, Sambucol Black Elderberry Syrup for Kids, Sambucol Black Elderberry Effervescent Tablets, Sambucol Black Elderberry Chewable Tablets, Sambucol Black Elderberry Pastilles, Sambucol Black Elderberry Daily Immune Drink Powder, and Sambucol Black Elderberry Advanced Immune Syrup for personal or household use and not for resale.

Specifically excluded from these definitions are: (1) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to amend the Class definition and Subclass definitions as necessary.

51.    Certification of Plaintiffs' claims for class-wide treatment are appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence that individual Class members would use to prove those elements in individual actions alleging the same claims.

- 13 -

52. The Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of hundreds of thousands of consumers. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendants and its authorized retailers.

53. The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Elderberry Products that were manufactured, marketed, advertised, distributed, and sold by Defendants. Furthermore, the factual basis of Defendants' misconduct is common to all Class Members because Defendants have engaged in systematic fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

54. Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendants have acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

a. Whether the Elderberry Products are advertised and warranted as containing a "unique" and "propriety" Elderberry Extract, developed by a virologist;

b. Whether the claims Defendants made and is making regarding the Products are unfair or deceptive, specifically, whether the Elderberry Products actually contain "unique" and "propriety" Elderberry Extract, developed by a virologist;

c. Whether Defendants knew or should have known that the representations and advertisements regarding the Products were false and misleading;

d. Whether Defendants have breached express warranties in the sale and marketing of the Elderberry Products;

COMPLAINT

e.     Whether Defendants' conduct violates public policy;

f.     Whether Defendants' acts and omissions violate California law;

g.     Whether Defendants' acts and omissions violate New York law;

h.     Whether the Plaintiffs and the Class Members suffered monetary injury, and, if so, what is the measure of the appropriate damages or, in the alternative, restitution;

i.     Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

55.     Plaintiffs will fairly and adequately protect the interests of Class Members. They have no interests antagonistic to those of Class Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

56.     The elements of Rule 23(b)(2) are met. Defendants will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect. Defendants have acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

57.     The elements of Rule 23(b)(3) are also met. Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendants' misconduct.

Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

58.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

59.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## CAUSES OF ACTION

### COUNT I
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq.  ("UCL")**
**(On Behalf of the National Class and California Subclass)**

60.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

61.    Plaintiffs bring this claim individually and on behalf of all members of the National Class and Plaintiff Binder brings this claim individually and on behalf of California Subclass against Defendants.

62.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

63.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute business acts and practices.

64.    <u>Unlawful</u>:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws: the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* and the Consumers Legal Remedies Act, Cal. Civ. Code

§§ 1750 *et seq.*;

65.    Unfair: Defendants' conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

66.    Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the False Advertising Law.

67.    Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

68.    Fraudulent:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.  As set forth in detail above, Defendants have fraudulently labeled its Products as they have made false and misleading statements that are likely to mislead reasonable consumers.

69.    Defendants profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

70.    Plaintiffs seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

71.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase the Products in the future if they can be assured that the Products are properly labeled and actually contain a virologist developed elderberry extract.

COMPLAINT

72.     Additionally, Plaintiffs seek restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and the Class. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

73.     On behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

**COUNT II**
**California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of the National Class and California Subclass)**

74.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

75.     Plaintiffs bring this claim individually and on behalf of all members of the National Class and Plaintiff Binder brings this claim individually and on behalf of California Subclass against Defendants.

76.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

77.     As alleged in detail above, the advertisements, labeling, policies, acts, and practices of Defendants relating to the Elderberry Products misled consumers acting reasonably regarding the ingredients within said Products.

78.    Plaintiffs and the Class Members suffered injury in fact as a result of Defendants' actions as set forth herein because they purchased the Products in reliance on Defendants' labeling claims, when such claims were false.

79.    Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised the Products in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from its advertising.    For example, Defendants advertised that its Elderberry Products contained a virologist developed extract, when it did not.

80.    Defendants profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

81.    Plaintiffs seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

82.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase the Products in the future if they can be assured that the Products are properly laberled and actually contain a virologist developed elderberry extract.

