SEYFARTH SHAW LLP
Lawrence E. Butler (SBN 111043)
lbutler@seyarth.com
Giovanna A. Ferrari (SBN 229871)
gferrari@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:  (415) 397-2823
Facsimile:   (415) 397-8549

SEYFARTH SHAW LLP
Joseph J. Orzano (SBN 262040)
jorzano@seyfarth.com
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

SEYFARTH SHAW LLP
Aaron Belzer (SBN 238901)
abelzer@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, CA 90067-3201
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
PHARMACARE U.S., INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA SUNDERLAND and BENJAMIN BINDER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PHARMACARE U.S., INC., a Delaware Corporation, and PHARMACARE LABORATORIES PTY LTD., an Australian company, <br><br> Defendant. | Case No. 3:23-cv-01318-JES-AHG <br><br> **DECLARATION OF GIOVANNA A. FERRARI IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION** <br><br> Date:   January 15, 2025 <br> Time:   10:00 a.m. <br> Judge:  Hon. James E. Simmons, Jr. <br> Crtrm:  Courtroom 4B |

I, Giovanna A. Ferrari, declare:

1. I am attorney at law duly licensed to practice before all courts of the State of California. I am a partner at the law firm of Seyfarth Shaw LLP. I have personal knowledge of the matters set forth below and if called as a witness, I could and would competently testify thereto. I submit this declaration in opposition to the Motion for Class Certification, Appointment of Class Representatives and Class Counsel.

**Label Claims Pled in the *Corbett* Complaint**

2. The California Disease Claim sub-class in *Corbett* relates to Sambucol Products that included the statements "virologist developed," "scientifically tested," and provide "immune support" on their labels, which allegedly led reasonable consumers to believe that those Products could mitigate or prevent a disease or class of diseases. *Corbett* Dkt. 147, pages 1:22-2:3; *Corbett* Dkt. 210, pages 4, 5, and 63.[1]

**Label Claims Pled in the *Sunderland* Complaint**

3. The Complaint in this case alleges that Plaintiffs Sunderland and Binder "reviewed the Product's labeling, where [she/he] saw and relied on Defendants' claims that its elderberry ingredient was developed by a world renowned virologist and was unique and proprietary." The Complaint contends that Sambucol is not "unique and proprietary" and not "virologist developed" because it was not formulated in accordance with a 1988 patent. *Sunderland* Dkt. 1, pages 5:20-25 and 6:8-13, and paragraphs 27-37.

//
//
//
//
//

---

[1] Missouri Plaintiff Dobbs in *Corbett* represents the Missouri NDI sub-class only; he does not have a Disease Claim. *Corbett* Dkt. 210, pages 4, 5, 6, 13, 14, and 63.

**Binder's Label Claims are Based on a Theory of Deception that is Different from the One Alleged in the Complaint**

**Binder's Verified Written Discovery Responses**

4. Attached hereto as **Exhibit A** is a true and correct, certified copy of portions of Plaintiff Binder's February 20, 2024 deposition transcript and Exhibits 1 and 3 attached thereto.

5. In January 2024, Binder verified interrogatory responses. *See* Exhibit A, 17:20-22:12, and Ex. 1 thereto. In response to Interrogatory No. 1 (seeking information on the circumstances surrounding his purchase and use of the Products), Binder stated that he "purchased the Product due to the claims printed on the packaging, specifically 'scientifically tested', 'supports immunity', and 'high antioxidant levels.' The language on the packaging led Plaintiff to believe that the Product could help ward off catching a flu or cold and would boost and support his immunity." Ex. A, 17:20-22:12, and Ex. 1 thereto at pages 2:24-3:18. He made no mention of the Products being developed by a virologist, being unique and proprietary, or formulated in accordance with a patent.

