# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF CALIFORNIA

 3

 4
      LINDA SUNDERLAND AND          )
 5    BENJAMIN BINDER INDIVIDUALLY   )
      AND ON BEHALF OF ALL OTHERS    )
 6    SIMILARLY SITUATED,           )
                                     )
 7                   Plaintiffs,    )
                                     )
 8         vs.                       )    No. 3:23-cv-01318
                                     )         JES-AHG
 9                                   )
      PHARMACARE U.S., INC., A       )
10    DELAWARE CORPORATION AND       )
      PHARMACARE LABORATORIES PTY    )
11    LTD., AN AUSTRALIAN COMPANY,   )
                                     )
12                   Defendants.    )
                                     )
13

14

15

16            DEPOSITION OF BENJAMIN BINDER

17             TUESDAY, FEBRUARY 20, 2024

18              LOS ANGELES, CALIFORNIA

19

20

21

22

23

24    REPORTED BY:  JEANINE CURCIONE
                     CSR NO. 10223, RPR
25    FILE NO.: 525540
```

**Exhibit A**
00001

Transcript of Benjamin Binder
Conducted on February 20, 2024                              5

| | | |
|---|---|---|
| 1 | as well and the witness will now be sworn. | 10:30:59 |
| 2 | | 10:31:02 |
| 3 | BENJAMIN BINDER, | 10:31:02 |
| 4 | having been duly affirmed, was | 10:31:02 |
| 5 | examined and testified as follows: | 10:31:02 |
| 6 | | 10:31:02 |
| 7 | EXAMINATION | 10:31:02 |
| 8 | BY MS. FERRARI: | 10:31:09 |
| 9 | Q.   Mr. Binder, can you please state your full | 10:31:09 |
| 10 | name for the record. | 10:31:14 |
| 11 | A.   Sure.  It's Benjamin, B-e-n-j-a-m-i-n, | 10:31:16 |
| 12 | last name Binder, B-i-n-d-e-r. | 10:31:17 |
| 13 | Q.   Have you ever been deposed before? | 10:31:24 |
| 14 | A.   Yes. | 10:31:26 |
| 15 | Q.   Have you ever given trial testimony | 10:31:27 |
| 16 | before? | 10:31:29 |
| 17 | A.   No. | 10:31:30 |
| 18 | Q.   How many times have you been deposed? | 10:31:30 |
| 19 | A.   Once. | 10:31:32 |
| 20 | Q.   What was the circumstance of that | 10:31:32 |
| 21 | deposition? | 10:31:33 |
| 22 | A.   A previous employer to our limousine | 10:31:35 |
| 23 | service had a lawsuit against us. | 10:31:39 |
| 24 | Q.   And is that what you do for a living -- | 10:31:41 |
| 25 | A.   I own a limousine service. | 10:31:44 |

Exhibit A
00002

Transcript of Benjamin Binder
Conducted on February 20, 2024                    8

| | | |
|---|---|---|
| 1 | 10:30.  Is it true? | 10:33:51 |
| 2 | A.   Yes. | 10:33:54 |
| 3 | Q.   And what was the conflict? | 10:33:55 |
| 4 | A.   I have an elderly mother that I'm running | 10:33:56 |
| 5 | from place to place and checking on her. | 10:33:59 |
| 6 | Q.   Thank you for telling me that.  And I know | 10:34:02 |
| 7 | we started at 10:30.  Under the federal rules I'm | 10:34:05 |
| 8 | entitled to seven hours.  Are you available for the | 10:34:11 |
| 9 | rest of the day? | 10:34:14 |
| 10 | A.   Yes. | 10:34:15 |
| 11 | Q.   Thank you.  Let's go back to your | 10:34:16 |
| 12 | profession.  I want to know what you did to prepare | 10:34:18 |
| 13 | for your deposition today. | 10:34:21 |
| 14 | A.   Can you ask me one more time? | 10:34:23 |
| 15 | Q.   Sure.  What did you do to prepare for your | 10:34:25 |
| 16 | deposition today? | 10:34:27 |
| 17 | A.   I read through the documents that were | 10:34:28 |
| 18 | sent to me a few months ago. | 10:34:31 |
| 19 | Q.   What were those documents? | 10:34:37 |
| 20 | A.   I think that's the filing of the lawsuit. | 10:34:39 |
| 21 | Q.   Anything else? | 10:34:45 |
| 22 | A.   No. | 10:34:46 |
| 23 | Q.   What else did you do to prepare for your | 10:34:50 |
| 24 | deposition today in addition to reading through | 10:34:52 |
| 25 | documents? | 10:34:54 |

Exhibit A
00003

Transcript of Benjamin Binder
Conducted on February 20, 2024                    9

| | | |
|---|---|---|
| 1 | A.    Got dressed and showed up. | 10:34:54 |
| 2 | Q.    Did you meet with anyone to prepare for | 10:34:57 |
| 3 | your deposition? | 10:34:58 |
| 4 | A.    No. | 10:35:00 |
| 5 | Q.    Did you have any phone calls in advance of | 10:35:02 |
| 6 | today's deposition in order to prepare for today's | 10:35:05 |
| 7 | deposition? | 10:35:07 |
| 8 | MR. KASHIMA:  I'm just going to warn you | 10:35:08 |
| 9 | that to the extent you had a phone call with me you | 10:35:09 |
| 10 | can disclose the fact that the phone call happened | 10:35:12 |
| 11 | and who was on the phone call, but I ask that you | 10:35:15 |
| 12 | don't disclose what we talked about on the phone | 10:35:19 |
| 13 | call because that is attorney-client privilege. | 10:35:21 |
| 14 | THE WITNESS:  I had a phone call with | 10:35:25 |
| 15 | Trent. | 10:35:28 |
| 16 | BY MS. FERRARI: | 10:35:28 |
| 17 | Q.    When? | 10:35:28 |
| 18 | A.    Yesterday. | 10:35:30 |
| 19 | Q.    How long? | 10:35:30 |
| 20 | A.    An hour.  I believe it was actually an | 10:35:32 |
| 21 | hour and 11 minutes. | 10:35:37 |
| 22 | Q.    Did you prepare or have any discussions | 10:35:44 |
| 23 | with any other lawyers at the Milberg law firm in | 10:35:46 |
| 24 | preparation for your deposition? | 10:35:50 |
| 25 | A.    Tiffany, which I believe is just an | 10:35:51 |

Exhibit A
00004

Transcript of Benjamin Binder
Conducted on February 20, 2024                    10

| 1 | assistant. | 10:35:53 |
| 2 | Q.   When did you have a meeting with Tiffany? | 10:35:55 |
| 3 | A.   It wasn't a face-to-face.  It was done | 10:35:57 |
| 4 | through e-mail. | 10:36:01 |
| 5 | Q.   Were there attorneys on the e-mail? | 10:36:04 |
| 6 | A.   I don't recall. | 10:36:07 |
| 7 | Q.   What was the e-mail about? | 10:36:09 |
| 8 | A.   The lawsuit. | 10:36:10 |
| 9 | Q.   When did you exchange e-mails with Ms. -- | 10:36:16 |
| 10 | it's Tiffany Kuiper? | 10:36:19 |
| 11 | MR. KASHIMA:  Kuiper. | 10:36:22 |
| 12 | THE WITNESS:  Over the past several | 10:36:24 |
| 13 | months. | 10:36:25 |
| 14 | BY MS. FERRARI: | 10:36:27 |
| 15 | Q.   How many e-mails? | 10:36:27 |
| 16 | A.   I don't recall. | 10:36:33 |
| 17 | Q.   Less than five or more than five? | 10:36:35 |
| 18 | A.   More than five. | 10:36:37 |
| 19 | Q.   Less than ten or more than ten? | 10:36:38 |
| 20 | A.   Less than ten. | 10:36:41 |
| 21 | Q.   Did you do anything else to prepare for | 10:36:45 |
| 22 | your deposition today other than what we've already | 10:36:46 |
| 23 | discussed? | 10:36:49 |
| 24 | A.   No. | 10:36:49 |
| 25 | Q.   What is your current residential address? | 10:36:52 |

Exhibit A
00005

Transcript of Benjamin Binder
Conducted on February 20, 2024                              11

| | | |
|---|---|---|
| 1 | A.    1237 Brunswick Avenue, South Pasadena, | 10:36:54 |
| 2 | California, zip 91030. | 10:37:02 |
| 3 | Q.    How long have you lived there? | 10:37:07 |
| 4 | A.    30 years. | 10:37:09 |
| 5 | Q.    Do you own any other homes? | 10:37:09 |
| 6 | A.    No. | 10:37:11 |
| 7 | Q.    Have you owned any other homes -- | 10:37:12 |
| 8 | A.    I have. | 10:37:14 |
| 9 | Q.    -- in the 30 years? | 10:37:14 |
| 10 | A.    Yes. | 10:37:17 |
| 11 | Q.    Have you owned any other homes in the last | 10:37:19 |
| 12 | 30 years in California? | 10:37:21 |
| 13 | A.    No. | 10:37:23 |
| 14 | Q.    What other states did you -- | 10:37:24 |
| 15 | A.    None.  Other than California? | 10:37:26 |
| 16 | Q.    Yeah, so only California. | 10:37:30 |
| 17 | A.    Only California. | 10:37:32 |
| 18 | Q.    Where did you own these homes? | 10:37:33 |
| 19 | A.    Glendale. | 10:37:35 |
| 20 | Q.    And where else? | 10:37:38 |
| 21 | A.    That's it. | 10:37:40 |
| 22 | Q.    When did you own the Glendale home? | 10:37:42 |
| 23 | A.    That was left to me about 25, 27 years | 10:37:46 |
| 24 | ago. | 10:37:49 |
| 25 | Q.    Do you still own it? | 10:37:51 |

Exhibit A
00006

Transcript of Benjamin Binder
Conducted on February 20, 2024                          17

| | | |
|---|---|---|
| 1 | A.   Los Angeles County. | 10:43:57 |
| 2 | Q.   And what precisely was the charge? | 10:43:59 |
| 3 | A.   Transporting drugs over county lines. | 10:44:02 |
| 4 | Q.   Is it still on your record? | 10:44:09 |
| 5 | A.   Yes. | 10:44:11 |
| 6 | Q.   Did you serve time? | 10:44:13 |
| 7 | A.   I -- how should I -- I was sentenced with | 10:44:16 |
| 8 | time.  I didn't do any time. | 10:44:26 |
| 9 | Q.   Can you vote? | 10:44:31 |
| 10 | A.   No. | 10:44:32 |
| 11 | Q.   Have we talked about all the previous | 10:44:44 |
| 12 | lawsuits you've been in both criminal and civil? | 10:44:46 |
| 13 | A.   Yes. | 10:44:51 |
| 14 | MR. KASHIMA:  Object to form. | 10:44:51 |
| 15 | BY MS. FERRARI: | 10:44:55 |
| 16 | Q.   Have you ever filed for bankruptcy? | 10:44:55 |
| 17 | A.   No. | 10:44:57 |
| 18 | Q.   Ever been married? | 10:45:00 |
| 19 | A.   No. | 10:45:01 |
| 20 | Q.   Mr. Binder, I'm going to hand you what we | 10:45:12 |
| 21 | have previously marked as Exhibit 1. | 10:45:14 |
| 22 | (Exhibit 1 was marked for identification | 10:45:17 |
| 23 | by the Reporter.) | 10:45:17 |
| 24 | THE WITNESS:  Am I looking for just what's | 10:45:30 |
| 25 | marked on this? | 10:45:32 |

Exhibit A
00007

Transcript of Benjamin Binder
Conducted on February 20, 2024                     18

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 10:45:33 |
| 2 | Q. I want you to take a look through Exhibit | 10:45:34 |
| 3 | 1 and tell me what it is. | 10:45:36 |
| 4 | A. Which is the first page? | 10:45:39 |
| 5 | Q. The first page is the cover page. | 10:45:41 |
| 6 | A. So this is the cover page. | 10:45:43 |
| 7 | MR. KASHIMA: Feel free to look through | 10:45:46 |
| 8 | the document. | 10:45:47 |
| 9 | THE WITNESS: Okay. | 10:45:48 |
| 10 | Okay. So Exhibit 1 I've read. | 10:46:09 |
| 11 | BY MS. FERRARI: | 10:46:12 |
| 12 | Q. Can you turn to the very last page of | 10:46:12 |
| 13 | Exhibit 1? | 10:46:21 |
| 14 | A. That's this page? | 10:46:24 |
| 15 | Q. Yes, sir. For the record, the witness is | 10:46:26 |
| 16 | showing me the last page of Exhibit 1. It has a | 10:46:28 |
| 17 | caption on it. It's the caption for the case and | 10:46:34 |
| 18 | it's entitled Plaintiff Benjamin Binder's | 10:46:37 |
| 19 | Verification of Responses and Objections to | 10:46:40 |
| 20 | Defendant Pharmacare US Inc.'s interrogatories to | 10:46:43 |
| 21 | Benjamin Binder Set 1. And then there's some text | 10:46:47 |
| 22 | on the page, Mr. Binder, from lines 19 to about 27. | 10:46:52 |
| 23 | Do you see that? | 10:46:56 |
| 24 | A. I see that. Let me read through it. | 10:46:57 |
| 25 | Okay. I understand. | 10:47:15 |

Exhibit A
00008

Transcript of Benjamin Binder
Conducted on February 20, 2024                    19

| | | |
|---|---|---|
| 1 | Q. On the very last page of Exhibit 1 is that | 10:47:16 |
| 2 | your signature, Mr. Binder? | 10:47:21 |
| 3 | A. It is. | 10:47:23 |
| 4 | Q. Did you provide that signature after you | 10:47:23 |
| 5 | provided some answers to some questions from | 10:47:25 |
| 6 | Pharmacare? | 10:47:27 |
| 7 | A. Yes. | 10:47:28 |
| 8 | MR. KASHIMA: Object to form. | 10:47:30 |
| 9 | BY MS. FERRARI: | 10:47:31 |
| 10 | Q. Is Exhibit 1 your answers to questions | 10:47:32 |
| 11 | posed by Pharmacare and your attorney's objections | 10:47:34 |
| 12 | as well as your verification to those questions? | 10:47:40 |
| 13 | MR. KASHIMA: Object to form. | 10:47:44 |
| 14 | BY MS. FERRARI: | 10:47:45 |
| 15 | Q. You can answer. | 10:47:45 |
| 16 | A. Just could you repeat one more time? | 10:47:47 |
| 17 | Q. Sure. Exhibit 1 -- | 10:47:51 |
| 18 | A. We're back to the front page. | 10:47:52 |
| 19 | Q. I'm talking about the whole thing. | 10:47:55 |
| 20 | A. Okay. | 10:47:58 |
| 21 | Q. That's my question. The last page of | 10:47:59 |
| 22 | Exhibit 1 is you're verifying you provided versus to | 10:48:01 |
| 23 | interrogatories from Pharmacare; correct? | 10:48:07 |
| 24 | A. If I can look through the document real | 10:48:09 |
| 25 | quick. | 10:48:11 |

Exhibit A
00009

Transcript of Benjamin Binder
Conducted on February 20, 2024                              20

| | | |
|---|---|---|
| 1 | Q.   Let's look at the last page. | 10:48:11 |
| 2 | A.   Okay. | 10:48:13 |
| 3 | Q.   On the last page of Exhibit 1 in the text | 10:48:15 |
| 4 | from lines 19 to 20 -- | 10:48:18 |
| 5 | A.   Yes. | 10:48:23 |
| 6 | Q.   -- it says that you are a plaintiff in the | 10:48:24 |
| 7 | above captioned matter and believe based on | 10:48:28 |
| 8 | reasonable inquiries that the responses and | 10:48:32 |
| 9 | objections to defendant Pharmacare US Inc.'s | 10:48:38 |
| 10 | interrogatories to you are true and correct to the | 10:48:42 |
| 11 | best of knowledge and belief; correct? | 10:48:47 |
| 12 | A.   Yes. | 10:48:49 |
| 13 | Q.   And you signed that statement under | 10:48:49 |
| 14 | penalty of perjury on the 4th of January 2024; | 10:48:51 |
| 15 | correct? | 10:48:56 |
| 16 | A.   Yes. | 10:48:56 |
| 17 | Q.   So the pages -- we call that a | 10:48:57 |
| 18 | verification, the very last page of Exhibit 1. | 10:49:00 |
| 19 | A.   Okay. | 10:49:04 |
| 20 | Q.   The pages before the last page of Exhibit | 10:49:05 |
| 21 | 1, are those the responses and objections referenced | 10:49:07 |
| 22 | in the verification we just discussed? | 10:49:13 |
| 23 | MR. KASHIMA:  Object to form. | 10:49:20 |
| 24 | THE WITNESS:  If I read through it I can | 10:49:21 |
| 25 | confirm it. | 10:49:23 |

Exhibit A
00010

Transcript of Benjamin Binder
Conducted on February 20, 2024                                          21

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 10:49:28 |
| 2 | Q. Yes, that's what I want you to do. | 10:49:28 |
| 3 | MS. FERRARI: Can we go off the record. | 10:58:00 |
| 4 | THE VIDEO OPERATOR: Please stand by. | 10:58:04 |
| 5 | We're going off the record and the time is | 10:58:05 |
| 6 | 10:57 A.M. | 10:58:10 |
| 7 | (Recess taken.) | 11:03:47 |
| 8 | THE VIDEO OPERATOR: We're going back on | 11:03:53 |
| 9 | the record and the time is 11:03 A.M. | 11:03:54 |
| 10 | BY MS. FERRARI: | 11:03:57 |
| 11 | Q. Mr. Binder, when we were off the record | 11:03:57 |
| 12 | you completed your reading of Exhibit 1; correct? | 11:04:01 |
| 13 | A. Yes. | 11:04:04 |
| 14 | Q. What is Exhibit 1? | 11:04:05 |
| 15 | A. What is Exhibit 1? There's so much that | 11:04:08 |
| 16 | goes back and forth. | 11:04:14 |
| 17 | Q. Is it your lawyer's objections and your | 11:04:17 |
| 18 | answers to questions from Pharmacare? | 11:04:20 |
| 19 | MR. KASHIMA: Object to form. | 11:04:23 |
| 20 | THE WITNESS: Can you restate? | 11:04:28 |
| 21 | BY MS. FERRARI: | 11:04:29 |
| 22 | Q. Is Exhibit 1 your lawyers objections and | 11:04:29 |
| 23 | your answers to questions, written questions from | 11:04:32 |
| 24 | Pharmacare US Inc.? | 11:04:36 |
| 25 | A. Yes. | 11:04:37 |

Exhibit A
00011

Transcript of Benjamin Binder
Conducted on February 20, 2024                    22

| | | |
|---|---|---|
| 1 | Q.   And is the last page of Exhibit 1 your | 11:04:38 |
| 2 | verification that the answers that you did provide | 11:04:41 |
| 3 | in Exhibit 1 are true and correct? | 11:04:44 |
| 4 | MR. KASHIMA:  Asked and answered. | 11:04:52 |
| 5 | THE WITNESS:  Yes. | 11:04:54 |
| 6 | BY MS. FERRARI: | 11:04:55 |
| 7 | Q.   Before you signed the last page of Exhibit | 11:04:55 |
| 8 | 1, did you review the responses to make sure they | 11:04:59 |
| 9 | were accurate? | 11:05:01 |
| 10 | A.   Several times. | 11:05:04 |
| 11 | Q.   And they are accurate; correct? | 11:05:05 |
| 12 | A.   Yes. | 11:05:07 |
| 13 | Q.   Let's look at the first question in | 11:05:07 |
| 14 | Exhibit 1.  So it's called interrogatory number 1 | 11:05:10 |
| 15 | and the question itself starts on the page that has | 11:05:13 |
| 16 | a 2 in the center of the footer of Exhibit 1.  Are | 11:05:19 |
| 17 | you there? | 11:05:25 |
| 18 | A.   Yes. | 11:05:26 |
| 19 | Q.   Okay.  So the question, interrogatory | 11:05:26 |
| 20 | number 1, was:  Describe the circumstances | 11:05:29 |
| 21 | surrounding your purchase and the use of the | 11:05:33 |
| 22 | products including the date of each purchase, the | 11:05:35 |
| 23 | retail price paid, the method of payment and the | 11:05:39 |
| 24 | specific products purchased, the store name and | 11:05:44 |
| 25 | location from which you purchased the product and | 11:05:49 |

Exhibit A
00012

Transcript of Benjamin Binder
Conducted on February 20, 2024                    23

| | | |
|---|---|---|
| 1 | frequency of use; correct? | 11:05:51 |
| 2 | A.   Yes. | 11:05:53 |
| 3 | Q.   Okay.  And then you provided a response. | 11:05:54 |
| 4 | There's a response.  Okay.  And what your response | 11:05:57 |
| 5 | was:  Subject to the preliminary statement and | 11:06:03 |
| 6 | general objections, plaintiff purchased one of two | 11:06:07 |
| 7 | bottles of Sambucol black elderberry original syrup | 11:06:10 |
| 8 | every two weeks beginning approximately in 2017 and | 11:06:15 |
| 9 | continued through 2023 from the following locations; | 11:06:19 |
| 10 | correct? | 11:06:23 |
| 11 | A.   Yes. | 11:06:24 |
| 12 | MR. KASHIMA:  Object to form.  The | 11:06:25 |
| 13 | document speaks for itself. | 11:06:26 |
| 14 | BY MS. FERRARI: | 11:06:27 |
| 15 | Q.   And then you list a number of locations; | 11:06:27 |
| 16 | correct? | 11:06:29 |
| 17 | A.   Yes. | 11:06:30 |
| 18 | MR. KASHIMA:  Same objections. | 11:06:31 |
| 19 | BY MS. FERRARI: | 11:06:32 |
| 20 | Q.   And then on lines 15 to 18 of page 3 of | 11:06:32 |
| 21 | the interrogatory responses you state:  Plaintiff | 11:06:38 |
| 22 | purchased the product due to the claims printed on | 11:06:42 |
| 23 | the packaging specifically scientifically tested, | 11:06:45 |
| 24 | supports immunity and high antioxidant levels; is | 11:06:49 |
| 25 | that correct? | 11:06:55 |

Exhibit A
00013

Transcript of Benjamin Binder
Conducted on February 20, 2024                          24

1           A.    It is correct.                              11:06:55

2           Q.    And the language on the packaging led      11:06:57

3    plaintiff to believe that the product could help        11:07:00

4    ward off catching a flu or cold and would boost and     11:07:02

5    support his immunity.  You stated that in response      11:07:06

6    to interrogatory number 1 as well?                      11:07:10

7                 MR. KASHIMA:  Object to form.              11:07:13

8                 THE WITNESS:  Yes.                          11:07:14

9                 MR. KASHIMA:  The document speaks for      11:07:18

10   itself.  Give me a second.                               11:07:18

11   BY MS. FERRARI:                                          11:07:20

12          Q.    When you provided your answer to            11:07:20

13   interrogatory number 1 you made sure that that was a     11:07:22

14   true and correct response; correct?                      11:07:25

15                MR. KASHIMA:  Asked and answered.           11:07:27

16                THE WITNESS:  Yes.                           11:07:28

17   BY MS. FERRARI:                                          11:07:30

18          Q.    So other than scientifically tested,        11:07:30

19   supports immunity and high antioxidant level, there      11:07:34

20   are no statements on the Sambucol packaging that         11:07:39

21   caused you to purchase Sambucol; correct?                11:07:40

22                MR. KASHIMA:  Misstates testimony.          11:07:47

23   Misstates document.                                      11:07:48

24                THE WITNESS:  Repeat yourself.              11:07:59

25   ///

Exhibit A
00014

Transcript of Benjamin Binder
Conducted on February 20, 2024                          25

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 11:08:02 |
| 2 | Q.    Your interrogatory response states: | 11:08:02 |
| 3 | Plaintiff purchased the product due to the claims | 11:08:04 |
| 4 | printed on the packaging, specifically | 11:08:07 |
| 5 | scientifically tested, supports immunity and high | 11:08:11 |
| 6 | antioxidant levels; right? | 11:08:14 |
| 7 | A.    Yes. | 11:08:16 |
| 8 | Q.    My question to you, sir, other than | 11:08:16 |
| 9 | scientifically tested, supports immunity and high | 11:08:20 |
| 10 | antioxidant level, there are no other statements on | 11:08:23 |
| 11 | the packaging that caused you to purchase the | 11:08:26 |
| 12 | Sambucol product, were there? | 11:08:32 |
| 13 | MR. KASHIMA:  Objection as to form and | 11:08:35 |
| 14 | misstates testimony.  Misstates the document. | 11:08:35 |
| 15 | THE WITNESS:  Can I answer? | 11:08:40 |
| 16 | BY MS. FERRARI: | 11:08:40 |
| 17 | Q.    Yes. | 11:08:41 |
| 18 | A.    No. | 11:08:41 |
| 19 | Q.    So those three statements were the reason | 11:08:43 |
| 20 | that you purchased Sambucol, scientifically tested, | 11:08:46 |
| 21 | supports immunity and antioxidant level; correct? | 11:08:51 |
| 22 | A.    Yes. | 11:08:56 |
| 23 | MR. KASHIMA:  Same objections. | 11:08:57 |
| 24 | BY MS. FERRARI: | 11:08:57 |
| 25 | Q.    And there were no other statements that | 11:08:57 |

Exhibit A
00015

Transcript of Benjamin Binder
Conducted on February 20, 2024                                    26

| | | |
|---|---|---|
| 1 | caused you to buy the Sambucol product; correct? | 11:09:00 |
| 2 | A.    No. | 11:09:05 |
| 3 | Q.    Am I correct?  Is that correct? | 11:09:07 |
| 4 | A.    Oh, that is correct. | 11:09:09 |
| 5 | Q.    I want to talk about those three | 11:09:11 |
| 6 | statements.  Please explain to me how the words | 11:09:13 |
| 7 | scientifically tested, supports immunity and high | 11:09:17 |
| 8 | antioxidant levels led you to believe that the | 11:09:23 |
| 9 | product could help ward off catching a flu and a | 11:09:27 |
| 10 | cold. | 11:09:32 |
| 11 | A.    When I went shopping for it at the | 11:09:33 |
| 12 | recommendation of a family member that it could help | 11:09:35 |
| 13 | boost -- help me out, I went to the store.  There's | 11:09:39 |
| 14 | many products of black elderberry.  The Sambucol is | 11:09:43 |
| 15 | the only one that states those statements and that's | 11:09:51 |
| 16 | why I purchased it. | 11:09:56 |
| 17 | Q.    Who recommended -- did -- who recommended | 11:09:58 |
| 18 | black elderberry to you? | 11:10:04 |
| 19 | A.    My niece who was a registered nurse.  She | 11:10:06 |
| 20 | lives in Arizona. | 11:10:11 |
| 21 | Q.    What's her name? | 11:10:12 |
| 22 | A.    Stacey, S-t-a-c-e-y.  Last name is Binder | 11:10:13 |
| 23 | Berro, B-e-r-r-o. | 11:10:18 |
| 24 | Q.    And what city in Arizona? | 11:10:21 |
| 25 | A.    Scottsdale. | 11:10:23 |

Exhibit A
00016

Transcript of Benjamin Binder
Conducted on February 20, 2024                    27

| | | |
|---|---|---|
| 1 | Q. Did she recommend black elderberry in | 11:10:26 |
| 2 | general or Sambucol specifically? | 11:10:28 |
| 3 | A. Black elderberry in general. | 11:10:32 |
| 4 | Q. And what did she say about it to you? | 11:10:33 |
| 5 | A. That they have been using it in their | 11:10:36 |
| 6 | family for years. | 11:10:38 |
| 7 | Q. And why was it of interest to you? | 11:10:41 |
| 8 | A. Because it seemed I was getting that | 11:10:44 |
| 9 | information from a good source, a nurse, and she is | 11:10:47 |
| 10 | makes good decisions. | 11:10:51 |
| 11 | Q. And what did she say was the reason they | 11:10:53 |
| 12 | used it? | 11:10:58 |
| 13 | A. Just to protect my immune system. | 11:10:58 |
| 14 | Q. Any other reason? | 11:11:02 |
| 15 | A. No. | 11:11:03 |
| 16 | Q. When was the first -- when was this | 11:11:05 |
| 17 | occasion that you went to the store and saw the | 11:11:08 |
| 18 | Sambucol product for the first time? | 11:11:10 |
| 19 | MR. KASHIMA: Objection as to form. | 11:11:13 |
| 20 | THE WITNESS: Couldn't tell you the month | 11:11:17 |
| 21 | but 2017. | 11:11:18 |
| 22 | BY MS. FERRARI: | 11:11:22 |
| 23 | Q. Which store did you see it in? | 11:11:23 |
| 24 | A. It was either CVS or Rite Aid. | 11:11:27 |
| 25 | Q. In Glendale? | 11:11:31 |

Exhibit A
00017

Transcript of Benjamin Binder
Conducted on February 20, 2024                    28

| | | |
|---|---|---|
| 1 | A.    All over the place.  Glendale, Eagle Rock, | 11:11:33 |
| 2 | Pasadena, La Crescenta. | 11:11:37 |
| 3 | Q.    I'm interested in the very first time you | 11:11:40 |
| 4 | bought elderberry.  Did you buy it from a store? | 11:11:43 |
| 5 | MR. KASHIMA:  Objection as to form. | 11:11:48 |
| 6 | Misstates testimony. | 11:11:50 |
| 7 | THE WITNESS:  CVS on York Boulevard in | 11:11:51 |
| 8 | Eagle Rock. | 11:11:54 |
| 9 | BY MS. FERRARI: | 11:11:54 |
| 10 | Q.    So in a store? | 11:11:55 |
| 11 | A.    In a store. | 11:11:56 |
| 12 | Q.    And you went there because your niece had | 11:11:57 |
| 13 | suggested that black elderberry might protect your | 11:12:00 |
| 14 | immune system; right? | 11:12:03 |
| 15 | A.    I was sick at the time.  I had a cold or a | 11:12:05 |
| 16 | flu. | 11:12:07 |
| 17 | Q.    And you were looking for something to make | 11:12:11 |
| 18 | you feel better? | 11:12:14 |
| 19 | A.    Yes. | 11:12:15 |
| 20 | Q.    So you go to the Eagle Rock CVS and what | 11:12:17 |
| 21 | do you do? | 11:12:24 |
| 22 | A.    Went into the cold and flu section and at | 11:12:25 |
| 23 | the end of the aisle that's where they had the | 11:12:29 |
| 24 | Sambucol. | 11:12:32 |
| 25 | Q.    What type of Sambucol product did you buy? | 11:12:33 |

Exhibit A
00018

Transcript of Benjamin Binder
Conducted on February 20, 2024                    29

| | | |
|---|---|---|
| 1 | A.   The one that's in question. | 11:12:38 |
| 2 | Q.   Which is? | 11:12:40 |
| 3 | A.   Is it called -- it's Sambucol -- I can't | 11:12:42 |
| 4 | pronounce it.  It's -- I can look on my phone.  It's | 11:12:45 |
| 5 | the picture. | 11:12:50 |
| 6 | Q.   We'll look at some pictures.  I'm asking, | 11:12:51 |
| 7 | did you buy a pill?  Did you buy a syrup?  Did you | 11:12:53 |
| 8 | buy a gummy? | 11:12:55 |
| 9 | A.   A syrup. | 11:12:59 |
| 10 | Q.   Was the syrup in a box or just a bottle? | 11:13:02 |
| 11 | A.   It was in a box. | 11:13:05 |
| 12 | Q.   When you looked at the box did you look at | 11:13:07 |
| 13 | the front, back, side, top? | 11:13:09 |
| 14 | A.   All of it. | 11:13:11 |
| 15 | Q.   And if I understand you ended up buying | 11:13:20 |
| 16 | Sambucol that day; correct? | 11:13:25 |
| 17 | A.   Yes. | 11:13:27 |
| 18 | Q.   And that was in 2017; right? | 11:13:27 |
| 19 | A.   Yes. | 11:13:29 |
| 20 | Q.   And if I understand your discovery | 11:13:30 |
| 21 | responses thereafter, the one we just read, you | 11:13:31 |
| 22 | bought syrup every two weeks after that until June | 11:13:36 |
| 23 | of 2023; right? | 11:13:40 |
| 24 | A.   Yes. | 11:13:41 |
| 25 | MR. KASHIMA:  Objection as to form. | 11:13:42 |

Exhibit A
00019

Transcript of Benjamin Binder
Conducted on February 20, 2024                    30

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 11:13:44 |
| 2 | Q. Did you buy syrup in the store or online | 11:13:45 |
| 3 | or both? | 11:13:50 |
| 4 | A. Both. | 11:13:51 |
| 5 | Q. When you made your subsequent purchases | 11:13:53 |
| 6 | after this first purchase at CVS in Eagle Rock did | 11:13:56 |
| 7 | you review the labeling on the packaging again? | 11:14:03 |
| 8 | A. I don't recall. | 11:14:07 |
| 9 | Q. Why did you stop taking Sambucol in June | 11:14:15 |
| 10 | of 2023? | 11:14:18 |
| 11 | A. Because of the class action org and it was | 11:14:20 |
| 12 | expensive. | 11:14:25 |
| 13 | Q. All right. I want to ask you a couple | 11:14:31 |
| 14 | more questions about this question 1 in Exhibit 1. | 11:14:33 |
| 15 | So I want to understand how the words | 11:14:37 |
| 16 | "scientifically tested, supports immunity and high | 11:14:39 |
| 17 | antioxidant" led you to believe that the product | 11:14:45 |
| 18 | would boost your immunity. | 11:14:48 |
| 19 | A. It stood out to me because none of the | 11:14:53 |
| 20 | other products with the same ingredients state that. | 11:14:55 |
| 21 | Q. Is it fair to say that the claim supports | 11:15:03 |
| 22 | immunity led you to believe that it would support | 11:15:06 |
| 23 | your immunity? | 11:15:09 |
| 24 | A. Yes. | 11:15:11 |
| 25 | MR. KASHIMA: Objection as to form. Facts | 11:15:11 |

Exhibit A
00020

Transcript of Benjamin Binder
Conducted on February 20, 2024                    31

