1               UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3  LINDA SUNDERLAND, individually  )
    and on behalf of all others   )
4  similarly situated; BENJAMIN   )
    BINDER, individually and on behalf)
5  of all others similarly situated, )
                         )  No. 23-CV-01318-JES-AHG
6        Plaintiffs,     )
                         )
7  v.                   )  January 15, 2025
                         )
8  PHARMACARE U.S., INC., a Delaware )
    Corporation; PHARMACARE       )
9  LABORATORIES PTY LTD., an     )
    Australian company,       )
10                     )  Courtroom 4B
         Defendants.     )
11  _____)  San Diego, California

12

13              TRANSCRIPT OF PROCEEDINGS
                (Motion Hearing)

14

15   BEFORE THE HONORABLE JAMES E. SIMMONS JR., DISTRICT JUDGE

16

17

18

19

20

21  COURT REPORTER:       AMANDA M. LeGORE
                    RDR, CRR, CRC, FCRR, CACSR
22                  U.S. District Court
                    333 West Broadway, Suite 420
23                  San Diego, CA 92101
                    amanda_legore@casd.uscourts.gov
24
  Reported by Stenotype:  Transcribed by Computer
25

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:        TRENTON KASHIMA
                               Milberg Coleman, et al., PLCC
 3                             401 West C Street, Suite 1760
                               San Diego, CA  92101
 4                             (714)651-8845
                               tkashima@milberg.com
 5


 6
     FOR DEFENDANTS:           GIOVANNA FERRARI
 7                             Seyfarth Shaw LLP
                               560 Mission Street, Suite 3100
 8                             San Francisco, CA  94105
                               (415)397-2823
 9                             gferrari@seyfarth.com

10

11                            JOSEPH ORZANO
                              Seyfarth Shaw LLP
12                            Two Seaport Lane, Suite 1200
                              Boston, MA  02210
13                            (617)946-4800
                              jorzano@seyfarth.com
14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Wednesday, January 15, 2025; 1:06 p.m.)

2

3                    P R O C E E D I N G S

4

5          THE CLERK:  Calling matter number 2, 23-CV-1318,

6   Sunderland, et al., versus PharmaCare U.S., Inc., et al., for a

7   motion hearing.

8          THE COURT:  All right.  Good afternoon, everyone.

9          ATTORNEY KASHIMA:  Good afternoon, your Honor.

10         ATTORNEY FERRARI:  Good afternoon.

11         THE COURT:  I don't need appearances.  I'm pretty well

12  versed with all of the parties at this point.

13         I do want to apologize to each of you for the delay in

14  the hearing.  I was in a jury trial this morning, and we just

15  finished with closing arguments this morning.

16         And at some point I may need to break this hearing

17  momentarily because the jury will be returning from lunch.

18  But -- I do want to apologize.  But I thank you both for your

19  willingness to be flexible, so we can have this hearing today.

20         ATTORNEY FERRARI:  Understood.  Thank you.

21         ATTORNEY KASHIMA:  No problem, your Honor.

22         THE COURT:  All right.  So this case is set for a

23  motion for class certification.  I reviewed the plaintiffs'

24  motion for class certification with each of the attached

25  exhibits.  I reviewed the response in opposition with the

1    attached exhibits.  The declaration with the response --

2    regarding the response with the attached exhibits.  The

3    defendants' objections to plaintiffs' evidence in support of

4    the motion for class cert., with the attached exhibits.  The

5    plaintiffs' response to the defendant's objections, as well as

6    the reply brief in this case.

7         So, tentatively, the Court's tentative order is to

8    grant the motion for class certification.  Obviously, the issue

9    of the viability of the charges in the cause of action --

10   frankly, is a separate issue which, obviously, the parties will

11   get into at another future date.  But that's the Court's

12   tentative ruling.

13        I'll hear from the parties.  And then the Court will

14   take this matter under submission and, obviously, draft a

15   written order.

16        It's the plaintiffs' motion.  Whenever you're ready.

17        ATTORNEY KASHIMA:  Good afternoon, your Honor.

18        Of course, avoiding snatching defeat from the jaws of

19   victory, hearing the tentative, plaintiff doesn't have any

20   further arguments unless there's specific points that the Court

21   would like us to address.