83.    Additionally, Plaintiffs seek restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and the Subclass. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

84.    On behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

### COUNT III
**California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of the California Subclass)**

85.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

86.    Plaintiff Binder brings this claim individually and on behalf of the members of the California Subclass against Defendants.

87.    Defendants are a "person" under the CLRA, Cal. Civ. Code § 1761(c).

88.    Plaintiff Binder and California Subclass members are "consumers" under the CLRA, Cal. Civ. Code § 1761(d).

89.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

90.    Defendants' false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff Binder and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

91.    Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

92.    Defendants' wrongful business practices constituted, and constitute, a

- 20 -

continuing course of conduct in violation of the CLRA.

93.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), concurrently with the filing of this Complaint, Plaintiff Binder, through counsel, mailed Defendants a letter by certified mail addressed to its headquarters (with a copy sent to Defendants' counsel as well), providing notice of Defendants' alleged violations of the CLRA, demanding that Defendants correct such violations, and providing Defendants with the opportunity to correct its business practices.  Plaintiff Binder specifically identified which provisions of Cal. Civ. Code § 1770 Defendants had violated.

94.    Pursuant to California Civil Code § 1780, Plaintiff Binder seeks injunctive relief, his reasonable attorneys' fees and costs, and any other relief that the Court deems proper.  Should Defendant not respond to Plaintiff Binder's CLRA Demand Letter, Plaintiff will amend his complaint to seek additional monetary relief, which may include statutory damages.

## COUNT IV
### Violation of New York Deceptive Acts and Practices Law
### (New York General Business Law §§ 349 and 350)
### (On Behalf of Plaintiff Sunderland and the New York Subclass)

95.    Plaintiff Sunderland reallege and repeat the allegations set forth in the preceding paragraphs as if fully set forth herein.

96.    By the acts and conduct alleged herein, Defendants committed deceptive acts and practices in the State of New York by making the above alleged misrepresentations directed to consumers in New York

97.    Plaintiffs and other members of the New York Class are "consumers" in accordance with New York General Business Law ("GBL") § 349.

98.    Defendants' statements concerning the nature of the Elderberry Extract in the Elderberry Products, alleged above, were advertisements in accordance with GBL § 350.

99.    Defendants' statements concerning the nature of the Elderberry Extract in the Elderberry Products, alleged above, were misleading in violation of GBL §§ 349 and 350.

100.    At all relevant times, Defendants conducted trade and commerce in New York and elsewhere within the meaning of GBL § 349, and profited from the sale of the Elderberry Products within New York.

101.    Section 349 allows a plaintiff to recover "actual damages or fifty dollars, whichever is greater." N.Y. Gen. Bus. L. §349(h). Section 350 allows a plaintiff to recover "actual damages or five hundred dollars, whichever is greater." Id. §350-e.

102.    As a direct and proximate result of Defendants' conduct, Plaintiffs and other members of the Class have suffered damages.

103.    Accordingly, Plaintiffs and the New York Subclass seek to enjoin the unlawful acts and practices described herein, to recover actual damages or statutory damages of fifty dollars and five hundred dollars under GBL §§ 349 and 350, respectively, whichever is greater, as well punitive damages and reasonable attorneys' fees and costs.

## COUNT VI
### Breach of Express Warranties
### (On Behalf of the National Classes and Subclasses)

104.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

105.    Plaintiffs bring this claim individually and on behalf of the members of the National Class and the California and New York Subclasses against Defendants.

106.    Through the Products' labels and advertising, Defendants made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiffs and the Class Members purchased the Products in reasonable reliance on those statements.

107.    Plaintiffs and the Class Members have privity of contract with

- 22 -

Defendants through their purchase of the Elderberry Products, and through the express warranties that Defendants issued to its customers. Defendants' warranties accompanied the Elderberry Products and were intended to benefit end-users of the Elderberry Products. To the extent that Plaintiffs and/or the Class Members purchased the Elderberry Products from third-party retailers, privity is not required because Plaintiffs and the Class Members are intended third-party beneficiaries of the contracts between Defendants and third-party retailers, and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailers. In other words, the contracts are intended to benefit the ultimate consumer or user of the Elderberry Products.