**Binder's Deposition Testimony to Defense Counsel Regarding Label Claims**

6. At Binder's deposition, defense counsel asked Binder about his interrogatory response and Binder *repeatedly confirmed* there were no other statements other than the three listed in the discovery response that caused Binder to buy Sambucol. Ex. A, 22:13-26:4; 40:24-41:9; 57:10-58:17. For example:

> "Q. And then on lines 15 to 18 of page 3 of the interrogatory responses you state: Plaintiff purchased the product due to the claims printed on the packaging specifically scientifically tested, supports immunity and high antioxidant levels; is that correct?
>
> A. It is correct.
>
> Q. And the language on the packaging led plaintiff to believe that the product

3

Ferrari Declaration in Opposition to Motion for Class Certification
Case No. 3:23-CV-01318-JES-AHG

1  could help ward off catching a flu or cold and would boost and support his
2  immunity. You stated that in response to interrogatory number 1 as well?
3  . . .
4  THE WITNESS: Yes.
5  . . .
6  Q. When you provided your answer to interrogatory number 1 you made sure
7  that that was a true and correct response; correct?
8  . . .
9  THE WITNESS: Yes.
10 Q. So other than scientifically tested, supports immunity and high antioxidant
11 level, there are no statements on the Sambucol packaging that caused you to
12 purchase Sambucol; correct?
13 . . .
14 THE WITNESS: Repeat yourself.
15 Q. Your interrogatory response states: Plaintiff purchased the product due to
16 the claims printed on the packaging, specifically scientifically tested, supports
17 immunity and high antioxidant levels; right?
18 A. Yes.
19 Q. My question to you, sir, other than scientifically tested, supports immunity
20 and high antioxidant level, there are no other statements on the packaging that
21 caused you to purchase the Sambucol product, were there?
22 . . .
23 A. No.
24 Q. So those three statements were the reason that you purchased Sambucol,
25 scientifically tested, supports immunity and antioxidant level; correct?
26 A. Yes.
27 . . .
28

1  Q. And there were no other statements that caused you to buy the Sambucol
2  product; correct?
3  A. No.
4  Q. Am I correct? Is that correct?
5  A. Oh, that is correct."
6  Ex. A, 22:13-26:4.
7  "Q. All right. We're about to take a break. But have we talked about all
8  of the statements on the Sambucol syrup bottle and package that caused
9  you to buy Sambucol?
10 . . .
11 THE WITNESS: Can you repeat?
12 Q. Sure. Have we talked about all of the statements on the Sambucol
13 syrup bottle and package that caused you to buy Sambucol?
14 . . .
15 THE WITNESS: Scientifically tested, supports immunity, high
16 antioxidant levels, that's the reason I bought it.
17 Q. And nothing else?
18 A. Nothing else. Except for my niece giving me the recommendation
19 that I should probably try it.
20 Q. So other than your niece's recommendation and the three statements,
21 scientifically tested, high antioxidant and supports immunity, there was no
22 other reason you bought Sambucol?
23 . . .
24 Q. That's correct?
25 A. Well, the reason I bought it was because no other products on that
26 shelf stated those facts.
27 Q. Had those three statements; correct?
28

|   |   |
|---|---|
| 1 | A. Exactly. |
| 2 | Q. And your niece gave you a recommendation? |
| 3 | A. Right." |

Ex. A, 57:10-58:17.

7. Binder also testified he purchased the Sambucol Products because he believed the statements scientifically tested, supports immunity and high antioxidant levels could help ward off catching a flu and a cold. Ex. A, 17:20-22:12; 26:5-27:15; 28:3-24; 30:13-24; 31:1-22; 40:24-41:9; 60:24-61:15; 63:7-11.

8. Binder also testified that his attorneys, not him, are responsible for overseeing the progress of the case and he did not know if he had any responsibility to oversee the progress of the case. He further testified that he did not know what types of information he should receive from his counsel, and when asked how he learned about activity in the case, he responded; "This [his deposition] is the first sit down meeting I've had with anybody regarding this case so I've kind of *been in the dark*." (emphasis added.) When asked if he planned on attending the trial, Binder responded: " If I don't have to be there, *my time is more valuable than sitting through a trial*." (emphasis added.) Exhibit A, 78:25-79:9; 79:17-23; 83:22-84:1; 86:23-25.

**Binder's Deposition Testimony in Response to Milberg Questions[2]**

9. After defense completed its questioning of Binder, Milberg took a 25 minute break with the witness and knowingly assisted the witness in providing false evidence through objectionable examination. Ex. A, 101:14-109:5.