```
1    not in record.                                    11:15:13

2            THE WITNESS:  Okay.                        11:15:15

3    BY MS. FERRARI:                                    11:15:16

4        Q.   You didn't need the scientifically tested 11:15:16

5    or high antioxidant level claims to believe that the 11:15:20

6    product would support immunity, did you?           11:15:23

7            MR. KASHIMA:  Objection as to form.        11:15:28

8    Misstates testimony.                               11:15:29

9            THE WITNESS:  I would go back to their      11:15:30

10   packaging was the only packaging on the shelf that 11:15:32

11   stated those.                                      11:15:35

12   BY MS. FERRARI:                                    11:15:37

13       Q.   When you say those --                     11:15:37

14       A.   Those statements of supports immunity.    11:15:39

15       Q.   Scientifically tested and high            11:15:43

16   antioxidant; correct?                              11:15:45

17       A.   Yes.                                      11:15:47

18       Q.   So my question to you is, was it just the 11:15:47

19   supports immunity that made you believe that       11:15:53

20   Sambucol would support your immunity?              11:15:56

21           MR. KASHIMA:  Objection as to form.        11:16:01

22           THE WITNESS:  Yes.                         11:16:01

23   BY MS. FERRARI:                                    11:16:02

24       Q.   Am I right that the only Sambucol product 11:16:02

25   you purchased was the original syrup?              11:16:07
```

Exhibit A
00021

Transcript of Benjamin Binder
Conducted on February 20, 2024                    32

| | | | |
|---|---|---|---|
| 1 | A. | Yes. | 11:16:10 |
| 2 | Q. | So you never purchased any chewable | 11:16:12 |
| 3 | tables? | | 11:16:16 |
| 4 | A. | Never. | 11:16:17 |
| 5 | Q. | Did you purchase any Sambucol lozenges? | 11:16:18 |
| 6 | A. | No. | 11:16:21 |
| 7 | Q. | Did you purchase any Sambucol effervescent | 11:16:22 |
| 8 | tablets? | | 11:16:26 |
| 9 | A. | No. | 11:16:30 |
| 10 | Q. | Did you purchase any Sambucol pastilles? | 11:16:30 |
| 11 | A. | No. | 11:16:33 |
| 12 | Q. | Did you purchase any Sambucol immune drink | 11:16:34 |
| 13 | powder? | | 11:16:37 |
| 14 | A. | No. | 11:16:39 |
| 15 | Q. | Did you purchase any Sambucol gummy | 11:16:40 |
| 16 | products? | | 11:16:42 |
| 17 | A. | No. | 11:16:43 |
| 18 | Q. | All right.  I still -- I have a couple | 11:16:44 |
| 19 | questions about this question line.  So we talked | | 11:16:48 |
| 20 | about this a little bit earlier.  It says you | | 11:16:52 |
| 21 | purchased one to two bottles of the original syrup | | 11:16:57 |
| 22 | every two weeks from sometime in 2017 continuing | | 11:16:59 |
| 23 | through June 2023; right? | | 11:17:03 |
| 24 | A. | Yes. | 11:17:06 |
| 25 | Q. | And that's a true statement; correct? | 11:17:08 |

Exhibit A
00022

Transcript of Benjamin Binder
Conducted on February 20, 2024                    33

| | | |
|---|---|---|
| 1 | A.    Yes. | 11:17:10 |
| 2 | Q.    Let's take a look at some documents that | 11:17:27 |
| 3 | you produced in the case about your purchases.    I | 11:17:30 |
| 4 | will mark what I'm about to show as Exhibit 2. | 11:17:34 |
| 5 | (Exhibit 2 was marked for identification | 11:17:40 |
| 6 | by the Reporter.) | 11:17:40 |
| 7 | BY MS. FERRARI: | 11:17:50 |
| 8 | Q.    Exhibit 2 is a series of pictures and it | 11:17:50 |
| 9 | looks like Amazon receipts and they have a Bates | 11:18:02 |
| 10 | number Binder 000001 to 14. | 11:18:08 |
| 11 | A.    Yes. | 11:18:17 |
| 12 | Q.    Is Exhibit 2 pictures of syrup that you | 11:18:19 |
| 13 | purchased and some receipts about those purchases? | 11:18:23 |
| 14 | MR. KASHIMA:  Objection as to form. | 11:18:27 |
| 15 | THE WITNESS:  Yes. | 11:18:28 |
| 16 | BY MS. FERRARI: | 11:18:28 |
| 17 | Q.    And did you provide those to your lawyer | 11:18:28 |
| 18 | in order to produce in response to questions asked | 11:18:32 |
| 19 | of you by Pharmacare? | 11:18:36 |
| 20 | MR. KASHIMA:  Objection as to form. | 11:18:39 |
| 21 | THE WITNESS:  Yes. | 11:18:40 |
| 22 | BY MS. FERRARI: | 11:18:41 |
| 23 | Q.    So if I look at pages 3 to 14 of Exhibit | 11:18:41 |
| 24 | 2, those all appear to be records of Amazon | 11:18:57 |
| 25 | purchases; right? | 11:19:03 |

Exhibit A
00023

Transcript of Benjamin Binder
Conducted on February 20, 2024                                    34

| | | |
|---|---|---|
| 1 | A.    Yes. | 11:19:04 |
| 2 | MR. KASHIMA:  Objection as to form. | 11:19:05 |
| 3 | BY MS. FERRARI: | 11:19:07 |
| 4 | Q.   But your discovery response says that you | 11:19:07 |
| 5 | purchased Sambucol also at CVS, Rite Aid, Walgreens, | 11:19:13 |
| 6 | Ralphs and Vons; right? | 11:19:21 |
| 7 | A.   Yes. | 11:19:23 |
| 8 | MR. KASHIMA:  Objection as to form.  The | 11:19:24 |
| 9 | document speaks for itself. | 11:19:25 |
| 10 | BY MS. FERRARI: | 11:19:26 |
| 11 | Q.   Do you have receipts from those other | 11:19:26 |
| 12 | places other than Amazon for your Sambucol | 11:19:28 |
| 13 | purchases? | 11:19:31 |
| 14 | A.   No. | 11:19:33 |
| 15 | Q.   Okay.  All right.  Let's take a look at a | 11:19:34 |
| 16 | few of them.  I want to take a look at the page in | 11:19:43 |
| 17 | Exhibit 2 that's marked Binder 4.  Are you there? | 11:19:47 |
| 18 | A.   I'm here. | 11:19:51 |
| 19 | MR. KASHIMA:  Keep going. | 11:19:53 |
| 20 | THE WITNESS:  Four.  Sorry. | 11:19:54 |
| 21 | BY MS. FERRARI: | 11:19:55 |
| 22 | Q.   Exhibit 2, page 4. | 11:19:55 |
| 23 | A.   Got it. | 11:19:58 |
| 24 | Q.   Okay.  Is Exhibit 2, page 4 a copy of some | 11:19:59 |
| 25 | purchases of Sambucol original syrup that you made | 11:20:04 |

Exhibit A
00024

Transcript of Benjamin Binder
Conducted on February 20, 2024                        35

| 1 | on Amazon? | 11:20:10 |
|---|---|---|
| 2 | A.   Yes. | 11:20:12 |
| 3 | Q.   And about the middle of the page on page 4 | 11:20:13 |
| 4 | of Exhibit 2 there appears to be a purchase in March | 11:20:18 |
| 5 | of 2016; right? | 11:20:22 |
| 6 | A.   March 27? | 11:20:28 |
| 7 | Q.   Yes.  Could it be correct that your first | 11:20:29 |
| 8 | purchase of Sambucol was actually in 2016 instead of | 11:20:49 |
| 9 | 2017? | 11:20:52 |
| 10 | A.   Yes. | 11:20:54 |
| 11 | Q.   When was -- did you purchase on Amazon -- | 11:20:55 |
| 12 | were your purchases on Amazon your first purchases | 11:21:04 |
| 13 | of Sambucol? | 11:21:08 |
| 14 | A.   No. | 11:21:09 |
| 15 | Q.   Your first purchase was in the Eagle Rock | 11:21:09 |
| 16 | CVS; right? | 11:21:11 |
| 17 | A.   Yes. | 11:21:13 |
| 18 | Q.   So when we talked about it earlier you | 11:21:14 |
| 19 | thought it might be 2017.  It's at least 2016; | 11:21:18 |
| 20 | correct? | 11:21:23 |
| 21 | A.   Yes. | 11:21:23 |
| 22 | Q.   Do you think it was in 2016 or earlier | 11:21:24 |
| 23 | than that? | 11:21:27 |
| 24 | A.   Let's see.  February -- it could have been | 11:21:28 |
| 25 | the end of -- let me.  Hang on a second.  It would | 11:21:37 |

Exhibit A
00025

Transcript of Benjamin Binder
Conducted on February 20, 2024                    36

| | | |
|---|---|---|
| 1 | have been in 2016 earlier, maybe a month, two months | 11:21:41 |
| 2 | earlier. | 11:21:48 |
| 3 |     Q.   Why do you say that? | 11:21:51 |
| 4 |     A.   Look at Amazon.  I think this was the | 11:21:53 |
| 5 | second or third place I bought it. | 11:21:56 |
| 6 |     Q.   What makes you think that you only started | 11:21:57 |
| 7 | purchasing Sambucol a few months before this March | 11:22:02 |
| 8 | 27, 2016 purchase that's in Exhibit 2? | 11:22:04 |
| 9 |     A.   Going back to the recommendation of my | 11:22:07 |
| 10 | niece. | 11:22:08 |
| 11 |     Q.   Do you have some sort of recollection of | 11:22:09 |
| 12 | the time of year it happened?  Is that what's | 11:22:10 |
| 13 | triggering it for you? | 11:22:13 |
| 14 |     A.   Flu season? | 11:22:15 |
| 15 |     Q.   You don't know? | 11:22:16 |
| 16 |     A.   I don't. | 11:22:18 |
| 17 |     Q.   All right.  So we know at least you are | 11:22:18 |
| 18 | purchasing Sambucol in 2016; right? | 11:22:21 |
| 19 |     A.   Yes. | 11:22:24 |
| 20 |     Q.   And would it continue to hold true, like | 11:22:25 |
| 21 | your discovery response stated, that once you | 11:22:30 |
| 22 | purchased Sambucol in 2016 you were purchasing one | 11:22:32 |
| 23 | to two bottles every month through June 2023? | 11:22:35 |
| 24 |     A.   Two or more. | 11:22:46 |
| 25 |     Q.   Two or more.  Okay.  So fair to say you | 11:22:47 |

Exhibit A
00026

Transcript of Benjamin Binder
Conducted on February 20, 2024                              37

| | | |
|---|---|---|
| 1 | were buying two or more bottles -- sorry -- every | 11:22:53 |
| 2 | two weeks from 2016 to June of 2023? | 11:22:57 |
| 3 | A.    Yes. | 11:23:01 |
| 4 | Q.    So I'm just doing some rough math.  So | 11:23:03 |
| 5 | that's at least 26 bottles a year; right? | 11:23:11 |
| 6 | A.    If that's what it adds up to, yes. | 11:23:17 |
| 7 | Q.    It could be as high as 52 bottles a year; | 11:23:20 |
| 8 | correct? | 11:23:25 |
| 9 | A.    It could be. | 11:23:25 |
| 10 | Q.    Would you agree that that's a conservative | 11:23:26 |
| 11 | estimate?  If we go from even just 2017 to 2023 | 11:23:31 |
| 12 | that's a 150 bottles of Sambucol? | 11:23:36 |
| 13 | MR. KASHIMA:  Objection as to form. | 11:23:40 |
| 14 | THE WITNESS:  If that's where the math | 11:23:40 |
| 15 | works out to, yes. | 11:23:42 |
| 16 | BY MS. FERRARI: | 11:23:43 |
| 17 | Q.    So if 76 months times two equals 152 you | 11:23:43 |
| 18 | don't disagree with that? | 11:23:51 |
| 19 | MR. KASHIMA:  Objection as to form.  Are | 11:23:52 |
| 20 | you asking the math? | 11:23:53 |
| 21 | BY MS. FERRARI: | 11:23:54 |
| 22 | Q.    Yeah. | 11:23:55 |
| 23 | A.    If that's what the math is, yes. | 11:23:56 |
| 24 | Q.    Do you typically buy the same size bottle | 11:24:00 |
| 25 | of syrup? | 11:24:04 |

Exhibit A
00027

Transcript of Benjamin Binder
Conducted on February 20, 2024                    38

| | | |
|---|---|---|
| 1 | A.   Not always. | 11:24:05 |
| 2 | Q.   What sizes do you buy? | 11:24:07 |
| 3 | A.   At the beginning I believe they were only | 11:24:09 |
| 4 | offering the smaller size bottle.  And then I | 11:24:11 |
| 5 | believe there was a second bigger size bottle. | 11:24:15 |
| 6 | Q.   Do you know -- | 11:24:19 |
| 7 | A.   I could be wrong on that though. | 11:24:20 |
| 8 | Q.   Do you know what the two sizes were? | 11:24:23 |
| 9 | A.   Not unless I look at what it says here but | 11:24:25 |
| 10 | I can't read it. | 11:24:29 |
| 11 | Q.   Let's look at the first page of Exhibit 1. | 11:24:30 |
| 12 | A.   Does it have the size?  It doesn't say the | 11:24:36 |
| 13 | size. | 11:24:39 |
| 14 | Q.   The second page of Exhibit 2 -- wait. | 11:24:39 |
| 15 | A.   Still -- | 11:24:43 |
| 16 | Q.   The first page of Exhibit 2.  Sorry.  Can | 11:24:44 |
| 17 | you see where the tips of your fingers are?  It says | 11:24:49 |
| 18 | 4 fluid ounce. | 11:24:53 |
| 19 | A.   I do. | 11:24:59 |
| 20 | Q.   Is that -- | 11:25:00 |
| 21 | A.   Yes. | 11:25:00 |
| 22 | Q.   So were you buying -- were you typically | 11:25:01 |
| 23 | buying a 4 fluid ounce or a 7.8? | 11:25:06 |
| 24 | A.   In the beginning the 4.3 or whatever they | 11:25:10 |
| 25 | are, yeah.  Just because the price difference I was | 11:25:15 |

Exhibit A
00028

Transcript of Benjamin Binder
Conducted on February 20, 2024                    39

| | | |
|---|---|---|
| 1 | getting more for my dollar so I moved up to the | 11:25:19 |
| 2 | bigger bottle.  But -- | 11:25:22 |
| 3 | Q.   When do you think you made that change | 11:25:25 |
| 4 | from the 4.2 or 3 ounce to the 7.8 ounce? | 11:25:27 |
| 5 | A.   No idea. | 11:25:33 |
| 6 | Q.   Was it one year in, two years in? | 11:25:33 |
| 7 | A.   No idea. | 11:25:36 |
| 8 | Q.   I know you stopped taking Sambucol last | 11:25:39 |
| 9 | summer.  Were you taking the 7.8 ounce syrup at that | 11:25:42 |
| 10 | time? | 11:25:46 |
| 11 | MR. KASHIMA:  Objection as to form. | 11:25:47 |
| 12 | THE WITNESS:  I believe so. | 11:25:48 |
| 13 | BY MS. FERRARI: | 11:25:49 |
| 14 | Q.   And looking backward from last summer, how | 11:25:50 |
| 15 | long had you been buying the 7.8 ounce? | 11:25:54 |
| 16 | MR. KASHIMA:  Objection as to form. | 11:25:57 |
| 17 | THE WITNESS:  I don't remember. | 11:25:59 |
| 18 | BY MS. FERRARI: | 11:26:00 |
| 19 | Q.   Did you take the product as directed under | 11:26:00 |
| 20 | the directions for use? | 11:26:04 |
| 21 | A.   Yes. | 11:26:06 |
| 22 | Q.   How many bottles of Sambucol syrup have | 11:26:12 |
| 23 | you purchased in your lifetime? | 11:26:14 |
| 24 | A.   I don't know. | 11:26:18 |
| 25 | Q.   Do you have a rough estimate? | 11:26:21 |

Exhibit A
00029

Transcript of Benjamin Binder
Conducted on February 20, 2024                    40

| | | |
|---|---|---|
| 1 | A.   Well, you mentioned a figure of 150, 152. | 11:26:23 |
| 2 | If that's what the math comes out to be, then yes. | 11:26:28 |
| 3 | Q.   So what was the exact date of your last | 11:26:33 |
| 4 | purchase of Sambucol? | 11:26:36 |
| 5 | A.   It actually would be on the -- I'm not | 11:26:40 |
| 6 | sure if it's the Amazon -- the last Amazon -- I | 11:26:45 |
| 7 | don't think it's the last Amazon purchase, no.  No, | 11:26:50 |
| 8 | it's not.  Well into 2022, '23, but I couldn't give | 11:26:53 |
| 9 | you a specific date. | 11:27:05 |
| 10 | Q.   Let's talk again about why you stopped | 11:27:10 |
| 11 | purchasing Sambucol.  What was the reason? | 11:27:13 |
| 12 | A.   When I had read on the ClassAction.org | 11:27:18 |
| 13 | they pointed out that the claims may not be true.  I | 11:27:26 |
| 14 | was going through some financial difficulties.  We | 11:27:33 |
| 15 | got a big hit company-wise during Covid and then | 11:27:37 |
| 16 | with the actors and the writers strike and I was | 11:27:43 |
| 17 | cutting back on everything.  But mainly I stopped | 11:27:47 |
| 18 | using it because I was like well, if it's not doing | 11:27:51 |
| 19 | me any good why am I spending so much money on this | 11:27:54 |
| 20 | product. | 11:28:00 |
| 21 | Q.   Did the product ever meet your | 11:28:00 |
| 22 | expectations? | 11:28:04 |
| 23 | A.   I don't know. | 11:28:05 |
| 24 | Q.   Well, you were buying at least two bottles | 11:28:06 |
| 25 | every two weeks? | 11:28:09 |

Exhibit A
00030

Transcript of Benjamin Binder
Conducted on February 20, 2024                          41

| | | |
|---|---|---|
| 1 | A.    I was. | 11:28:10 |
| 2 | Q.    What did you think that it was doing for | 11:28:10 |
| 3 | you in six years? | 11:28:15 |
| 4 | MR. KASHIMA:  Objection.  Argumentative. | 11:28:16 |
| 5 | THE WITNESS:  It tastes good.  It was | 11:28:19 |
| 6 | recommended to me.  The statements on the bottle, | 11:28:25 |
| 7 | scientifically tested, supports immunity, high | 11:28:26 |
| 8 | antioxidant levels.  I'm running a company.  I have | 11:28:28 |
| 9 | to keep, you know, healthy for my employees. | 11:28:34 |
| 10 | BY MS. FERRARI: | 11:28:41 |
| 11 | Q.    So you took -- you purchased the product | 11:28:41 |
| 12 | with at least one to two bottles a week for at least | 11:28:50 |
| 13 | six years before you decided the product wasn't | 11:28:56 |
| 14 | helping you; right? | 11:29:03 |
| 15 | A.    Yes. | 11:29:04 |
| 16 | Q.    Did you get some value from the product | 11:29:06 |
| 17 | during those six years? | 11:29:10 |
| 18 | MR. KASHIMA:  Objection as to form. | 11:29:12 |
| 19 | THE WITNESS:  I'm not a scientist.  I'm | 11:29:15 |
| 20 | not a doctor so I don't know. | 11:29:21 |
| 21 | BY MS. FERRARI: | 11:29:22 |
| 22 | Q.    You mentioned -- considering how much you | 11:29:22 |
| 23 | bought it and how much you used it, I'm just trying | 11:29:25 |
| 24 | to understand why you keep buying it -- | 11:29:28 |
| 25 | A.    I'm a creature of comfort. | 11:29:31 |

Exhibit A
00031

Transcript of Benjamin Binder
Conducted on February 20, 2024                                42

| 1 | MR. KASHIMA: Let her finish her question. | 11:29:39 |
| 2 | BY MS. FERRARI: | 11:29:41 |
| 3 | Q. Any other reason you kept using it from | 11:29:41 |
| 4 | that time period 2016 to 2023? | 11:29:44 |
| 5 | A. I thought it was doing me good. | 11:29:47 |
| 6 | Q. How so? | 11:29:49 |
| 7 | A. With the claims. | 11:29:51 |
| 8 | Q. How did it make you feel? | 11:29:54 |
| 9 | A. I don't know if it made any difference. | 11:29:56 |
| 10 | Q. But you didn't stop? | 11:30:00 |
| 11 | A. I didn't stop, no. | 11:30:02 |
| 12 | Q. Why did you go to ClassAction.org? | 11:30:12 |
| 13 | A. It was recommended years ago and years | 11:30:18 |
| 14 | ago. I own an Audi, which is Volkswagen Group, and | 11:30:20 |
| 15 | my car had a water pump problem. I took it to my | 11:30:24 |
| 16 | mechanic. He said you know, I think there's a class | 11:30:29 |
| 17 | action lawsuit against them. Why don't you look | 11:30:33 |
| 18 | into it before I start charging you hundreds of | 11:30:36 |
| 19 | dollars for a new water pump. That's how I found | 11:30:43 |
| 20 | ClassAction.org and that's how I found them. | 11:30:47 |
| 21 | Q. When did you first go to ClassAction.org | 11:30:53 |
| 22 | for the problem with your car? | 11:30:58 |
| 23 | A. 2015. | 11:31:04 |
| 24 | Q. After 2015 how often were you visiting | 11:31:05 |
| 25 | ClassAction.org? | 11:31:12 |

Exhibit A
00032

Transcript of Benjamin Binder
Conducted on February 20, 2024                          43

| | | |
|---|---|---|
| 1 | A.   A bit because my model Audi with the 2 | 11:31:13 |
| 2 | liter engine had some other problems and they would | 11:31:15 |
| 3 | pop up.  And after that there was another problem | 11:31:22 |
| 4 | with overly -- the cars were using too much oil and | 11:31:23 |
| 5 | that's an ongoing class action lawsuit right now | 11:31:28 |
| 6 | with Volkswagen Group. | 11:31:32 |
| 7 | Q.   Did you sign up for those class actions | 11:31:34 |
| 8 | related to the Audi on ClassAction.org? | 11:31:37 |
| 9 | A.   I did. | 11:31:42 |
| 10 | Q.   Who are your attorneys in those cases? | 11:31:43 |
| 11 | A.   I'm not -- I don't have an attorney | 11:31:45 |
| 12 | representing me. | 11:31:47 |
| 13 | Q.   Did you receive class settlements in those | 11:31:48 |
| 14 | settlements? | 11:31:52 |
| 15 | A.   Water pump.  What they did with the water | 11:31:53 |
| 16 | pump, they extended the warranty.  So there was no | 11:31:56 |
| 17 | money paid out and they fixed the car. | 11:32:04 |
| 18 | Q.   Did you ever go to Sambucol.com to get a | 11:32:07 |
| 19 | refund for your purchases? | 11:32:10 |
| 20 | A.   I didn't even know that was an option. | 11:32:14 |
| 21 | Q.   So you didn't read on the bottle or the | 11:32:18 |
| 22 | box that there's a satisfaction guarantee, you can | 11:32:20 |
| 23 | go to the website? | 11:32:25 |
| 24 | MR. KASHIMA:  Objection as to form. | 11:32:27 |
| 25 | Assumes facts not in evidence. | 11:32:27 |

Exhibit A
00033

Transcript of Benjamin Binder
Conducted on February 20, 2024                    44

| | | |
|---|---|---|
| 1 | THE WITNESS:  No. | 11:32:28 |
| 2 | BY MS. FERRARI: | 11:32:29 |
| 3 | Q.    So you said you went to ClassAction.org a | 11:32:29 |
| 4 | bit.  The way I understand that in just normal | 11:32:37 |
| 5 | people talk is with some frequency.  Fair | 11:32:41 |
| 6 | characterization? | 11:32:46 |
| 7 | MR. KASHIMA:  Objection as to form. | 11:32:47 |
| 8 | THE WITNESS:  Yes. | 11:32:47 |
| 9 | BY MS. FERRARI: | 11:32:48 |
| 10 | Q.    When you say with some frequency or a bit, | 11:32:48 |
| 11 | how often is that a year? | 11:32:52 |
| 12 | A.    Probably once a month. | 11:32:55 |
| 13 | Q.    That continued to be your practice from | 11:32:57 |
| 14 | 2015 to the present? | 11:33:00 |
| 15 | A.    Yes. | 11:33:02 |
| 16 | Q.    Were you looking for other products that | 11:33:02 |
| 17 | you purchased? | 11:33:04 |
| 18 | A.    No.  I was looking for pretty much stuff | 11:33:04 |
| 19 | with my car and then the Sambucol I'm like I use | 11:33:06 |
| 20 | that, what's going on? | 11:33:11 |
| 21 | Q.    Did you sign up for ClassAction.org news | 11:33:15 |
| 22 | letters? | 11:33:18 |
| 23 | A.    Yes. | 11:33:19 |
| 24 | Q.    When did you first sign up for the | 11:33:19 |
| 25 | newsletter? | 11:33:22 |

Exhibit A
00034

Transcript of Benjamin Binder
Conducted on February 20, 2024                    45

| | | |
|---|---|---|
| 1 | A.    I don't know. | 11:33:23 |
| 2 | Q.    Was it in that 2015 time frame? | 11:33:23 |
| 3 | A.    It could have been but I'm not confident | 11:33:26 |
| 4 | with answering that. | 11:33:28 |
| 5 | Q.    Was it around statements you saw on the | 11:33:30 |
| 6 | website related to your car that you signed up for | 11:33:35 |
| 7 | the newsletter? | 11:33:37 |
| 8 | A.    Yes. | 11:33:39 |
| 9 | Q.    And then in that newsletter you happened | 11:33:41 |
| 10 | to see information about Sambucol; fair? | 11:33:45 |
| 11 | A.    Yes. | 11:33:47 |
| 12 | Q.    When did you first see information about | 11:33:48 |
| 13 | Sambucol in a ClassAction.org website or newsletter? | 11:33:50 |
| 14 | A.    Not sure if it's 2022 or 2023.  It would | 11:34:03 |
| 15 | have been 2022. | 11:34:10 |
| 16 | Q.    Why do you say that? | 11:34:13 |
| 17 | A.    Hang on.  I'm mixing up -- we're in 2024. | 11:34:19 |
| 18 | It would have been 2022 or 2023. | 11:34:24 |
| 19 | Q.    And why do you say '22 or '23? | 11:34:28 |
| 20 | A.    That's a broad range that I can give you. | 11:34:31 |
| 21 | I'm not quite sure of a date. | 11:34:34 |
| 22 | Q.    Because you believe it happened in the | 11:34:35 |
| 23 | last one or two years? | 11:34:38 |
| 24 | A.    Yes. | 11:34:39 |
| 25 | Q.    Let's take a look at the documents on | 11:34:44 |

Exhibit A
00035

Transcript of Benjamin Binder
Conducted on February 20, 2024                    46

| | | |
|---|---|---|
| 1 | Exhibit 2.  I just want to go page by page.  So page | 11:34:48 |
| 2 | 1 of Exhibit 2, what is this a picture of? | 11:34:55 |
| 3 |     A.    That's the bottle of the Sambucol and my | 11:34:59 |
| 4 | hand. | 11:35:04 |
| 5 |     Q.    And that was Sambucol you had purchased? | 11:35:05 |
| 6 |     A.    Yes. | 11:35:08 |
| 7 |     Q.    Was the picture taken before or after the | 11:35:10 |
| 8 | lawsuit that we're here about? | 11:35:13 |
| 9 |     A.    After. | 11:35:16 |
| 10 |     Q.    When precisely was the picture taken on | 11:35:21 |
| 11 | page 1 of Exhibit 2? | 11:35:24 |
| 12 |     A.    I'm not sure. | 11:35:27 |
| 13 |     Q.    So at least at the time you took the | 11:35:29 |
| 14 | picture you still had a bottle of Sambucol? | 11:35:32 |
| 15 |     A.    Yes. | 11:35:34 |
| 16 |     Q.    Do you still have that bottle? | 11:35:35 |
| 17 |     A.    Yes. | 11:35:36 |
| 18 |     Q.    I want you to keep that.  I'm going to ask | 11:35:37 |
| 19 | your lawyer for it and I'm going to ask him to | 11:35:39 |
| 20 | produce it for me. | 11:35:42 |
| 21 |     A.    Okay. | 11:35:44 |
| 22 |     Q.    Do you have more than one bottle of | 11:35:44 |
| 23 | Sambucol at home or anywhere? | 11:35:46 |
| 24 |     A.    There's one in the refrigerator.  I'm not | 11:35:50 |
| 25 | sure if there's one in the cabinet. | 11:35:52 |

Exhibit A
00036

Transcript of Benjamin Binder
Conducted on February 20, 2024                    47

| | | |
|---|---|---|
| 1 | Q. So any bottles of Sambucol that you still | 11:35:54 |
| 2 | have I'd like you to keep and I'll work with your | 11:35:58 |
| 3 | lawyer about that; okay? | 11:36:02 |
| 4 | A. Yes. | 11:36:05 |
| 5 | Q. Let's look at page 2 of Exhibit 2. Is | 11:36:05 |