22        Specifically because in this case -- this case is very

23   similar to the Corbett matter, as you know, that has already

24   gone through the class certification process.  And we think for

25   the same reasons your Honor granted class certification in that

1   case, this case should have a similar result.  Particularly

2   because this is a prototypical class action.

3         We have a product that has a misrepresentation on the

4   label of the product, so each class member was exposed to that

5   misrepresentation.  The formulation of the product is the same.

6   The evidence that we'll present to prove that the product was

7   not virologist developed is the same, and pretty much

8   uncontroverted by the parties at this point.

9         The parties all agree that the method of production

10   for the elderberry -- black elderberry extract in the products

11   has been around for centuries.  The parties agree that it's no

12   chemically different than any other elderberry extract or juice

13   and that the product just contains elderberry juice.  There's

14   nothing virologist developed about this.

15         Additionally, the plaintiffs offer a conjoint analysis

16   to prove damages in this case which wouldn't be subject to the

17   subjective interpretation of individual class members.

18   Instead, it looks at what the market reacts to these

19   misrepresentations and how that would affect the market price

20   as a whole.

21         So, accordingly, because this is a prototypical class

22   action that has already been certified in another case,

23   plaintiffs believe that certification should follow here too.

24         THE COURT:  All right.  Thank you.

25         And on behalf of the defense?

1          ATTORNEY FERRARI:  Thank you, your Honor.

2          The two classes that were requested for certification

3    were a California class and a New York class.  And it's a

4    California class of all purchasers.

5          This Court has already -- in the same time period, for

6    the same products -- certified a California class of all

7    purchasers.  So -- and what their experts do not do and what

8    they have not set forth is determine how -- how you determine

9    who is in the Corbett class versus the Sunderland class.

10          And, in fact, Mr. Binder -- who testified to many of

11    the same claims that are at issue in the California Corbett

12    disease claim class -- he didn't opt out, out of Corbett.  So

13    now what?  He's a member of both classes?

14          How can he be a representative of this class here, in

15    this case, when his contention here on -- even on the NDI is

16    that it's just juice; therefore, it doesn't need an NDI.  And

17    he's also part of the NDI class in Corbett.

18          You've already certified this class in California.

19    And they've already issued a price premium for the same

20    products in the Corbett case through their experts.  And they

21    have not stated how they would distribute the price premium for

22    one of the statements, really.  Because if we're looking at the

23    claim here in Sunderland, it's just one of the -- one of the

24    three that are bundled together in Corbett in the California

25    class.

1    So respectfully, your Honor, I don't know how you

2  certify yet another California class of all purchasers for the

3  same time period for the -- at least one of the same statements

4  and for a theory that's directly in contradiction to the NDI

5  class in California, that's already been certified.  So I think

6  as -- as a first step that should be considered.

7    And, in fact, on numerosity, you can't actually

8  determine how many people are in these -- both classes,

9  California and New York.  Because you would have to, I guess,

10  at least in California, back out the Corbett class members.

11  And, remember, we -- we asked for an opt-in, and we didn't get

12  one.  So there's only an opt-out.  So I don't know how this

13  Court determines who's in which of those California all

14  purchaser classes.

15    Which means it's not ripe for class certification.

16  And, in fact, if class is certified here for Binder, then I

17  think it means the NDI class for Corbett needs to be

18  decertified because they're inconsistent theories.

19    So I think it causes a number of problems:  That, one,

20  don't comport with Rule 23.  And then raise some -- some

21  conflicts issues, which I know the Court is fully aware of.  Or

22  it's been briefed.  Has -- has received a number of briefs on.

23    So turning to the New York class, the law is very

24  clear that what needs to be certified is what needs to be pled.

25  And, frankly, in their reply brief, plaintiffs agree with that.

1    There's a wide range of case law on that: *Brown versus*

2    *American Airlines*, *Alvarez versus Office Depot*, *Care At Home,*

3    *Simington*, and *Anderson*.   And *Petrochina*, among others.