108. Defendants breached the express warranties by selling Elderberry Products that contain a "unique" and "propriety" Elderberry Extract, developed by a virologist.

109. Plaintiffs and the Class Members would not have purchased the Elderberry Products had they known that the Products are falsely labeled. Plaintiffs and the Class Members relied on Defendants' misrepresentations and misstatements.

110. That breach actually and proximately caused injury in the form of a portion of the purchase price that Plaintiffs and Class members paid for the Elderberry Products.

111. Furthermore, Defendants had actual knowledge that the Elderberry Products were falsely labeled because it has actual knowledge of the formulation of the Elderberry Products.

112. Plaintiffs provided Defendants with notice of the alleged breach within a reasonable time after they discovered the breach or should have discovered it.

113. As a result of Defendants' breach of warranty, Plaintiffs and the Class Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered against Defendants as follows:

A.    Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiffs as the class representatives, and designating the undersigned as class counsel;

B.    Enter an order awarding Plaintiffs and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law;

C.    Declare that Defendants arefinancially responsible for notifying all Class members of the mislabeling and misbranding of the Products;

D.    Declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products, or order Defendants to make full restitution to Plaintiffs and the members of the Class;

E.    Defendants shall audit and reassess all prior customer claims regarding the Products, including claims previously denied in whole or in part;

F.    An order awarding Plaintiffs and the Classes pre-judgment and post-judgment interest as allowed under the law;

G.    Grant reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, including expert witness fees; and

H.    Grant such other and further relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

COMPLAINT

Dated: July 18, 2023                          Respectfully Submitted,

By: */s/ Trenton Kashima*
    Trenton R. Kashima (SBN 291405)
    **MILBERG COLEMAN BRYSON**
    **PHILLIPS GROSSMAN PLLC**
    402 West Broadway St., Suite 1760
    San Diego, CA 92101
    Tel: (619) 810-7047
    tkashima@milberg.com

    Alex Straus (SBN 321366)
    **MILBERG COLEMAN BRYSON**
    **PHILLIPS GROSSMAN, PLLC**
    280 s. Beverly Drive, Ste. PH
    Beverly Hills, CA 902126
    Tel: 865-247-0080
    astraus@milberg.com.com

    Rachel Soffin*
    **MILBERG COLEMAN BRYSON**
    **PHILLIPS GROSSMAN, PLLC**
    First Tennessee Plaza
    800 S. Gay Street, Suite 1100
    Knoxville, Tennessee 37929
    Tel: 865-247-0080
    rsoffin@ milberg.com

    Martha A. Geer*
    **MILBERG COLEMAN BRYSON**
    **PHILLIPS GROSSMAN, PLLC**
    900 West Morgan Street
    Raleigh, NC 27603
    Telephone: (919) 600-5000
    Facsimile: 919-600-5035
    mgeer@milberg.com

    Nick Suciu III*
    **MILBERG COLEMAN BRYSON**
    **PHILLIPS GROSSMAN, PLLC**

- 25 -

COMPLAINT

6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: 313-303-3472
nsuciu@milberg.com

***\* Pro Hac Vice pending***

***Counsel for Plaintiffs and the Class***

COMPLAINT

## <u>DECLARATION OF TRENTON KASHIMA</u>

I, Trenton R. Kashima, declare as follows:

1.      I am an attorney duly licensed and entitled to practice law in the state of California. I am an attorney of the law firm Milberg Coleman Bryson Phillips Grossman PLLC, attorneys for Plaintiffs in above-captioned action. I have personal knowledge of the facts stated herein, and if called to do so, could and would competently testify thereto.

2.      Based on information from the Elderberry Products' labels and other public sources (including Defendant's linkedin profile), Defendant PharmaCare U.S., Inc. has its principal place of business, is registered to do business and/or is in-fact doing business at 5030 Camino De La Siesta, Ste 200, San Diego, CA 92108, located within the County of San Diego.

3.      Accordingly, pursuant to California Code of Civil Procedure, section 1780, the Southern District of California is the proper venue for Plaintiffs' California Consumer Legal Remedies Act claims.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 18, 2023 in San Diego, California

_____
                     Trenton R. Kashima

COMPLAINT