10. The words "virologist" and "patent" do not appear in Binder's deposition transcript before Milberg questions him. The terms "unique" and "proprietary" do not appear in Binder's deposition transcript at all. See Exhibit A.

---

[2] In providing this testimony in support of its Opposition to Plaintiffs' Motion for Class certification, Defendant in no way waives its objections to Plaintiffs' counsel's examination of Binder.

**Binder's Post-Deposition Actions**

    **Binder's Declaration in Support of Class Certification**

11.    Despite Binder's testimony to defense counsel's questions regarding the claims in this lawsuit [see paragraph 6 above], his testimony stating that he did not recall if he reviewed the complaint before it was filed [Ex. A, 8:15-22 and 64:18-66:12], his testimony that his attorneys were responsible for overseeing the case because he was in the dark, and his aversion to coming to trial, Milberg elicited a sham declaration from Binder in support of its class certification motion stating: (1) "I believe that the Sambucol Products were virologist developed due to the language on the label and the packaging. I purchased the Sambucol products based on these beliefs." [*Sunderland* Dkt. 68:19, pages 2:27-3:1]; (2) "[I]t is my duty to monitor and remain apprised of important matters occurring during the course of this litigation, as I have consistently done since filing this case as a class plaintiff . . . . I was in consistent contact with (and provided significant amounts of information to) class counsel in connection with drafting and filing of complaints . . . ."; and (3) "I agree to make myself available for the trial of this matter, and I know of no reason why I would or could not do so in the future." [*Sunderland* Dkt. 68:19, page 3:7-9].

**Sunderland's Label Claims Are Based on a Theory of Deception that is Different from the One Alleged in the Complaint**

    **Sunderland's Verified Written Discovery Responses**

12.    Attached hereto as **Exhibit B** is a true and correct certified copy of portions of Plaintiff Sunderland's February 27, 2024 deposition transcript and Exhibits 3, 4, 7 and 8 attached thereto.

13.    In January 2024, Sunderland verified interrogatory responses after reviewing a version sent by Milberg's paralegal. *See* Ex. B, 26:7-29:13. In response to Interrogatory No. 1 (seeking information on the circumstances surrounding her purchase and use of the Products), Sunderland stated that she "purchased the Product

due to the language on the packaging, specifically 'Virologist Developed' on the Label." Ex. B, Ex. 7 at pages 2:24-3:14.  She made no mention of the Products being unique and proprietary, or formulated in accordance with a patent. *Id.*

### Sunderland Deposition Testimony to Defense Counsel

14. Despite her verified interrogatory responses, Sunderland testified that the "major reason" she purchased certain Class Products was because of what she consistently referred to as a "virologist tested" claim and "immune support." Ex. B, 29:14-31:10; 40:3-25.[3]  Sunderland also mentioned "Black Elderberry." *Id.*

15. Sunderland further testified that those statements made her believe that Sambucol would prevent her from getting sick. Ex. B, 54:16-56:8; 66:7-16; 97:17-98:4.

16. Sunderland testified that first page of Exhibit 8, Bates stamped SUNDERLAND 000001, which she produced was a picture of a box of Sambucol she had purchased and was an accurate representation of the front of the package of ***all*** of her purchases of Sambucol lozenges. ***That package contains none of the claims alleged in the Complaint.***  That same Exhibit has a date sticker on it stating: "112723," and Sunderland testified that she has no reason to believe that she did **not** purchase Sambucol in November 2023 [some four months after the Complaint was filed]. Ex. B, 37:22-38:5; 42:8-11; 45:21-46:20, and Exhibit 8 attached thereto.

17. Sunderland also testified that she does not contend that the Sambucol brand was not developed by a virologist and does not contend that the contents of the Sambucol she purchased was not developed by a virologist. Ex. B, 63:22-64:24. She has never heard of Dr. Mumcuoglu or lectins.  *Id.* at 87:5-87:7; 106:14-106:23.

18. Sunderland testified in response to defense counsel questions that she did not review the complaint in this case until 2024, long after it was filed. Ex. B, 7:13-10:8 and 81:5-8; 94:4-95:25 and 110:7-19 referencing complaint at Exhibit 4.

---

[3] Sunderland referred to "virologist tested" seven times during her deposition. Ex. B, 40:17; 54:19; 105:22; 106:11-12; 110:3; 110:6; 115:15.