| 6 | that also one of the bottles of Sambucol that you | 11:36:11 |
| 7 | have? | 11:36:14 |
| 8 | A. Same bottle as the first one. | 11:36:15 |
| 9 | Q. Okay. It's just a different view. | 11:36:16 |
| 10 | A. Yes. | 11:36:19 |
| 11 | Q. Okay. Do the pictures at pages 1 of 2 -- | 11:36:20 |
| 12 | 1 and 2 of Exhibit 2 show an accurate representation | 11:36:30 |
| 13 | of the front of the 4-ounce bottles that you | 11:36:34 |
| 14 | purchased? | 11:36:38 |
| 15 | A. Yes. | 11:36:39 |
| 16 | Q. Was that always for every 4-ounce bottle | 11:36:48 |
| 17 | that you purchased, did it always look like the | 11:36:53 |
| 18 | pictures in Exhibit 1 and 2? | 11:36:56 |
| 19 | MR. KASHIMA: Objection as to form. | 11:37:00 |
| 20 | THE WITNESS: I believe so. | 11:37:01 |
| 21 | BY MS. FERRARI: | 11:37:02 |
| 22 | Q. The front panel on the 4-ounce bottles | 11:37:02 |
| 23 | that you purchased between 2016 and 2023, did they | 11:37:06 |
| 24 | look like the front panels we're seeing at pages 1 | 11:37:09 |
| 25 | and 2 of Exhibit 2? | 11:37:13 |

Exhibit A
00037

Transcript of Benjamin Binder
Conducted on February 20, 2024                    48

| | | |
|---|---|---|
| 1 | MR. KASHIMA:  Objection as to form. | 11:37:15 |
| 2 | THE WITNESS:  I believe so. | 11:37:17 |
| 3 | BY MS. FERRARI: | 11:37:23 |
| 4 | Q.   Do you have the boxes? | 11:37:23 |
| 5 | A.   No. | 11:37:25 |
| 6 | Q.   What did you do with the boxes? | 11:37:27 |
| 7 | A.   Threw them away. | 11:37:30 |
| 8 | Q.   When? | 11:37:32 |
| 9 | A.   As soon as I opened them up. | 11:37:33 |
| 10 | Q.   And recycled? | 11:37:35 |
| 11 | A.   Like everybody does. | 11:37:42 |
| 12 | Q.   When you were buying the syrup for the | 11:37:43 |
| 13 | last six years a couple times a month were you | 11:37:49 |
| 14 | continuing to read the box or were you just taking | 11:37:53 |
| 15 | the bottle out of the box and recycling the box? | 11:37:55 |
| 16 | A.   I don't think I read the box again. | 11:38:00 |
| 17 | Q.   After your first purchase? | 11:38:03 |
| 18 | A.   Maybe after the first or the second. | 11:38:05 |
| 19 | Q.   Let's look at number -- page number 3 of | 11:38:08 |
| 20 | Exhibit 2.  Would you agree that page number 3 | 11:38:11 |
| 21 | appears to be purchases of Sambucol syrup that you | 11:38:22 |
| 22 | made on Amazon in January of 2018 and December of | 11:38:29 |
| 23 | 2017? | 11:38:34 |
| 24 | A.   Yes. | 11:38:36 |
| 25 | Q.   Then on page 4, would you agree that page | 11:38:37 |

Exhibit A
00038

Transcript of Benjamin Binder
Conducted on February 20, 2024                    49

| | | |
|---|---|---|
| 1 | 4 of Exhibit 2 reflects purchases you made of | 11:38:44 |
| 2 | Sambucol syrup in February 2017 and March 2016? | 11:38:48 |
| 3 | A.  Yes. | 11:38:53 |
| 4 | Q.  Tell me what page 5 is. | 11:38:59 |
| 5 | A.  That's the invoice of what I paid for it. | 11:39:07 |
| 6 | Q.  And do you know which purchase it relates | 11:39:10 |
| 7 | to? | 11:39:15 |
| 8 | A.  I don't because it doesn't have the -- it | 11:39:16 |
| 9 | doesn't have the date. | 11:39:24 |
| 10 | Q.  Well, so if I look in the upper left hand | 11:39:26 |
| 11 | corner -- pages 3, 4 and 5 appear to be screen shots | 11:39:30 |
| 12 | from a phone.  Does that ring true to you? | 11:39:37 |
| 13 | A.  Yes. | 11:39:40 |
| 14 | Q.  That's what they are? | 11:39:40 |
| 15 | A.  Yes. | 11:39:41 |
| 16 | Q.  If I look at the upper left hand corner of | 11:39:41 |
| 17 | the screen shot on page 5 of Exhibit 2 it says 2045? | 11:39:44 |
| 18 | A.  8:45 p.m. | 11:39:54 |
| 19 | Q.  Right.  And if I look at page 6 it also | 11:39:55 |
| 20 | says 2045? | 11:39:59 |
| 21 | A.  It's probably the same. | 11:40:02 |
| 22 | Q.  But yes, it does also say 2045? | 11:40:04 |
| 23 | A.  It does say 2045 but it's a different | 11:40:07 |
| 24 | screen shot. | 11:40:11 |
| 25 | Q.  So page 6 is for a purchase made in | 11:40:13 |

Exhibit A
00039

Transcript of Benjamin Binder
Conducted on February 20, 2024                         50

| | | |
|---|---|---|
| 1 | January 2018; correct? | 11:40:19 |
| 2 |     A.   Yes. | 11:40:22 |
| 3 |     Q.   And it looks like page 6 is talking about | 11:40:23 |
| 4 | a 4-ounce syrup; right? | 11:40:25 |
| 5 |       MR. KASHIMA:  Objection as to form. | 11:40:30 |
| 6 | BY MS. FERRARI: | 11:40:32 |
| 7 |     Q.   Is that when I see the 4 in bold -- | 11:40:32 |
| 8 |       MR. KASHIMA:  Calls for speculation. | 11:40:35 |
| 9 | BY MS. FERRARI: | 11:40:35 |
| 10 |     Q.   -- in the middle of the screen shot? | 11:40:36 |
| 11 |     A.   It must be because that's two bottles and | 11:40:38 |
| 12 | the price would come out to 15.44. | 11:40:41 |
| 13 |     Q.   And to me, from the price, it looks like | 11:40:46 |
| 14 | it should be a 7.8-ounce.  Do you know what the | 11:40:48 |
| 15 | price was for the 4 ounce versus the 7.8? | 11:40:52 |
| 16 |       MR. KASHIMA:  Objection as to form. | 11:40:57 |
| 17 |       THE WITNESS:  I don't but there's a big | 11:41:04 |
| 18 | price difference. | 11:41:06 |
| 19 | BY MS. FERRARI: | 11:41:11 |
| 20 |     Q.   Let's look at number 7.  What does 7 show | 11:41:12 |
| 21 | me? | 11:41:17 |
| 22 |     A.   It's another invoice at 2046 but it | 11:41:23 |
| 23 | doesn't tell me the date.  It could have been four | 11:41:28 |
| 24 | bottles. | 11:41:34 |
| 25 |     Q.   So the total price on number 7 looks like | 11:41:35 |

Exhibit A
00040

Transcript of Benjamin Binder
Conducted on February 20, 2024                    51

| | | |
|---|---|---|
| 1 | it's a purchase of $71.46? | 11:41:39 |
| 2 | A.   Yes. | 11:41:43 |
| 3 | Q.   And can you tell from looking at that | 11:41:45 |
| 4 | price how many bottles you ordered at what price? | 11:41:52 |
| 5 | MR. KASHIMA:  Objection.  Calls for | 11:42:00 |
| 6 | speculation. | 11:42:00 |
| 7 | THE WITNESS:  I don't recall. | 11:42:01 |
| 8 | BY MS. FERRARI: | 11:42:02 |
| 9 | Q.   Let's look at page 8 of Exhibit 2.  There | 11:42:02 |
| 10 | we can actually see that a 7.8 ounce is $15.08; | 11:42:05 |
| 11 | right? | 11:42:13 |
| 12 | A.   Yes. | 11:42:13 |
| 13 | Q.   Does that help you recollect whether or | 11:42:14 |
| 14 | not page 6 was for a 4-ounce or a 7.8-ounce? | 11:42:18 |
| 15 | A.   That's for a 7.8-ounce it looks like.  If | 11:42:25 |
| 16 | you add up the two -- it could have been a price | 11:42:30 |
| 17 | increase. | 11:42:33 |
| 18 | Q.   You can't tell looking at page 6 -- | 11:42:34 |
| 19 | A.   Page 8 says 7.8 ounces.  Page 6 it's | 11:42:40 |
| 20 | probably the 4-ounce. | 11:42:45 |
| 21 | Q.   Is that little two by the picture in the | 11:42:47 |
| 22 | box, is that an order of two -- | 11:42:49 |
| 23 | A.   Quantity two.  Yes.  Yes, it is. | 11:42:53 |
| 24 | Q.   We're talking about page 6; right? | 11:42:55 |
| 25 | A.   Yes.  Right by the bottle? | 11:42:57 |

Exhibit A
00041

Transcript of Benjamin Binder
Conducted on February 20, 2024                              52

| | | |
|---|---|---|
| 1 | Q.    Yes. | 11:43:00 |
| 2 | A.    Yes. | 11:43:00 |
| 3 | Q.    So page 8 it shows a purchase you made in | 11:43:01 |
| 4 | December 2017 of the 7.8-ounce Sambucol syrup for | 11:43:05 |
| 5 | $15.12; right? | 11:43:11 |
| 6 | A.    Yes. | 11:43:14 |
| 7 | Q.    And page 9 shows you a purchase you made | 11:43:16 |
| 8 | for two items in March of 2016; correct? | 11:43:24 |
| 9 | A.    Yes. | 11:43:31 |
| 10 | Q.    And it looks like they were for syrup as | 11:43:34 |
| 11 | well; correct? | 11:43:37 |
| 12 | A.    Yes.  It's two items. | 11:43:38 |
| 13 | Q.    And is page 10 an accurate representation | 11:43:42 |
| 14 | of an order of two bottles of 7.8-ounce fluid that | 11:43:46 |
| 15 | you purchased in March of 2016? | 11:43:50 |
| 16 | A.    Yes. | 11:43:58 |
| 17 | Q.    And it says the price is 16.94.  Is that | 11:43:59 |
| 18 | for one bottle or for two? | 11:44:04 |
| 19 | A.    Which page? | 11:44:07 |
| 20 | Q.    On page 10 of Exhibit 2. | 11:44:08 |
| 21 | A.    It says quantity two. | 11:44:12 |
| 22 | Q.    Right.  And then there's a price 16.94 and | 11:44:14 |
| 23 | if I turn to page 11 I'm wondering if that's the | 11:44:18 |
| 24 | total for two. | 11:44:23 |
| 25 | A.    It is.  And I just realized something. | 11:44:25 |

Exhibit A
00042

Transcript of Benjamin Binder
Conducted on February 20, 2024                53

| | | |
|---|---|---|
| 1 | When you're seeing that time frame of 2047, whatever | 11:44:27 |
| 2 | they are, those are when I took the screen shot. | 11:44:33 |
| 3 | Q.   Not when you made the order? | 11:44:37 |
| 4 | A.   Exactly. | 11:44:38 |
| 5 | Q.   Got you.  So if I'm looking at pages 10 | 11:44:39 |
| 6 | and 11 of Exhibit 2 -- | 11:44:44 |
| 7 | A.   Which pages? | 11:44:47 |
| 8 | Q.   10 and 11.  It looks like as of March 2016 | 11:44:48 |
| 9 | a single 7.8-ounce bottle of Sambucol syrup cost | 11:44:54 |
| 10 | $16.94; is that correct? | 11:44:57 |
| 11 | A.   Right there.  Yes. | 11:44:59 |
| 12 | Q.   And because you bought two you paid 33.88. | 11:45:01 |
| 13 | A.   Yes. | 11:45:05 |
| 14 | Q.   Let's look at page 12 of Exhibit 2.  Let's | 11:45:08 |
| 15 | just look at 12 and 13 because I think they're | 11:45:15 |
| 16 | related, I think.  I think 12 is an order you had of | 11:45:21 |
| 17 | 7.8 ounce fluid -- sorry -- 7.8-ounce Sambucol syrup | 11:45:27 |
| 18 | in February of 2017 for $18.09; correct? | 11:45:34 |
| 19 | A.   Yes.  It went up in price. | 11:45:39 |
| 20 | Q.   And then on number 13 that's just -- | 11:45:41 |
| 21 | A.   The total. | 11:45:47 |
| 22 | Q.   The total summary of that purchase that | 11:45:47 |
| 23 | you made in February of 2017; correct? | 11:45:50 |
| 24 | A.   Yes. | 11:45:53 |
| 25 | Q.   What is on page 14?  Do you know what that | 11:45:54 |

Exhibit A
00043

Transcript of Benjamin Binder
Conducted on February 20, 2024                    54

| | | |
|---|---|---|
| 1 | correlates to? | 11:45:57 |
| 2 | A.   Just my payment billing address and | 11:46:00 |
| 3 | shipping. | 11:46:04 |
| 4 | Q.   And we don't know if that's related to | 11:46:04 |
| 5 | that 2017 purchase or some other purchase? | 11:46:07 |
| 6 | A.   It probably was the same purchase.  I | 11:46:10 |
| 7 | think I was -- because -- well, some of them do. | 11:46:12 |
| 8 | Some of them do show my address, the billing and | 11:46:17 |
| 9 | shipping address, but some of the pages don't.  And | 11:46:21 |
| 10 | I think I just added that in to show payment and | 11:46:24 |
| 11 | where it was shipped to. | 11:46:27 |
| 12 | Q.   So when you went to take the screen shots | 11:46:28 |
| 13 | of the receipts for purchases of Sambucol that you | 11:46:31 |
| 14 | made on Amazon, what did you do? | 11:46:33 |
| 15 | A.   I pulled up my purchase history and looked | 11:46:36 |
| 16 | how far back I could search and that's how I came up | 11:46:41 |
| 17 | with these. | 11:46:46 |
| 18 | Q.   Okay.  Great.  So other than Amazon are | 11:46:47 |
| 19 | all the locations in which you purchased Sambucol | 11:46:50 |
| 20 | listed on your response to interrogatory number 1 on | 11:46:55 |
| 21 | Exhibit 1? | 11:47:00 |
| 22 | A.   Let me -- yes.  They're right here.  Yes. | 11:47:02 |
| 23 | Q.   You didn't make purchases anywhere other | 11:47:05 |
| 24 | than Amazon, CVS, Rite Aid, Walgreens.  Ralphs or | 11:47:08 |
| 25 | Vons? | 11:47:13 |

Exhibit A
00044

Transcript of Benjamin Binder
Conducted on February 20, 2024                                55

| | | |
|---|---|---|
| 1 | A.   All those places. | 11:47:14 |
| 2 | Q.   Any other places? | 11:47:15 |
| 3 | A.   No. | 11:47:16 |
| 4 | Q.   Did you only purchase Sambucol when you | 11:47:17 |
| 5 | were in Southern California? | 11:47:18 |
| 6 | A.   Yes. | 11:47:20 |
| 7 | Q.   All of your Sambucol purchases happened in | 11:47:22 |
| 8 | Southern California; right? | 11:47:25 |
| 9 | A.   Yes, all these locations plus Amazon. | 11:47:26 |
| 10 | Q.   And when you were ordering on Amazon you | 11:47:28 |
| 11 | were ordering from your home in Southern California; | 11:47:31 |
| 12 | correct? | 11:47:34 |
| 13 | A.   Yes. | 11:47:34 |
| 14 | Q.   Now, the documents that we just looked at | 11:47:35 |
| 15 | at Exhibit 2, they show that you paid a range of | 11:47:37 |
| 16 | prices for the 7.8-ounce syrup that went anywhere | 11:47:41 |
| 17 | from $15.12 to $18.09; right? | 11:47:46 |
| 18 | A.   Yes. | 11:47:53 |
| 19 | Q.   Would that price range, would that also | 11:47:53 |
| 20 | hold true for the other 7.8-ounce bottles of | 11:47:56 |
| 21 | Sambucol you purchased? | 11:47:59 |
| 22 | A.   At the other locations? | 11:48:01 |
| 23 | MR. KASHIMA:  Objection as to form. | 11:48:02 |
| 24 | BY MS. FERRARI: | 11:48:03 |
| 25 | Q.   That's my question, yes. | 11:48:03 |

Exhibit A
00045

Transcript of Benjamin Binder
Conducted on February 20, 2024                              56

| | | |
|---|---|---|
| 1 | A. I don't know because I don't have the | 11:48:05 |
| 2 | receipts. | 11:48:07 |
| 3 | Q. What about on other dates either on Amazon | 11:48:09 |
| 4 | or other locations, did the price change? | 11:48:11 |
| 5 | MR. KASHIMA: Objection as to form. | 11:48:16 |
| 6 | THE WITNESS: I believe the price changed. | 11:48:17 |
| 7 | BY MS. FERRARI: | 11:48:19 |
| 8 | Q. And do you know what the price range was | 11:48:19 |
| 9 | for the 4-ounce bottle that you purchased? | 11:48:22 |
| 10 | A. No. | 11:48:25 |
| 11 | Q. Did you ever take advantage of subscribing | 11:48:27 |
| 12 | and save on Amazon? | 11:48:31 |
| 13 | MR. KASHIMA: Objection as to form. | 11:48:33 |
| 14 | THE WITNESS: No. | 11:48:33 |
| 15 | BY MS. FERRARI: | 11:48:34 |
| 16 | Q. Are you a club or reward member at CVS or | 11:48:34 |
| 17 | Rite Aid? | 11:48:42 |
| 18 | A. I may be but I don't use them. | 11:48:42 |
| 19 | Q. Were you a club or reward member at | 11:48:46 |
| 20 | Walgreens, Ralphs or Vons? | 11:48:49 |
| 21 | MR. KASHIMA: Objection as to form. | 11:48:51 |
| 22 | THE WITNESS: Vons, yes. | 11:48:52 |
| 23 | BY MS. FERRARI: | 11:48:53 |
| 24 | Q. No to Ralphs? | 11:48:54 |
| 25 | A. No to Ralphs and no to Walgreens. | 11:48:56 |

Exhibit A
00046

Transcript of Benjamin Binder
Conducted on February 20, 2024                    57

| | | |
|---|---|---|
| 1 | Q.   Did you ever use a club or reward discount | 11:49:00 |
| 2 | for purchasing Sambucol when you purchased it at | 11:49:03 |
| 3 | Vons? | 11:49:05 |
| 4 | A.   No. | 11:49:06 |
| 5 | Q.   Did you ever get a discount for any | 11:49:09 |
| 6 | purchases you made of Sambucol? | 11:49:13 |
| 7 | A.   No. | 11:49:15 |
| 8 | Q.   You never used a coupon or -- | 11:49:16 |
| 9 | A.   No.  Never seen a coupon for it. | 11:49:19 |
| 10 | Q.   All right.  We're about to take a break. | 11:49:24 |
| 11 | But have we talked about all of the statements on | 11:49:26 |
| 12 | the Sambucol syrup bottle and package that caused | 11:49:30 |
| 13 | you to buy Sambucol? | 11:49:36 |
| 14 | MR. KASHIMA:  Objection as to form. | 11:49:38 |
| 15 | Misstates prior testimony. | 11:49:40 |
| 16 | THE WITNESS:  Can you repeat? | 11:49:42 |
| 17 | BY MS. FERRARI: | 11:49:43 |
| 18 | Q.   Sure.  Have we talked about all of the | 11:49:43 |
| 19 | statements on the Sambucol syrup bottle and package | 11:49:47 |
| 20 | that caused you to buy Sambucol? | 11:49:50 |
| 21 | MR. KASHIMA:  Same objections. | 11:49:53 |
| 22 | THE WITNESS:  Scientifically tested, | 11:49:55 |
| 23 | supports immunity, high antioxidant levels, that's | 11:49:57 |
| 24 | the reason I bought it. | 11:50:01 |
| 25 | /// | |

Exhibit A
00047

Transcript of Benjamin Binder
Conducted on February 20, 2024                    58

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 11:50:03 |
| 2 | Q.   And nothing else? | 11:50:03 |
| 3 | A.   Nothing else.  Except for my niece giving | 11:50:05 |
| 4 | me the recommendation that I should probably try it. | 11:50:09 |
| 5 | Q.   So other than your niece's recommendation | 11:50:12 |
| 6 | and the three statements, scientifically tested, | 11:50:14 |
| 7 | high antioxidant and supports immunity, there was no | 11:50:18 |
| 8 | other reason you bought Sambucol? | 11:50:24 |
| 9 | MR. KASHIMA:  Same objections. | 11:50:26 |
| 10 | BY MS. FERRARI: | 11:50:28 |
| 11 | Q.   That's correct? | 11:50:29 |
| 12 | A.   Well, the reason I bought it was because | 11:50:30 |
| 13 | no other products on that shelf stated those facts. | 11:50:32 |
| 14 | Q.   Had those three statements; correct? | 11:50:36 |
| 15 | A.   Exactly. | 11:50:37 |
| 16 | Q.   And your niece gave you a recommendation? | 11:50:38 |
| 17 | A.   Right. | 11:50:41 |
| 18 | MS. FERRARI:  Let's take a break. | 11:50:42 |
| 19 | THE VIDEO OPERATOR:  Please stand by. | 11:50:43 |
| 20 | We're going off the record and the time is 11:50. | 11:50:45 |
| 21 | (Recess taken.) | 12:07:49 |
| 22 | THE VIDEO OPERATOR:  We're going back on | 12:07:57 |
| 23 | the record.  The time is 12:07 P.M. | 12:07:58 |
| 24 | BY MS. FERRARI: | 12:08:01 |
| 25 | Q.   Mr. Binder, you understand you're still | 12:08:02 |

Exhibit A
00048

Transcript of Benjamin Binder
Conducted on February 20, 2024                    59

| | | |
|---|---|---|
| 1 | under oath; correct? | 12:08:04 |
| 2 | A.   Yes. | 12:08:05 |
| 3 | Q.   Did you meet with your counsel during the | 12:08:06 |
| 4 | break? | 12:08:07 |
| 5 | A.   Yes. | 12:08:08 |
| 6 | Q.   Can you give me Stacey's address? | 12:08:10 |
| 7 | A.   I can get it off my phone.  My phone isn't | 12:08:15 |
| 8 | turning on. | 12:08:40 |
| 9 | MR. KASHIMA:  You know, if -- | 12:08:40 |
| 10 | THE WITNESS:  Now it's turning on. | 12:08:42 |
| 11 | MR. KASHIMA:  I was like we can figure it | 12:08:44 |
| 12 | out later. | 12:08:45 |
| 13 | BY MS. FERRARI: | 12:08:46 |
| 14 | Q.   While it's turning on, do you know if -- | 12:08:47 |
| 15 | is Stacey still taking Sambucol? | 12:08:48 |
| 16 | A.   I don't know. | 12:08:52 |
| 17 | MR. KASHIMA:  Let's deal with the phone | 12:08:55 |
| 18 | later just so we can get through it and go ahead and | 12:08:56 |
| 19 | turn it off. | 12:09:00 |
| 20 | MS. FERRARI:  I have a question pending. | 12:09:01 |
| 21 | MR. KASHIMA:  Okay.  Sorry. | 12:09:03 |
| 22 | MS. FERRARI:  I want the address and her | 12:09:05 |
| 23 | phone number. | 12:09:06 |
| 24 | THE WITNESS:  Sure.  Hang on one second. | 12:09:07 |
| 25 | Her phone number is (818)439-3004. | 12:09:32 |

Exhibit A
00049

Transcript of Benjamin Binder
Conducted on February 20, 2024                    60

| | | |
|---|---|---|
| 1 | There's also a house number of (480)634-1118.  And | 12:09:39 |
| 2 | her address is long.  It's 9075 East Conquistadores, | 12:09:49 |
| 3 | C-o-n-q-u-i-s-t-a-d-o-r-e-s, Drive and that's | 12:09:55 |
| 4 | Scottsdale, Arizona.  Zip is 95255. | 12:10:07 |
| 5 | BY MS. FERRARI: | 12:10:18 |
| 6 | Q.   Thank you. | 12:10:19 |
| 7 | A.   Sure. | 12:10:20 |
| 8 | Q.   After you stopped purchasing Sambucol, did | 12:10:20 |
| 9 | you purchase any other elderberry products? | 12:10:25 |
| 10 | A.   No. | 12:10:29 |
| 11 | Q.   Did you continue to ingest any of the | 12:10:29 |
| 12 | Sambucol you still had? | 12:10:31 |
| 13 | A.   Well, I think I stopped because I still | 12:10:40 |
| 14 | have some in the refrigerator. | 12:10:42 |
| 15 | Q.   There's still some liquid in the bottles? | 12:10:46 |
| 16 | A.   Yeah, maybe a couple of inches. | 12:10:49 |
| 17 | Q.   Can you envision a circumstance when you | 12:10:53 |
| 18 | would -- is there a circumstance where would you | 12:10:55 |
| 19 | ever purchase Sambucol again? | 12:10:58 |
| 20 | A.   If the claims aren't substantiated, no. | 12:11:08 |
| 21 | Q.   What does it mean to be substantiated? | 12:11:15 |
| 22 | A.   If they're to be true maybe, but if | 12:11:18 |
| 23 | they're not then it's a waste of money. | 12:11:22 |
| 24 | Q.   Scientifically tested, we talked a little | 12:11:25 |
| 25 | bit about that this morning.  That's one of the | 12:11:28 |

Exhibit A
00050

Transcript of Benjamin Binder
Conducted on February 20, 2024                    61

| | | |
|---|---|---|
| 1 | reasons you purchased Sambucol, right, that | 12:11:31 |
| 2 | statement? | 12:11:33 |
| 3 | A.  Yes. | 12:11:34 |
| 4 | Q.  What did you understand that to mean? | 12:11:34 |
| 5 | A.  Scientifically tested, that it was tested | 12:11:38 |
| 6 | in a lab by scientist and to be true as found. | 12:11:40 |
| 7 | Q.  What did you believe was tested? | 12:11:47 |
| 8 | A.  That it had better properties than the | 12:11:51 |
| 9 | ones that don't state anything on their bottle or | 12:11:54 |
| 10 | packaging. | 12:11:57 |
| 11 | Q.  And how is that related to whether the | 12:11:57 |
| 12 | product is scientifically tested? | 12:12:00 |
| 13 | A.  That it would work better for me. | 12:12:02 |
| 14 | Q.  To do what? | 12:12:06 |
| 15 | A.  To help fight off flus and colds. | 12:12:08 |
| 16 | Q.  Would you agree that scientifically tested | 12:12:14 |
| 17 | by itself could refer to testing for impurities in | 12:12:15 |
| 18 | the product? | 12:12:21 |
| 19 | MR. KASHIMA:  Objection as to form.  Calls | 12:12:22 |
| 20 | for speculation.  Incomplete hypothetical. | 12:12:24 |
| 21 | THE WITNESS:  I didn't give that any | 12:12:26 |
| 22 | thought. | 12:12:28 |
| 23 | BY MS. FERRARI: | 12:12:28 |
| 24 | Q.  But it's possible; right?  Something could | 12:12:29 |
| 25 | be a product -- | 12:12:31 |

Exhibit A
00051

Transcript of Benjamin Binder
Conducted on February 20, 2024                    62

| | | |
|---|---|---|
| 1 | A.    Anything is possible. | 12:12:32 |
| 2 | MR. KASHIMA:  Same objections. | 12:12:35 |
| 3 | BY MS. FERRARI: | 12:12:35 |
| 4 | Q.   My question to you is products get tested | 12:12:36 |
| 5 | by scientists to make sure they're not toxic or | 12:12:39 |
| 6 | impure; right? | 12:12:45 |
| 7 | A.   Yes. | 12:12:47 |
| 8 | Q.   Would it be unreasonable for a consumer to | 12:12:47 |
| 9 | believe that scientifically tested in itself was | 12:12:51 |
| 10 | testing for impurities? | 12:12:55 |
| 11 | MR. KASHIMA:  Objection as to form.  Calls | 12:12:58 |
| 12 | for speculation. | 12:12:58 |
| 13 | THE WITNESS:  Can you rephrase it? | 12:12:59 |
| 14 | BY MS. FERRARI: | 12:13:00 |
| 15 | Q.   Would it be unreasonable for a consumer to | 12:13:02 |
| 16 | believe that the phrase "scientifically tested" by | 12:13:04 |
| 17 | itself referred to testing for impurities in the | 12:13:07 |
| 18 | product? | 12:13:11 |
| 19 | MR. KASHIMA:  Same objections. | 12:13:12 |
| 20 | THE WITNESS:  I don't know. | 12:13:15 |
| 21 | BY MS. FERRARI: | 12:13:15 |
| 22 | Q.   You don't know what other consumers would | 12:13:16 |
| 23 | believe scientifically tested to mean? | 12:13:19 |
| 24 | A.   No, I don't. | 12:13:23 |
| 25 | Q.   What evidence do you have that Sambucol | 12:13:27 |

Exhibit A
00052

Transcript of Benjamin Binder
Conducted on February 20, 2024                    63

| | | |
|---|---|---|
| 1 | does not support immunity? | 12:13:31 |
| 2 | MR. KASHIMA:  Objection to form.  Calls | 12:13:33 |
| 3 | for a legal conclusion. | 12:13:42 |
| 4 | THE WITNESS:  I don't know.  I don't have | 12:13:44 |
| 5 | the answer to that question. | 12:13:45 |
| 6 | BY MS. FERRARI: | 12:13:46 |
| 7 | Q.   What does high antioxidant levels mean to | 12:13:46 |
| 8 | you? | 12:13:51 |
| 9 | A.   That it's going to boost my immune system | 12:13:51 |
| 10 | and the wording "high" I would think super boosts my | 12:13:55 |
| 11 | immune system. | 12:14:03 |
| 12 | Q.   How high is high? | 12:14:04 |
| 13 | MR. KASHIMA:  Objection as to form. | 12:14:07 |
| 14 | THE WITNESS:  More than average. | 12:14:10 |
| 15 | BY MS. FERRARI: | 12:14:12 |
| 16 | Q.   Would you agree that the phrase "high | 12:14:12 |
| 17 | antioxidant levels" could mean different things to | 12:14:20 |
| 18 | different consumers? | 12:14:23 |
| 19 | A.   Yes. | 12:14:25 |