4        And -- and so I just thought it might be helpful for

5    the Court to go back into what's pled in the complaint and

6    what's listed as the common questions of law and fact, and

7    what's listed as the actual warranty and the breach.

8        So paragraphs 5, 12, 17, 35, 37, 38, 39, 40, 41

9    through 44, 54 -- most importantly on the common questions of

10    law and fact -- all talk about all three claims bundled

11    together.   And it shouldn't be class certification on ambush.

12    So all of those claims in the pleadings are virologist

13    developed, unique, and proprietary.   And then the theories set

14    forth by Binder, Sunderland, and the expert who tested

15    something that's never been said on our labels, are all

16    different than what's pled.

17        So certifying a class on that goes against the weight

18    of case law -- the overwhelming case law and the agreement that

19    the plaintiffs have asserted as well, that it needs to follow

20    the pleadings.

21        And so when you look at what Ms. Sunderland testified

22    to, it's not really a liability issue.   She is required to

23    prove causation and injury at the class stage.

24        She testified that she continued to take Sambucol.

25    She testified that she -- excuse me.   I want to get the

1    language correct.

2         THE COURT:  Um-hmm.

3         ATTORNEY FERRARI:  Was relying on immune support,

4    which is something that's not alleged in these pleadings.  She

5    never mentions throughout unique or proprietary or patented.

6    The package that she sets forth doesn't have any of the

7    language that's asserted at all with respect to the pleading.

8         In fact, she testified that all of the product she

9    purchased looked like the product that is attached to her

10   deposition, 88-2 docket, none of which make any of these

11   statements.

12        And she doesn't know whether or not -- she doesn't

13   contend that the brand or the packaging was virologist

14   developed or not.  And that's -- that's directly at issue in

15   this case.

16        And if you look at paragraph 54 of the complaint, it

17   talks about the common questions of law and fact, meaning

18   including unique and proprietary.

19        None of that evidence has been brought forward here.

20   Not by their -- not by their expert and not by the plaintiffs.

21   So she's not -- especially for due process concerns and for

22   current concerns, protecting the class.

23        If she were to come up here on the stand and I would

24   have to impeach her as the person who's purportedly protecting

25   this class -- based on her multiple declarations, deposition

1    testimony, and the shifting statements and that -- would she be

2    able to represent the class that's pled?  She doesn't include

3    all of those statements.  They're changing statements, and

4    it's -- it's not what's pled.

5         So, frankly, the fact that in the Corbett case this

6    Court certified a class that had all three statements

7    together -- virologist developed, supports immunity, and

8    scientifically tested -- for all purchasers, that they're now

9    bringing classes in California and New York that includes one

10   of those same statements, proves that individual issues

11   predominate.

12        You would have to ask each of these purchasers:  Was

13   it just virologist developed?  If I'm even to back away from,

14   you know, what was pled in the Sunderland case.

15        Was it just virologist developed?  Or was it all three

16   together?  I mean, this Court has already said, based in

17   Corbett, that it had to be all those three together, based on

18   the same expert that comes here and tests something entirely

19   different.

20        You know, what he did was he stripped the statement

21   out of the packaging and labeling.  Right?  So the question

22   was, you know, Sambucol trademarked brand developed by a

23   world -- I'm sorry.  That's the language.  Okay?  And he put

24   the word in this.

25        Well, that's -- it's very important what the actual

1    label says in a labeling case.  And plaintiffs agree with that.

2    They say we should read it all in context.  Well, this could be

3    anything.  It could be the box.  It could be the packaging.  It

4    could be what's inside of it.  It could be the extract.  It

5    could be the product as a whole.  Nobody here -- what I will

6    say is nobody here disputes that Dr. M trademarked and

7    developed the brand.  Right?  So they cannot even prove

8    falsity.

9        So they haven't proven reliance because they didn't

10   have a proper expert on perception, et cetera.  They haven't

11   figured out how to cull the damages between the Corbett class

12   and the Sunderland class.  And, most importantly, what they

13   tell you throughout their reply brief -- it's like, well, in --

14   for the breach of a warranty -- which it -- they say, the

15   warranty -- the New York warranty and the California warranty,

16   the breach is that it was false.  That the statement was that

17   it was developed by a virologist.