19.  Sunderland also testified that she was not contacted by Trent Kashima until September or October 2023, after the Complaint was filed, they spoke for ten minutes and that was her only communication with Mr. Kashima. Ex. B, 90:4-92:12; 96:1-22; 98:10-12.

20.  Sunderland's only other communications with Milberg was with Russell Busch the day before her deposition. Ex. B, 98:10-99:8.

21.  Sunderland believes her attorneys are responsible for overseeing the progress of the case and never received any updates on the progress of the case and has never asked for an update on the progress of the case. Ex. B, 99:18-25; 100:1-6.

**Sunderland Deposition Testimony in Response to Milberg Questions[4]**

22.  After defense completed its questioning of Sunderland, Milberg attempted to knowingly assist the witness in providing false evidence through objectionable examination.  Ex. B, 111:18-114:24.

23.  Milberg also asked Sunderland if in the beginning of the case there were any communications where she was asked to review documents or review documents that would be part of documents, and Sunderland replied "No." Ex. B, 112:4-9.

24.  The words "unique" and "proprietary" do not appear in Sunderland's deposition transcript before Milberg questions Sunderland.  The term "patent" does not appear in Sunderland's deposition transcript at all.  See Exhibit B.

**Sunderland's Post-Deposition Actions**

**Sunderland's Declaration in Support of Class Certification**

25.  Despite Sunderland's testimony to defense counsel's questions regarding the claims in this lawsuit and her testimony to defense counsel that she did not review the complaint before it was filed, Milberg elicited a sham declaration from Sunderland in support of its class certification motion stating: (1) "I believe that the Sambucol

---

[4] In providing this testimony in support of its Opposition to Plaintiffs' Motion for Class certification, Defendant in no way waives its objections to Plaintiffs' counsel's examination of Sunderland.

Products were virologist developed due to the language on the label and the packaging. I purchased the Sambucol products based on these beliefs." [*Sunderland* Dkt. 68:18, page 3:1-3]; and (2) "I was in consistent contact with (and provided significant amounts of information to) class counsel in connection with drafting and filing of complaints . . . ." [*Sunderland* Dkt. 68:18, page 3:9-11].

**Plaintiffs Responded to Advertisements for Implied Disease Claims (i.e., *Corbett* Claims) / Not *Sunderland* Claims**

26. Both Plaintiffs testified that they first heard about the alleged falsity of the labeling claims from ClassAction.org. Exhibit A, pages 40:10-20, 44:3-45:24, 69:23-70:25-75:18, 80:6-13, and Exhibit 3 thereto; Exhibit B, pages 87:19-93:20, 96:1-97:3, and Exhibit 3 thereto.

27. In response to discovery requests, Plaintiffs both produced an advertisement from classaction.org soliciting class action representatives. According to the advertisement, Sambucol Products may have "violated federal labeling requirements," and may have falsely stated that Sambucol was "developed by a 'world renowned virologist,'" "support[s] the immune system," "boost[s] the immune system," "shorten[s] the duration of colds and the flu," and "reduce[s] the severity of cold, upper respiratory tract infection and flu symptoms." Exhibit 3 to depositions.

28. Plaintiffs testified they were contacted by Milberg after submitting information to classaction.org regarding an interest in the advertisement. Exhibit A, pages 40:10-20, 44:3-45:24, 69:23-75:18, 80:6-13, and Exhibit 3 thereto; Exhibit B, pages 87:19-93:20, 96:1-97:3, and Exhibit 3 thereto.

**Defendant's Motion to Compel Plaintiffs' Communications With Advertisers**

29. On January 27, 2024, Defendant served a subpoena on Season 4, LLC (the entity the runs the ClassAction.org website) seeking the documents Plaintiffs submitted through the website prior to being contacted by Milberg.

30. Season 4, LLC produced only public newsletters and versions of its website.

31. On March 21, 2024, after Season 4 withheld documents from its production, Defendant filed a motion to compel in New Jersey federal court (Season 4's location).[5] On April 11, 2024, before a ruling on that motion, Milberg moved to intervene and sought to transfer the motion to this Court. On May 21, 2024, the New Jersey court transferred the motion to this Court. Attached hereto as **Exhibit C** is a true and correct copy of the docket in *PharmaCare U.S., Inc. v. Season 4, LLC*, United States District Court, District of New Jersey, Case No. 3:24-cv-04074-GC-JBD.