| 20 | Q.   Would it be unreasonable for a consumer to | 12:14:33 |
| 21 | have a different understanding of how high the | 12:14:35 |
| 22 | antioxidant levels would have had to be as compared | 12:14:38 |
| 23 | to what you consider high? | 12:14:41 |
| 24 | MR. KASHIMA:  Objection as to form.  Calls | 12:14:42 |
| 25 | for speculation. | 12:14:43 |

Exhibit A
00053

Transcript of Benjamin Binder
Conducted on February 20, 2024                    64

| | | |
|---|---|---|
| 1 | THE WITNESS:  I wouldn't know what goes | 12:14:45 |
| 2 | through other people's minds when they're reading | 12:14:48 |
| 3 | the packaging. | 12:14:51 |
| 4 | BY MS. FERRARI: | 12:14:52 |
| 5 | Q.   What evidence do you have that the | 12:14:52 |
| 6 | statement high antioxidant levels was false or | 12:14:54 |
| 7 | misleading? | 12:14:57 |
| 8 | MR. KASHIMA:  Objection as to form.  Calls | 12:14:58 |
| 9 | for a legal conclusion. | 12:14:59 |
| 10 | THE WITNESS:  Can you restate it? | 12:15:05 |
| 11 | BY MS. FERRARI: | 12:15:06 |
| 12 | Q.   Sure.  What evidence do you have that | 12:15:07 |
| 13 | there are not high antioxidant levels in Sambucol? | 12:15:10 |
| 14 | A.   I don't have any.  That would go along | 12:15:14 |
| 15 | with what I read on the packaging. | 12:15:31 |
| 16 | Q.   Other than what's on the packaging. | 12:15:34 |
| 17 | A.   No.  Sorry. | 12:15:37 |
| 18 | Q.   We talked earlier about you reading | 12:17:02 |
| 19 | documents in preparation for your deposition; right? | 12:17:06 |
| 20 | A.   Yes. | 12:17:09 |
| 21 | Q.   And the document that you said you | 12:17:10 |
| 22 | reviewed was the complaint; correct? | 12:17:14 |
| 23 | MR. KASHIMA:  Objection as to form. | 12:17:16 |
| 24 | Misstates testimony. | 12:17:19 |
| 25 | THE WITNESS:  Yes. | 12:17:20 |

Exhibit A
00054

Transcript of Benjamin Binder
Conducted on February 20, 2024                          65

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 12:17:20 |
| 2 | Q.    Did you review any other documents? | 12:17:20 |
| 3 | A.    No. | 12:17:22 |
| 4 | Q.    Did you review any documents during our | 12:17:22 |
| 5 | break today? | 12:17:30 |
| 6 | A.    Did -- | 12:17:33 |
| 7 | Q.    Did you review any documents during the | 12:17:34 |
| 8 | break we just had this morning between when we | 12:17:36 |
| 9 | started your deposition and now? | 12:17:39 |
| 10 | A.    No documents, no. | 12:17:41 |
| 11 | Q.    When did you review the complaint in | 12:17:45 |
| 12 | preparation for your deposition? | 12:17:48 |
| 13 | A.    When it was sent to me a few months ago. | 12:17:51 |
| 14 | I couldn't tell you the date. | 12:17:54 |
| 15 | Q.    Did you read the complaint before it was | 12:17:56 |
| 16 | filed? | 12:17:58 |
| 17 | A.    I don't think I had access to the | 12:18:02 |
| 18 | complaint before it was filed. | 12:18:04 |
| 19 | Q.    It was filed on July 18, 2023. | 12:18:06 |
| 20 | A.    I don't recall. | 12:18:10 |
| 21 | Q.    So you didn't make any changes to the | 12:18:16 |
| 22 | complaint before it was filed, did you? | 12:18:17 |
| 23 | MR. KASHIMA:  Objection as to form.  To | 12:18:20 |
| 24 | the extent this involves any communication between | 12:18:22 |
| 25 | counsel and yourself I'm going to advise you not to | 12:18:24 |

Exhibit A
00055

Transcript of Benjamin Binder
Conducted on February 20, 2024                                    66

| | | |
|---|---|---|
| 1 | answer. | 12:18:28 |
| 2 | BY MS. FERRARI: | 12:18:30 |
| 3 | Q.    I'm not asking for communications. | 12:18:31 |
| 4 | Did you make changes to the complaint | 12:18:33 |
| 5 | before it was filed? | 12:18:34 |
| 6 | A.    I don't believe so. | 12:18:39 |
| 7 | Q.    Did you read it thoroughly before it was | 12:18:40 |
| 8 | filed? | 12:18:43 |
| 9 | A.    I read it thoroughly. | 12:18:43 |
| 10 | Q.    But you don't remember whether you read it | 12:18:45 |
| 11 | before it was filed or after it was filed? | 12:18:47 |
| 12 | A.    I don't recall. | 12:18:49 |
| 13 | Q.    Let's take a look at Exhibit 1 again.  I | 12:19:04 |
| 14 | want to look at question number 7. | 12:19:22 |
| 15 | MR. KASHIMA:  It's interrogatory number 7. | 12:19:33 |
| 16 | THE WITNESS:  This one? | 12:19:35 |
| 17 | MR. KASHIMA:  No.  You're looking for | 12:19:36 |
| 18 | interrogatory number 7 and I believe that's on page | 12:19:38 |
| 19 | 7. | 12:19:40 |
| 20 | BY MS. FERRARI: | 12:19:42 |
| 21 | Q.    It's interrogatory number 7 -- | 12:19:42 |
| 22 | A.    On page 7. | 12:19:45 |
| 23 | Q.    -- on page 7 of Exhibit 1.  Are you there? | 12:19:46 |
| 24 | A.    I'm here. | 12:19:49 |
| 25 | Q.    So the interrogatory or question is | 12:19:50 |

Exhibit A
00056

Transcript of Benjamin Binder
Conducted on February 20, 2024                    67

| | | |
|---|---|---|
| 1 | identify any documents that support the allegations | 12:19:53 |
| 2 | in your complaint. | 12:19:57 |
| 3 | A.  Am I on the same page?  Hang on one | 12:20:00 |
| 4 | second.  On the top.  I'm sorry.  Yes. | 12:20:03 |
| 5 | Q.  And then there's a page and a half of | 12:20:06 |
| 6 | responses; correct?  Or a little over a page of | 12:20:08 |
| 7 | responses; correct? | 12:20:12 |
| 8 | MR. KASHIMA:  Objection as to form.  Calls | 12:20:14 |
| 9 | for a legal conclusion. | 12:20:15 |
| 10 | THE WITNESS:  I believe so. | 12:20:17 |
| 11 | BY MS. FERRARI: | 12:20:18 |
| 12 | Q.  There's text that goes on for several | 12:20:18 |
| 13 | lines; correct? | 12:20:22 |
| 14 | A.  Yes. | 12:20:24 |
| 15 | Q.  And then turn to page 8 of Exhibit 1, | 12:20:25 |
| 16 | please. | 12:20:28 |
| 17 | A.  Okay. | 12:20:29 |
| 18 | Q.  The lines on the upper left hand corner or | 12:20:30 |
| 19 | on the left side at lines 3 to 7 is an answer to | 12:20:33 |
| 20 | interrogatory 7; correct? | 12:20:39 |
| 21 | MR. KASHIMA:  Objection as to form.  The | 12:20:49 |
| 22 | document speaks for itself. | 12:20:53 |
| 23 | THE WITNESS:  Yes. | 12:20:54 |
| 24 | BY MS. FERRARI: | 12:20:54 |
| 25 | Q.  And the answer says, "Plaintiff identifies | 12:20:54 |

Exhibit A
00057

Transcript of Benjamin Binder
Conducted on February 20, 2024                    68

| | | |
|---|---|---|
| 1 | all documents referenced in plaintiff's class action | 12:20:56 |
| 2 | complaint including product labels the receipts | 12:21:00 |
| 3 | produced concurrently herewith and documents that | 12:21:04 |
| 4 | may be produced in response to plaintiff's discovery | 12:21:07 |
| 5 | requests as well as documents produced in the | 12:21:10 |
| 6 | Corbett versus Pharmacare US, Inc. matter." | 12:21:14 |
| 7 | What documents are you referencing when | 12:21:20 |
| 8 | you mention the documents produced in the Corbett | 12:21:22 |
| 9 | versus Pharmacare US, Inc. matter? | 12:21:26 |
| 10 | MR. KASHIMA:  Objection as to form. | 12:21:30 |
| 11 | Assumes facts not in the record. | 12:21:35 |
| 12 | THE WITNESS:  Yeah, it says identify all | 12:21:59 |
| 13 | documents referenced in the plaintiff's class action | 12:22:01 |
| 14 | complaint. | 12:22:04 |
| 15 | BY MS. FERRARI: | 12:22:05 |
| 16 | Q.   But it also identifies documents produced | 12:22:05 |
| 17 | in the Corbett versus Pharmacare matter.  Have you | 12:22:09 |
| 18 | seen such documents? | 12:22:13 |
| 19 | A.   I don't remember. | 12:22:15 |
| 20 | Q.   Do you know what the Corbett case is | 12:22:17 |
| 21 | about? | 12:22:19 |
| 22 | A.   I don't remember. | 12:22:19 |
| 23 | Q.   Do you know if you ever knew what the | 12:22:23 |
| 24 | Corbett case was about? | 12:22:25 |
| 25 | A.   I don't remember. | 12:22:26 |

Exhibit A
00058

Transcript of Benjamin Binder
Conducted on February 20, 2024                    69

| | | |
|---|---|---|
| 1 | Q.   My question is a little bit different.  I | 12:22:27 |
| 2 | don't remember could mean you might have known but | 12:22:29 |
| 3 | you don't remember now versus did you ever know. | 12:22:31 |
| 4 | A.   I could have. | 12:22:36 |
| 5 | Q.   Could have.  Okay.  But as you sit here | 12:22:37 |
| 6 | today you don't know what the Corbett case is about? | 12:22:39 |
| 7 | A.   No.  It's been a while. | 12:22:43 |
| 8 | Q.   Do you know who NIS labs is? | 12:22:51 |
| 9 | A.   No.  I've heard the name but I don't know | 12:22:53 |
| 10 | who they are. | 12:22:59 |
| 11 | Q.   Did you ever ask an NIS labs to do testing | 12:23:00 |
| 12 | for you? | 12:23:05 |
| 13 | A.   No. | 12:23:05 |
| 14 | MR. KASHIMA:  Objection as to form. | 12:23:06 |
| 15 | BY MS. FERRARI: | 12:23:07 |
| 16 | Q.   Did you ever see a report by NIS labs? | 12:23:08 |
| 17 | A.   I don't believe I did. | 12:23:18 |
| 18 | Q.   Let's look at interrogatory number 8 that | 12:23:29 |
| 19 | is on page 8 of Exhibit 1.  That asks you to | 12:23:33 |
| 20 | identify all persons with whom you've had | 12:23:48 |
| 21 | communication related to the lawsuit; correct? | 12:23:50 |
| 22 | A.   Yes. | 12:23:52 |
| 23 | Q.   And if I turn to page 9, at the bottom of | 12:23:53 |
| 24 | page 9 on lines 24 to 27 it says, "Plaintiff has | 12:24:04 |
| 25 | communicated with his attorney and law firm staff | 12:24:11 |

Exhibit A
00059

Transcript of Benjamin Binder
Conducted on February 20, 2024                    70

| | | |
|---|---|---|
| 1 | and agents;" right? | 12:24:14 |
| 2 | A. Yes. | 12:24:16 |
| 3 | MR. KASHIMA: Objection. The document | 12:24:18 |
| 4 | speaks for itself. | 12:24:18 |
| 5 | BY MS. FERRARI: | 12:24:19 |
| 6 | Q. Then it says, "Additionally, plaintiff | 12:24:19 |
| 7 | received an e-mail newsletter and viewed a website | 12:24:23 |
| 8 | regarding the claims in this case." | 12:24:24 |
| 9 | Is that the ClassAction.org newsletter and | 12:24:27 |
| 10 | website? | 12:24:31 |
| 11 | A. Yes. | 12:24:31 |
| 12 | Q. And then your answer directs defendant to | 12:24:32 |
| 13 | the response to interrogatory number 9; correct? | 12:24:35 |
| 14 | MR. KASHIMA: Objection. The document | 12:24:40 |
| 15 | speaks for itself. | 12:24:40 |
| 16 | BY MS. FERRARI: | 12:24:41 |
| 17 | Q. For more information. | 12:24:41 |
| 18 | A. Yes. | 12:24:42 |
| 19 | Q. And so then if you turn the page to page | 12:24:43 |
| 20 | 10 of Exhibit 1 there is a request for a description | 12:24:46 |
| 21 | of communications between you and ClassAction.org; | 12:24:54 |
| 22 | right? | 12:24:59 |
| 23 | MR. KASHIMA: Objection. The document | 12:25:00 |
| 24 | speaks for itself. | 12:25:01 |
| 25 | THE WITNESS: Yes. | 12:25:02 |

Exhibit A
00060

Transcript of Benjamin Binder
Conducted on February 20, 2024                              71

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 12:25:05 |
| 2 | Q.    And if you turn to page 11 of Exhibit 1 -- | 12:25:06 |
| 3 | A.    Page -- | 12:25:11 |
| 4 | Q.    Page 11 of Exhibit 1 lines 15 to 19.  Are | 12:25:12 |
| 5 | you there? | 12:25:17 |
| 6 | A.    Yes. | 12:25:17 |
| 7 | Q.    So it says, "Subject to and without | 12:25:19 |
| 8 | waiving these objections on or about June 29, 2023 | 12:25:22 |
| 9 | plaintiff viewed a website --" and then there's a | 12:25:27 |
| 10 | website -- "on ClassAction.org regarding this case | 12:25:31 |
| 11 | and provided his contained information on the form | 12:25:38 |
| 12 | provided." | 12:25:41 |
| 13 | So was June 29, 2023 the first time you | 12:25:43 |
| 14 | saw anything about Sambucol on the ClassAction.org | 12:25:49 |
| 15 | website? | 12:25:55 |
| 16 | A.    It could have been like it says on or | 12:25:55 |
| 17 | before. | 12:25:58 |
| 18 | Q.    So it could have before, you just don't | 12:25:59 |
| 19 | know the date? | 12:26:02 |
| 20 | A.    No, I don't know the date. | 12:26:03 |
| 21 | Q.    It says you provided information on a form | 12:26:04 |
| 22 | to ClassAction.org; right? | 12:26:07 |
| 23 | A.    I don't remember. | 12:26:10 |
| 24 | Q.    If you did fill out a form do you know | 12:26:14 |
| 25 | what information you provided? | 12:26:16 |

Exhibit A
00061

Transcript of Benjamin Binder
Conducted on February 20, 2024                        72

| | | |
|---|---|---|
| 1 | MR. KASHIMA:  Objection.  Calls for | 12:26:19 |
| 2 | speculation. | 12:26:19 |
| 3 | THE WITNESS:  I do not. | 12:26:20 |
| 4 | BY MS. FERRARI: | 12:26:21 |
| 5 | Q.   What e-mail newsletter did you receive | 12:26:21 |
| 6 | from newsletter@ClassAction.org? | 12:26:28 |
| 7 | A.   My e-mail? | 12:26:34 |
| 8 | Q.   Well, the answer says that you also | 12:26:36 |
| 9 | received an e-mail newsletter regarding several | 12:26:38 |
| 10 | cases including the involving Sambucol from | 12:26:41 |
| 11 | newsletter@ClassAction.org. | 12:26:47 |
| 12 | A.   Yeah.  Whenever they send those out I read | 12:26:49 |
| 13 | through them. | 12:26:52 |
| 14 | Q.   Did you keep it? | 12:26:53 |
| 15 | A.   No. | 12:26:54 |
| 16 | Q.   Did you produce a copy of the newsletter | 12:26:58 |
| 17 | you received from ClassAction.org? | 12:27:02 |
| 18 | MR. KASHIMA:  Objection.  Calls for | 12:27:04 |
| 19 | speculation. | 12:27:05 |
| 20 | THE WITNESS:  Can you restate? | 12:27:12 |
| 21 | BY MS. FERRARI: | 12:27:14 |
| 22 | Q.   Did you give a copy of the newsletter that | 12:27:14 |
| 23 | you received from ClassAction.org to your attorney? | 12:27:19 |
| 24 | A.   I didn't personally. | 12:27:27 |
| 25 | Q.   Have you ever seen Exhibit 3 before? | 12:27:30 |

Exhibit A
00062

Transcript of Benjamin Binder
Conducted on February 20, 2024                          73

| | | |
|---|---|---|
| 1 | (Exhibit 3 was marked for identification | 12:27:32 |
| 2 | by the Reporter.) | 12:27:32 |
| 3 | THE WITNESS:  The bottom here?  I don't | 12:27:42 |
| 4 | remember. | 12:27:49 |
| 5 | BY MS. FERRARI: | 12:27:51 |
| 6 | Q.   So Exhibit 3 aren't documents from you to | 12:27:51 |
| 7 | your lawyer; right? | 12:27:55 |
| 8 | MR. KASHIMA:  Objection as to form. | 12:28:01 |
| 9 | THE WITNESS:  No. | 12:28:08 |
| 10 | BY MS. FERRARI: | 12:28:11 |
| 11 | Q.   Let's look at the third page of Exhibit 3. | 12:28:12 |
| 12 | Do you see in the upper right hand corner where it | 12:28:25 |
| 13 | says get in touch? | 12:28:27 |
| 14 | A.   Yes. | 12:28:28 |
| 15 | Q.   Is that something that you filled out on | 12:28:29 |
| 16 | ClassAction.org?  Did you ever fill out a get in | 12:28:32 |
| 17 | touch section? | 12:28:35 |
| 18 | A.   I may have. | 12:28:36 |
| 19 | Q.   Did you do that for a Sambucol product? | 12:28:38 |
| 20 | A.   I did that for an Audi product and for | 12:28:40 |
| 21 | Sambucol. | 12:28:44 |
| 22 | Q.   Do you know when you filled out a get in | 12:28:44 |
| 23 | touch section like that? | 12:28:47 |
| 24 | A.   No. | 12:28:49 |
| 25 | Q.   Could it have been in 2022? | 12:28:52 |

Exhibit A
00063

Transcript of Benjamin Binder
Conducted on February 20, 2024                    74

| | | |
|---|---|---|
| 1 | A.    It could have been but I'm not sure. | 12:28:54 |
| 2 | Q.    When you reviewed the ClassAction.org | 12:29:14 |
| 3 | website, did you know the attorneys at Milberg? | 12:29:18 |
| 4 | A.    No. | 12:29:26 |
| 5 | Q.    When you received the newsletter did you | 12:29:27 |
| 6 | know the attorneys at Milberg? | 12:29:32 |
| 7 | A.    No. | 12:29:33 |
| 8 | Q.    When you filled out the get in touch form | 12:29:33 |
| 9 | did you know the attorneys at Milberg? | 12:29:36 |
| 10 | A.    No. | 12:29:39 |
| 11 | Q.    When did you first learn about the | 12:29:39 |
| 12 | attorneys from Milberg? | 12:29:41 |
| 13 | A.    I think when they reached out to me. | 12:29:42 |
| 14 | Q.    Was that after you filled out the get in | 12:29:44 |
| 15 | touch form? | 12:29:47 |
| 16 | A.    It must have been. | 12:29:48 |
| 17 | Q.    Did you have any other communications with | 12:29:50 |
| 18 | anybody at ClassAction.org other than receiving the | 12:29:52 |
| 19 | newsletter and filling out the get in touch form? | 12:29:56 |
| 20 | A.    I don't recall. | 12:30:01 |
| 21 | Q.    You don't have any e-mails from | 12:30:03 |
| 22 | ClassAction.org? | 12:30:05 |
| 23 | MR. KASHIMA:  Objection as to form. | 12:30:08 |
| 24 | THE WITNESS:  Only their newsletter. | 12:30:08 |
| 25 | /// | |

Exhibit A
00064

Transcript of Benjamin Binder
Conducted on February 20, 2024                    75

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 12:30:10 |
| 2 | Q.    How many newsletters did you get from | 12:30:10 |
| 3 | them? | 12:30:13 |
| 4 | A.    I get them it's either monthly or every | 12:30:14 |
| 5 | two weeks. | 12:30:18 |
| 6 | Q.    How long have you been getting them | 12:30:26 |
| 7 | monthly or every two weeks? | 12:30:35 |
| 8 | A.    Ever since the Audi water pump issue came | 12:30:36 |
| 9 | up but I can't tell you the year. | 12:30:41 |
| 10 | Q.    How do you receive those newsletters?  Is | 12:30:44 |
| 11 | it by e-mail? | 12:30:47 |
| 12 | A.    E-mail. | 12:30:48 |
| 13 | Q.    What's your e-mail address? | 12:30:49 |
| 14 | A.    Ben.dfl.limo@gmail.com. | 12:30:50 |
| 15 | Q.    Do you get any other e-mails from | 12:30:58 |
| 16 | ClassAction.org? | 12:31:00 |
| 17 | A.    Like I said, I get them -- they can range | 12:31:01 |
| 18 | from a whole bunch of different products. | 12:31:06 |
| 19 | Q.    Did you want to sue -- well, who are you | 12:31:12 |
| 20 | suing? | 12:31:14 |
| 21 | A.    Who am I suing? | 12:31:16 |
| 22 | Q.    Uh-huh.  Yes. | 12:31:17 |
| 23 | A.    Who am I suing? | 12:31:21 |
| 24 | Q.    Correct. | 12:31:23 |
| 25 | A.    I'm not suing anybody.  I'm representing a | 12:31:23 |

Exhibit A
00065

Transcript of Benjamin Binder
Conducted on February 20, 2024                    76

| | | |
|---|---|---|
| 1 | class action lawsuit. | 12:31:26 |
| 2 | Q.   And in that lawsuit it's against an | 12:31:29 |
| 3 | entity.  What's the entity you're suing? | 12:31:32 |
| 4 | A.   The company Sambucol and Pharmacare. | 12:31:37 |
| 5 | Q.   Did you want to sue Pharmacare before you | 12:31:42 |
| 6 | visited ClassAction.org newsletter -- or the website | 12:31:44 |
| 7 | or the newsletter? | 12:31:48 |
| 8 | MR. KASHIMA:  Objection as to form. | 12:31:50 |
| 9 | THE WITNESS:  It wasn't on my radar, no. | 12:31:54 |
| 10 | BY MS. FERRARI: | 12:31:56 |
| 11 | Q.   Did you want to sue Pharmacare before you | 12:31:57 |
| 12 | first communicated with your lawyers at Milberg? | 12:31:59 |
| 13 | A.   Wasn't on my radar, no. | 12:32:02 |
| 14 | Q.   Did you sign a written contract with your | 12:32:04 |
| 15 | lawyers at Milberg? | 12:32:07 |
| 16 | A.   I don't remember. | 12:32:10 |
| 17 | Q.   Do you have a verbal contract with them? | 12:32:13 |
| 18 | MR. KASHIMA:  Objection as to form. | 12:32:16 |
| 19 | THE WITNESS:  If e-mails are a verbal | 12:32:18 |
| 20 | contract, then possibly. | 12:32:21 |
| 21 | BY MS. FERRARI: | 12:32:22 |
| 22 | Q.   Do you know what the terms of your | 12:32:23 |
| 23 | contract is with Milberg? | 12:32:24 |
| 24 | MR. KASHIMA:  Objection as to form and | 12:32:27 |
| 25 | also protected by the attorney-client privilege. | 12:32:28 |

Exhibit A
00066

Transcript of Benjamin Binder
Conducted on February 20, 2024                    77

| | | |
|---|---|---|
| 1 | MS. FERRARI:  I just asked him if he knows | 12:32:31 |
| 2 | what the terms are. | 12:32:32 |
| 3 | MR. KASHIMA:  So I'm going to -- to the | 12:32:34 |
| 4 | extent that your answer requires you to divulge the | 12:32:36 |
| 5 | terms of that contract, I'm going to instruct you | 12:32:39 |
| 6 | not to answer. | 12:32:41 |
| 7 | THE WITNESS:  No. | 12:32:42 |
| 8 | BY MS. FERRARI: | 12:32:44 |
| 9 | Q.   Who are your lawyers at Milberg? | 12:32:44 |
| 10 | A.   The gentleman sitting next to me. | 12:32:55 |
| 11 | Q.   Anybody else? | 12:32:57 |
| 12 | A.   Not -- is it Russell?  I don't remember | 12:33:00 |
| 13 | names.  I talk mainly to a paralegal. | 12:33:06 |
| 14 | Q.   That's Tiffany you think? | 12:33:13 |
| 15 | A.   Tiffany. | 12:33:15 |
| 16 | Q.   And Russell, do you mean Russell Bush? | 12:33:15 |
| 17 | A.   If that's his last name. | 12:33:20 |
| 18 | Q.   Have you met anybody else at Milberg other | 12:33:22 |
| 19 | than Russell, Mr. Bush and Tiffany? | 12:33:27 |
| 20 | A.   Only Trent. | 12:33:31 |
| 21 | Q.   Trent is Mr. Kashima? | 12:33:33 |
| 22 | A.   Yes.  Sorry. | 12:33:35 |
| 23 | Q.   So other than Trent Russell and Tiffany | 12:33:36 |
| 24 | have you met anyone else at Milberg? | 12:33:40 |
| 25 | A.   I've never met Tiffany or Russell. | 12:33:43 |

Exhibit A
00067

Transcript of Benjamin Binder
Conducted on February 20, 2024                    78

| | |
|---|---|
| 1 | Q.   Have you ever communicated with anybody | 12:33:47 |
| 2 | other than Tiffany, Russell or Trent at Milberg? | 12:33:49 |
| 3 | A.   Just Tiffany and Trent. | 12:33:53 |
| 4 | Q.   How do you know Russell?  Did you receive | 12:33:54 |
| 5 | an e-mail from him? | 12:33:57 |
| 6 | A.   I don't.  I saw him copied on an e-mail. | 12:33:59 |
| 7 | Q.   Fair enough.  Are you guaranteed any | 12:34:02 |
| 8 | payment from this lawsuit? | 12:34:04 |
| 9 | A.   No. | 12:34:05 |
| 10 | Q.   What are you going to get out of the | 12:34:05 |
| 11 | lawsuit if you prevail? | 12:34:10 |
| 12 | MR. KASHIMA:  Objection as to form. | 12:34:12 |
| 13 | THE WITNESS:  I don't know. | 12:34:14 |
| 14 | BY MS. FERRARI: | 12:34:15 |
| 15 | Q.   Prior to this lawsuit did you have any | 12:34:15 |
| 16 | relationship with the Milberg law firm? | 12:34:18 |
| 17 | A.   No. | 12:34:22 |
| 18 | Q.   Who do you believe is responsible for | 12:34:28 |
| 19 | overseeing the progress of your case, you or your | 12:34:29 |
| 20 | attorneys? | 12:34:34 |
| 21 | MR. KASHIMA:  Objection as to form. | 12:34:34 |
| 22 | Compound. | 12:34:35 |
| 23 | THE WITNESS:  Can you state it again? | 12:34:38 |
| 24 | BY MS. FERRARI: | 12:34:40 |
| 25 | Q.   Yeah.  Is it you or your attorneys who | 12:34:41 |

Exhibit A
00068

Transcript of Benjamin Binder
Conducted on February 20, 2024                    79

| | | |
|---|---|---|
| 1 | should be responsible for overseeing the progress of | 12:34:44 |
| 2 | the case? | 12:34:47 |
| 3 | MR. KASHIMA:  Same objections. | 12:34:48 |
| 4 | THE WITNESS:  Well, that's what attorneys | 12:34:50 |
| 5 | are for is to oversee the progress of the case. | 12:34:51 |
| 6 | BY MS. FERRARI: | 12:34:55 |
| 7 | Q.   What about you?  Do you have | 12:34:55 |
| 8 | responsibility for that? | 12:34:57 |
| 9 | A.   I don't know. | 12:35:04 |
| 10 | Q.   How often do you think your counsel should | 12:35:05 |
| 11 | update you on the progress the case? | 12:35:08 |
| 12 | MR. KASHIMA:  Objection as to form. | 12:35:12 |
| 13 | THE WITNESS:  Since I don't deal with | 12:35:13 |
| 14 | attorneys on a day-to-day basis, I don't know what | 12:35:15 |
| 15 | the turnaround would be. | 12:35:17 |
| 16 | BY MS. FERRARI: | 12:35:18 |
| 17 | Q.   What types of information do you think | 12:35:19 |
| 18 | your counsel should provide you about the progress | 12:35:20 |
| 19 | of the case? | 12:35:24 |
| 20 | MR. KASHIMA:  Objection as to form. | 12:35:25 |
| 21 | THE WITNESS:  I'm not educated on what | 12:35:25 |
| 22 | they should be passing along to the client so I | 12:35:28 |
| 23 | don't know. | 12:35:30 |
| 24 | BY MS. FERRARI: | 12:35:30 |
| 25 | Q.   Did you talk to any other lawyers before | 12:35:31 |

Exhibit A
00069

Transcript of Benjamin Binder
Conducted on February 20, 2024                          80

| | | |
|---|---|---|
| 1 | hiring the Milberg law firm? | 12:35:33 |
| 2 | A.    No. | 12:35:35 |
| 3 | Q.    How did you get their name? | 12:35:36 |
| 4 | A.    I believe that's when they reached out to | 12:35:40 |
| 5 | me. | 12:35:42 |
| 6 | Q.    So you responded to the get in touch | 12:35:43 |
| 7 | inquiry on ClassAction.org; right? | 12:35:49 |
| 8 | A.    Yes. | 12:35:52 |
| 9 | Q.    Regarding the Sambucol product; right? | 12:35:53 |
| 10 | A.    Yes. | 12:35:55 |
| 11 | Q.    And then sometime after that Milberg | 12:35:55 |
| 12 | reached out to you. | 12:35:58 |