18       Well, they haven't proven that.  They've only put in

19   front of you a little bit of evidence that they say supports

20   this point.  And it's a statement we made in our sanctions

21   opposition that doesn't say what they say it says.  And then

22   rogs that are -- rog responses in a different case.  And that

23   is not a judicial admission, and it can't be used in this case.

24       So they have zero evidence of common-wide proof of

25   falsity and causation, which needs to be proven in both New

1    York and California.

2              And let me just check my notes, so as not to belabor

3    points already before the Court.

4              (Pause, referring.)

5              ATTORNEY FERRARI:  Oh, yes.  And the last thing I

6    would like to say is we served a subpoena in January of 2024,

7    and we went through a motion practice.  And that was fully

8    briefed in March of 2024.  And it -- the ruling on that motion,

9    that's been sitting with Judge Goddard for I think half a

10   year -- so nine months, depending on -- I can't remember when

11   it was transferred from New Jersey.  We would like to leave

12   open any ruling based on a ruling there.  And our right to ask

13   for reconsideration of any ruling, if we don't -- if we would

14   like you to hear it, Judge Simmons.

15             So, with that, I would submit to the Court.

16             THE COURT:  And thank you.  I'm glad you brought that

17   up because I actually had a discussion about that, yesterday.

18   So I know that ruling has been fully briefed since July of last

19   year.  So I don't have an update yet, but I was just having

20   that discussion with my law clerks.  And, obviously, I would

21   hopefully get an update from Judge Goddard as to when we'll get

22   a ruling in that case.  And I'll give the plaintiff a chance to

23   respond to some of the issues raised today.  I think they're

24   important issues, especially in regards to Mr. Binder.

25             But I anticipate that I will not issue a ruling on

1   this class cert. motion until that motion -- that subpoena

2   issue is cleared up.  And because -- I say that because if I

3   issue a ruling prior to that subpoena clearing up and then this

4   ruling is issued 30 days afterwards, then normally, under

5   normal procedure, you cannot request to reopen or to relitigate

6   the issue.  So I do think it's important to at least have a

7   ruling on that motion before I finalize a ruling here.  And

8   then the parties, obviously -- if there is a need for

9   additional briefing, I will welcome both parties an opportunity

10  to provide that, if that need arises.  But I think it's best to

11  give a fully informed ruling, where the parties are fully able

12  to brief any issues that come up.

13          But, yes, any response?

14          ATTORNEY KASHIMA:  Thank you, your Honor.  Let me just

15  address that last point first.

16          We have no objection to your Honor waiting for, you

17  know, a pertinent ruling on an ancillary matter.  But we do

18  believe it's an ancillary matter.

19          The subpoena is seeking internal documents regarding

20  basically our communications with our client.

21          And the facts of this case are well known about --

22          THE COURT:  Well, that ruling -- that issue is not

23  before me.  So you don't need to argue that motion before me

24  because I'm not -- I'm not ruling on that issue.

25          ATTORNEY KASHIMA:  No problem.  We just -- we don't

1    think there's going to be additional information gleaned,

2    regardless of which way the ruling goes, that would affect your

3    decision.  But we do understand that class certification

4    demands a rigorous analysis, and your Honor wants to see all of

5    the evidence before moving forward.

6            Much of what I heard defense counsel mention goes to

7    the merits of the case.  Whether we have evidence for this,

8    whether we have evidence for that, whether something is a

9    judicial admission.  For example, the interrogatories are at

10   issue in this case because they were subject to a deposition

11   that -- it was at issue at this case.

12           THE COURT:  I apologize for interrupting.  I'm sorry.

13   I just got a note that my jury is here.

14           So I am going to pause the proceeding.  I apologize.

15   I'll give you an opportunity to fully be heard.  You don't --

16   I'm going to leave the courtroom, so they can come in with my

17   law clerks.  And they'll go into the jury room.  I'll just ask

18   that the parties not communicate with them in any manner.