32. The transfer was accepted in May 2024. *Sunderland* Dkts. 29, 36, and 37.

33. In May and July 2024, the parties to this case filed further pleadings regarding the relief sought. *Sunderland* Dkts. 34, 43, and 44.

34. The matter was fully briefed by July 19, 2024. *Sunderland* Dkts. 42 and 44. To date, there has been no ruling on the motions.

**Plaintiffs' Experts did not Test the Theories in the *Sunderland* Complaint**

**The Parties' Expert Disclosures**

35. Plaintiffs only identified Dr. Dennis and Mr. Weir as class experts in the *Sunderland* matter. True and correct copies of Plaintiffs' Rule 26 Class Certification Expert Witness Disclosure and Plaintiffs' Rule 26 Class Certification Rebuttal Expert Witness Disclosure are attached hereto as **Exhibits D and E**, respectively.

36. Defendants identified Mr. Keegan, and Drs. Ugone and Wilcox as class experts in the *Sunderland* matter. True and correct copies of Defendant's Rule 26 Class Certification Expert Witness Disclosure and Defendant's Rule 26 Class Certification Rebuttal Expert Witness Disclosure are attached hereto as **Exhibits F**

---

[5] Season 4, LLC refused to participate in Magistrate Judge Goddard's informal discovery dispute procedures to attempt to reach a prompt resolution of the dispute. Instead, Season 4, LLC insisted that Defendant file a formal motion to compel in the District of New Jersey, where the subpoena called for compliance.

1 **and G**.  True and correct copies of the defense experts' rebuttal reports in this case are
2 attached hereto as **Exhibit H** (Mr. Keegan) **(filed under seal)**, **Exhibit I** (Dr. Wilcox)
3 **(filed under seal),** and **Exhibit J** (Dr. Ugone) **(filed under seal)**.

**Plaintiffs' Expert Dr. Dennis Tested Claims That are Different from those Alleged in the Complaint or by Plaintiffs**

37. Attached hereto as **Exhibit K** are relevant portions of the certified deposition of transcript of Plaintiffs' consumer survey expert in this case, J. Michael Dennis, Ph.D., taken on July 24, 2024.  Dr. Dennis did not test the claims in the case:

    a. Dr. Dennis conducted a consumer and materiality survey for Plaintiffs.  At the direction of counsel, he only attempted to test the statements "[v]irologist developed" and "[d]eveloped by a world renowned virologist" (the "Tested Claim").  Ex. K, 33:9-11, 40:21-43:5, 99:8-14.

    b. Dr. Dennis offered no opinion on the meaning or materiality of the terms "unique" or "proprietary," and had no opinion on whether consumers believed the Class Products contain a patented elderberry extract or lectins.  Ex. K, Tr. at 99:15-100:5 (it was "not part of [his] assignment to measure consumers['] reactions" to the term "unique[,]" and he has no opinion on whether "the term 'unique' is either false, misleading, deceptive, or material . . ."); 100:6-10 (he has "no opinion on whether 'proprietary' is either false, misleading, deceptive, or material"– he "has no data on that"); 100:11-21 "[he] h[as] no opinion on whether consumers interpret the product advertising and marketing to mean that the products contain a patented elderberry extract" because he "didn't test that in [his] survey"); and 100:22-25 (he has "no opinion on

whether consumers interpret the product advertising and marketing to mean that the products contain lectins").

c. Dr. Dennis and Colin Weir also proposed a hypothetical and incomplete method to calculate class-wide damages based solely on the Tested Claim.  Ex. K, 11:20-12:13, 110:3-111:11, 113:6-119:19.

**NIS and Persuadable Research**

38. Neither Plaintiffs nor Defendant disclosed NIS or Persuadable Research as class experts.  *See* Exhibits D-G.  Moreover, there is no evidence in the record of the methodology used by Persuadable for verifying the reliability of the analysis allegedly performed.  *See* Dkt. 174-5 (April 10, 2023 deposition testimony of Colin Weir) at pages 5 and 6.