| 13 | A.    Yes. | 12:35:59 |
| 14 | Q.    Was that by phone or by e-mail? | 12:36:00 |
| 15 | A.    It may have been both. | 12:36:01 |
| 16 | Q.    How soon after that telephone | 12:36:05 |
| 17 | conversations and/or e-mail did you decide to | 12:36:05 |
| 18 | retain -- have Milberg be your lawyers? | 12:36:10 |
| 19 | MR. KASHIMA:  Objection as to form. | 12:36:14 |
| 20 | THE WITNESS:  I don't know the timeframe. | 12:36:14 |
| 21 | BY MS. FERRARI: | 12:36:16 |
| 22 | Q.    Was it days or was it the same moment? | 12:36:16 |
| 23 | Was it weeks? | 12:36:20 |
| 24 | A.    I don't think it was the same moment.  It | 12:36:21 |
| 25 | could have been weeks if not months. | 12:36:23 |

Exhibit A
00070

Transcript of Benjamin Binder
Conducted on February 20, 2024                    81

| | | |
|---|---|---|
| 1 | Q.   How many communications did you have with | 12:36:28 |
| 2 | Milberg either telephone, e-mail or otherwise before | 12:36:30 |
| 3 | you hired them as your lawyers? | 12:36:34 |
| 4 | A.   I had one or two phone conversations with | 12:36:36 |
| 5 | Tiffany, one with Trent but that was just coming to | 12:36:41 |
| 6 | this meeting.  E-mails, I think maybe 8 to possibly | 12:36:47 |
| 7 | 11. | 12:36:51 |
| 8 | Q.   These are the entire time they've | 12:36:53 |
| 9 | represented you? | 12:36:56 |
| 10 | A.   Yes. | 12:36:56 |
| 11 | Q.   My question is how many e-mails and phone | 12:36:57 |
| 12 | calls did you have with anyone at Milberg before you | 12:37:03 |
| 13 | hired them to be your lawyers. | 12:37:06 |
| 14 | A.   Zero, none. | 12:37:08 |
| 15 | Q.   How did you know you wanted them to be | 12:37:09 |
| 16 | your lawyers? | 12:37:13 |
| 17 | A.   They contacted me and they were the ones | 12:37:14 |
| 18 | in charge of the class action. | 12:37:15 |
| 19 | Q.   Did you retain them as your lawyers that | 12:37:17 |
| 20 | day? | 12:37:19 |
| 21 | MR. KASHIMA:  Objection as to form. | 12:37:20 |
| 22 | THE WITNESS:  I don't know if it was that | 12:37:21 |
| 23 | day. | 12:37:22 |
| 24 | BY MS. FERRARI: | 12:37:24 |
| 25 | Q.   They called you or they e-mailed you? | 12:37:26 |

Exhibit A
00071

Transcript of Benjamin Binder
Conducted on February 20, 2024                                    82

| | | |
|---|---|---|
| 1 | A.    That's what -- I'm not sure if they | 12:37:29 |
| 2 | e-mailed me first or called me first. | 12:37:31 |
| 3 | Q.    Do you still have that e-mail? | 12:37:34 |
| 4 | A.    I may. | 12:37:35 |
| 5 | Q.    Hold on to it. | 12:37:37 |
| 6 | A.    Okay. | 12:37:38 |
| 7 | Q.    What's your typical length of telephone | 12:37:41 |
| 8 | conversation with anyone from Milberg regarding this | 12:37:45 |
| 9 | case? | 12:37:50 |
| 10 | A.    They've been pretty short because it's | 12:37:50 |
| 11 | been pretty much about scheduling and my | 12:37:53 |
| 12 | availability. | 12:37:56 |
| 13 | MR. KASHIMA:  And I'm going to remind you, | 12:37:58 |
| 14 | as far as communications with counsel, don't | 12:37:59 |
| 15 | disclose the contents of the communication.  You can | 12:38:01 |
| 16 | tell them who was involved in the communication and | 12:38:04 |
| 17 | general topics but just not the contents of the | 12:38:09 |
| 18 | communication. | 12:38:11 |
| 19 | BY MS. FERRARI: | 12:38:11 |
| 20 | Q.    Did you talk to any other lawyers before | 12:38:11 |
| 21 | hiring Milberg to sue Pharmacare? | 12:38:14 |
| 22 | MR. KASHIMA:  Objection.  Asked and | 12:38:18 |
| 23 | answered. | 12:38:19 |
| 24 | THE WITNESS:  No. | 12:38:19 |
| 25 | /// | |

Exhibit A
00072

Transcript of Benjamin Binder
Conducted on February 20, 2024                    83

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 12:38:20 |
| 2 | Q.    I'm sorry.  Did you do any research on | 12:38:20 |
| 3 | Milberg before you decided they should be your | 12:38:24 |
| 4 | lawyers? | 12:38:28 |
| 5 | A.    No. | 12:38:29 |
| 6 | Q.    What's the longest phone conversation | 12:38:30 |
| 7 | you've had with your lawyers in this case? | 12:38:33 |
| 8 | A.    Under ten minutes. | 12:38:36 |
| 9 | Q.    How do you learn about what's going on in | 12:38:38 |
| 10 | the case? | 12:38:41 |
| 11 | A.    To be honest, I didn't think the case was | 12:38:45 |
| 12 | going anywhere for quite a while because I -- I | 12:38:48 |
| 13 | don't remember the actual date that this started, | 12:38:53 |
| 14 | but then there was a long period of time with no | 12:38:56 |
| 15 | communication at all. | 12:39:00 |
| 16 | The question again? | 12:39:05 |
| 17 | Q.    When you say there was a long period of | 12:39:08 |
| 18 | time with no communication -- | 12:39:10 |
| 19 | A.    Could have been months. | 12:39:11 |
| 20 | Q.    That was my question.  Months or years? | 12:39:12 |
| 21 | A.    Months, not years. | 12:39:14 |
| 22 | Q.    I think my question to you was how do you | 12:39:17 |
| 23 | learn about the activity in the case? | 12:39:24 |
| 24 | A.    This is the first sitdown meeting I've had | 12:39:25 |
| 25 | with anybody regarding this case so I've kind of | 12:39:30 |

Exhibit A
00073

Transcript of Benjamin Binder
Conducted on February 20, 2024                              84

| | | |
|---|---|---|
| 1 | <u>been in the dark</u>. | 12:39:34 |
| 2 | Q.    What's your goal in the litigation? | 12:39:35 |
| 3 | A.    To hold people to accountability.  If I | 12:39:37 |
| 4 | make a mistake at my job, a driver misses a pickup, | 12:39:42 |
| 5 | I immediately pick up the phone and I make it right | 12:39:47 |
| 6 | with the client and I go above and beyond what the | 12:39:50 |
| 7 | client has been put out. | 12:39:54 |
| 8 | Q.    Are you seeking to get money for yourself | 12:39:57 |
| 9 | in this litigation? | 12:40:00 |
| 10 | A.    I'm seeking to make this company -- hold | 12:40:01 |
| 11 | them to some accountability. | 12:40:04 |
| 12 | Q.    What about money?  Do you want money? | 12:40:07 |
| 13 | A.    If it's a class action lawsuit, I'm here | 12:40:12 |
| 14 | for the class, and if everybody receives money I | 12:40:16 |
| 15 | would expect to receive money also. | 12:40:19 |
| 16 | Q.    How much money do you want? | 12:40:21 |
| 17 | A.    I haven't given that any thought because I | 12:40:23 |
| 18 | don't know what these lawsuits pay out. | 12:40:27 |
| 19 | Q.    What if you could go to the SambucolUS.org | 12:40:29 |
| 20 | website and receive all of your money back for your | 12:40:35 |
| 21 | purchases, would you do that? | 12:40:40 |
| 22 | MR. KASHIMA:  Objection as to form. | 12:40:42 |
| 23 | Assumes facts not in evidence. | 12:40:46 |
| 24 | THE WITNESS:  I would say no because if | 12:40:46 |
| 25 | they lied on their packaging I want to hold -- | 12:40:48 |

Exhibit A
00074

Transcript of Benjamin Binder
Conducted on February 20, 2024                              85

| | | |
|---|---|---|
| 1 | listen.  I'm a limousine company.  I'm not the face | 12:40:53 |
| 2 | of my company, the drivers are.  And if scientists | 12:40:58 |
| 3 | are not saying things that are right, then they | 12:41:03 |
| 4 | should be held to accountability along with the | 12:41:06 |
| 5 | company.  If my driver makes a mistake I'm the guy | 12:41:08 |
| 6 | that fixes it.  I'm the guy that goes and makes it | 12:41:12 |
| 7 | overly right. | 12:41:15 |
| 8 | BY MS. FERRARI: | 12:41:16 |
| 9 | Q.   Are you a member of the following class: | 12:41:16 |
| 10 | A class that during the fullest period allowed by | 12:41:21 |
| 11 | law all persons in the United States who purchased | 12:41:25 |
| 12 | Sambucol for personal use and not for resale. | 12:41:29 |
| 13 | MR. KASHIMA:  Objection as to form.  Calls | 12:41:33 |
| 14 | for a legal conclusion. | 12:41:33 |
| 15 | THE WITNESS:  Yes. | 12:41:37 |
| 16 | BY MS. FERRARI: | 12:41:39 |
| 17 | Q.   Do you know who Linda Sunderland is? | 12:41:39 |
| 18 | A.   No. | 12:41:42 |
| 19 | Q.   Do you know who Montequeno Corbett is? | 12:41:44 |
| 20 | A.   No. | 12:41:48 |
| 21 | Q.   Do you know Robb Dobbs? | 12:41:48 |
| 22 | A.   No.  Linda Sunderland, I have seen her | 12:41:51 |
| 23 | name on a class action documents or on the documents | 12:41:55 |
| 24 | for the filing. | 12:42:02 |
| 25 | Q.   She's the other named plaintiff in your | 12:42:04 |

Exhibit A
00075

Transcript of Benjamin Binder
Conducted on February 20, 2024                        86

| | | |
|---|---|---|
| 1 | lawsuit. | 12:42:06 |
| 2 | A.    I believe she's in New York. | 12:42:06 |
| 3 | Q.    You've never met her? | 12:42:08 |
| 4 | A.    I've never met her. | 12:42:10 |
| 5 | Q.    You've never e-mailed with her? | 12:42:11 |
| 6 | A.    I don't know the woman. | 12:42:13 |
| 7 | Q.    Do you know who James Simmons, Jr. is? | 12:42:15 |
| 8 | A.    I do not. | 12:42:18 |
| 9 | Q.    Do you know who Alison Goddard is? | 12:42:18 |
| 10 | A.    No. | 12:42:21 |
| 11 | Q.    Have you seen the scheduling order in this | 12:42:22 |
| 12 | case? | 12:42:23 |
| 13 | A.    What does that mean? | 12:42:24 |
| 14 | Q.    It's an order from the court about the | 12:42:26 |
| 15 | dates in this case.  Have you ever seen anything | 12:42:27 |
| 16 | like that? | 12:42:31 |
| 17 | A.    I may have. | 12:42:32 |
| 18 | Q.    Do you know when the date for the class | 12:42:32 |
| 19 | certification mission is? | 12:42:34 |
| 20 | A.    I don't remember if I've seen that. | 12:42:36 |
| 21 | Q.    When is the trial date in this case? | 12:42:39 |
| 22 | A.    I don't know. | 12:42:41 |
| 23 | Q.    Do you plan on attending trial? | 12:42:42 |
| 24 | A.    If I don't have to be there, my time is | 12:42:45 |
| 25 | more valuable than sitting through a trial. | 12:42:48 |

Exhibit A
00076

Transcript of Benjamin Binder
Conducted on February 20, 2024                    87

| | | |
|---|---|---|
| 1 | Q.   Do you understand that you'll be | 12:42:51 |
| 2 | personally responsible to pay my firm's costs if you | 12:42:52 |
| 3 | lose this lawsuit? | 12:42:57 |
| 4 | MR. KASHIMA:   Objection as to form.   Calls | 12:42:59 |
| 5 | for a legal conclusion. | 12:42:59 |
| 6 | BY MS. FERRARI: | 12:43:03 |
| 7 | Q.   Do you understand that? | 12:43:04 |
| 8 | A.   Yes. | 12:43:05 |
| 9 | Q.   Do you represent anyone other than | 12:43:07 |
| 10 | yourself in this lawsuit? | 12:43:08 |
| 11 | A.   Whoever is involved in the class action | 12:43:12 |
| 12 | lawsuit. | 12:43:14 |
| 13 | Q.   Who is that? | 12:43:15 |
| 14 | A.   I don't know who the individuals are | 12:43:16 |
| 15 | besides Linda Sunderland. | 12:43:17 |
| 16 | Q.   How do you define the class? | 12:43:19 |
| 17 | A.   I don't really know how class action | 12:43:23 |
| 18 | lawsuits work and how that group of people are | 12:43:25 |
| 19 | considered part of the class action. | 12:43:28 |
| 20 | Q.   Do you know if there are geographic | 12:43:31 |
| 21 | definitions for classes in this case? | 12:43:35 |
| 22 | A.   Well, I've wondered because if I'm | 12:43:38 |
| 23 | representing the State of California or the only | 12:43:52 |
| 24 | person with California and Linda is in New York that | 12:43:55 |
| 25 | I wondered about that, but I never asked. | 12:43:58 |

Exhibit A
00077

Transcript of Benjamin Binder
Conducted on February 20, 2024                          88

| | | |
|---|---|---|
| 1 | Q.   So you don't know if there's a California | 12:44:02 |
| 2 | or a New York class or a national class? | 12:44:05 |
| 3 | A.   I don't. | 12:44:08 |
| 4 | MR. KASHIMA:  Objection as to form. | 12:44:09 |
| 5 | BY MS. FERRARI: | 12:44:12 |
| 6 | Q.   Who are the people that are excluded from | 12:44:12 |
| 7 | the class that you represent? | 12:44:21 |
| 8 | MR. KASHIMA:  Objection as to form. | 12:44:24 |
| 9 | THE WITNESS:  No idea. | 12:44:26 |
| 10 | BY MS. FERRARI:  I think I'm being told we have | 12:44:28 |
| 11 | minutes left on the tape so let's take a break. | 12:44:33 |
| 12 | THE VIDEO OPERATOR:  Please stand by. | 12:44:37 |
| 13 | We're going off the record and the time is | 12:44:40 |
| 14 | 12:44 P.M. | 12:44:42 |
| 15 | (At the hour of 12:44 P.M., there was a | 12:44:44 |
| 16 | luncheon recess taken.) | 12:44:44 |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

Exhibit A
00078

Transcript of Benjamin Binder
Conducted on February 20, 2024                    89

| | | |
|---|---|---|
| 1 | THE VIDEO OPERATOR:  We're going back on | 01:19:36 |
| 2 | the record.  The time is 1:19 P.M. | 01:19:37 |
| 3 | BY MS. FERRARI: | 01:19:42 |
| 4 | Q.  Mr. Binder, you understand you're still | 01:19:42 |
| 5 | under oath? | 01:19:45 |
| 6 | A.  Yes. | 01:19:45 |
| 7 | Q.  Before the break we were talking about | 01:19:47 |
| 8 | newsletters that you received from ClassAction.org; | 01:19:50 |
| 9 | correct? | 01:19:55 |
| 10 | A.  Yes. | 01:19:55 |
| 11 | Q.  And you received those by e-mail at your | 01:19:56 |
| 12 | Gmail address? | 01:19:58 |
| 13 | A.  Yes. | 01:19:59 |
| 14 | Q.  How far back does your G-mail go? | 01:20:00 |
| 15 | MR. KASHIMA:  Objection as to form. | 01:20:05 |
| 16 | THE WITNESS:  I don't know. | 01:20:05 |
| 17 | BY MS. FERRARI: | 01:20:06 |
| 18 | Q.  Do you think you still have | 01:20:08 |
| 19 | ClassAction.org newsletters in your Gmail? | 01:20:14 |
| 20 | A.  I might have a recent one from Audi but | 01:20:17 |
| 21 | usually they come through and nothing pertains to me | 01:20:20 |
| 22 | so I erase them. | 01:20:25 |
| 23 | Q.  So you don't know if you have any | 01:20:26 |
| 24 | ClassAction.org newsletters that you received on | 01:20:28 |
| 25 | your e-mail? | 01:20:30 |

Exhibit A
00079

Transcript of Benjamin Binder
Conducted on February 20, 2024                    90

| | | |
|---|---|---|
| 1 | A.  Highly doubtful except for a latest one | 01:20:33 |
| 2 | from Audi. | 01:20:38 |
| 3 | Q.  Before the break you talked about | 01:20:39 |
| 4 | companies being held accountable for something | 01:20:41 |
| 5 | they've done wrong and I want to talk to you a | 01:20:45 |
| 6 | little about that.  What has Pharmacare done wrong | 01:20:48 |
| 7 | here? | 01:20:53 |
| 8 | A.  Stated apparently things that aren't true. | 01:20:53 |
| 9 | Q.  How do you know things aren't true? | 01:20:58 |
| 10 | A.  That's what the class action lawsuit was | 01:21:00 |
| 11 | brought for. | 01:21:03 |
| 12 | Q.  Who told you that?  ClassAction.org? | 01:21:03 |
| 13 | A.  I believe it's on their website. | 01:21:08 |
| 14 | Q.  So is the only basis for you believing | 01:21:11 |
| 15 | that Pharmacare made false statements what you heard | 01:21:13 |
| 16 | from ClassAction.org? | 01:21:16 |
| 17 | A.  That was the start. | 01:21:17 |
| 18 | Q.  And what's your other basis? | 01:21:19 |
| 19 | A.  Talking to the attorneys. | 01:21:21 |
| 20 | MR. KASHIMA:  And I'm going to just warn | 01:21:22 |
| 21 | you it's okay to say that we had a discussion but I | 01:21:26 |
| 22 | don't want you to disclose the contents of that | 01:21:30 |
| 23 | discussion. | 01:21:33 |
| 24 | THE WITNESS:  Will do. | 01:21:33 |
| 25 | /// | |

Exhibit A
00080

Transcript of Benjamin Binder
Conducted on February 20, 2024                    91

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 01:21:34 |
| 2 |     Q.   Any other bases? | 01:21:34 |
| 3 |     A.   No. | 01:21:36 |
| 4 |     Q.   So you're taking ClassAction.org and your | 01:21:36 |
| 5 | lawyer's word for it? | 01:21:41 |
| 6 |     A.   Yes. | 01:21:42 |
| 7 |     Q.   So you don't know in fact whether or not | 01:21:43 |
| 8 | scientific tests have been done on Sambucol? | 01:21:47 |
| 9 |     A.   No. | 01:21:52 |
| 10 |     Q.   Or studies on Sambucol either; right? | 01:21:54 |
| 11 |     A.   I don't know. | 01:22:01 |
| 12 |     Q.   And you don't know if the antioxidant | 01:22:04 |
| 13 | levels and statements on Sambucol have been approved | 01:22:08 |
| 14 | by the FDA, for example? | 01:22:13 |
| 15 |     A.   I don't know. | 01:22:15 |
| 16 |     Q.   And you don't, for example, have any | 01:22:16 |
| 17 | knowledge about what the law says on whether or not | 01:22:19 |
| 18 | a product can talk about supporting or boosting | 01:22:23 |
| 19 | immunity? | 01:22:26 |
| 20 |     MR. KASHIMA:  Objection as to form.  Calls | 01:22:28 |
| 21 | for a legal opinion. | 01:22:31 |
| 22 |     THE WITNESS:  I think that would be common | 01:22:32 |
| 23 | sense. | 01:22:33 |
| 24 | BY MS. FERRARI: | 01:22:34 |
| 25 |     Q.   You're not knowledgeable about the law | 01:22:34 |

Exhibit A
00081

Transcript of Benjamin Binder
Conducted on February 20, 2024                    92

| | | |
|---|---|---|
| 1 | that allows dietary supplement manufacturers about | 01:22:35 |
| 2 | what they can say about supporting immunity. | 01:22:40 |
| 3 | MR. KASHIMA:  Objection. | 01:22:43 |
| 4 | BY MS. FERRARI: | 01:22:43 |
| 5 | Q.   You yourself are not knowledgeable? | 01:22:43 |
| 6 | A.   No. | 01:22:45 |
| 7 | MR. KASHIMA:  Same objections. | 01:22:45 |
| 8 | BY MS. FERRARI: | 01:22:46 |
| 9 | Q.   So in this case there is -- it says that | 01:22:46 |
| 10 | you represent a national class and a California | 01:22:53 |
| 11 | class.  Are you aware that you're representing a | 01:22:57 |
| 12 | national class? | 01:23:01 |
| 13 | A.   Yes. | 01:23:02 |
| 14 | Q.   So the national class, it's defined as -- | 01:23:03 |
| 15 | well, let's start with the California class.  It's | 01:23:08 |
| 16 | defined as all persons in California who during the | 01:23:11 |
| 17 | relevant statute of limitations purchased the | 01:23:15 |
| 18 | elderberry original syrup, Sambucol black elderberry | 01:23:18 |
| 19 | sugar free, Sambucol black elderberry syrup for | 01:23:22 |
| 20 | kids, Sambucol black elderberry effervescent | 01:23:27 |
| 21 | tablets, Sambucol black elderberry chewable tablets, | 01:23:31 |
| 22 | Sambucol black elderberry pastilles, Sambucol daily | 01:23:35 |
| 23 | immune drink powder and Sambucol black elderberry | 01:23:41 |
| 24 | advanced immune syrup for personal or household use | 01:23:45 |
| 25 | and not for resale. | 01:23:49 |

Exhibit A
00082

Transcript of Benjamin Binder
Conducted on February 20, 2024                    93

| | | |
|---|---|---|
| 1 | What in that long sentence does in | 01:23:52 |
| 2 | California mean? | 01:23:55 |
| 3 | MR. KASHIMA:  Objection as to form. | 01:23:58 |
| 4 | BY MS. FERRARI: | 01:24:00 |
| 5 | Q.   It starts, "The class is defined as all | 01:24:01 |
| 6 | persons in California who during the relevant | 01:24:04 |
| 7 | statute of limitations purchased" and it lists | 01:24:06 |
| 8 | products. | 01:24:12 |
| 9 | What does it mean, in California? | 01:24:12 |
| 10 | A.   I would think it means residents of the | 01:24:16 |
| 11 | state of California. | 01:24:18 |
| 12 | Q.   Does it mean anybody else? | 01:24:19 |
| 13 | A.   If it's specifically saying California, | 01:24:21 |
| 14 | no. | 01:24:24 |
| 15 | Q.   So the national class is defined the same | 01:24:26 |
| 16 | way.  All persons in the United States who during | 01:24:32 |
| 17 | the relevant statute of limitations purchased and | 01:24:35 |
| 18 | then lists the products.  What does that mean to be | 01:24:39 |
| 19 | in the United States? | 01:24:42 |
| 20 | A.   Everyone in the United States should be | 01:24:43 |
| 21 | covered by that then. | 01:24:45 |
| 22 | Q.   What law would apply?  What states law | 01:24:47 |
| 23 | would apply? | 01:24:49 |
| 24 | A.   Every state in the union. | 01:24:50 |
| 25 | Q.   Could in the US mean something different | 01:24:57 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Exhibit A
00083

Transcript of Benjamin Binder
Conducted on February 20, 2024                    94

| | | |
|---|---|---|
| 1 | to different people? | 01:25:00 |
| 2 | MR. KASHIMA:  Objection as to form.  Calls | 01:25:02 |
| 3 | for speculation. | 01:25:03 |
| 4 | THE WITNESS:  I don't know. | 01:25:04 |
| 5 | BY MS. FERRARI: | 01:25:04 |
| 6 | Q.  Could in California mean something for | 01:25:05 |
| 7 | different people? | 01:25:07 |
| 8 | MR. KASHIMA:  Same objections. | 01:25:09 |
| 9 | THE WITNESS:  I don't know. | 01:25:10 |
| 10 | BY MS. FERRARI: | 01:25:10 |
| 11 | Q.  What is the relevant statute of | 01:25:10 |
| 12 | limitations for the class or classes you represent? | 01:25:13 |
| 13 | A.  I don't know. | 01:25:19 |
| 14 | MR. KASHIMA:  Objection.  Calls for a | 01:25:21 |
| 15 | legal conclusion. | 01:25:21 |
| 16 | BY MS. FERRARI: | 01:25:22 |
| 17 | Q.  Does it differ depending on what kind of | 01:25:22 |
| 18 | legal claims or relief you're seeking? | 01:25:25 |
| 19 | MR. KASHIMA:  Same objections. | 01:25:30 |
| 20 | THE WITNESS:  I don't know. | 01:25:31 |
| 21 | BY MS. FERRARI: | 01:25:31 |
| 22 | Q.  How far back can the purchases for people | 01:25:32 |
| 23 | who purchased Sambucol go in order for them to be in | 01:25:35 |
| 24 | the class? | 01:25:37 |
| 25 | MR. KASHIMA:  Objection as to form.  Calls | 01:25:40 |

Exhibit A
00084

Transcript of Benjamin Binder
Conducted on February 20, 2024                    95

| | | |
|---|---|---|
| 1 | for a legal conclusion. | 01:25:41 |
| 2 | THE WITNESS:  I don't know. | 01:25:41 |
| 3 | BY MS. FERRARI: | 01:25:42 |
| 4 | Q.  What does it mean to have in the class | 01:25:42 |
| 5 | definitions for personal or household use and not | 01:25:46 |
| 6 | for resale? | 01:25:49 |
| 7 | MR. KASHIMA:  Objection as to form.  Calls | 01:25:52 |
| 8 | for a legal conclusion. | 01:25:52 |
| 9 | THE WITNESS:  I don't know. | 01:25:54 |
| 10 | BY MS. FERRARI: | 01:25:57 |
| 11 | Q.  If -- for example, if someone bought ten | 01:25:57 |
| 12 | bottles of Sambucol for himself for his personal use | 01:26:02 |
| 13 | but then sold ten of them, would that person have | 01:26:07 |
| 14 | purchased for personal use or for resale? | 01:26:10 |
| 15 | MR. KASHIMA:  Objection as to form.  Calls | 01:26:15 |
| 16 | for a legal conclusion. | 01:26:15 |
| 17 | THE WITNESS:  I don't know. | 01:26:17 |
| 18 | BY MS. FERRARI: | 01:26:18 |
| 19 | Q.  What if he only resold one package? | 01:26:18 |
| 20 | MR. KASHIMA:  Objection as to form.  Calls | 01:26:22 |
| 21 | for a legal conclusion. | 01:26:23 |
| 22 | THE WITNESS:  Don't know. | 01:26:24 |
| 23 | BY MS. FERRARI: | 01:26:27 |
| 24 | Q.  If someone buys two bottles of Sambucol | 01:26:27 |
| 25 | with the intent to use it for personal use but then | 01:26:30 |

Exhibit A
00085

Transcript of Benjamin Binder
Conducted on February 20, 2024                    96

| | | |
|---|---|---|
| 1 | later sells both of those bottles, are they part of | 01:26:35 |
| 2 | the class? | 01:26:38 |
| 3 | MR. KASHIMA:  Same objections. | 01:26:41 |
| 4 | THE WITNESS:  I would say the person that | 01:26:42 |
| 5 | purchased the bottle would be involved in the class | 01:26:44 |
| 6 | action lawsuit, not who that person resold it to. | 01:26:50 |
| 7 | BY MS. FERRARI: | 01:26:54 |
| 8 | Q.  What if the purchaser thought -- intended | 01:26:55 |
| 9 | to use it for personal use but later resold bottles, | 01:26:59 |
| 10 | didn't use it for personal use.  Are they in the | 01:27:04 |
| 11 | class? | 01:27:07 |
| 12 | MR. KASHIMA:  Objection as to form.  Calls | 01:27:09 |
| 13 | for a legal conclusion. | 01:27:10 |
| 14 | THE WITNESS:  It sounds like a | 01:27:11 |
| 15 | hypothetical question so I don't know. | 01:27:12 |
| 16 | BY MS. FERRARI: | 01:27:13 |
| 17 | Q.  How do you ascertain what a person's | 01:27:14 |
| 18 | intent is at the time of sale for the purposes of | 01:27:17 |
| 19 | the class? | 01:27:21 |
| 20 | MR. KASHIMA:  Objection as to form.  Calls | 01:27:22 |
| 21 | for speculation. | 01:27:23 |
| 22 | THE WITNESS:  Answering for myself, | 01:27:24 |
| 23 | because I thought it would keep my immune system up. | 01:27:25 |
| 24 | BY MS. FERRARI: | 01:27:31 |
| 25 | Q.  Did you think -- did you intend to use | 01:27:31 |

Exhibit A
00086

Transcript of Benjamin Binder
Conducted on February 20, 2024                    97