19           And -- I'm sorry.  Are you going to ask a question?

20           ATTORNEY KASHIMA:  Oh, I just wanted to ask, do you

21   want us to go behind the bar or leave the room?

22           THE COURT:  I don't need you to go behind the bar.

23   But just stay where you are, and it will be fine.

24           I just want to make sure that they don't -- I don't

25   want to imply anything by me being here.  So I'm just going to

1    step off the bench while they enter the jury room, and then

2    I'll return shortly.

3              All right.  Thank you.

4              (Recess taken at 1:23 p.m.)

5              (Resuming at 1:24 p.m.)

6              THE COURT:  All right.  Thank you.  We're back on the

7    record.  Both parties are present.

8              I apologize for that inconvenience.  But thank you,

9    once again, for your patience and flexibility.

10             I'm sorry.  I interrupted your argument.

11             ATTORNEY KASHIMA:  I'm sorry, your Honor.

12             I believe where I left off is a lot of the points

13   brought up by defense counsel go to the merits of this action.

14   You know, whether something can be proven false.  However,

15   there is still common evidence because we know how the product

16   was formulated.  It's the same for all of the products.  We --

17   and this is true of both cases.  Not just Sunderland but also

18   Corbett.

19             THE COURT:  And I agree with you about the merits.  So

20   that's -- like I said at the outset, a class certification --

21   the Court isn't issuing a ruling on the merits because,

22   obviously, there's still outstanding discovery issues that have

23   been -- issues that the parties haven't had a chance to fully

24   brief the merits before Court.

25             My concern is in regards specifically with Mr. Binder.

1    He is a representative in the Corbett case, from what I'm

2    hearing, and a representative in the Sunderland case; with

3    conflicting theories.

4          And which theory he would rely on -- if he relied on

5    both or if he relied on one theory or the other in order to

6    purchase this product, that goes to whether he can be a class

7    representative or a party representative for either or one or

8    both classes or not.

9          ATTORNEY KASHIMA:  So Mr. Binder is not a class

10   representative in the Corbett case.  He's an absent class

11   member.

12         THE COURT:  Okay.

13         ATTORNEY KASHIMA:  And as an absent class member in

14   California under the U.C.L., F.A.L., or C.L.R.A., he doesn't

15   have to prove reliance on any claim.  He doesn't have to prove

16   individual damages.  So that is completely separate.

17         And there is no law that says that two class actions

18   can't go simultaneously on the same set of products.

19         THE COURT:  I agree with you.  But when you're saying

20   that he relied on different theories to purchase the product,

21   then -- then that creates an issue.

22         ATTORNEY KASHIMA:  Well, again, because he's an absent

23   class member, he doesn't have to prove reliance in the Corbett

24   matter.

25         Additionally, I think a lot of this conversation about

1    the NDI claim is a bit overblown.  As --

2             THE COURT:  Please continue.

3             ATTORNEY KASHIMA:  As the Court is aware, plaintiff

4    has already offered to dismiss the NDI claims in -- in Corbett

5    twice, now.

6             And I imagine -- we were not going to be opposing the

7    motion for summary judgment.  We'll probably ask for a finding

8    of facts on that claim, but we're not going to be opposing the

9    motion for summary judgment.

10            So as far as any conflict between the NDI class in

11   Corbett and any class in Sunderland, it's just a theoretical.

12   It doesn't exist anymore because we've already offered to

13   dismiss that claim.

14            For the purposes of -- the claim in Sunderland was

15   always brought as an alternative claim, based on what we would

16   find in the evidence.  And what we found in the evidence is

17   it's not an NDI.  It's just not virologist developed.

18            Now, moving on to the price premium.  Defense counsel

19   mentioned --

20            THE COURT:  Excuse me for a second.

21            (Pause, Court and clerk conferring.)

22            THE COURT:  All right.  So --

23            (Pause, Court and clerk conferring.)

24            THE COURT:  Sorry.

25            ATTORNEY KASHIMA:  No problem at all, your Honor.  So

1    moving back to the price premium, one of the issues is -- is

2    that somehow these cases are not going to be able to find a

3    price premium because of the multiple issues that are being

4    tested.  But that's exactly what conjoint analysis is designed

5    to test.