39. Attached hereto as **Exhibit L** is a true and correct certified copy of portions of the Deposition of Gitte Jensen of NIS Labs (including Depo. Exs. 19 and 22), wherein Ms. Jensen admitted that NIS's testing was inconclusive and failed to test the Class Products in a manner consistent with the patented process.

**Sambucol Label and Website Statements**

40. There are 12 products in the Sambucol line, but Milberg only selected eight of those Products for this lawsuit.  *Corbett* Dkt. 45, ¶1. The four Products Milberg did not select (Gummies, Gummies for Kids, Infant Drops and Advanced Immune Capsules) are often displayed with the other eight Products, but do not include the *Sunderland* label claims ("virologist developed," "unique," and "proprietary"). *Compare Corbett* Dkt. 210 at 3 of 63 *with Sunderland* Dkt. 68-1 at 11 of 44, n. 1; *See also*, *e.g.*, Russell Decl., ¶6, Ex. H; *Corbett* Dkt. 174-2, Ex. E and Exs. 20-30 attached thereto.

41. The Kashima declaration in support of Plaintiffs' Class Certification Motion attaches labels for the Products Milberg selected.  Eight versions of those labels (Exhibits PP, QQ, RR, SS, FFF, GGG, HHH, and III) do not include all of the claims at

issue in this case (*i.e.*, they do not use the words "unique" and/or "proprietary"). *See also*, Declaration of Alix Russell filed concurrently herewith ("Russell Decl."), ¶¶1-5.

42. Plaintiffs' Class Certification Motion fails to attach eight labels that Defendant produced related to the Products selected by Milberg. Those eight labels do not include all of the claims at issue in this case (they do not use the words "virologist developed," "unique" and "proprietary"). *See* Russell Decl., ¶¶1-4, 6 and Exs. A-G and I thereto.

43. ***Four of those labels do not contain any of the claims in this case***. *See* Russell Decl., ¶¶1-4, 6 and Exs. E, F, G, and I.

44. None of Defendant's labels contain the language that Dr. Dennis used in his consumer perception and materiality test. *See* Appendix A at Dkt. 64-8 and Russell Decl., ¶¶1-4, 6 and Exs. A-I.

**Mark Keegan Deposition**

45. Attached hereto as **Exhibit M** are portions of a true and correct certified copy of the Deposition of Mark Keegan, dated August 29, 2024.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of October, 2024 at San Francisco, California.

*/s/ Giovanna A. Ferrari*
Giovanna A. Ferrari

# TABLE OF CONTENTS TO
# EXHIBITS TO DECLARATION OF GIOVANNA A. FERRARI

| Exhibit | Description | Pages |
|---|---|---|
| A | Plaintiff Benjamin Binder's Deposition Transcript and Exhibits 1 and 3, dated February 20, 2024 | 00001-00134 |
| B | Plaintiff Linda Sunderland's Deposition Transcript and Exhibits 3, 4, 7, and 8, dated February 27, 2024 | 00135-00290 |
| C | Docket in *PharmaCare U.S., Inc. v. Season 4, LLC*, United States District Court, District of New Jersey, Case No. 3:24-cv-04074-GC-JBD | 00292-00295 |
| D | Plaintiffs' Expert Witness Disclosure | 00296-00298 |
| E | Plaintiffs' Rebuttal Expert Witness Disclosure | 00299-00301 |
| F | Defendant's Expert Witness Disclosure | 00302-00305 |
| G | Defendant's Rebuttal Expert Witness Disclosure | 00306-00310 |
| H | Expert Rebuttal Report of Mr. Keegan | 00311-00326 |
| I | Expert Rebuttal Report of Dr. Ugone | 00327-00355 |
| J | Expert Rebuttal Report of Dr. Wilcox | 00356-00458 |
| K | Expert J. Michael Dennis' Deposition Transcript, dated July 24, 2024 | 00459-00491 |
| L | NIS Lab's Deposition Transcript and Exhibits 19 and 20, dated December 12, 2023 | 00492-00552 |
| M | Mark Keegan's Deposition Transcript, dated August 29, 2024 | 00553-00562 |

314282621v.1