```
1    Sambucol for personal use or resale?              01:27:37

2         A.   Personal use.                           01:27:40

3         Q.   How does the court determine what the   01:27:43

4    intent of the purchaser is in deciding who can be in  01:27:45

5    the class?                                        01:27:48

6              MR. KASHIMA:  Objection as to form.  Calls  01:27:49

7    for speculation.  Calls for a legal conclusion.   01:27:50

8              THE WITNESS:  I don't know what the courts  01:27:51

9    would define that as.                             01:27:53

10   BY MS. FERRARI:                                   01:27:55

11        Q.   How would you determine as the class    01:27:55

12   representative in deciding who should be in the   01:27:57

13   class what a person's intent was at the time of   01:28:01

14   purchase whether to use for personal use or resale?  01:28:05

15             MR. KASHIMA:  Objection as to form.  Calls  01:28:08

16   for a legal conclusion.                           01:28:09

17             THE WITNESS:  I don't know.             01:28:09

18   BY MS. FERRARI:                                   01:28:10

19        Q.   Does a class member, do they have to have  01:28:11

20   relied on any statements on Sambucol packaging to be  01:28:14

21   in the class?                                     01:28:19

22             MR. KASHIMA:  Objection as to form.  Calls  01:28:20

23   for a legal conclusion.                           01:28:21

24             THE WITNESS:  For myself, yes.          01:28:23

25   ///
```

Exhibit A
00087

Transcript of Benjamin Binder
Conducted on February 20, 2024                           98

```
 1   BY MS. FERRARI:                                      01:28:24

 2        Q.   I'm asking about the other class members.  01:28:24

 3   The other class members in your lawsuit, did they    01:28:28

 4   need to have relied on any statements on Sambucol     01:28:32

 5   packaging to be a member of the class?                01:28:34

 6        A.   Not speaking to anybody else involved in    01:28:36

 7   this lawsuit, I couldn't answer for them.             01:28:39

 8        Q.   What representations would a person need    01:28:41

 9   to see to be part of the national class?              01:28:43

10        A.   I don't know.                               01:28:45

11             MR. KASHIMA:  Objection as to form.  Calls  01:28:46

12   for a legal conclusion.                               01:28:47

13   BY MS. FERRARI:                                       01:28:48

14        Q.   What representations would a person need    01:28:48

15   to see to be part of the New York class?              01:28:51

16             MR. KASHIMA:  Objection as to form.  Calls  01:28:53

17   for a legal conclusion.  Calls for speculation.       01:28:54

18             THE WITNESS:  I don't know.                 01:28:56

19   BY MS. FERRARI:                                       01:28:56

20        Q.   What representations would a person need    01:28:56

21   to see to be part of the California class?            01:29:00

22             MR. KASHIMA:  Objection as to form.  Calls  01:29:04

23   for a legal conclusion.                               01:29:04

24             THE WITNESS:  I don't know.                 01:29:05

25   ///
```

Exhibit A
00088

Transcript of Benjamin Binder
Conducted on February 20, 2024                          99

| | | |
|---|---|---|
| 1 | BY MS. FERRARI: | 01:29:05 |
| 2 | Q.   Why do you believe you can be an adequate | 01:29:06 |
| 3 | class representative in this class action? | 01:29:09 |
| 4 | A.   Because I used the product.  I purchased | 01:29:16 |
| 5 | the product.  I did not purchase the product for | 01:29:19 |
| 6 | resale.  I believed what was on the outside package | 01:29:22 |
| 7 | on all four sides of the packaging. | 01:29:29 |
| 8 | Q.   Back in 2016. | 01:29:33 |
| 9 | A.   Yeah.  And that's why I think I might make | 01:29:35 |
| 10 | a good representative. | 01:29:38 |
| 11 | Q.   What characteristics are there that make | 01:29:39 |
| 12 | you an adequate or appropriate class representative? | 01:29:43 |
| 13 | MR. KASHIMA:  Objection as to form.  Calls | 01:29:46 |
| 14 | for a legal conclusion. | 01:29:47 |
| 15 | THE WITNESS:  I don't know. | 01:29:47 |
| 16 | BY MS. FERRARI: | 01:29:48 |
| 17 | Q.   Has the court entered a discovery | 01:29:49 |
| 18 | schedule? | 01:29:51 |
| 19 | A.   Not that I know of. | 01:29:55 |
| 20 | Q.   What's the name of the judge in this case? | 01:29:57 |
| 21 | A.   I don't know. | 01:29:59 |
| 22 | Q.   Do you know what the name of the | 01:30:01 |
| 23 | magistrate judge is in this case? | 01:30:02 |
| 24 | A.   No. | 01:30:04 |
| 25 | Q.   Would someone who never bought Sambucol | 01:30:18 |

Exhibit A
00089

Transcript of Benjamin Binder
Conducted on February 20, 2024                    100

| | | |
|---|---|---|
| 1 | but consumed it be part of the class you represent? | 01:30:20 |
| 2 | MR. KASHIMA:  Objection as to form.  Calls | 01:30:25 |
| 3 | for a legal conclusion. | 01:30:26 |
| 4 | THE WITNESS:  I don't know. | 01:30:27 |
| 5 | BY MS. FERRARI: | 01:30:27 |
| 6 | Q.   What kind of proof would members of the | 01:30:28 |
| 7 | class need to provide to show that they paid for | 01:30:30 |
| 8 | Sambucol? | 01:30:32 |
| 9 | MR. KASHIMA:  Objection as to form.  Calls | 01:30:33 |
| 10 | for a legal conclusion. | 01:30:34 |
| 11 | THE WITNESS:  A receipt. | 01:30:36 |
| 12 | BY MS. FERRARI: | 01:30:36 |
| 13 | Q.   And would it matter whether or not the | 01:30:37 |
| 14 | price was different on different class members' | 01:30:41 |
| 15 | receipts for the same product? | 01:30:43 |
| 16 | MR. KASHIMA:  Objection as to form.  Calls | 01:30:46 |
| 17 | for a legal conclusion. | 01:30:46 |
| 18 | THE WITNESS:  No, it's driven by the | 01:30:48 |
| 19 | market value in different areas. | 01:30:50 |
| 20 | BY MS. FERRARI: | 01:30:52 |
| 21 | Q.   So the price is different in different | 01:30:52 |
| 22 | cities and states; right? | 01:30:56 |
| 23 | A.   Every place that I purchased them from. | 01:30:58 |
| 24 | Q.   If someone paid more than what you paid | 01:31:03 |
| 25 | for Sambucol should that person get more money back | 01:31:06 |

Exhibit A
00090

Transcript of Benjamin Binder
Conducted on February 20, 2024                              101

| 1 | than you? | 01:31:10 |
|---|---|---|
| 2 | MR. KASHIMA:  Objection as to form.  Calls | 01:31:11 |
| 3 | for a legal conclusion. | 01:31:11 |
| 4 | THE WITNESS:  I don't know. | 01:31:12 |
| 5 | BY MS. FERRARI: | 01:31:13 |
| 6 | Q.   Are you personally aware of any other | 01:31:27 |
| 7 | class members? | 01:31:29 |
| 8 | A.   No. | 01:31:30 |
| 9 | Q.   To be a member of the national class does | 01:31:54 |
| 10 | the person have to be a US citizen? | 01:31:57 |
| 11 | MR. KASHIMA:  Objection as to form.  Calls | 01:31:59 |
| 12 | for a legal conclusion. | 01:32:00 |
| 13 | THE WITNESS:  I don't know. | 01:32:02 |
| 14 | MS. FERRARI:  No further questions at this | 01:32:06 |
| 15 | time. | 01:32:07 |
| 16 | MR. KASHIMA:  Do you mind if we take ten | 01:32:09 |
| 17 | minutes and regroup? | 01:32:11 |
| 18 | MS. FERRARI:  Sure. | 01:32:14 |
| 19 | THE VIDEO OPERATOR:  Please stand by. | 01:32:15 |
| 20 | We're going off the record.  The time is 1:31 P.M. | 01:32:16 |
| 21 | (Recess taken.) | 01:32:19 |
| 22 | THE VIDEO OPERATOR:  We're going back on | 01:38:53 |
| 23 | the record and the time is 1:56 P.M. | 01:56:21 |
| 24 | /// | 01:56:30 |
| 25 | /// | 01:56:30 |

Exhibit A
00091

Transcript of Benjamin Binder
Conducted on February 20, 2024                              102

| | | |
|---|---|---|
| 1 | EXAMINATION | 01:56:30 |
| 2 | | 01:56:30 |
| 3 | BY MR. KASHIMA: | 01:56:30 |
| 4 | Q.   Mr. Binder, I only have a couple of | 01:56:31 |
| 5 | questions for you. | 01:56:34 |
| 6 | I'm going to hand you what's been marked | 01:56:35 |
| 7 | as Exhibit Number 4.  Would you mind taking a look | 01:56:37 |
| 8 | at that document for me?  And when you have a | 01:56:42 |
| 9 | chance, do you know what this document is? | 01:56:45 |
| 10 | (Exhibit 4 was marked for identification | 01:56:47 |
| 11 | by the Reporter.) | 01:56:47 |
| 12 | THE WITNESS:  Is it the same as this one? | 01:56:50 |
| 13 | BY MR. KASHIMA: | 01:56:54 |
| 14 | Q.   No. | 01:56:55 |
| 15 | MS. FERRARI:  For the record, the witness | 01:56:57 |
| 16 | was pointing to Exhibit 1 when he asked if it was | 01:56:57 |
| 17 | the same as Exhibit 4. | 01:57:00 |
| 18 | THE WITNESS:  It looks familiar to me in | 01:57:38 |
| 19 | the way of maybe this was the filing. | 01:57:41 |
| 20 | BY MR. KASHIMA: | 01:57:45 |
| 21 | Q.   And is this the filing that we talked | 01:57:46 |
| 22 | about in the beginning of the case that you | 01:57:48 |
| 23 | reviewed? | 01:57:50 |
| 24 | A.   Yes. | 01:57:50 |
| 25 | MS. FERRARI:  Are you waiving privilege | 01:57:52 |

Exhibit A
00092

Transcript of Benjamin Binder
Conducted on February 20, 2024                          103

| | | |
|---|---|---|
| 1 | when you said we talked about at the beginning of | 01:57:54 |
| 2 | the case? | 01:57:57 |
| 3 | MR. KASHIMA:  I meant in this deposition. | 01:57:58 |
| 4 | MS. FERRARI:  Objection.  Leading and | 01:58:00 |
| 5 | misstates testimony and lacks foundation.  Calls for | 01:58:03 |
| 6 | speculation. | 01:58:05 |
| 7 | BY MR. KASHIMA: | 01:58:08 |
| 8 | Q.    Can you please turn to page 3 of this | 01:58:09 |
| 9 | document. | 01:58:11 |
| 10 | A.    Okay. | 01:58:11 |
| 11 | Q.    Do you recognize the picture at the top of | 01:58:12 |
| 12 | page 3 of the document? | 01:58:14 |
| 13 | A.    Yes. | 01:58:16 |
| 14 | Q.    How do you recognize this picture? | 01:58:17 |
| 15 | A.    This is the packaging that I would buy | 01:58:19 |
| 16 | through Amazon and through the other pharmacies and | 01:58:22 |
| 17 | the supermarkets. | 01:58:25 |
| 18 | Q.    Okay.  And by packaging, what do you mean | 01:58:27 |
| 19 | by that? | 01:58:29 |
| 20 | A.    Well, it comes in a bottle and the bottle | 01:58:31 |
| 21 | is enclosed in this box. | 01:58:33 |
| 22 | Q.    Now, taking a look at the box, did you | 01:58:38 |
| 23 | have read the three sides of the label before making | 01:58:40 |
| 24 | your purchase? | 01:58:46 |
| 25 | A.    I thought there was four sides of the | 01:58:47 |

Exhibit A
00093

Transcript of Benjamin Binder
Conducted on February 20, 2024                              104

| | | |
|---|---|---|
| 1 | label but if there was three I read all three. | 01:58:50 |
| 2 | Q.    There's three present at the top of this | 01:58:53 |
| 3 | picture.  Do you remember reading these three | 01:58:55 |
| 4 | panels? | 01:58:57 |
| 5 | A.    I do. | 01:58:59 |
| 6 | MS. FERRARI:  Objection.  Overly broad as | 01:59:01 |
| 7 | to time. | 01:59:04 |
| 8 | BY MR. KASHIMA: | 01:59:04 |
| 9 | Q.    Did you read these three panels at the | 01:59:05 |
| 10 | time you first made your purchase of the Sambucol | 01:59:06 |
| 11 | original syrup? | 01:59:06 |
| 12 | A.    Yes. | 01:59:09 |
| 13 | MS. FERRARI:  Objection.  Lacks | 01:59:10 |
| 14 | foundation.  Leading.  Calls for speculation. | 01:59:11 |
| 15 | Misstates prior testimony. | 01:59:12 |
| 16 | BY MR. KASHIMA: | 01:59:16 |
| 17 | Q.    When you first made your purchase of the | 01:59:16 |
| 18 | Sambucol product what did you look at on the | 01:59:20 |
| 19 | product, if anything? | 01:59:24 |
| 20 | A.    Well, on the shelf the front of the | 01:59:26 |
| 21 | packaging was there and so I read everything that's | 01:59:30 |
| 22 | on there, great tasting syrup, scientifically | 01:59:33 |
| 23 | tested, supports immunity, high antioxidant levels, | 01:59:36 |
| 24 | dietary supplement which I could always use.  And | 01:59:41 |
| 25 | then I read the two other side panels but I thought | 01:59:47 |

Exhibit A
00094

Transcript of Benjamin Binder
Conducted on February 20, 2024                                    105

| | | |
|---|---|---|
| 1 | there was a fourth side panel. | 01:59:50 |
| 2 | And I read everything that's -- actually | 01:59:51 |
| 3 | probably what really stands out to me is everything | 01:59:54 |
| 4 | with a check mark next to it and I believe that's | 01:59:58 |
| 5 | either on the side panel or the back, supports | 02:00:02 |
| 6 | immune system, biologist developed, scientifically | 02:00:05 |
| 7 | tested, great tasting syrup, which it is, naturally | 02:00:09 |
| 8 | flavored with the goodness of elderberry, use daily | 02:00:13 |
| 9 | for maximum benefits. | 02:00:20 |
| 10 | Q.   And what, if anything, on this label | 02:00:22 |
| 11 | affected your purchasing decision when you first | 02:00:23 |
| 12 | purchased the Sambucol product? | 02:00:28 |
| 13 | MS. FERRARI:  Objection.  Leading. | 02:00:30 |
| 14 | THE WITNESS:  The reason it stood out to | 02:00:32 |
| 15 | me is none of the other packaging stated these | 02:00:34 |
| 16 | statements or claims. | 02:00:38 |
| 17 | MS. FERRARI:  Move to strike as it | 02:00:41 |
| 18 | misstates prior testimony.  Lacks foundation.  Calls | 02:00:43 |
| 19 | for speculation. | 02:00:44 |
| 20 | BY MR. KASHIMA: | 02:00:47 |
| 21 | Q.   Is there any particular claims on this | 02:00:48 |
| 22 | label that stood out to you versus the other | 02:00:50 |
| 23 | products? | 02:00:53 |
| 24 | MS. FERRARI:  Objection.  Leading and | 02:00:54 |
| 25 | misstates prior testimony. | 02:00:56 |

Exhibit A
00095

Transcript of Benjamin Binder
Conducted on February 20, 2024                    106

| | | |
|---|---|---|
| 1 | THE WITNESS:  Everything.  That's why I | 02:00:59 |
| 2 | headed towards the Sambucol because every other -- | 02:01:00 |
| 3 | every other blackberry elderberry product on the | 02:01:05 |
| 4 | shelves does not state this. | 02:01:10 |
| 5 | MS. FERRARI:  Move to strike as misstates | 02:01:14 |
| 6 | prior testimony. | 02:01:16 |
| 7 | BY MR. KASHIMA: | 02:01:17 |
| 8 | Q.    And you said particularly the check | 02:01:17 |
| 9 | marks -- | 02:01:19 |
| 10 | A.    Yeah. | 02:01:20 |
| 11 | Q.    -- on the side. | 02:01:21 |
| 12 | MS. FERRARI:  Objection.  Leading. | 02:01:21 |
| 13 | THE WITNESS:  Yes. | 02:01:23 |
| 14 | BY MR. KASHIMA: | 02:01:23 |
| 15 | Q.    And so is it true that supports immune | 02:01:23 |
| 16 | system was one of the things that you relied on when | 02:01:27 |
| 17 | purchasing the product for the first time? | 02:01:30 |
| 18 | MS. FERRARI:  Objection.  Leading.  Lacks | 02:01:33 |
| 19 | foundation.  Calls for speculation. | 02:01:34 |
| 20 | THE WITNESS:  Absolutely, yes. | 02:01:36 |
| 21 | MS. FERRARI:  Move to strike as misstates | 02:01:37 |
| 22 | prior testimony.  Calls for speculation.  Lacks | 02:01:38 |
| 23 | foundation. | 02:01:41 |
| 24 | BY MR. KASHIMA: | 02:01:42 |
| 25 | Q.    Is the same true with virologist | 02:01:43 |

Exhibit A
00096

Transcript of Benjamin Binder
Conducted on February 20, 2024                           107

| | | |
|---|---|---|
| 1 | developed? | 02:01:45 |
| 2 | MS. FERRARI:  Objection.  Leading. | 02:01:47 |
| 3 | THE WITNESS:  Yes. | 02:01:49 |
| 4 | MS. FERRARI:  Move to strike.  Lacks | 02:01:49 |
| 5 | foundation, calls for speculation, and misstates | 02:01:49 |
| 6 | prior testimony. | 02:01:53 |
| 7 | BY MR. KASHIMA: | 02:01:53 |
| 8 | Q.   Is the same true with scientifically | 02:01:54 |
| 9 | tested? | 02:01:57 |
| 10 | A.   Yes. | 02:01:58 |
| 11 | MS. FERRARI:  Leading.  Move to strike as | 02:02:01 |
| 12 | lacks foundation.  Calls for speculation.  Misstates | 02:02:04 |
| 13 | prior testimony. | 02:02:06 |
| 14 | BY MR. KASHIMA: | 02:02:09 |
| 15 | Q.   Great tasting syrup? | 02:02:10 |
| 16 | A.   Yes. | 02:02:12 |
| 17 | MS. FERRARI:  Leading.  Move to strike as | 02:02:13 |
| 18 | lacks foundation.  Calls for speculation.  Misstates | 02:02:14 |
| 19 | prior testimony. | 02:02:17 |
| 20 | BY MR. KASHIMA: | 02:02:19 |
| 21 | Q.   Naturally flavored with the goodness of | 02:02:20 |
| 22 | elderberry. | 02:02:23 |
| 23 | MS. FERRARI:  Objection.  Leading. | 02:02:24 |
| 24 | THE WITNESS:  Yes. | 02:02:27 |
| 25 | MS. FERRARI:  Move to strike as lacks | 02:02:28 |

Exhibit A
00097

Transcript of Benjamin Binder
Conducted on February 20, 2024                    108

| | | |
|---|---|---|
| 1 | foundation.  Calls for speculation.  Misstates prior | 02:02:28 |
| 2 | testimony. | 02:02:29 |
| 3 | BY MR. KASHIMA: | 02:02:30 |
| 4 | Q.   Is there anything else on this label that | 02:02:31 |
| 5 | you relied on when first making your purchase of the | 02:02:33 |
| 6 | Sambucol? | 02:02:36 |
| 7 | MS. FERRARI:  Objection.  Leading. | 02:02:38 |
| 8 | THE WITNESS:  Can you ask me the question | 02:02:55 |
| 9 | again? | 02:02:56 |
| 10 | BY MR. KASHIMA: | 02:02:58 |
| 11 | Q.   Yes.  Is there anything else on the label | 02:02:58 |
| 12 | besides the things we just discussed that you relied | 02:03:00 |
| 13 | on when making your first purchase of the Sambucol | 02:03:02 |
| 14 | products? | 02:03:06 |
| 15 | MS. FERRARI:  Objection.  Leading. | 02:03:08 |
| 16 | BY MR. KASHIMA: | 02:03:09 |
| 17 | Q.   If anything. | 02:03:10 |
| 18 | A.   Anything that would pertain to me other | 02:03:12 |
| 19 | than to use for children over four years old, | 02:03:16 |
| 20 | everything swayed me into buying this one instead of | 02:03:23 |
| 21 | the other products. | 02:03:26 |
| 22 | MS. FERRARI:  Move to strike.  Misstates | 02:03:28 |
| 23 | prior testimony.  Calls for speculation.  Lacks | 02:03:30 |
| 24 | foundation. | 02:03:31 |
| 25 | /// | |

Exhibit A
00098

Transcript of Benjamin Binder
Conducted on February 20, 2024                    109

| | | |
|---|---|---|
| 1 | BY MR. KASHIMA: | 02:03:33 |
| 2 |    Q.   And this is the first time you were shown | 02:03:33 |
| 3 | this label in this deposition; correct? | 02:03:36 |
| 4 |        THE WITNESS:  Yes. | 02:03:38 |
| 5 |        MR. KASHIMA:  No further questions. | 02:03:42 |
| 6 |        MS. FERRARI:  I have some questions. | 02:03:44 |
| 7 | | 02:03:45 |
| 8 |               EXAMINATION | 02:03:45 |
| 9 | BY MS. FERRARI: | 02:03:45 |
| 10 |    Q.  So if on the label on the box that you | 02:03:47 |
| 11 | looked at when you first purchased Sambucol in 2016, | 02:03:52 |
| 12 | if it said these statements have not been evaluated | 02:04:00 |
| 13 | by the Food and Drug Administration this product is | 02:04:04 |
| 14 | not intended to diagnose, treat, cure or prevent any | 02:04:06 |
| 15 | disease, you would have relied on that statement as | 02:04:11 |
| 16 | well; right? | 02:04:18 |
| 17 |        MR. KASHIMA:  Objection as to form. | 02:04:19 |
| 18 | Assumes facts not in evidence. | 02:04:19 |
| 19 |        THE WITNESS:  That didn't make a decision | 02:04:38 |
| 20 | for me buying the product. | 02:04:39 |
| 21 | BY MS. FERRARI: | 02:04:40 |
| 22 |    Q.  So that particular statement you didn't | 02:04:41 |
| 23 | rely on? | 02:04:43 |
| 24 |    A.  No. | 02:04:44 |
| 25 |        MR. KASHIMA:  Same objections. | 02:04:45 |

Exhibit A
00099

Transcript of Benjamin Binder
Conducted on February 20, 2024                         110

| | | |
|---|---|---|
| 1 | THE WITNESS:  It's like the statement of | 02:04:47 |
| 2 | children over four years old doesn't pertain to me. | 02:04:48 |
| 3 | BY MS. FERRARI: | 02:04:53 |
| 4 | Q.  So you didn't rely on all four sides of | 02:04:53 |
| 5 | the package in purchasing. | 02:04:57 |
| 6 | MR. KASHIMA:  Objection.  Mischaracterizes | 02:04:59 |
| 7 | testimony. | 02:05:01 |
| 8 | THE WITNESS:  No.  But I had stated that | 02:05:01 |
| 9 | children under four did not pertain to me.  I should | 02:05:03 |
| 10 | take a moment to read the whole thing.  Give me a | 02:05:08 |
| 11 | moment. | 02:05:11 |
| 12 | BY MS. FERRARI: | 02:05:12 |
| 13 | Q.  That's not my question for you.  My | 02:05:12 |
| 14 | question for you is if the package you purchased | 02:05:14 |
| 15 | stated these statements have not been evaluated by | 02:05:19 |
| 16 | the Food and Drug Administration this product is not | 02:05:24 |
| 17 | intended to diagnose, treat, cure or prevent any | 02:05:27 |
| 18 | disease.  You didn't rely on that statement when you | 02:05:32 |
| 19 | purchased this product? | 02:05:34 |
| 20 | A.  No.  I actually relied on what was on the | 02:05:35 |
| 21 | packaging for the manufacturer. | 02:05:39 |
| 22 | Q.  I'm going to hand to you what's been | 02:06:05 |
| 23 | marked as Exhibit 5 and I'm going to hand to you | 02:06:08 |
| 24 | what we'll mark as Exhibit 6. | 02:06:18 |
| 25 | (Exhibit 5 was marked for identification | 02:06:21 |

Exhibit A
00100

Transcript of Benjamin Binder
Conducted on February 20, 2024                              111

| | | |
|---|---|---|
| 1 | by the Reporter.) | 02:06:21 |
| 2 | (Exhibit 6 was marked for identification | 02:06:23 |
| 3 | by the Reporter.) | 02:06:23 |
| 4 | BY MS. FERRARI: | 02:06:51 |
| 5 | Q. Exhibits 5 and 6 are the labels for | 02:06:52 |
| 6 | 4.7-ounce Sambucol syrup and 7.8-ounce Sambucol | 02:07:01 |
| 7 | syrup. Are they? | 02:07:06 |
| 8 | MR. KASHIMA: Objection as to form. | 02:07:12 |
| 9 | BY MS. FERRARI: | 02:07:14 |
| 10 | Q. Let's do one at a time. Is Exhibit 5 the | 02:07:14 |
| 11 | packaging for the outside box for a 7.8 fluid ounce | 02:07:17 |
| 12 | Sambucol black elderberry syrup? | 02:07:24 |
| 13 | A. It is. | 02:07:28 |
| 14 | Q. Is Exhibit 6 the packaging for a 4 fluid | 02:07:28 |
| 15 | ounce Sambucol black elderberry syrup? | 02:07:34 |
| 16 | A. Yes. | 02:07:39 |
| 17 | Q. Okay. So in Exhibit 4 that your lawyer | 02:07:40 |
| 18 | was showing you it didn't have all four sides of the | 02:07:44 |
| 19 | packaging box; correct? | 02:07:48 |
| 20 | A. Let me take a look. I believe the one | 02:07:52 |
| 21 | that's missing off this one is the one that says | 02:08:13 |
| 22 | supplemental facts. | 02:08:16 |
| 23 | Q. The side of the packaging that's missing | 02:08:18 |
| 24 | out of the complaint at Exhibit 4 is the side of the | 02:08:20 |
| 25 | packaging on Exhibits 5 and 6 that starts with | 02:08:27 |

Exhibit A
00101

Transcript of Benjamin Binder
Conducted on February 20, 2024                    112

| | | |
|---|---|---|
| 1 | supplement facts; correct? | 02:08:30 |
| 2 | A.   Yes. | 02:08:33 |
| 3 | Q.   Okay.  So on that side of the label at the | 02:08:33 |
| 4 | bottom in white it says, "These statements have been | 02:08:38 |
| 5 | not evaluated by the Food and Drug Administration. | 02:08:44 |
| 6 | This product is not intended to diagnose, treat, | 02:08:48 |
| 7 | cure or prevent any disease." | 02:08:51 |
| 8 | Do you see that on both Exhibits 5 and 6? | 02:08:54 |
| 9 | A.   I do. | 02:08:57 |
| 10 | Q.   So you didn't rely on all four sides of | 02:08:57 |
| 11 | the package when you purchased the product, did you? | 02:09:01 |
| 12 | MR. KASHIMA:  Objection.  Misstates | 02:09:05 |
| 13 | testimony.  Go ahead. | 02:09:05 |
| 14 | THE WITNESS:  I don't remember reading | 02:09:11 |
| 15 | that part. | 02:09:12 |
| 16 | BY MS. FERRARI: | 02:09:17 |
| 17 | Q.   Let's look at the side -- let's look at | 02:09:17 |
| 18 | Exhibit 5, the picture on the left-hand side. | 02:09:21 |
| 19 | A.   Okay. | 02:09:28 |
| 20 | Q.   Well, actually let's look at Exhibit 4, | 02:09:29 |
| 21 | the complaint. | 02:09:31 |
| 22 | A.   Okay. | 02:09:33 |
| 23 | Q.   Let's look at the middle panel there on | 02:09:34 |
| 24 | page 3 of the complaint. | 02:09:37 |
| 25 | A.   This one? | 02:09:39 |

Exhibit A
00102

Transcript of Benjamin Binder
Conducted on February 20, 2024                                    113

| | | |
|---|---|---|
| 1 | Q.  Yes, please. | 02:09:40 |
| 2 | He's pointing to the middle panel on page | 02:09:41 |
| 3 | 3 of Exhibit 4. | 02:09:44 |
| 4 | Do you see the section satisfaction | 02:09:46 |
| 5 | guaranteed? | 02:09:49 |
| 6 | A.  Yes. | 02:09:49 |
| 7 | Q.  What it says is, "The Pharmacare name | 02:09:50 |
| 8 | guarantees that this product is produced using the | 02:09:51 |
| 9 | highest manufacturing standards and Pharmacare | 02:09:56 |
| 10 | stands behind every bottle of Sambucol that you | 02:09:58 |
| 11 | purchase.  If you are dissatisfied, please visit our | 02:10:02 |
| 12 | website for full details on our refund policy." | 02:10:05 |
| 13 | So you didn't rely on that statement in | 02:10:10 |
| 14 | purchasing or consuming Sambucol either, did you? | 02:10:12 |
| 15 | MR. KASHIMA:  Objection.  Misstates | 02:10:17 |
| 16 | testimony. | 02:10:17 |
| 17 | THE WITNESS:  No.  It sounds like they're | 02:10:20 |
| 18 | covering their butts. | 02:10:22 |
| 19 | BY MS. FERRARI: | 02:10:23 |
| 20 | Q.  And you didn't use that opportunity to get | 02:10:23 |
| 21 | a refund at any point when you -- | 02:10:24 |
| 22 | A.  No, I did not. | 02:10:28 |
| 23 | Q.  -- bought 150 bottles. | 02:10:30 |
| 24 | Are Exhibits 5 and 6 an accurate | 02:10:31 |
| 25 | representation of the Sambucol black elderberry | 02:10:34 |

Exhibit A
00103

Transcript of Benjamin Binder
Conducted on February 20, 2024                          114

| | | |
|---|---|---|
| 1 | syrup packaging that you viewed when you first | 02:10:37 |
| 2 | purchased Sambucol in 2016? | 02:10:41 |
| 3 | MR. KASHIMA:  Objection as to form. | 02:10:46 |
| 4 | THE WITNESS:  I don't remember if it's the | 02:10:47 |
| 5 | exact same packaging. | 02:10:48 |
| 6 | BY MS. FERRARI: | 02:10:50 |
| 7 | Q.   Are Exhibits 5 and 6 exact replicas of any | 02:10:50 |
| 8 | of the packaging you ever saw on -- for the Sambucol | 02:10:55 |
| 9 | syrup that you purchased? | 02:11:01 |
| 10 | MR. KASHIMA:  Objection as to form. | 02:11:02 |
| 11 | THE WITNESS:  It looks similar. | 02:11:04 |
| 12 | BY MS. FERRARI: | 02:11:05 |
| 13 | Q.   But you can't as you sit here today tell | 02:11:06 |
| 14 | me whether Exhibits 5 and 6 are exactly what you | 02:11:09 |
| 15 | saw. | 02:11:13 |
| 16 | A.   No, I could not. | 02:11:13 |
| 17 | Q.   And you can't tell me if the Exhibit 3 | 02:11:14 |
| 18 | panels in Exhibit 4, you can't tell me if those are | 02:11:17 |
| 19 | exactly what you saw when you purchased Sambucol, | 02:11:22 |
| 20 | can you? | 02:11:24 |
| 21 | A.   No because they look the same as the ones | 02:11:25 |
| 22 | you had produced, Exhibits 5 and 6. | 02:11:26 |
| 23 | Q.   I want you to answer just my question.  In | 02:11:30 |
| 24 | Exhibit 4, the three panels that you're seeing on | 02:11:32 |
| 25 | page 3, as you sit here today, you can't tell me if | 02:11:35 |

Exhibit A
00104

Transcript of Benjamin Binder
Conducted on February 20, 2024                          115

| | | |
|---|---|---|
| 1 | that's an accurate depiction of the packaging of any | 02:11:38 |
| 2 | of the Sambucol products that you purchased.  Do you | 02:11:42 |
| 3 | know for sure? | 02:11:48 |
| 4 | A.    No, I do not know for sure. | 02:11:49 |
| 5 | Q.    What is your understanding of what | 02:12:16 |
| 6 | virologist developed mean? | 02:12:20 |
| 7 | A.    The scientists -- a scientist developed | 02:12:22 |
| 8 | it. | 02:12:31 |
| 9 | Q.    Would you agree that the phrase | 02:12:36 |
| 10 | "virologist developed" by itself could refer to the | 02:12:38 |
| 11 | brand name Sambucol? | 02:12:42 |
| 12 | MR. KASHIMA:  Objection as to form.  Calls | 02:12:44 |
| 13 | for speculation. | 02:12:45 |
| 14 | THE WITNESS:  I don't know. | 02:12:46 |
| 15 | BY MS. FERRARI: | 02:12:46 |
| 16 | Q.    Well, would it be reasonable for a | 02:12:47 |
| 17 | consumer to believe that what was virologist | 02:12:50 |
| 18 | developed was the Sambucol brand? | 02:12:53 |
| 19 | MR. KASHIMA:  Objection as to form. | 02:13:00 |
| 20 | THE WITNESS:  It's the only one on the | 02:13:01 |
| 21 | market with that. | 02:13:02 |
| 22 | BY MS. FERRARI: | 02:13:03 |
| 23 | Q.    My question to you is do you see at the | 02:13:04 |
| 24 | very top of each of the labels on Exhibit 4 page 3 | 02:13:06 |
| 25 | there's a registered trademark over Sambucol?  You | 02:13:10 |

Exhibit A
00105

Transcript of Benjamin Binder
Conducted on February 20, 2024                    116

| | | |
|---|---|---|
| 1 | see the little R? | 02:13:14 |
| 2 | A.   Yes.  Right there. yes. | 02:13:15 |
| 3 | Q.   Okay.  So would you agree -- would it be | 02:13:16 |
| 4 | unreasonable for a consumer to believe that | 02:13:23 |
| 5 | virologist developed, that phrase by itself could | 02:13:26 |
| 6 | refer to the trademark Sambucol? | 02:13:29 |
| 7 | MR. KASHIMA:  Objection.  Calls for | 02:13:34 |
| 8 | speculation. | 02:13:35 |
| 9 | THE WITNESS:  I don't know about trademark | 02:13:36 |
| 10 | law so I don't know. | 02:13:38 |
| 11 | BY MS. FERRARI: | 02:13:39 |
| 12 | Q.   You know what that little R means; right? | 02:13:40 |
| 13 | A.   Yeah, registered. | 02:13:43 |
| 14 | Q.   Would be it unreasonable for a consumer to | 02:13:44 |
| 15 | believe that virologist developed by itself could | 02:13:47 |
| 16 | refer to the brand name Sambucol? | 02:13:50 |
| 17 | MR. KASHIMA:  Objection.  Calls for | 02:13:54 |
| 18 | speculation. | 02:13:54 |
| 19 | THE WITNESS:  I don't know. | 02:13:55 |
| 20 | BY MS. FERRARI: | 02:14:04 |
| 21 | Q.   Would it be unreasonable for a consumer to | 02:14:04 |
| 22 | believe that the phrase "virologist developed," just | 02:14:06 |
| 23 | that statement, could refer to the elderberry | 02:14:10 |
| 24 | extract in the Sambucol? | 02:14:13 |
| 25 | MR. KASHIMA:  Objection.  Calls for | 02:14:14 |

Exhibit A
00106

Transcript of Benjamin Binder
Conducted on February 20, 2024                        117

| | | |
|---|---|---|
| 1 | speculation. | 02:14:15 |
| 2 | THE WITNESS:  I don't know. | 02:14:16 |
| 3 | BY MS. FERRARI: | 02:14:17 |
| 4 | Q.   Would it be -- would you agree that | 02:14:19 |
| 5 | virologist developed, that statement by itself, it | 02:14:23 |
| 6 | could refer to the specific product that's being | 02:14:26 |
| 7 | purchased? | 02:14:29 |
| 8 | A.   Yes. | 02:14:29 |
| 9 | Q.   Do you contend that the brand name | 02:14:33 |
| 10 | Sambucol was not virologist developed? | 02:14:37 |
| 11 | A.   I don't know. | 02:14:41 |
| 12 | Q.   Do you contend that the extract in the | 02:14:42 |
| 13 | Sambucol was not virologist developed? | 02:14:46 |
| 14 | A.   I was under the impression that it was. | 02:14:54 |
| 15 | Q.   That's not my question. | 02:14:58 |
| 16 | A.   Okay. | 02:15:00 |
| 17 | Q.   Are you in this lawsuit claiming that the | 02:15:01 |
| 18 | extract in Sambucol was not virologist developed? | 02:15:03 |
| 19 | A.   One more time. | 02:15:09 |
| 20 | Q.   What is it that wasn't virologist | 02:15:13 |
| 21 | developed? | 02:15:16 |
| 22 | A.   That wasn't? | 02:15:17 |
| 23 | Q.   Yeah. | 02:15:18 |
| 24 | A.   I think everything other than what's in | 02:15:21 |
| 25 | the box. | 02:15:24 |

Exhibit A
00107

Transcript of Benjamin Binder
Conducted on February 20, 2024                    118

| | | |
|---|---|---|
| 1 | Q.   Do you contend that the elderberry extract | 02:15:28 |
| 2 | in Sambucol was not virologist developed? | 02:15:31 |
| 3 | A.   Was not.  Was not.  Yes. | 02:15:34 |
| 4 | Q.   What's your basis for that? | 02:15:47 |
| 5 | A.   The packaging. | 02:15:49 |
| 6 | Q.   So you think that it wasn't virologist | 02:15:51 |
| 7 | developed even though the packaging says it is? | 02:15:54 |
| 8 | A.   No -- I'm sorry.  I believe that it was | 02:15:57 |
| 9 | virologist developed because of the packaging. | 02:16:03 |
| 10 | Q.   The extract. | 02:16:06 |
| 11 | A.   Yes. | 02:16:08 |
| 12 | Q.   Do you contend that the registered | 02:16:11 |
| 13 | Sambucol trademark wasn't trademarked by a | 02:16:13 |
| 14 | virologist? | 02:16:17 |
| 15 | A.   I wouldn't know. | 02:16:18 |
| 16 | Q.   Who developed Sambucol? | 02:16:24 |
| 17 | A.   I don't know. | 02:16:26 |
| 18 | Q.   Have you ever heard of the name Madeline | 02:16:29 |
| 19 | Bliah? | 02:16:29 |
| 20 | A.   Never. | 02:16:32 |
| 21 | Q.   B-l-i-a-h. | 02:16:33 |
| 22 | A.   Never. | 02:16:36 |
| 23 | Q.   Do you know if she ever obtained a patent | 02:16:38 |
| 24 | for anything? | 02:16:40 |
| 25 | A.   No idea who the person is. | 02:16:42 |

Exhibit A
00108

Transcript of Benjamin Binder
Conducted on February 20, 2024                              119