6           If you look at Mr. Weir's declaration, he notes that

7    conjoint analysis tests different attributes of the product.

8    Matter of fact, it tests a lot of attributes of the product to

9    find what the part value for each of those attributes are.

10          So, for example, we've already found what -- the part

11   value of the virologist developed claims, as long as -- as well

12   as the other claims as well.  Because you can find that by

13   looking at how people value each of those claims in the

14   conjoint survey.

15          Basically how a conjoint survey works is you just take

16   out or remove certain claims and add other claims to see how

17   people changed the value of the product while looking at it.

18          And so the fact that we're using conjoint analysis

19   makes it actually the perfect damages model for this type of

20   situation because we can separate out the value assigned to

21   these different misrepresentations, alleged misrepresentations

22   in each of the claims.

23          So we don't see that there's going to be any issue

24   with our damage model -- our conjoint damage model in either of

25   the cases; in either Sunderland or Corbett.

1          THE COURT:  Okay.  Well, I want to thank you both.

2    Like I said, I'll take this matter under submission.  I will

3    delay with issuing a written order until at least after we have

4    a ruling in the -- the third-party subpoena that was issued

5    that is before Judge Goddard currently.  And I will try to

6    get -- I will try to get an update from her as to when that

7    ruling would happen and will it occur.

8          I don't know if I will be able to but I will try to

9    get an update from her.  But, at the very least, I will delay a

10   ruling.  And when we do get the ruling, I'm just going to ask

11   the parties just to file a status report with the Court,

12   indicating whether either side is requesting additional

13   briefing or not, based on the ruling in that case.

14         So once I have that status update from the parties, I

15   can know whether I -- we need to give additional briefing or

16   whether the Court will just rule on the pending motion.

17         Do either party have any other questions or any other

18   concerns you want to address today?

19         ATTORNEY FERRARI:  Your Honor, I cited a number of

20   cases on the class certification needing to conform to the

21   pleadings, but I don't know if they are in -- all in the

22   briefing.

23         May I, for the record, provide case cites?  Or is

24   there some easier way to do that?

25         THE COURT:  Absolutely.  That's fine.

1          ATTORNEY FERRARI:  *Brown versus American Airlines*, 285

2    FRD 546, 560.  *Alvarez versus Office Depot*, 2019 Westlaw

3    2710750.

4          I don't know how to say the first name of the next

5    case.  N -- *Nqadolo versus Care at Home*, 2024 Westlaw 1330761.

6    *Simington versus Lease Finance Group*, 2012 Westlaw 6681735.

7    *Anderson versus U.S. Department of Housing and Urban*

8    *Development*, 554 F.3d 525.  And *Klein versus Petrochina*,

9    664 F.Appendix 13, Second Circuit, 2016.

10          THE COURT:  All right.  Thank you.

11          Anything else on behalf of the plaintiff?

12          ATTORNEY KASHIMA:  I haven't reviewed those cases, so

13   I can't offer anything on that.  But plaintiffs would assert

14   that, you know, as the master of their own complaint and in

15   their class certification motion, that both the motion and the

16   complaint are consistent with each other.  That our claims at

17   issue here is whether the products are virologist developed.

18          THE COURT:  All right.  Thank you.

19          So, once again, I really appreciate your flexibility,

20   I hope you both have a wonderful afternoon.

21          ATTORNEY KASHIMA:  Thank you, your Honor.

22          ATTORNEY FERRARI:  Thank you, your Honor.

23          THE CLERK:  This court is now in recess.

24          (Conclusion of proceedings at 1:32 p.m.)

25

1

2                                    --oOo--

3

4    I certify, by signing below, that the foregoing is a correct
     stenographic transcript of the oral proceedings had in the
5    above-entitled matter this 18th day of January, 2025.  A
     transcript without an original signature or conformed signature
6    is not certified.  I further certify that the transcript fees
     and format comply with those prescribed by the Court and the
7    Judicial Conference of the United States.

8                    /S/ Amanda M. LeGore

9          AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25