```
 1        Q.    Have you ever heard of Dr. Madeline          02:16:45
 2   Mumcuoglu?                                              02:16:46
 3        A.    No.                                          02:16:48
 4        Q.    So you don't know what her credentials       02:16:49
 5   are?                                                    02:16:52
 6        A.    I have no clue.                              02:16:53
 7        Q.    And you don't know if she applied for a      02:16:54
 8   patent with anything?                                  02:16:56
 9        A.    No.                                          02:16:57
10        Q.    To your knowledge, does your lawsuit         02:17:04
11   involve any patents?                                   02:17:05
12        A.    I don't know.                                02:17:08
13        Q.    To your knowledge, does your lawsuit         02:17:11
14   involve any patent applications?                       02:17:12
15        A.    I don't know.                                02:17:14
16        Q.    Do you believe that the phrase "virologist  02:17:21
17   developed" as presented on the Sambucol packaging      02:17:23
18   would lead a reasonable consumer to believe that the   02:17:27
19   elderberry extract in Sambucol was patented?           02:17:30
20        A.    I don't know.                                02:17:34
21        Q.    Do you contend that the name Sambucol was    02:18:00
22   not virologist developed?                              02:18:02
23        A.    I don't know.                                02:18:04
24        Q.    Do you contend that the product you         02:18:17
25   purchased was not virologist developed?                02:18:20
```

Exhibit A
00109

Transcript of Benjamin Binder
Conducted on February 20, 2024                                    120

| | | |
|---|---|---|
| 1 | A.   One more time. | 02:18:23 |
| 2 | Q.   Do you contend that the product you | 02:18:23 |
| 3 | purchased was not virologist developed? | 02:18:25 |
| 4 | A.   Was not -- I don't know. | 02:18:30 |
| 5 | MS. FERRARI:  Okay.  Those are my | 02:18:35 |
| 6 | questions for today.  I am going to put on the | 02:18:38 |
| 7 | record that we'd like to leave open the opportunity | 02:18:41 |
| 8 | to have another deposition with Mr. Binder if | 02:18:44 |
| 9 | necessary after we receive the ClassAction.org or | 02:18:48 |
| 10 | Four Season documents, their DBA, and we reserve the | 02:18:54 |
| 11 | right to depose him after we receive -- if we | 02:18:59 |
| 12 | receive additional documents from him that we talked | 02:19:03 |
| 13 | about today that may be in his possession. | 02:19:05 |
| 14 | MR. KASHIMA:  We are likely going to | 02:19:09 |
| 15 | object to any future deposition of Mr. Binder and | 02:19:10 |
| 16 | so -- but we can probably hash that out once a | 02:19:14 |
| 17 | request comes in. | 02:19:18 |
| 18 | THE VIDEO OPERATOR:  Here ends today's | 02:19:24 |
| 19 | deposition.  We're going off the record at 2:19 P.M. | 02:19:25 |
| 20 | MR. KASHIMA:  I need a copy. | 02:19:33 |
| 21 | (Ending time 2:19 p.m.) | 02:19:35 |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

Exhibit A
00110

Transcript of Benjamin Binder
Conducted on February 20, 2024

122

```
 1                    REPORTER'S CERTIFICATE

 2

 3            I, JEANINE CURCIONE, C.S.R. NO. 10223,

 4      RPR, in and for the State of California, do hereby

 5      certify:

 6            That prior to being examined, the witness

 7      named in the foregoing deposition was by me duly

 8      sworn to testify the truth, the whole truth and

 9      nothing but the truth and that the witness reserved

10      the right of signature;

11            That said deposition was taken down by me

12      in shorthand at the time and place therein named,

13      and thereafter reduced to typewriting under my

14      direction, and the same is a true, correct and

15      complete transcript of said proceedings.

16            I further certify that I am not interested

17      in the event of the action.

18            Witness my hand this 2nd day of March,

19      2024.

20

21                        Certified Shorthand
22                        Reporter for the
                          State of California

23

24

25
```

Exhibit A
00111

No. 525540

Re:     Deposition of **Benjamin Binder**

Date: 2/20/2024

Case: Sunderland, et al. -v- Pharmacare U.S., Inc., et al.

Return to: transcripts@planetdepos.com

| Page | Line | Correction/Change and Reason |
|------|------|------------------------------|
| 46 | 24-25 | "There's one in the refrigerator." to "There's no more product in the |
|  |  | refrigerator." Upon review, there was no product, bottle or packages |
|  |  | left on the refrigerator. |
| 60 | 13-14 | "Well, I think I stopped because I still have some in the refrigerator." to |
|  |  | "There's no more product in the refrigerator." Upon review, there was no |
|  |  | product, bottle or packages left on the refrigerator. |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

3/19/2024

_____                    DocuSigned by:
(Date)                                       *Ben Binder*
                                            _____
                                            4565688A37034TE...
                                                    (Signature)

Exhibit A
00112

DocuSign Envelope ID: 5EB0DF4C-D331-428D-B7FE-06A4AD169A95

No. 525540

Re:    Deposition of **Benjamin Binder**
       Date: 2/20/2024
       Case: Sunderland, et al. -v- Pharmacare U.S., Inc., et al.
       Return to: transcripts@planetdepos.com

ACKNOWLEDGMENT OF DEPONENT

I, Benjamin Binder, do hereby acknowledge
that I have read and examined the foregoing
testimony, and the same is a true, correct and
complete transcription of the testimony given by me
and any corrections appear on the attached Errata
sheet signed by me.

3/19/2024

_Ben Binder_

(Date)                          (Signature)

Exhibit A
00113

1  Trenton R. Kashima (SBN No. 291405)
   **MILBERG COLEMAN BRYSON**
2  **PHILLIPS GROSSMAN PLLC**
   402 W. Broadway, Suite 1760
3  San Diego, CA 92101
   Tel: (619) 810-7047
4  tkashima@milberg.com

5  *Attorneys for Plaintiffs*
   *and the Proposed Classes*
6
   *Additional attorneys on signature page*
7

8

9           UNITED STATES DISTRICT COURT

10        SOUTHERN DISTRICT OF CALIFORNIA

11

12  LINDA SUNDERLAND and BENJAMIN   Case No. 3:23-cv-01318-JES-AHG
   BINDER individually and on behalf of all
13  others similarly situated,          **PLAINTIFF BENJAMIN BINDER'S**
                       **RESPONSES AND OBJECTIONS TO**
14         Plaintiffs,            **DEFENDANT PHARMACARE U.S.,**
                       **INC.'S INTERROGATORIES TO**
15        v.                 **BENJAMIN BINDER, SET ONE**

16  PHARMACARE U.S., INC., a Delaware
   Corporation, and PHARMACARE
17  LABORATORIES PTY LTD., an
   Australian company,
18
          Defendants.
19

20

21

22

23

24

25

26

27

28

EXHIBIT **1**
WIT: **Π Binder**
DATE: **2-20-24**
Jeanine Curcione, CSR, RPR

---

PLAINTIFF BENJAMIN BINDER'S RESPONSES AND OBJECTIONS TO DEFENDANT'S
INTERROGATORIES, SET ONE; CASE NO.: 3:23-CV-01318-JES-AHG

Exhibit A
00114

Plaintiff Benjamin Binder (hereinafter "Binder") by and through his undersigned counsel, and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby provides the following first set of responses to the First Set of Interrogatories of Pharmacare U.S., Inc. (hereinafter "Pharmacare").

## PRELIMINARY STATEMENT

The following responses are made solely for purposes of this action. By making these responses, Plaintiff does not concede that the Interrogatories sought are relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's responses are made without in any way intending to waive or waiving, but, on the contrary, intending to preserve and preserving:

(a)    The right to object, on any grounds, to the use of these responses in any subsequent proceedings in, or at trial of, this or any action;

(b)    The right to object to the introduction of these responses into evidence in any subsequent proceedings in, or at the trial of, this or any action; and

(c)    The right to object, on any grounds at any time, to other Interrogatories or other discovery demands involving these responses or the subject matter thereof.

The responses and objections are made on the basis of information presently available to and located by Plaintiff upon reasonable investigation. Plaintiff expressly reserves the right to produce further information in response to these Interrogatories. Further, Plaintiff reserves the right to modify, revise, supplement, or amend his responses as it deems appropriate.

## GENERAL OBJECTIONS

The following general objections are made to each Interrogatory and are incorporated by this reference into each specific response as if set forth in full therein, and is in addition to any specific objections stated within those responses.

1.    Plaintiff objects to these Requests to the extent that they impose burdens or obligations inconsistent with, or in excess of, those imposed by the Federal Rules of Civil

1

Exhibit A
00115

1   Procedure, the Local Rules of Civil Practice and Procedure of The United States District
2   Court for the Northern District of California ("Local Rules"), or any other applicable rules
3   and statutes.    Plaintiff will respond to each of the Requests in accordance with the
4   requirements of the Federal and Local Rules.

5       2.      Plaintiff bases his responses on the assumption that Defendant, in
6   propounding these Interrogatories, did not intend to seek information protected against
7   discovery by the attorney-client privilege, the attorney work-product doctrine, or any other
8   applicable right, privilege, protection or doctrine.    To the extent that Defendant's
9   Interrogatories, or any part thereof, are intended to elicit such information, Plaintiff objects
10  and asserts the privileges and protections contained in the foregoing rules to the fullest
11  extent permitted by law.

12      3.      Nothing contained in these responses is intended as, nor shall it in any way be
13  deemed as, a waiver of the attorney-client privilege, the attorney work-product doctrine, or
14  any other applicable right, privilege, protection or doctrine.    In responding to each
15  Interrogatory, Plaintiff will not undertake to provide privileged or otherwise protected
16  information, and inadvertent disclosure of such information shall not be deemed a waiver
17  of any applicable privilege or doctrine.

18      These Interrogatories could possibly be construed as seeking information from
19  entities or individuals other than Plaintiff.    In responding to these interrogatories, Plaintiff
20  is obligated, if at all, to provide only information that is within his knowledge; Plaintiff
21  expressly objects to these interrogatories to the extent they seek to require a response on
22  behalf of any individual other than Plaintiff.

23              **RESPONSES TO INTERROGATORIES**
24  **INTERROGATORY NO. 1:**

25      DESCRIBE the circumstances surrounding YOUR purchase and use of the
26  PRODUCTS, including the DATE of each purchase, the retail price paid, the method of
27
28

2

Exhibit A
00116

payment, the specific PRODUCTS purchased, the store name and location from which
YOU purchased the PRODUCTS, and frequency of use.

**RESPONSE TO INTERROGATORY NO. 1:**

Subject to the preliminary statement and general objections, Plaintiff purchased one
to two bottles of Sambucol Black Elderberry Original Syrup every two weeks beginning
approximately in 2017 and continuing through June 2023 from the following locations:

- Amazon
- CVS #6976
- Rite Aid #5450
- Walgreens #6854
- Ralphs South Pasadena
- Ralphs Colorado
- Ralphs Crescenta Plaza
- VONS Fair Oaks Ave. (closed)
- VONS N. Figueroa St.
- VONS Foothill Blvd.
- VONS Los Feliz Blvd.

Plaintiff purchased the Product due to the claims printed on the packaging,
specifically "scientifically tested", "supports immunity", and "high antioxidant levels."
The language on the packaging led Plaintiff to believe that the Product could help ward off
catching a flu or cold and would boost and support his immunity.

Subject to Rule 33(d), Plaintiff directs Defendant to the Amazon receipts produced
concurrent herewith, for information regarding the price and date of his Amazon
transactions. Plaintiff does not know the exact purchase information for the CVS, Rite
Aid, Walgreens, Ralphs, and VONS transactions.

**INTERROGATORY NO. 2:**

DESCRIBE ANY COUPON or DISCOUNT applied to YOUR purchases of the
PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 2:**

Subject to the preliminary statement and general objections, Plaintiff is unaware of

3

Exhibit A
00117

1   any discounts applied to his purchases.

2   **INTERROGATORY NO. 3:**

3       DESCRIBE the circumstances surrounding YOUR purchase and use of OTHER

4   ELDERBERRY PRODUCTS, including the DATE of each purchase, the retail price paid,

5   the method of payment, the specific products purchased, the store name and location from

6   which YOU purchased the products, and frequency of use.

7   **RESPONSE TO INTERROGATORY NO. 3:**

8       Subject to the preliminary statement and general objections, Plaintiff is unaware of

9   any purchases or uses of other elderberry products.

10  **INTERROGATORY NO. 4:**

11      IDENTIFY all PERSONS with knowledge of the facts YOU contend support each

12  allegation contained in YOUR COMPLAINT.

13  **RESPONSE TO INTERROGATORY NO. 4:**

14      Subject to the preliminary statement and general objections, Plaintiff objects to the

15  Interrogatory as seeking identification and production of information and documents that

16  are not, and never were in Plaintiff's possession, custody or control.   Plaintiff further

17  objects to the Interrogatory's definition of "YOU" as improper third-party discovery

18  because it seeks identification of information and documents that, to the extent they exist,

19  are not known to Plaintiff, and do not relate to this action.

20      Defendant's Interrogatory is facially overbroad, and therefore unduly burdensome.

21  Defendant may not seek all information related to a general topic, otherwise known as

22  "contention" interrogatories.  *See e.g., Gopher Media, LLC v. Spain*, 2020 WL 6741675,

23  at *3 (S.D. Cal., Nov. 17, 2020) ("As a rule, requests for 'any and all' documents  or

24  communications (or testimony about those materials) are facially overbroad"); *Sonnino

25  v. Univ. of Kan. Hosp. Auth.*, 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) (a request

26  for production seeking "all documents that relate to or concern" a particular topic is

27  "overly broad on its face"); *Malik v. Amini's Billiard & Bar Stools, Inc.*, 2005 WL 8160879,

28

4

Exhibit A
00118

at *8 ("courts generally find contention interrogatories or requests to be overly broad on their face to the extent they ask for "every fact" or "any and all" documents that support an allegation or defense"); *High 5 Games, LLC v. IGT*, 2015 WL 9685094 at *1 (N.D. Ill., Nov. 25, 2015) (interrogatories containing "all documents" and "all individuals with knowledge" pertaining to the subject matter specified in the interrogatory held to be overbroad on their face). Accordingly, Plaintiff will identify persons with material information regarding the allegations in his complaint.

Plaintiff objects to the phrase "all PERSONS" as vague and overbroad, and further objects to the extent the definition includes defense witnesses and experts. Plaintiff will not identify any persons associated or employed by Defendant or any expert witnesses.

Plaintiff also objects to this interrogatory to the extent that it requires the premature disclosure of Plaintiffs' expert opinions, and information protected by the attorney-client privilege, work product doctrine or other privilege, including marital /spousal testimonial privilege.

Subject to and without waiving these objections, Plaintiff identifies only himself.

**INTERROGATORY NO. 5:**

For each PERSON identified in response to Interrogatory No. 4, DESCRIBE the facts known by the PERSON that YOU claim support the allegations contained in YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 5:**

Subject to the preliminary statement and general objections, Plaintiff objects to the Interrogatory as seeking identification and production of information and documents that are not, and never were in Plaintiff's possession, custody or control. Plaintiff further objects to the Interrogatory's definition of "YOU" as improper third-party discovery because it seeks identification of information and documents that, to the extent they exist, are not known to Plaintiff, and do not relate to this action.

Plaintiff objects to the phrase "PERSONS" as vague and overbroad, and further

PLAINTIFF BENJAMIN BINDER'S RESPONSES AND OBJECTIONS TO DEFENDANT'S
INTERROGATORIES, SET ONE; CASE NO.: 3:23-CV-01318-JES-AHG

1  objects to the extent the definition includes defense witnesses and experts.  Plaintiff will

2  not identify any persons associated or employed by Defendant or any expert witnesses.

3      Plaintiff also objects to this interrogatory to the extent that it requires the premature

4  disclosure of Plaintiffs' expert opinions, and information protected by the attorney-client

5  privilege, work product doctrine or other privilege.

6      Subject to and without waiving these objections, Plaintiff identifies that he has

7  knowledge regarding his own purchases.

8  **INTERROGATORY NO. 6:**

9      IDENTIFY any PERSON other than YOU that YOU believe purchased the

10  PRODUCTS for their personal use in the past four years.

11  **RESPONSE TO INTERROGATORY NO. 6:**

12      Subject to the preliminary statement and general objections, Plaintiff objects to the

13  Interrogatory as seeking identification and production of information and documents that

14  are not, and never were in Plaintiff's possession, custody or control.  Plaintiff further

15  objects to the Interrogatory's definition of "YOU" as improper third-party discovery

16  because it seeks identification of information and documents that, to the extent they exist,

17  are not known to Plaintiff, and do not relate to this action.

18      Plaintiff objects to the phrase "PERSONS" as vague and overbroad, and further

19  objects to the extent the definition includes defense witnesses and experts.  Plaintiff will

20  not identify any persons associated or employed by Defendant or any expert witnesses.

21      Plaintiff also objects to this interrogatory to the extent that it requires the premature

22  disclosure of Plaintiffs' expert opinions, and information protected by the attorney-client

23  privilege, work product doctrine or other privilege.

24      Subject to and without waiving these objections, Plaintiff identifies that he has

25  knowledge regarding his own purchases.  Plaintiff also understands that other absent class

26  members purchased the PRODUCTS for their personal use in the past four years.

27

28

PLAINTIFF BENJAMIN BINDER'S RESPONSES AND OBJECTIONS TO DEFENDANT'S
INTERROGATORIES, SET ONE; CASE NO.: 3:23-CV-01318-JES-AHG

Exhibit A
00120

**INTERROGATORY NO. 7:**

IDENTIFY ANY DOCUMENTS that support the allegations in YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 7:**

Subject to the preliminary statement and general objections, Plaintiff objects to the Interrogatory as seeking identification and production of information and documents that are not, and never were in Plaintiff's possession, custody or control. Plaintiff further objects to the Interrogatory's definition of "YOU" as improper third-party discovery because it seeks identification of information and documents that, to the extent they exist, are not known to Plaintiff, and do not relate to this action.

Defendant's Interrogatory is facially overbroad, and therefore unduly burdensome. Defendant may not seek all information related to a general topic, otherwise known as "contention" interrogatories. *See e.g., Gopher Media, LLC v. Spain*, 2020 WL 6741675, at *3 (S.D. Cal., Nov. 17, 2020) ("As a rule, requests for 'any and all' documents or communications (or testimony about those materials) are facially overbroad"); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) (a request for production seeking "all documents that relate to or concern" a particular topic is "overly broad on its face"); *Malik v. Amini's Billiard & Bar Stools, Inc.*, 2005 WL 8160879, at *8 ("courts generally find contention interrogatories or requests to be overly broad on their face to the extent they ask for "every fact" or "any and all" documents that support an allegation or defense"); *High 5 Games, LLC v. IGT*, 2015 WL 9685094 at *1 (N.D. Ill., Nov. 25, 2015) (interrogatories containing "all documents" and "all individuals with knowledge" pertaining to the subject matter specified in the interrogatory held to be overbroad on their face). Accordingly, Plaintiff will identify persons with material information regarding the allegations in his complaint.

Plaintiff also objects to this interrogatory to the extent that it requires the premature disclosure of Plaintiffs' expert opinions, and information protected by the attorney-client

Exhibit A
00121

1  privilege, work product doctrine or other privilege, including marital /spousal testimonial
2  privilege.

3      Subject to and without waiving these objections, Plaintiff identifies all documents
4  referenced in Plaintiffs' Class Action Complaint (including product labels), the receipts
5  produced concurrently herewith, and documents that may be produced in response to
6  Plaintiff's discovery requests, as well as documents produced in the *Corbett v. Pharmacare*
7  *U.S., Inc.* matter.

8  **INTERROGATORY NO. 8:**

9      IDENTIFY all PERSONS with whom YOU have had ANY COMMUNICATION
10 RELATED TO the allegations contained in YOUR COMPLAINT.

11 **RESPONSE TO INTERROGATORY NO. 8:**

12     Subject to the preliminary statement and general objections, Plaintiff objects to the
13 Interrogatory as seeking identification and production of information and documents that
14 are not, and never were in Plaintiff's possession, custody or control.  Plaintiff further
15 objects to the Interrogatory's definition of "YOU" as improper third-party discovery
16 because it seeks identification of information and documents that, to the extent they exist,
17 are not known to Plaintiff, and do not relate to this action.

18     Defendant's Interrogatory is facially overbroad, and therefore unduly burdensome.
19 Defendant may not seek all information related to a general topic, otherwise known as
20 "contention" interrogatories.  *See e.g., Gopher Media, LLC v. Spain*, 2020 WL 6741675,
21 at *3 (S.D. Cal., Nov. 17, 2020) ("As a rule, requests for 'any and all' documents or
22 communications (or testimony about those materials) are facially overbroad"); *Sonnino*
23 *v. Univ. of Kan. Hosp. Auth.*, 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) (a request
24 for production seeking "all documents that relate to or concern" a particular topic is
25 "overly broad on its face"); *Malik v. Amini's Billiard & Bar Stools, Inc.*, 2005 WL 8160879,
26 at *8 ("courts generally find contention interrogatories or requests to be overly broad on
27 their face to the extent they ask for "every fact" or "any and all" documents that support an

28

8
PLAINTIFF BENJAMIN BINDER'S RESPONSES AND OBJECTIONS TO DEFENDANT'S
INTERROGATORIES, SET ONE; CASE NO.: 3:23-CV-01318-JES-AHG

Exhibit A
00122

allegation or defense"); *High 5 Games, LLC v. IGT*, 2015 WL 9685094 at *1 (N.D. Ill.,
Nov. 25, 2015) (interrogatories containing "all documents" and "all individuals with
knowledge" pertaining to the subject matter specified in the interrogatory held to be
overbroad on their face).   Accordingly, Plaintiff will identify persons with material
information regarding the allegations in his complaint.

Plaintiff further objects to this Interrogatory because it is vague, overbroad, and
seeks information irrelevant and not proportional to the needs of the pending case.
Plaintiff's communications with third parties are irrelevant to this case.  Moreover, based
on the definitions of YOU, ANY, COMMUNICATIONS, and PERSON, Defendant seeks
any incidental communications between Plaintiff and his agents and any other person or
entity regarding the lawsuit, regardless of how inconsequential such communication is to
this case. Accordingly, Plaintiff will only respond to this Request to the extent that Plaintiff
has any communication with another individual which expressly references the claims at
issue in this dispute.

Plaintiff objects to this Request as vague and ambiguous to the extent that it calls for
Plaintiff to determine the identities of unknown parties and their communications with
other unknown parties. Plaintiff lacks the requisite personal knowledge to determine any
person that has "act on [his] behalf" has had any written communications regarding the
Products at issue.

Plaintiff also objects to this interrogatory to the extent that it requires the premature
disclosure of Plaintiffs' expert opinions, and information protected by the attorney-client
privilege, work product doctrine or other privilege, including marital /spousal testimonial
privilege.

Subject to and without waiving these objections, Plaintiff has communicated with
his attorneys and law firm staff and agents.   Additionally, Plaintiff received an email
newsletter and viewed a website regarding the claims in this case.   Plaintiff directs
Defendant to the Response to Interrogatory No. 9 for more information.

9

PLAINTIFF BENJAMIN BINDER'S RESPONSES AND OBJECTIONS TO DEFENDANT'S
INTERROGATORIES, SET ONE; CASE NO.: 3:23-CV-01318-JES-AHG

**INTERROGATORY NO. 9:**

DESCRIBE ANY COMMUNICATIONS between YOU and ClassAction.org.

**RESPONSE TO INTERROGATORY NO. 9:**

Subject to the preliminary statement and general objections, Plaintiff objects to the Interrogatory as seeking identification and production of information and documents that are not, and never were in Plaintiff's possession, custody or control.  Plaintiff further objects to the Interrogatory's definition of "YOU" as improper third-party discovery because it seeks identification of information and documents that, to the extent they exist, are not known to Plaintiff, and do not relate to this action.

Defendant's Interrogatory is facially overbroad, and therefore unduly burdensome. Defendant may not seek all information related to a general topic, otherwise known as "contention" interrogatories.  *See e.g., Gopher Media, LLC v. Spain*, 2020 WL 6741675, at *3 (S.D. Cal., Nov. 17, 2020) ("As a rule, requests for 'any and all' documents or communications (or testimony about those materials) are facially overbroad"); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) (a request for production seeking "all documents that relate to or concern" a particular topic is "overly broad on its face"); *Malik v. Amini's Billiard & Bar Stools, Inc.*, 2005 WL 8160879, at *8 ("courts generally find contention interrogatories or requests to be overly broad on their face to the extent they ask for "every fact" or "any and all" documents that support an allegation or defense"); *High 5 Games, LLC v. IGT*, 2015 WL 9685094 at *1 (N.D. Ill., Nov. 25, 2015) (interrogatories containing "all documents" and "all individuals with knowledge" pertaining to the subject matter specified in the interrogatory held to be overbroad on their face).  Accordingly, Plaintiff will identify material information regarding the allegations in his complaint.

Plaintiff further objects to this Interrogatory because it is vague, overbroad, and seeks information irrelevant and not proportional to the needs of the pending case. Plaintiff's communications with third parties are irrelevant to this case.  Moreover, based

Exhibit A
00124

on the definitions of YOU, ANY, and COMMUNICATIONS, Defendant seeks any incidental communications between Plaintiff and his agents and any other person or entity regarding the lawsuit, regardless of how inconsequential such communication is to this case. Accordingly, Plaintiff will only respond to this Request to the extent that Plaintiff has any communication with another individual which expressly references the claims at issue in this dispute.

Plaintiff objects to this Request as vague and ambiguous to the extent that it calls for Plaintiff to determine the identities of unknown parties and their communications with other unknown parties. Plaintiff lacks the requisite personal knowledge to determine any person that has "act on [his] behalf" has had any written communications regarding the Products at issue.

Plaintiff also objects to this interrogatory to the extent that it requires the premature disclosure of Plaintiffs' expert opinions, and information protected by the attorney-client privilege, work product doctrine or other privilege.

Subject to and without waiving these objections, on or about June 29, 2023, Plaintiff viewed a website (https://www.classaction.org/elderberry-supplement-lawsuit) on classaction.org regarding this case and provided his contained information on the form provided. Plaintiff also received an email newsletter regarding several cases, including the involving Sambucol, from newsletter@classaction.org, on the same date.

**INTERROGATORY NO. 10:**

DESCRIBE all TESTS of the PRODUCTS performed by YOU or on YOUR behalf.

**RESPONSE TO INTERROGATORY NO. 10:**

Subject to the preliminary statement and general objections, Plaintiff objects to this Request as vague and ambiguous to the extent that it calls for Plaintiff to determine the identities of unknown parties and their communications with other unknown parties. Plaintiff lacks the requisite personal knowledge to determine any person that has "act on [his] behalf" has had any written communications regarding the Products at issue.

11

Exhibit A
00125

1    Plaintiff Binder objects to this interrogatory on the grounds that it is vague and seeks

2    information not relevant or proportional to the needs of this case, which alleges that: (1)

3    there are no published studies which test the Elderberry Products; (2) that the Elderberry

4    Products have not been "scientifically tested" as labeled.

5    Plaintiff also objects to this interrogatory to the extent that it requires the premature

6    disclosure of Plaintiffs' expert opinions, and information protected by the attorney-client

7    privilege, work product doctrine or other privilege.

8    Subject to and without waiving his objections, Plaintiff has completed the lectin

9    testing referenced in the complaint.

10   **INTERROGATORY NO. 11:**

11   IDENTIFY ANY DOCUMENTS RELATING TO or CONCERNING the TESTS

12   identified in YOUR response to Interrogatory No. 10.

13   **RESPONSE TO INTERROGATORY NO. 11:**

14   Subject to the preliminary statement and general objections, Plaintiff objects to this

15   Request as vague and ambiguous to the extent that it calls for Plaintiff to determine the

16   identities of unknown parties and their communications with other unknown parties.

17   Plaintiff lacks the requisite personal knowledge to determine any person that has "act on

18   [his] behalf" has had any written communications regarding the Products at issue.

19   Plaintiff objects to this interrogatory on the grounds that it is vague and seeks

20   information not relevant or proportional to the needs of this case, which alleges that: (1)

21   there are no published studies which test the Elderberry Products; (2) that the Elderberry

22   Products have not been "scientifically tested" as labeled.

23   Plaintiff also objects to this interrogatory to the extent that it requires the premature

24   disclosure of Plaintiffs' expert opinions, and information protected by the attorney-client

25   privilege, work product doctrine or other privilege.

26   Subject to and without waiving his objections, Plaintiff directs Defendant to the NIS

27   Lab Testing Report and documentation, produced in the *Corbett v. Pharmacare U.S., Inc.*

28

PLAINTIFF BENJAMIN BINDER'S RESPONSES AND OBJECTIONS TO DEFENDANT'S
INTERROGATORIES, SET ONE; CASE NO.: 3:23-CV-01318-JES-AHG

Exhibit A
00126

1   matter.

2       DATED: January 5, 2024                **MILBERG COLEMAN BRYSON**
3                                             **PHILLIPS GROSSMAN PLLC**

4                                             By: /s/ Trenton R. Kashima
5
6                                             Trenton R. Kashima (SBN 291405)
                                              **MILBERG COLEMAN BRYSON**
7                                             **PHILLIPS GROSSMAN PLLC**
                                              402 West Broadway St., Suite 1760
8                                             San Diego, CA 92101
9                                             Tel: (619) 810-7047
                                              tkashima@milberg.com
10
11                                            Alex Straus (SBN 321366)
                                              **MILBERG COLEMAN BRYSON**
12                                            **PHILLIPS GROSSMAN, PLLC**
13                                            280 s. Beverly Drive, Ste. PH
                                              Beverly Hills, CA 902126
14                                            Tel: 865-247-0080
15                                            astraus@milberg.com.com

16                                            Rachel Soffin*
17                                            **MILBERG COLEMAN BRYSON**
                                              **PHILLIPS GROSSMAN, PLLC**
18                                            First Tennessee Plaza
19                                            800 S. Gay Street, Suite 1100
                                              Knoxville, Tennessee 37929
20                                            Tel: 865-247-0080
21                                            rsoffin@milberg.com

22                                            Martha A. Geer*
23                                            **MILBERG COLEMAN BRYSON**
                                              **PHILLIPS GROSSMAN, PLLC**
24                                            900 West Morgan Street
25                                            Raleigh, NC 27603
                                              Telephone: (919) 600-5000
26                                            Facsimile: 919-600-5035
27                                            mgeer@milberg.com

28

                                    13

Exhibit A
00127

1

2

3   Nick Suciu III*

4   **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

5   6905 Telegraph Rd., Suite 115
    Bloomfield Hills, MI 48301

6   Tel: 313-303-3472
    nsuciu@milberg.com

7

8   *Attorneys for Plaintiffs*
    *and the Proposed Classes*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

14

PLAINTIFF BENJAMIN BINDER'S RESPONSES AND OBJECTIONS TO DEFENDANT'S
INTERROGATORIES, SET ONE; CASE NO.: 3:23-CV-01318-JES-AHG

Exhibit A
00128

Trenton R. Kashima (SBN No. 291405)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
402 W. Broadway., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
tkashima@milberg.com

*Attorneys for Plaintiffs*
*and the Proposed Classes*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA SUNDERLAND and BENJAMIN BINDER individually and on behalf of all others similarly situated, | Case No. 3:23-cv-01318-JES-AHG |
| Plaintiffs, | **PLAINTIFF BENJAMIN BINDER'S VERIFICATION OF RESPONSES AND OBJECTIONS TO DEFENDANT PHARMACARE U.S., INC.'S INTERROGATORIES TO BENJAMIN BINDER, SET ONE** |
| v. | |
| PHARMACARE U.S., INC., a Delaware Corporation, and PHARMACARE LABORATORIES PTY LTD., an Australian company, | |
| Defendants. | |

I, Benjamin Binder, am Plaintiff in the above captioned matter, and believe, based on reasonable inquiry, that the responses and objections to Defendant Pharmacare U.S., Inc.'s Interrogatories to Benjamin Binder, Set One are true and correct to the best of my knowledge, information, and belief.

I verify under penalty that the foregoing is true and correct.

Executed on the 4th day of January, 2024.

*Benjamin Binder*
Benjamin Binder (Jan 4, 2024 08:45 PST)
Benjamin Binder

Exhibit A
00129

ClassAction.org Newsletter <newsletter@classaction.org>
Thu, Jun 29, 2023 at 12:14 PM

ClassAction.org

LAWSUIT NEWS & UPDATES

( ISSUE #246 )

JUNE 29, 2023

## AMEX and Business Owners, Elderberry Supplements and More

Welcome to the latest edition of the ClassAction.org newsletter. To kick things off, business owners may have been paying thousands of dollars more than they should have due to AMEX's potentially illegal rules against merchants surcharging customers or "steering" them toward cards with lower swipe fees. If you own a **small- to mid-sized business and you take American Express** credit cards, make sure to check out our first story to find out why you could be owed money back.

Then, we have investigations into the effectiveness of **Sambucol Black Elderberry supplements** and the potentially defective rear subframes in 2020-2022 **Ford Explorer STs** and 2021-2022 **Lincoln Aviator** vehicles.

We'll round things out with attorneys looking into a potential lawsuit on behalf of those who lost money on FLOW crypto tokens. And, as always, we have the latest class action settlements that you may be able to claim. Keep reading for the details.

– Ty Armstrong, Writer/**Community Manager**

## American Express Swipe Fees: Merchants May Be Owed Thousands



Attorneys working with ClassAction.org are gathering **small- to medium-sized business owners** to take legal action against **American Express**. They believe American Express's rules against merchants surcharging customers or "steering" them toward cards with lower fees are illegal and have **cost the typical small business owner tens of thousands of dollars.**

In a world free of AMEX's rules, merchants would be able to advertise that customers could save money by using less expensive credit cards or simply ask that shoppers use more business-friendly payment methods. Essentially, businesses would be paying far less in fees to credit card networks if not for AMEX's limitations.

Attorneys are now looking to help merchants take action via a process known as mass arbitration, which occurs when hundreds or thousands file individual arbitration claims against the same company over the same issue at the same time. While there are no guarantees, it's believed **merchants could be owed anywhere between $10,000 and $70,000.**

**If you're a merchant who accepts American Express and other credit cards, you may be able to** join others taking action. Head over to this page to learn more.

## Do Sambucol Black Elderberry Supplements Live Up to Their Advertisements?



Attorneys working with ClassAction.org are investigating whether Sambucol supplement maker **Pharmacare US** made false claims about the benefits of its black elderberry products or otherwise **violated federal labeling requirements.**

Specifically, the **Sambucol Black Elderberry** products claim to have been developed by a "world renowned virologist" and are promoted alongside statements touting their ability to support the immune system and keep people healthy. Research has called into question, however, **whether elderberry actually provides any benefit** to those suffering from the flu, colds or seasonal allergies.

So, if you purchased certain Sambucol Black Elderberry products in 2019 or later while living in **New York or California,** attorneys want to hear from you as part of their investigation.

Potentially, a class action lawsuit could **help consumers get back the money they spent** on the elderberry supplements at issue and force the manufacturer to relabel its products. You can find a list of potentially affected products and a chance to share your story over on **this page.**

IN OTHER NEWS



EXHIBIT 3
WIT: TT Binder
DATE: 2-20-24
Jeanine Curcione, CSR, RPR

Exhibit A
00130

Concerns are being raised about a potentially dangerous issue in 2020-2022 Ford Explorer STs and 2021-2022 Lincoln Aviators.

Specifically, attorneys have reason to believe these vehicles were **manufactured with inferior and unsafe rear subframes**, a structure that supports the axle, suspension and powertrain, and that this may lead to catastrophic vehicle damage and **put drivers at an increased risk of an accident.**

One lawsuit involving the Ford Explorer ST has already been filed, and attorneys want more drivers who've experienced rear subframe problems to come forward. A successful lawsuit **could help drivers recover money** for repair costs, time spent diagnosing and fixing their vehicles, loss of vehicle value, and more.

**Do you own or lease a 2020-2022 Ford Explorer ST or 2021-2022 Lincoln Aviator?** If your rear axle bolt fractured or you experienced symptoms like vibrating, grinding noises, lack of acceleration or components dropping from under the car, learn more here.

## Did You Lose Money on FLOW Crypto Tokens?

If you lost money on **FLOW crypto tokens** on a U.S.-based exchange, you aren't alone. Attorneys working with ClassAction.org have reason to believe that the **Flow blockchain's native token may have been illegally sold as an unregistered security,** leaving buyers without certain protections under federal securities laws.

The attorneys are now looking to file a class action lawsuit against FLOW issuer Dapper Labs alleging that the token's availability on crypto exchanges was illegal and financially harmed investors.

A class action lawsuit could help FLOW token buyers get back money they lost as a result of purchasing potentially unregulated securities. It could also possibly force FLOW issuer Dapper Labs to comply with federal securities laws.

If you **lost money as a result of buying FLOW** on a U.S.-based crypto exchange, such as Coinbase, FTX or Binance.US, head over to **this page** to help this investigation.

SETTLEMENTS

## New Settlements

**DIRECTV Telemarketing Calls**
This settlement covers people who received telemarketing calls from certain DIRECTV dealers.

**Wipe Out! Products**
You may be included in this settlement if you bought Wipe Out! Wipes, Wipe Out! Multi-Surface Wipes, or Wipe Out! Multi-Surface Decontaminant Spray on or before April 19, 2023.

**Artnaturals Hand Sanitizer**
If you bought a hand sanitizer product that was sold or otherwise distributed by Artnaturals, Inc. between January 1, 2015 through May 23, 2023, you may be included in this settlement.

## Settlements Ending Soon

- **Pork Pricing**
  (June 30, 2023)

- **Orlando Family Physicians – Data Breach**
  (July 1, 2023)

- **SuperCare Health – Data Breach**
  (July 5, 2023)

- **Sound Generations – Data Breach**
  (July 11, 2023)

- **Juul Products**
  (July 14, 2023)

**To view a complete list of settlements and to find out how you can file a claim, click here.**

FORWARD TO A FRIEND

Know someone who might be
interested in our newsletter?
Why not forward this email to them?

CONNECT WITH US



ClassAction.org

**Having trouble reading this?**
View it in your browser.

Please do not reply to this message.
Replies to this message are routed to an unmonitored mailbox. Thank you.

Unsubscribe from Newsletter
2 North Rd., Ste 2, Vilanes, NJ 07059

PLT 000001

**Exhibit A**
**00131**

https://www.classaction.org/elderberry-supplement-lawsuit - Page 21, 2023 at 9:44:29 AM EDT

ClassAction.org    LAWSUIT LIST    SETTLEMENTS    BLOG    LEARN

## Lawsuit Investigation Looks into Sambucol Black Elderberry Supplements Over Labeling, Health Claims

Last Updated on Nov 21, 2023

COMMENTS    SHARE

### AT A GLANCE

**This Alert Affects:**
People who purchased certain Sambucol Black Elderberry products in 2019 or later and live in New York or California.

**What's Going On?**
Attorneys working with ClassAction.org are investigating whether Sambucol supplement maker Pharmacare US made false claims about the benefits of its elderberry products or otherwise violated federal labeling requirements. If so, they may be able to get a class action lawsuit started on behalf of those who bought the products.

**How a Class Action Lawsuit Can Help**
If filed and successful, a lawsuit could help consumers get back some of the money they spent on the elderberry supplements. It could also force the manufacturer to relabel its products and revise or remove any claims found to be fraudulent.

**Which Products Are Being Looked Into?**
The full list can be found below.

**What You Can Do**
If you're a New York or California resident who bought one of the Sambucol Black Elderberry products listed below in 2019 or later, fill out the form on this page to find out how you can help the investigation.



### Get in Touch

First Name

Last Name

Email

Phone Number

Zip Code

Case Details

By submitting this form, I agree to the Terms, Disclaimer and Privacy Notice.

What happens when I fill out this form?

SUBMIT

Attorneys working with ClassAction.org would like to speak to people who purchased any of the following elderberry products:

- Sambucol Black Elderberry Original Syrup
- Sambucol Black Elderberry Sugar Free Syrup
- Sambucol Black Elderberry Syrup for Kids
- Sambucol Black Elderberry Effervescent Tablets
- Sambucol Black Elderberry Chewable Tablets
- Sambucol Black Elderberry Pastilles
- Sambucol Black Elderberry Daily Immune Drink Powder
- Sambucol Black Elderberry Advanced Immune Syrup



### About Us

ClassAction.org is a group of online professionals (designers, programmers and writers) with years of experience in the legal industry.

We work closely with class action and mass tort attorneys across the country and help with investigations into corporate wrongdoing.

MORE

They're investigating whether these products live up to their advertised claims and whether they were properly labeled under federal guidelines. If not, a class action lawsuit could help consumers get their money back.

As they work to determine whether a lawsuit can be filed, the attorneys need to hear from people who purchased the Sambucol Black Elderberry supplements to assist with their investigation.

If you're a New York or California resident and you purchased any of the Sambucol Black Elderberry products listed above in 2019 or later, fill out the form on this page to find out how you can help.

### Sign Up for Our Newsletter

New cases and investigations, settlement deadlines, and news straight to your inbox.

your@email.com

SIGN UP

## Elderberry Health Claims

Elderberry, also known as *Sambucus nigra*, has been widely used in supplements for its anti-inflammatory and antioxidant properties.

Manufacturers have made a wide range of claims on these supplements, including that they:

Exhibit A
00132

boost the immune system

- Shorten the duration of colds and the flu
- Reduce the severity of cold, upper respiratory tract infection and flu symptoms
- Defend against harmful bacteria
- Contain ingredients that are "clinically proven" to reduce cold and allergy symptoms

The Sambucol Black Elderberry products specifically claim to have been developed by a "world renowned virologist," and the supplements' packaging and advertising are rife with statements touting their apparent ability to support the immune system and keep people healthy. On the Sambucol website, Pharmacare states that its proprietary elderberry extract is "recommended by experts."

> Research has called into question, however, whether elderberry actually provides any benefit to those suffering from the flu, colds or seasonal allergies.

For instance, in April 2019, the University of Sydney reported that eating elderberries could help minimize flu symptoms. Weeks later, the Australian university had to retract its claim after a report by *The Sydney Morning Herald* revealed that the study was funded in part by Sambucol maker Pharmacare and involved no actual testing on humans or even mice.

Further, it has been reported as recently as February 2019 that no "large randomized controlled trials" have been carried out to date to determine whether elderberry is effective in treating or preventing the flu.

The National Institutes of Health has also spoken out about elderberry and its purported immune-boosting properties and made the following conclusions.

- Research has indicated that elderberry *may* reduce flu symptoms. This evidence, however, "is not strong enough to support its use for this purpose."
- A "few" studies have hinted that products containing elderberry *and other ingredients* could help with sinusitis; however, it is not clear whether elderberry plays any role in this, considering that the products also contain other herbs.
- Not enough information is available to show "whether elder flower and elderberry are helpful for any other purposes."
- Certain parts of the elderberry plant are considered toxic. Even if these parts are removed, the toxic substance could still be present on the plant and cause vomiting, nausea and diarrhea if consumed in large quantities.

## Sambucol Black Elderberry Reviews, Complaints

Several reviews have been posted online from consumers who've had issues with their Sambucol elderberry products or found that the supplements didn't provide the immune support they expected. A sample of these complaints can be seen below [sic throughout]:



Taste is fine. Shipping and delivery was fine. Whole family took this during this cold/flu season hoping to ward off some of the nasty thing going around. By all got sick anyhow—multiple times—with colds/flu that lingered on for weeks. Really hoped this would do something to help—especially considering all the great 5 star reviews. With the high price I can't justify buying this without seeing results."
— KRISTY SHAFFER, SAMBUCOL BLACK ELDERBERRY ORIGINAL SYRUP REVIEW, AMAZON.COM



I ordered this with high hopes since it's the "original" Elderberry Syrup, but sadly, it tasted great (almost all sugar) but didn't do a thing for my cold. I might as well drank water and saved the high cost of this overpriced "cure." With medication, they really milk you with the product, it saving you so take it 4x a day! I suspect at a price so you can order more quickly (and Buy even cash in more). No, I had like with a Zicam Spray and Oscillicum but this stuff is like taking a sugar pill"
— ESOMAC, SAMBUCOL BLACK ELDERBERRY ORIGINAL SYRUP REVIEW, AMAZON.COM

Exhibit A
00133



My husband and I both tried this. Wish we could have been in the 10% that Sambucol lost we control. I tried it as maintenance, tried it as coming down with something, tried it when sick – no help."

KITTYKAT 'SAMBUCOL BLACK ELDERBERRY ORIGINAL SYRUP REVIEW, AMAZON.COM



Did not work for my kids. I decided to stick with it for 3 days to see if it was me. After 3 days of use, it did nothing. My girls still had congia and runny noses"
– MICHELLE, SAMBUCOL BLACK ELDERBERRY FOR KIDS SYRUP REVIEW, AMAZON.COM



"didn't do anything really.. my little are get a really bad cough and cold 6 weeks after starting this, so it didn't prevent it help"
– ZB, SAMBUCOL BLACK ELDERBERRY SYRUP FOR KIDS REVIEW, AMAZON.COM



I did not like the Sambucol Black Elderberry Pastille Throat Lozenges at all. They tasted like hard rubber. They did nothing for me. I just absolutely hated them"
– VICTORIAK, SAMBUCOL BLACK ELDERBERRY PASTILLES REVIEW, CVS.COM

If Pharmacare is making misleading claims about the benefits of its elderberry products – or is otherwise improperly labeling its supplements – the company could potentially be held accountable through a class action lawsuit.

## How a Class Action Could Help

Class action lawsuits, if filed and successful, could help consumers get back the money they spent on Sambucol Black Elderberry supplements. It's possible that consumers paid more than they would have had they known the truth about the supplements they were taking. Further, the manufacturer could be forced to relabel its products and change any claims determined to be fraudulent.

## What You Can Do

If you bought any of the Sambucol Black Elderberry products listed above in 2019 or later and you live in New York or California, fill out the form on this page.

After you get in touch, an attorney or legal representative may reach out to you directly to address your concerns and explain how you may be able to help get a class action lawsuit started. It costs nothing to get in touch, and you're not obligated to take legal action if you don't want to.

Before commenting, please review our comment policy.

⟳ LOAD COMMENTS

The information submitted on this page will be forwarded to Milberg Coleman Bryson Phillips Grossman, PLLC, who has sponsored this investigation.

Search ClassAction.org

ClassAction.org

View All Cases
Settlements
Report Defective Firms
About Us
Sitemap

Terms of Use
Disclaimer
Privacy Notice
Comment Policy

STAY CONNECT
Sign Up For
Our Newsletter

Your email here         SUBSCRIBE

©2008 - 2022 ClassAction.org

GET STARTED

5

Exhibit A
00134