No. _____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

LINDA SUNDERLAND and BENJAMIN BINDER, individually
and on behalf of all those similarly situated,

*Plaintiffs-Petitioners,*

v.

PHARMACARE U.S., INC.,

*Defendant-Respondent*

On Appeal from September 26, 2025 Order Granting in Part and
Denying in Part Motion for Class Certification
United States District Court, Southern District of California,
Honorable James E. Simmons, Jr.
Civil Case No. 3:23-cv-01318-JES (AHG)

**PETITION FOR PERMISSION TO APPEAL UNDER FEDERAL
RULE OF CIVIL PROCEDURE 23(F)**

Trenton R. Kashima, Esq.
BRYSON HARRIS SUCIU &
DEMAY PLLC
402 W. Broadway, Suite 1760
San Diego, CA 92101
Tel.: (212) 946-9389
tkashima@brysonpllc.com

Martha Geer
BRYSON HARRIS SUCIU &
DEMAY PLLC
900 W. Morgan Street
Raleigh, NC 27603
Tel.:  (919) 600-5000
mgeer@brysonpllc.com

*Attorneys for Plaintiffs-Petitioners*

## <u>TABLE OF CONTENTS</u>

PAGE:

TABLE OF CONTENTS.................................................................... i

TABLE OF AUTHORITIES ............................................................ ii

INTRODUCTION .............................................................................1

QUESTION PRESENTED .................................................................3

BACKGROUND TO THE PETITION ...............................................3

JURISDICTIONAL STATEMENT ..................................................14

STANDARD FOR RULE 23(F) PETITIONS ..................................14

REASONS FOR GRANTING THE PETITION................................15

    A.    The Decision Below Concluding that Res Judicata Bars
    Plaintiff Binder's as well as Putative Class Members'
    California Claims Constitutes a Death-Knell Situation
    Independent of the Merits of the Underlying Claims. .........15

    B.    The District Court's Class Certification Decision is
    Questionable and Presents an Unsettled and Fundamental
    Issue of Law Relating to Class Actions. ...............................18

CONCLUSION................................................................................24

CERTIFICATE OF COMPLIANCE................................................25

CERTIFICATE OF FILING AND SERVICE .................................26

APPENDIX.....................................................................................28

i

# TABLE OF AUTHORITIES

PAGE:

## Cases

*Carr v. Walmart, Inc.*,
    No. 5:21−CV−01429−AB−KK, 2023 WL 9420846 (C.D. Cal. Nov. 27,
    2023) ................................................................................................... 23

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005) .................................................... 14, 15, 24

*Corbett et al. v. PharmaCare U.S., Inc.*,
    No. 3:21-cv-00137-JES (S.D. Cal.) .............................................. passim

*Hiser v. Franklin*,
    94 F.3d 1287 (9th Cir. 1996) ............................................................. 22

*Microsoft Corp. v. Baker*,
    582 U.S. 23, 187 S. Ct. 1702, 198 L. Ed. 2d 132 (2017) ..................... 14

*Molock v. Whole Foods Mkt. Grp., Inc.*,
    952 F.3d 293 (D.C. Cir. 2020) ........................................................... 21

*Ridgeway v. Walmart*,
    946 F.3d 1066 (9th Cir. 2020) ........................................................... 16

*Rodriguez v. Taco Bell Corp.*,
    No. 1:13-CV-01498-SAB, 2013 WL 5877788 (E.D. Cal. Oct. 30, 2013)
    .......................................................................................................... 22

*Sharpe v. GT's Living Foods, LLC*,
    No. CV 19-10920 FMO (GJSX), 2024 WL 4101910 (C.D. Cal. June 21,
    2024) ................................................................................................... 23

*Smith v. Bayer Corp.*,
    564 U.S. 299, 131 S. Ct. 2368, 180 L. Ed. 2d 341 (2011) .. 16, 18, 19, 21

*Standard Fire Ins. Knowles*,
    568 U.S. 588, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013) ................... 21

*Taylor v. Sturgell,*
    553 U.S. 880, 128 S. Ct. 2161 L. Ed. 2d 155 (2008) ............................ 18

*Twigg v. Sears, Roebuck & Co.,*
    153 F.3d 1222 (11th Cir. 1998) ......................................................... 20

*Valentine v. WideOpen W. Fin., LLC,*
    288 F.R.D. 407 (N.D. Ill. 2012) ........................................................ 19

## Statutes

21 U.S.C. § 343(r)(6) ..................................................................................... 4

28 U.S.C. § 1292(b) ...................................................................................... 14

Cal. Bus. & Prof. Code § 17200 *et seq*. ..................................................... 9

Cal. Bus. & Prof. Code § 17500 *et seq* ...................................................... 9

Cal. Civ. Code § 1770 *et seq* ...................................................................... 9

N.Y. Gen, Bus. Law § 349 ........................................................................... 9

N.Y. Gen, Bus. Law § 350 ........................................................................... 9

## Rules

Fed. R. Civ. P. 8(c)(1) .................................................................................. 21

# INTRODUCTION

This putative class action alleges that defendant PharmaCare U.S., Inc. falsely advertised that its elderberry supplement products were made with a unique elderberry extract formulated by a virologist and used in scientific studies when, in fact, all PharmaCare used was common elderberry juice. While ordinarily a class certification decision in this type of case would be a routine decision not meriting an interlocutory appeal, defendant PharmaCare has pursued a novel—and one would have thought unsupportable—strategy that makes an interlocutory appeal appropriate.

Towards the end of discovery in an earlier-filed class action, *Corbett et al. v. PharmaCare U.S., Inc.*, No. 3:21-cv-00137-JES (S.D. Cal.), PharmaCare admitted—in order to evade liability for the claims in that case—that the elderberry juice used in its products was common juice and nothing special. When the *Corbett* Plaintiffs—representing a California class and a Missouri class—sought to amend the complaint to add a misrepresentation claim based on this new disclosure, PharmaCare successfully opposed it. And then, after Plaintiffs Linda Sunderland and Benjamin Binder filed this class action asserting the newly discovered

1

misrepresentation claim and reasonably sought to consolidate the two class actions (both pending before the same judge), PharmaCare opposed consolidation on the grounds that Plaintiffs made "no effort to identify any common question of fact or law justifying consolidation *because none exist.*" ECF 71 p. 26 (emphasis added).

Then, a year later, PharmaCare did an about-face. After the District Court entered summary judgment in *Corbett* on the California claims—claims that PharmaCare had previously asserted had no common question of fact or law with the claims in this case—PharmaCare filed a Notice of Supplemental Authority citing the District Court's own *Corbett* opinion. PharmaCare argued that class certification in this case should be denied based on *res judicata* arising out of the *Corbett* summary judgment order. The District Court, citing only one decision not involving class certification and without requesting supplemental briefing, denied class certification of the California class based on *res judicata* while granting class certification of a New York class.

Since the *Corbett* decision is on appeal to this Court and one of the issues will be whether the District Court erred in denying the motion to amend to add the claims that were ultimately asserted in this case,

allowing an interlocutory appeal of the order denying class certification based on *Corbett* would ensure consistency between the decisions in the two cases and resolve important overarching issues involving class certification.

## QUESTION PRESENTED

Did the District Court err in denying class certification of a California class based on *res judicata*—a merits issue—arising out of the District Court's decision granting summary judgment in a second earlier-filed class action limited to factual and legal claims not asserted in this case? Is the answer to this question affected by the fact that PharmaCare (1) opposed amendment of the complaint in the earlier-filed class action to add the California claims asserted in this case and (2) also opposed consolidation of the two cases on the grounds that the facts and legal claims in the two cases were entirely different?

## BACKGROUND TO THE PETITION

*Corbett* is a class action pursued by named plaintiffs Montinqueno Corbett and Rob Dobbs against PharmaCare U.S., Inc., a marketing company that purchased the preexisting "Sambucol" brand of elderberry dietary supplements. Mr. Corbett sought to represent a class of

California purchasers and Mr. Dobbs sought to represent a class of Missouri purchasers. Following motion to dismiss briefing—but prior to class certification—the *Corbett* Plaintiffs proceeded with two separate underlying theories against PharmaCare.

First, the *Corbett* Plaintiffs asserted that PharmaCare advertised Sambucol's active ingredient as being a unique elderberry extract, and that "[b]y using a proprietary method of extraction, only Sambucol can guarantee consistent, immune supporting properties in every serving." ECF 45 ¶ 6. The Plaintiffs contended that if this marketing were true, the elderberry products contained a new dietary ingredient that had not been authorized by the FDA, rendering the products illegal (the "NDI Claim"). *Id.* ¶¶ 22-37.

Second, with respect to a subset of the Sambucol products, the *Corbett* Plaintiffs challenged PharmaCare's advertisements that those products are "virologist developed," "scientifically tested," and provide "immune support." *Id.* ¶¶ 40-56. The *Corbett* Plaintiffs contended that these representations misled reasonable consumers into believing that those Sambucol products can mitigate or prevent a disease or class of diseases. 21 U.S.C. § 343(r)(6) (the "Disease Claim"). *Id.* ¶ 40. Such

marketing is unlawful under the federal Food, Drug and Cosmetic Act and parallel state statutes.

Despite PharmaCare's uniform marketing of its products as being made with a unique elderberry extract developed by a virologist, PharmaCare finally disclosed at the end of discovery that that the black elderberry extract marketed as "unique" and "proprietary" was just ordinary elderberry juice despite its products' labeling otherwise. *See Corbett,* Oct. 31, 2022 Hearing Transcript, ECF No. 119, at pp. 28:13-25, 29:19-21. Based on this unexpected admission, which was confirmed through additional discovery, the *Corbett* Plaintiffs sought leave to file a Third Amended Complaint in May 2023 alleging that PharmaCare falsely represented that its elderberry juice was "unique" and a "proprietary" extract developed by a virologist when it was not. ECF No. 133.

On June 16, 2023, the District Court denied Plaintiffs leave to amend, limiting the putative class claims to the existing NDI Claim and Disease Claim. *Corbett*, ECF No. 164. At this stage in the *Corbett* case, no class had yet been certified—it was still just a putative class action.

A month later, on July 18, 2023, while *Corbett* was still just a putative class action, Plaintiffs Linda Sunderland and Benjamin Binder filed this putative class action against PharmaCare U.S., Inc. and PharmaCare Laboratories Pty Ltd. (collectively "PharmaCare"), seeking to represent a New York-based class and a California-based class. *Sunderland*, ECF 1. The *Sunderland* Plaintiffs contend that despite the fact that PharmaCare's elderberry products contain simply ordinary elderberry juice—a fact that PharmaCare must have known—PharmaCare has continued to falsely label its elderberry products as being "virologist developed" and as containing a "unique" and "proprietary" elderberry extract (the "Misrepresentation Claim"). ECF 1 ¶¶ 38-39. Although PharmaCare Laboratories filed a motion to dismiss for lack of jurisdiction (ECF 12), PharmaCare U.S. simply answered the complaint. ECF 4. The parties then proceeded with discovery.

Eight months after the filing of the *Sunderland* class action, on March 29, 2024, the District Court in *Corbett* granted the *Corbett* Plaintiffs' motion for class certification in part and denied it in part. *Corbett,* ECF 210. Specifically, the court certified (1) a "California Subclass for the NDI Claim;" (2) a "Missouri Subclass for the NDI Claim;"

6

and (3) a "California Subclass for the Disease Claim." *Corbett*, ECF 210 p. 63. On July 19, 2024, the District Court entered an order approving the parties' class notice plan. ECF 223.

The *Corbett* class notice plan had digital notices and sponsored search listings referencing an informational website that only began running in August 7, 2024—more than a year after the complaint in this case (*Sunderland*) was filed. *Corbett*, ECF 249-1 p. 7. A PR Newswire press release explained that the class action alleged that PharmaCare violated California consumer protection statutes and breached warranties "by selling certain Sambucol Dietary Supplements without disclosing on the product label or packaging that they contain a new dietary ingredient that has not been approved by the Federal Food and Drug Administration ('FDA') (the 'NDI claim')." *Id.* p. 53. The press release added that the class action also alleged PharmaCare violated California law "through the use of false and misleading labels or packaging claims that imply that its Sambucol Dietary Supplements can mitigate or prevent a disease when they cannot (the 'Implied Disease claim')." *Id.* The press release—when answering the question "Who is included"—identified the "California NDI Claim Class" and the

7

"California Implied Disease Claim Class." *Id.* p. 54. The same information was also included in the long-form version of the class notice that was on the informational website and published in newspapers. *Id.* pp. 60, 62-65, 67-78.

Nothing in the notice to the class mentioned the *Sunderland* class action or the specific claims that are the subject of the *Sunderland* class action: that PharmaCare fraudulently stated that its elderberry juice was a proprietary extract created by a virologist.

On August 23, 2024, in addition to moving for sanctions for discovery abuses, the *Sunderland* and *Corbett* Plaintiffs moved in each case to consolidate the two cases. *Sunderland*, ECF 60; *Corbett*, ECF 228. PharmaCare opposed consolidation on the grounds—as stated in one of its headings—that "*Sunderland* and *Corbett* Raise Distinct Legal and Factual Issues and are Not Alternative Theories of Liability." *Sunderland*, ECF 71 p. 26. PharmaCare then proclaimed: "Unsurprisingly, [counsel for Plaintiffs] makes no effort to identify any common question of fact or law justifying consolidation *because none exist*. *Id.* (emphasis added). PharmaCare emphasized that evidence supporting the certified *Corbett* NDI claims would "simultaneously

8

impeach[] the *Sunderland* plaintiffs' testimony." *Id.* p. 29.   The District Court denied the motion to consolidate. *Sunderland*, ECF 91; *Corbett*, ECF 246.

The *Sunderland* Plaintiffs, on September 19, 2024, moved for class certification of a California Class and of a New York Class for violations of California's Unfair Competition Law, False Advertising Law, and the Consumers Legal Remedies Act, and New York's General Business Law sections 349 and 350, as well as for breach of express warranty. *Sunderland*, ECF 68-1 pp. 10-11. The basis for the class certification motion was that each of the Sambucol® products included on its label the statements that (1) the product was "Virologist developed" and (2) "Developed by a [world renowned] virologist, Sambucol® is the unique black elderberry extract that has been used in scientific studies. By using a proprietary method of extraction, only Sambucol® can guarantee consistent, immune supporting properties in every serving." ECF 68-3; ECF 68-4; ECF 68-12 pp. 3-25, 37-51; ECF 68-13 pp. 1-18, 27-32; ECF 68-14 pp. 1-2.

Neither of the theories set forth in the *Corbett* class action was raised in *Sunderland*. In fact, the class claims in *Sunderland* are

completely inconsistent with the NDI class claim certified in *Corbett*. Put simply, *Sunderland*'s claims that the statements on the Sambucol labels are false could not succeed if the *Corbett* class action claims that the Sambucol products are illegal, unapproved new dietary ingredients are true.

On June 24, 2025, in *Corbett*, the District Court entered summary judgment in favor of PharmaCare regarding both the NDI claims and the Implied Disease claims. *Corbett*, ECF 269. In light of the evidence finally revealed in discovery—that Sambucol was not made with a special extract used in studies but rather was just ordinary elderberry juice—the *Corbett* Plaintiffs had conceded that summary judgment should be entered for the NDI claims. *Corbett*, ECF 269 p. 4.

The District Court then granted summary judgment as to the Implied Disease Claim—which contended that Challenged Misrepresentations would lead a reasonable consumer to believe that PharmaCare was claiming that its products could mitigate or prevent disease. *Corbett*, ECF 269 p. 10. The District Court emphasized that "Plaintiffs do not argue the Challenged Misrepresentations are false," but instead "assert Defendant illegally marketed the Products with implied

disease claims such as 'virologist developed, 'developed by a world renowned virologist,' and 'support[s] immunity.'" *Id.* pp. 8-9. After identifying the "relevant question" as "whether reasonable consumers *actually believe* the Challenged Misrepresentations implicitly claim the Products treat or prevent disease," the court concluded that "[a]s a matter of law, the Challenged Misrepresentations are ambiguous, not deceptive, and are not misleading to a reasonable consumer" and granted PharmaCare summary judgment. *Id.* p. 10 (emphasis original).

On July 14, 2025, Judgment was entered in *Corbett*, ECF 276. The District Court specified:

> IT IS HEREBY ORDERED AND ADJUDGED:
>
> the Court Grants Summary Judgment on both the NDI claims and the Disease claims to Defendant. . . .

*Id.* p. 1. The court continued: "This judgment applies to Plaintiff Montiqueno Corbett, Plaintiff Rob Dobbs and, with the exception of Erica Ned who has requested exclusion from the certified classes, *the following certified classes of individuals to whom notice was directed*," which were then identified as: (1) the California NDI Claim Class, (2) the California Implied Disease Claim Class, and (3) the Missouri NDI Claim Class. *Corbett*, ECF 276 (emphasis added). *Id.* pp. 1-2.

Meanwhile, the parties in *Sunderland* had fully briefed Plaintiffs Sunderland and Binder's Motion for Class Certification, and the District Court had heard oral argument. ECF 68, 84, 94, 98. On August 18, 2025, however, PharmaCare submitted a "Notice of Supplemental Authority" with respect to the Motion for Class Certification, referring the District Court to the court's own summary judgment decision in *Corbett*. ECF 103. PharmaCare argued that the decision barred Mr. Binder's California claims, as well as the "California putative class" by virtue of *res judicata*. ECF 103 p. 2. PharmaCare did not, in its Notice of Supplemental Authority, reconcile its *res judicata* argument with its prior position that no common question of fact or law existed between the *Corbett* and *Sunderland* cases. *Sunderland*, ECF 71 p. 26.

A month later, the District Court issued its Class Certification Order denying certification of the California classes but granting certification of the New York classes. ECF 106. The Court acknowledged that the *Sunderland* Plaintiffs' "claims arise from allegations regarding statements made on the labels of the Products, which they allege to be false and misleading." ECF 106 p. 3. The District Court then denied class certification on all California claims based on *res judicata*, as urged by

PharmaCare in its two-page Notice of Supplemental Authority. The court ruled: "As an initial matter, Plaintiff Binder and the proposed California class cannot be certified because their claims are barred. . . .[A]ll three elements of res judicata are satisfied here and the California claims are barred. Accordingly, the Court **DENIES** certification of the proposed California class." ECF 106 pp. 8, 9. The court, however, granted class certification with respect to the proposed New York class based on the same factual claims. *Id.* pp. 9-17.

In the *Corbett* case, the Plaintiffs have on behalf of the certified class appealed the District Court's order granting summary judgment, which was also the basis for the court's denial of class certification in *Sunderland. See* No. 25-04419. As part of that appeal, the *Corbett* Plaintiffs intend to argue that the District Court erred in denying their motion for leave to amend to add the Misrepresentation Claim that ultimately because the *Sunderland* class action. Plaintiffs' opening brief is due November 6, 2025.

13

## JURISDICTIONAL STATEMENT

Plaintiffs have timely petitioned for review because they filed this Petition within 14 days of the order denying class certification entered on September 12, 2025. Fed. R. Civ. P. 23(f).

## STANDARD FOR RULE 23(F) PETITIONS

As the Supreme Court has stated, "Rule 23(f) authorizes 'permissive interlocutory appeal' from adverse class-certification orders in the discretion of the court of appeals[.]" *Microsoft Corp. v. Baker*, 582 U.S. 23, 30, 187 S. Ct. 1702, 1709, 198 L. Ed. 2d 132 (2017). "Courts of appeals wield 'unfettered discretion' under Rule 23(f), akin to the discretion afforded circuit courts under § 1292(b). . . . But Rule 23(f) otherwise 'departs from the § 1292(b) model,' for it requires neither district court certification nor adherence to § 1292(b)'s other 'limiting requirements.'" *Id.* at 31, 187 S. Ct. at 1709 (quoting Committee Note on Rule 23(f)).

This Court has "adopt[ed] the following guidelines for consideration of Rule 23(f) petitions," *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005):

> Review of class certification decisions will be most appropriate when: (1) there is a death-knell situation for either the

14

> plaintiff or defendant that is independent of the merits of the
> underlying claims, coupled with a class certification decision
> by the district court that is questionable; (2) the certification
> decision presents an unsettled and fundamental issue of law
> relating to class actions, important both to the specific
> litigation and generally, that is likely to evade end-of-the-case
> review; or (3) the district court's class certification decision is
> manifestly erroneous.

*Id.* Further, "[t]he kind of error most likely to warrant interlocutory review will be one of law, as opposed to an incorrect application of law to facts. A manifest error of law will be more obvious and susceptible to review at an early stage than an error that must be evaluated based on a well developed factual record." *Id.*

## REASONS FOR GRANTING THE PETITION

### A. The Decision Below Concluding that Res Judicata Bars Plaintiff Binder's as well as Putative Class Members' California Claims Constitutes a Death-Knell Situation Independent of the Merits of the Underlying Claims.

The claims in this case—as opposed to the *Corbett* case—address solely whether PharmaCare misrepresented to consumers that its elderberry products were made with a unique elderberry extract created by a virologist when, in fact, PharmaCare's products were made only with ordinary elderberry juice that has been used throughout history. The *Corbett* Plaintiffs learned of this fact only late in discovery when

15

PharmaCare acknowledged this reality in order to avoid liability under the *Corbett* Plaintiffs' claim that PharmaCare was selling an unlawful supplement since its new dietary ingredient had not been submitted to and approved by the FDA.

No class had been certified in *Corbett* at the time Ms. Sunderland and Mr. Binder filed this class action and, consequently, they were not bound by the denial of the motion to amend and were free to file their own class action alleging claims against PharmaCare that were in no way duplicative of the *Corbett* claims. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315, 131 S. Ct. 2368, 2380, 180 L. Ed. 2d 341 (2011) (after stressing that unnamed members of a proposed class action are not parties, holding that "[n]either a proposed class action nor a rejected class action may bind nonparties"); *Ridgeway v. Walmart*, 946 F.3d 1066, 1076 (9th Cir. 2020) ("And, at that time, the class had not yet been certified, so the putative class members were not parties to the case.").

However, two years later, the District Court effectively granted summary judgment to PharmaCare in this case, without a motion, when purportedly addressing Plaintiffs' motion for class certification. ECF 106. Although the *Sunderland* case will continue with respect to the New York

class, the case is over with respect to the California class. And the merits of the California claims—whether PharmaCare could lawfully market its elderberry products as being manufactured with a special virologist-developed elderberry extract when it was in fact only using the same juice as everybody else—will not be reached. The Order even appears to bar the putative class members' claims. ECF 106 p. 9. In the absence of a Rule 23(f) appeal, the California class issues will not be appealable until after the New York class case has reached final decision. At that point, if this Court reverses the California class decision, the case will return to the District Court to pick up the case at the summary judgment stage.

In addition, *Corbett* is currently on appeal, and one of the issues that will be addressed is the District Court's denial of the motion to amend. This denial takes on greater importance given the District Court's *res judicata* decision in this case arising out of the *Corbett* decision.

Allowing a Rule 23(f) appeal in this case could allow the Court to consider these intersecting appeals in the same time frame and ensure consistent resolutions.

### B. The District Court's Class Certification Decision is Questionable and Presents an Unsettled and Fundamental Issue of Law Relating to Class Actions.

The *Sunderland* class certification decision also raises important questions of law arising out of class actions that have not been definitively addressed in the Ninth Circuit although they are likely to recur. The District Court's analysis can be categorized as "questionable" given the circumstances of this case—circumstances that are not necessarily unique to the *Sunderland* case.

The first issue at the heart of an appeal of this case's class certification decision is the significance of the fact that at the time the *Corbett* Plaintiffs moved for leave to file the Third Amended Complaint, no class had yet been certified. It is settled under *Smith*, 564 U.S. at 315-16, 131 S. Ct. at 2381, "that a 'properly conducted class action,' with binding effect on nonparties, can come about in federal courts in just one way—through the procedure set out in Rule 23." The Court emphasized that "[t]o allow [a putative class action] to bind nonparties would be to adopt the very theory *Taylor* [*v. Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008)] rejected."

Under *Smith*, since the class was not certified at the time the District Court denied the motion for leave to amend to add the new Misrepresentation Claim, that decision was only binding on Plaintiffs Corbett and Dowd. *See also Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 416 (N.D. Ill. 2012) ("[A]ny action taken by the named plaintiffs before class certification does not have preclusive effects on the rest of the class."). The District Court, however, asserted, at the *Sunderland* class certification stage, that *res judicata* applied to preclude class certification of the California class claims because privity existed, pointing to the fact that *Sunderland* Plaintiff Binder (the California class representative) was a member of the certified *Corbett* classes. The court, however, disregarded the fact that it had ruled in *Corbett*: "Only the following classes are certified: (1) A California Subclass for the NDI Claim; (2) A Missouri Subclass for the NDI Claim; and (3) A California Subclass for the Disease Claim." *Corbett*, ECF 201 p. 63.

There was no class certified for any other claim and the class notice reflected that limitation, identifying and describing the classes solely as an "NDI Class" and the "Implied Disease Class" without identifying any

19

other specific claims encompassed by the class certification.[1] Even PharmaCare identifies the *Corbett* classes as the "NDI Claim class and Implied Disease Claims class." ECF No. 103 p. 2. Under those circumstances, barring the California claims in the *Sunderland* case would violate due process. *See Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1228-29 (11th Cir. 1998) (holding that "[v]iewed as a whole, the notices [to the class] do not adequately inform an absent class member like Twigg either that claims like his were being litigated or that they had been settled" and that "deficiencies in the notices preclude our allowing the judgment in the prior action to bar Twigg's claims because invocation of the bar would not be consistent with due process").

We have to date not found a Ninth Circuit decision addressing these class certification issues.

---

[1] These omissions are not surprising since PharmaCare acknowledged in opposing consolidation of *Corbett* and *Sunderland* that only Plaintiffs Dobbs and Corbett were barred from recovering under the *Sunderland* claims because of the pre-class certification denial of the motion to amend. ECF 71 pp. 28-29 n.15. And PharmaCare pointed out that because of the NDI class certification in *Corbett*, the *Corbett* Plaintiffs could not "voluntarily dismiss the NDI claims without compromising the unnamed class member's ability to recover[] in *Sunderland*." ECF 71 p. 29. PharmaCare's original arguments confirm that the District Court's analysis applies *res judicata* incorrectly. And its new-found position regarding *res judicata* should be rejected.

Additionally, the District Court's order denying class certification based on *res judicata* does not seem to recognize that under *Smith*, its *res judicata* decision is not binding on the unnamed putative class members. ECF 106 p. 9. *See Smith*, 564 U.S. at 314-15, 131 S. Ct. at 2380-81 (holding that decision made when class not certified has no preclusive effect as to nonparty putative class members); *see also Standard Fire Ins. Knowles*, 568 U.S. 588, 593 , 133 S. Ct. 1345, 1349, 185 L. Ed. 2d 439 (2013) ("[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified."); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020) ("By contrast, putative class members—at issue in this case—are always treated as nonparties.").

Further, the District Court's decision does not address the fact that PharmaCare waived that defense by failing to plead *res judicata* as an affirmative defense in *Sunderland*. ECF 4 pp. 17-20. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . res judicata[.]"). That omission was consistent with PharmaCare's initial strategy. Up until the time that the District Court granted summary judgment in *Corbett*,

PharmaCare consistently argued against mere consolidation of the two class actions because the Misrepresentation Claim asserted in *Sunderland* was directly contrary to the NDI Claim and involved facts and law irrelevant to all the claims in *Corbett*.

As this Court has stressed, "[t]he concern behind claim preclusion is that a plaintiff should not be able to relitigate the same facts under a different legal theory." *Hiser v. Franklin*, 94 F.3d 1287, 1292 (9th Cir. 1996). As PharmaCare originally rather vehemently argued, the *Sunderland* facts—that PharmaCare products actually contained only ordinary elderberry juice while it advertised that they were made with a elderberry extract specially created by a virologist—were completely inconsistent with the NDI Class facts and had nothing to do with the Implied Disease Class facts (that the labeling suggested the products would mitigate or prevent disease). ECF 71 pp. 26-29. *See Rodriguez v. Taco Bell Corp.*, No. 1:13-CV-01498-SAB, 2013 WL 5877788, at *4 (E.D. Cal. Oct. 30, 2013) ("The Court finds that the claims raised in this action [relating to a meal break policy] are distinguishable from the claims that survived the certification process in *In re Taco Bell* [also relating to meal periods]. Accordingly, judgment in the *In re Taco Bell* would not preclude

Plaintiff from challenging the adequacy of Taco Bell's meal break policy in this action.").

Since (1) the preclusion elements cannot be met, (2) *res judicata* was not pled as an affirmative defense, and (3) PharmaCare's new approach raises judicial estoppel concerns, the District Court's denial of class certification as to the California claims based on *res judicata* is at least questionable and Plaintiffs believe manifestly erroneous.

In addition, the District Court's use of *res judicata* as a basis for denial of class certification raises a question that other district courts have debated. Courts are not certain whether *res judicata* is a question to be resolved at the class certification stage or only at the summary judgment or merits stage. *See, e.g.*, *Sharpe v. GT's Living Foods, LLC*, No. CV 19-10920 FMO (GJSX), 2024 WL 4101910, at *5 (C.D. Cal. June 21, 2024) (ordering that parties "address whether res judicata and/or judicial estoppel apply and at what stage, i.e., the class certification or the merits stage of the litigation"); *Carr v. Walmart, Inc.*, No. 5:21−CV−01429−AB−KK, 2023 WL 9420846, at *1 (C.D. Cal. Nov. 27, 2023) (holding that "res judicata itself is not the ground for denial as this Motion concerns class certification"). The lack of a definitive ruling on

this issue by this Court further supports allowing review pursuant to Rule 23(f)—especially given that the sole basis for denial of class certification in this case was *res judicata*.

*Chamberlan*, 402 F.3d at 959, observed: "We see no reason for a party to endure the costs of litigation when a certification decision is erroneous and inevitably will be overturned. The error in the district court's decision must be significant; bare assertions of error will not suffice. Any error must be truly 'manifest,' meaning easily ascertainable from the petition itself. If it is not, then consideration of the petition will devolve into a time consuming consideration of the merits, and that delay could detract from planning for the trial in the district court." Plaintiffs respectfully believe that this potential appeal meets the *Chamberlan* standards.

## **CONCLUSION**

For the reasons above, Plaintiffs request that the Court grant Rule 23(f) review of the District Court's decision denying class certification with respect to the proposed California class.

## **CERTIFICATE OF COMPLIANCE**

I am the attorney for Petitioners. This brief contains 4800 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6), as the brief has been prepared in a proportional typeface in 14-point Century Schoolbook font.

I certify that this brief complies with the limit set forth in Circuit Rule 32-3 because the word count divided by 280 does not exceed the 20-page limit designated by Rule 5-2(b).

Dated: September 26, 2025          Respectfully submitted,

/s/ *Martha Geer*

Martha Geer
BRYSON HARRIS SUCIU
& DEMAY PLLC
900 W. Morgan Street
Raleigh, NC 27603
Tel.:  (919) 600-5000
mgeer@brysonpllc.com

Trenton R. Kashima, Esq.
BRYSON HARRIS SUCIU
& DEMAY PLLC
402 W. Broadway, Suite 1760
San Diego, CA 92101
(212) 946-9389
tkashima@brysonpllc.com

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on September 26, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.

I certify that the following counsel for the parties of record in the trial court proceedings were served with this petition via electronic mail on the same date.

Lawrence E. Butler
Giovanna A. Ferrari
SEYFARTH SHAW LLP
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549
lbutler@seyarth.com
gferrari@seyfarth.com

Joseph J. Orzano
SEYFARTH SHAW LLP
Seaport East, Suite 300
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801
jorzano@seyfarth.com

Aaron Belzer
SEYFARTH SHAW LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067-3201
Telephone: (310) 277-7200
Facsimile: (310) 201-5219
abelzer@seyfarth.com

Attorneys for Defendant
PHARMACARE U.S., INC.

Dated: September 26, 2025            Respectfully submitted,

/s/ *Martha Geer*
Martha Geer

# <u>APPENDIX</u>

# EXHIBIT 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA SUNDERLAND and BENJAMIN BINDER, individually and on behalf of all those similarly situated,<br><br>                                              Plaintiffs,<br><br>v.<br><br>PHARMACARE U.S., INC.,<br><br>                                              Defendant. | Case No.: 3:23-cv-01318-JES-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION; and**<br><br>**(2) DENYING MOTION TO EXCLUDE TESTIMONY OF J. MICHAEL DENNIS AND COLIN WEIR; and**<br><br>**(3) GRANTING PLAINTIFFS MOTION TO FILE DOCUMENTS UNDER SEAL**<br><br>**[ECF Nos. 68, 84, 95]** |

Before the Court are several motions filed by the parties: (1) Plaintiffs' motion for class certification ("Motion;" ECF No. 68); (2) Defendant's motion to exclude the testimony of Plaintiffs' experts J. Michael Dennis and Colin Weir (ECF No. 84); and (3) Plaintiffs' motion to file documents under seal (ECF No. 95). Given the various related

1

and overlapping issues raised in these motions, the Court granted the parties' request for consolidated briefing. ECF No. 67. Per the consolidated schedule, the parties filed respective oppositions and replies to these motions. ECF Nos. 84, 94, 97. On January 15, 2025, the Court held oral arguments. After due consideration, and for the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the motion for class certification and **DENIES** Defendant's motion to exclude Plaintiffs' experts.

## I.    BACKGROUND

On July 18, 2023, Plaintiffs filed this putative class action against Defendant PharmaCare U.S., Inc. ("Defendant" or "PharmaCare")[1], asserting consumer protection and breach of warranty claims based on its Sambucol product, a dietary supplement that is alleged to contain a proprietary extract of black elderberry. ECF No. 1. The claims are as follows: (1) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (2) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (3) California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; (4) New York's General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349, 350; and (5) Breach of Express Warranties. *Id.*

### A.    The Products

Black elderberry is a flowering plant that produces clusters of black berries. ECF No. 68-1 at 11. Elderberry has become a popular dietary supplement in recent years, partially due to increased popularity of "natural remedies" in the marketplace. ECF No. 1 at ¶ 2. A method of producing elderberry extract is described in U.S. Patent No. 4,742,046, filed by Madeline Bliah, also known as Madeline Mumcuoglu ("Dr. Mumcuoglu"). ECF No. 68-3 at ¶¶ 6-7, Exs. A, B. Dr. Mumcuoglu started an Israeli company to market her elderberry extract product and trademarked the name "Sambucol" for use with her

---

[1] The Court previously granted Defendant PharmaCare Laboratories Pty Ltd.'s motion to dismiss for lack of personal jurisdiction. ECF No. 51.

company. ECF No. 68-3, Ex. C; Ex. F at ¶ 4. The Sambucol trademark eventually became owned by Defendant's parent company. ECF No. 147-3, Exs. D, E.

Each of Defendant's products at issue in this case contain black elderberry extract. Specifically, the following eight products are at issue:

1.  Elderberry Original Syrup

2.  Sambucol Black Elderberry Sugar Free

3.  Sambucol Black Elderberry Syrup for Kids

4.  Sambucol Black Elderberry Effervescent Tablets

5.  Sambucol Black Elderberry Chewable Tablets

6.  Sambucol Black Elderberry Pastilles

7.  Sambucol Black Elderberry Daily Immune Drink Powder

8.  Sambucol Black Elderberry Advance Immune Syrup

(collectively, the "Products"). ECF No. 79 at 11.

Plaintiffs' claims arise from allegations regarding statements made on the labels of the Products, which they allege to be false and misleading. The labels on the Products vary, but include some combination of the following statements:

-   "Virologist Developed"

-   "Developed by Dr Madeleine Mumcuoglu"

-   "Developed by a world-renowned virologist, Sambucol® is the unique black elderberry extract that has been used in scientific studies. By using a proprietary method of extraction, only Sambucol® can guarantee consistent, immune supporting properties in every serving."

-   "Developed by a world-renowned virologist, Sambucol®'s unique manufacturing process preserves and maximizes the naturally occurring health benefits of the Black Elderberry."

-   "Developed by a world-renowned virologist, Sambucol® has been trusted by millions worldwide. Sambucol can be taken every day for continuous immune support."

3

(collectively, "Challenged Misrepresentations"). These statements are made on the labels of the Products at differing locations. *See* ECF No. 68-12 to 68-14, Exs. CC-RRR.

**B.    Plaintiffs' Allegations**

Plaintiffs allege Defendant, through the Challenged Misrepresentations, falsely advertised the Products as "unique," "proprietary," and "virologist developed" to increase demand, build brand trust, and gain a competitive advantage, causing economic harm to consumers. ECF No. 1 at ¶¶ 25-40. Plaintiffs allege the Products refer to Dr. Mumcuoglu and her patented elderberry extract formula, but the extract used in the Products was not derived from her formula. ECF No. 68-1 at 14. Instead, Plaintiffs allege the Products are based on elderberry juice. *Id*. Further, Plaintiffs allege Defendant originally included Dr. Mumcuoglu's name on some of the Products' labels, but this reference was removed and "there is currently no connection between Dr. Mumcuoglu and Defendant[] or the current version of the Elderberry Products." ECF No. 1 at ¶ 32.

**C.    Named Plaintiffs and Proposed Classes**

There are two named Plaintiffs in the class. Plaintiff Binder is a resident and citizen of California. *Id*. at ¶ 15. He claims to have purchased the Original Syrup over a four-year stretch, with his last purchase in June 2023. *Id*. at ¶ 16. Plaintiff Sunderland is a resident and citizen of New York. *Id*. at ¶ 10. She claims to have purchased the Chewable Tablets over a two-year stretch, with her last purchase in March 2023. *Id*. at ¶ 11. Both Plaintiffs Binder and Sunderland allege they saw and relied on the Challenged Misrepresentations that the elderberry ingredient was unique, proprietary, and developed by a virologist. *Id*. at ¶¶ 12, 17. They both claim to wish to continue purchasing the Products in the future but are unable to rely on Defendant's representations in deciding whether to do so. *Id*. at ¶¶ 14, 19.

Plaintiffs seek to certify two classes: (1) a California class of all "persons in California who, before March 31, 2023, purchased the Products for personal or household use and not for resale;" and (2) a New York class of all "persons in New York who, before

3:23-cv-01318-JES-AHG

March 31, 2023, purchased the Products for personal or household use and not for resale."
ECF No. 68-1 at 11.

## II.    MOTION TO EXCLUDE EXPERTS

Concurrent with the pending motion for class certification, Defendant filed a motion to exclude experts that Plaintiffs rely upon in their class certification argument. Since resolution on this motion affects the evidence that the Court will rely upon in deciding the motion for class certification, the Court addresses this motion first, as a threshold matter.

### A.    Legal Standard

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). An expert witness may provide opinion testimony if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

Generally, district courts have a duty to "act as a gatekeeper to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). However, the duty is to evaluate "not the correctness of the expert's opinions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* (citing *Daubert*, 509 U.S. at 594, 596).

The Ninth Circuit has stated that district courts should apply *Daubert* and Rule 702 standards at the class certification stage. *See, e.g.*, *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984 (9th Cir. 2020). However, at this stage, there is no jury to gatekeep and the judge is the sole arbiter, so "admissibility must not be dispositive." *Sali v. Corona Reg'l*

*Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). "Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id.* Thus, many district courts in this circuit view expert admissibility issues raised by parties during class certification as a determination of weight rather than admissibility. *See, e.g.*, *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, No. 2:17-CV-07223-JWH-AS, 2023 WL 4190553, at *2 (C.D. Cal. May 22, 2023) (*Daubert* is to be used as a "guide to determine the weight that evidence receives at the class certification stage"); *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2021 WL 1320773, at *4 (N.D. Cal. Mar. 23, 2021) (a "lower *Daubert* standard should be employed at the class certification stage of the proceedings," denying motion to strike, and considering arguments as to reliability of expert testimony to "assist in evaluating the weight of the evidence as it relates to class certification"); *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 297 (N.D. Cal. 2020) ("*Sali* forecloses this interpretation by explicitly instructing that a *Daubert* analysis alone, while relevant, should not prevent a court from considering expert testimony at the class certification stage.").

## B.    Discussion

Defendant's motion is to exclude Plaintiffs' experts, Dr. J. Michael Dennis ("Dr. Dennis") and Mr. Colin Weir ("Mr. Weir"). ECF No. 84 at 46-58. Dr. Dennis performed a consumer perception survey, a materiality survey, and opined on damages. *Id.* at 46. Mr. Weir helped to design and support Dr. Dennis' methodology on damages. *Id.* Defendant raises several grounds for why these experts' opinions should be excluded. First, Defendant argues that Dr. Dennis' consumer perception survey is unreliable, biased, and misleading because the statements used in the survey did not match the Products' labels (*i.e.*, "this is the unique black elderberry extract" as opposed to "Sambucol is the unique black elderberry extract"). *Id.* at 47-52. Thus, Defendant argues the questions posed to survey participants do not match Plaintiffs' theory of liability. *Id.* Second, Defendant argues that Dr. Dennis' materiality survey is similarly unreliable because the design shown to the survey participants was manufactured for the survey and not an image of the actual product

Case 3:23-cv-01318-JES-AHG    Document 102-1    Filed 09/12/25    PageID.6043    Page 7
40 of 150

or packaging. *Id.* at 52-54. Third, Defendant argues that Dr. Dennis' damages model is irrelevant and unreliable because it is based on the tested claim, not the class claims. *Id*. at 54. Finally, Defendant argues that Dr. Dennis' price premium model is irrelevant because it fails to distinguish between injured and uninjured class members, it is not sufficiently defined, and it is based on a "willingness-to-pay" benchmark rather than measuring an actual price premium. *Id*. at 55-57.

After reviewing the parties' arguments and briefing on these issues, the Court agrees with the many district courts in this circuit that the more appropriate place to consider these arguments is on how much *weight* to give to the competing expert testimony, rather than their *admissibility*. *Sali*, 909 F.3d at 1006; *Painters*, 2023 WL 4190553, at *2; *Aberin*, 2021 WL 1320773, at *4; *Bally*, 335 F.R.D. at 297. This is particularly appropriate where, as here, many of the arguments for exclusion of the testimony is not on whether the types of surveys are acceptable, but whether certain criteria used in the respective surveys pass muster. However, the Ninth Circuit has stated that as a general matter, "[c]hallenges to survey methodology go to the weight given the survey, not its admissibility." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997); *see also Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012) (Criticisms "go to issues of methodology, survey design, reliability . . . [and] critique of conclusions, and therefore go to the weight of the survey rather than its admissibility.") (internal quotation marks omitted).

Accordingly, the Court **DENIES** Defendant's motion to exclude expert testimony under *Daubert*.

Defendant also filed numerous evidentiary objections on the grounds that certain evidence is irrelevant, lacking foundation, constitutes inadmissible hearsay, misstates testimony, not based on personal knowledge, and contains inadmissible lay opinion. In determining whether class certification is appropriate under FRCP 23, courts "may consider all material evidence submitted by the parties … and need not address the ultimate admissibility of evidence proffered by the parties." *Blair v. CBE Group, Inc.*, 309 F.R.D. 621, 627 (S.D. Cal. 2015) (internal quotations and citations omitted); *see also Sali v.*

3:23-cv-01318-JES-AHG

1    *Corona Regional Medical Center*, 909 F.3d 996, 1005 (9ᵗʰ Cir. 2018) ("[A] district court
2    is not limited to considering only admissible evidence in evaluating whether Rule 23's
3    requirements are met.") In light of the lenient evidentiary standard that applies at the
4    certification stage, the Court **OVERRULES** Defendant's evidentiary objections for
5    purposes of this motion. To the extent that any evidence proffered by the parties constitutes
6    a legal conclusion or lacks foundation, the Court will not consider such material. *Blair*, 309
7    F.R.D. at 627.

8                  **III.    MOTION TO CERTIFY CALIFORNIA CLASS**

9          As an initial matter, Plaintiff Binder and the proposed California class cannot be
10   certified because their claims are barred. Under res judicata, "a final judgment on the merits
11   bars further claims by parties or their privies based on the same cause of action." *Tahoe-*
12   *Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064,
13   1077 (9th Cir. 2003) (internal quotation marks and citations omitted). Res judicata applies
14   when there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity
15   between parties. *Id*. Identity of claims exists when "two suits arise from the same
16   transactional nucleus of facts" and "[n]ewly articulated claims . . . could have been brought
17   in the earlier action." *Id*. at 1078 (internal quotation marks omitted). Summary judgment
18   is a final judgment on the merits. Fed. R. Civ. P. 56. Privity between parties exists when
19   there is substantial identity between parties, even when the parties are not identical. *Tahoe-*
20   *Sierra Preservation Council, Inc.*, 322 F.3d at 1081.

21         Plaintiffs concede that identity of claims exists because this suit arises from the same
22   nucleus of facts as *Corbett*.[2] S*ee* ECF No. 68-1 at 11 ("this Court has already certified a
23   parallel class action, in *Corbett*, which involves the same product labels, similar legal
24   claims, and theories of recovery"). Final judgment on the merits occurred in *Corbett* when
25   the Court granted summary judgment in favor of PharmaCare. Privity between parties

26
27
28   _____
     [2] *Corbett v. PharmaCare U.S., Inc.*, No. 3:21-cv-00137-JES-AHG, 2025 WL 1746308 (S.D. Cal. June 24,
     2025).

                                        8

exists because in *Corbett*, the Court certified two California classes that included the following individuals:

> All persons who, from January 21, 2017 to March 29, 2024, while in California, purchased Defendant's Sambucol Black Elderberry Original Syrup, Sambucol Black Elderberry Advanced Immune Syrup, Sambucol Black Elderberry Sugar Free Syrup, Sambucol Black Elderberry Syrup for Kids, Sambucol Black Elderberry Gummies, Sambucol Black Elderberry Gummies for Kids, Sambucol Black Elderberry Advanced Immune Capsules, Sambucol Black Elderberry Effervescent Tablets, Sambucol Black Elderberry Chewable Tablets, Sambucol Black Elderberry Pastilles (Throat Lozenges), Sambucol Black Elderberry Daily Immune Drink Powder, and Sambucol Black Elderberry Infant Drops for personal or household use and not for resale.

*See Corbett* Dkt. 276. PharmaCare was the defendant in *Corbett* and Plaintiff Binder and the proposed California class are members of the certified *Corbett* classes. *See supra* §§ I-A, I-C. Therefore, all three elements of res judicata are satisfied here and the California claims are barred. Accordingly, the Court **DENIES** certification of the proposed California class.

## IV.    MOTION TO CERTIFY NEW YORK CLASS

Federal Rule of Civil Procedure 23 governs class actions. Under Rule 23(a), plaintiffs must establish numerosity, commonality, typicality, and adequacy. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Once Rule 23(a) is satisfied, then plaintiffs must meet one of the limitations under Rule 23(b). Here, Plaintiffs rely on Rule 23(b)(3), requiring them to show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. "In determining

9

the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotations omitted). However, proof to establish that Rule 23 requirements have been met often "overlap with the merits of plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. A weighing of competing evidence, however, is inappropriate at this stage of the litigation. *Staton v. Boeing Co*., 327 F.3d 938, 954 (9th Cir. 2003).

### A.    Rule 23(a) Requirements

#### 1.    Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton*, 327 F.3d at 953. The plaintiff need not state the exact number of potential class members; nor is a specific minimum number required. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Rather, whether joinder is impracticable depends on the facts and circumstances of each case. *Id*.

Plaintiffs state that more than 49 million packages of the Products were sold nationally. ECF No. 79 at 22. The Court may infer that this suffices to establish numerosity. *See Clay v. CytoSport, Inc.*, No. 3:15-CV-00165-L-AGS, 2018 WL 4283032, at *3 (S.D. Cal. Sept. 7, 2018) (numerosity satisfied based on "several million" of products sold in California); *In re Hitachi Television Optical Block Cases*, No. 08CV1746 DMS NLS, 2011 WL 9403, at *3 (S.D. Cal. Jan. 3, 2011) (sales of more than 100,000 products satisfy numerosity).

Defendant argues the proposed class is not sufficiently numerous because Plaintiffs fail to offer affirmative evidence of numerosity. ECF No. 84 at 35-36. Defendant relies on *Diacakis*[3] for the proposition that relying solely on product sales figures is insufficient to

---

[3] *Diacakis v. Comcast Corp.*, No. C 11-3002, 2013 WL 1878921 (N.D. Cal. May 3, 2013).

establish numerosity. *Id. Diacakis* however, involved a plaintiff who was subject to oral misrepresentations by the defendant that were inapplicable to the proposed class. *Diacakis*, 2013 WL 1878921, at *1. Here, Plaintiffs allege the Products' labeling created the misrepresentations, and the proposed class was uniformly exposed to those misrepresentations. ECF No. 94 at 14-15.

Given the distinction between *Diacakis* and these facts, the Court rejects Defendant's argument and finds that Plaintiffs have satisfied their burden to establish numerosity.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement can be met with just a single common question. *Wal-Mart*, 564 U.S. at 359.

This requirement overlaps with a part of Rule 23(b)(3)'s requirement that the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members." The Supreme Court held that the commonality requirement is "subsumed, or superseded by, the more stringent Rule 23(b)(3) [predominance] requirement." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 610-612 (1997). Thus, for the sake of efficiency, courts often analyze these two requirements together, focusing on the predominance question because it is the more demanding inquiry. *See, e.g.*, *Johnson v. R&L Carriers Shared Servs., LLC*, No. 222CV01619MCSJPR, 2023 WL 3299709, at *3 (C.D. Cal. Apr. 10, 2023).

Accordingly, the Court will defer ruling on this Rule 23(a)(2) requirement and merge its discussion with the Rule 23(b)(3) requirement below.

### 3. Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties to be typical to those of the rest of the class. Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they

need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Like commonality above, typicality is a "permissive standard." *Id.*

Plaintiffs contend their claims and defenses are typical of the class because members of the class suffer the same injury, resulting from a substantially similar theory of liability. ECF No. 68-1 at 24-25. In support, Plaintiffs cite various cases that hold that typicality is routinely met in consumer protection cases that arise from alleged misrepresentations on product labels. *Id.*

Defendant argues Plaintiff Sunderland is not a typical representative because she is not a member of the proposed class. ECF No. 84 at 30. Generally, Defendant asserts Plaintiff Sunderland is making an implied disease claim, whereas the proposed class claims revolve around deceptive labeling through the Challenged Misrepresentations. *Id.* at 15-16; 29-31. Defendant offers little support of this argument, outside of an incomplete or mischaracterized reading of Plaintiff Sunderland's deposition testimony. *Id.* at 16; s*ee*, *e.g.*, ECF No. 88-2 at 40:9-22 (Sunderland stating that "virologist developed" was "a major reason" why she purchased the Products); 63:22-64:24 (Sunderland stating that she believed Sambucol was developed by a virologist because of the writing on the box and had no reason to believe the label was false); 106:8-13 (Sunderland stating she believed the product packaging, it influenced her to purchase the Products, and it was better than other elderberry products because it was tested and produced by a virologist).

To defeat typicality, Defendant needs to show that it has a defense against the particular representative that it does not have against other plaintiffs. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 974 (C.D. Cal. 2015) ("To be typical, a class representative need not prove that she is immune from any possible defense, or that her claim will fail only if every other class member's claim also fails. Instead, she must establish that she is not subject to a defense that is not 'typical of the defenses which may be raised against other members of the proposed class.'"). Here, the Court finds that Defendant's arguments raised as to Sunderland are not necessarily atypical of arguments they may raise against any other

member of the class. The Court agrees with Plaintiffs that Defendant concedes that its
defenses would be based on the reasonable consumer standard. ECF No. 94 at 16 n.5.

Accordingly, the Court finds that Plaintiffs have satisfied their burden to establish
typicality for Plaintiff Sunderland.

### 4. Adequacy of Representation

The last Rule 23(a) factor looks to make sure the representative parties will fairly
and adequately protect the interests of the class. Fed. R. Civ. P 23(a)(4). The root concern
this factor seeks to address is a constitutional due process concern to make sure absent class
members are afforded adequate representation in the action before there is an entry of a
judgment that would bind them. *Hanlon*, 150 F.3d at 1020. Thus, this factor focuses on two
questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with
other class members and (2) will the named plaintiffs and their counsel prosecute the action
vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582
F.2d 507, 512 (9th Cir.1978)).

Plaintiffs state in their motion that the named class representatives share common
interests with the other class members and there is no conflict that would cause them to not
adequately represent their interests. ECF No. 68-1 at 25-26. Similarly, Plaintiffs argue that
they—along with their counsel—have shown the requisite vigor in prosecuting the case to
date and will continue to do so. *Id.* at 26. Further, Plaintiffs' counsel provides information
regarding their experience with such class action cases in the past, and a description of the
work they have done so far in the case. *Id.* at 27-28.

Other than the arguments as to Plaintiff Sunderland that the Court addressed above
in typicality, the only other argument that Defendant raises related to this factor is with
regards to a conflict of interest with Plaintiffs' counsel. ECF No. 84 at 32-34. Specifically,
Defendant argues that there is a conflict of interest in acting as counsel in this case and
*Corbett*, *supra* § III. *Id.* However, this argument is moot because *Corbett* reached a final
judgment and that case is closed.

1    Accordingly, the Court finds that Plaintiffs have satisfied their burden to establish

2    adequate representation of both the class representatives and class counsel.

3    **B.    Rule 23(b)(3) Requirements**

4    Rule 23(b)(3) requires that "the questions of law or fact common to class members

5    predominate over any questions affecting only individual members, and that a class action

6    is superior to other available methods for fairly and efficiently adjudicating the

7    controversy." Fed. R. Civ. P. 23(b)(3). This requirement is more stringent than

8    commonality and requires that "common questions present a significant aspect of the case

9    and they can be resolved for all members of the class in a single adjudication." *Hanlon*,

10    150 F.2d at 1022.

11    **1. Predominance**

12    To address whether common issues predominate, the inquiry begins "with the

13    elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*,

14    563 U.S. 804, 809 (2011). Plaintiffs allege violation of the GBL based on the statements

15    made on the Products. The GBL prohibits deceptive acts or practices, as well as false

16    advertising, "in the conduct of any business, trade or commerce or in the furnishing of any

17    services in [New York]." N.Y. Gen. Bus. Law §§ 349, 350. There are three elements to a

18    § 349 claim: "(1) the defendant's challenged acts or practices must have been directed at

19    consumers, (2) the acts or practices must have been misleading in a material way, and (3)

20    the plaintiff must have sustained injury as a result." *Cohen v. JP Morgan Chase & Co.*, 498

21    F.3d 111, 126 (2d Cir. 2007). The elements for a § 350 claim are essentially the same. *See*

22    *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 525 (S.D.N.Y. 2003). "Misleading" is

23    defined objectively as "likely to mislead a reasonable consumer acting reasonably under

24    the circumstances." *Cohen*, 498 F.3d at 126 (internal quotation marks and citation omitted).

25    Reliance is not required to state a claim under either §§ 349 or 350. *DeCoursey v. Murad,*

26    *LLC*, 673 F. Supp. 3d 194, 221 (N.D.N.Y. 2023). Injury under §§ 349 and 350 may be

27    alleged under a price premium theory, which means a plaintiff "paid a premium for a

28

14

product based on [the] defendants' inaccurate representations." *Id*. at 216 (internal quotation marks and citations omitted).

Plaintiffs also assert a claim for breach of express warranty. There are four elements to a New York breach of express warranty claim: "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 589 (S.D.N.Y. 2021) (citation omitted). In warranty cases, reliance "relates to the first element of proof, existence of the contract" and "whether [the consumer] believed he is purchasing the promise." *Ainger v. Michigan General Corp.*, 476 F. Supp. 1209, 1225 (S.D.N.Y. 1979). "Thus, a claim for relief in breach of warranty is complete upon proof of the warranty as part of a contract and proof of its breach." *Id*.

Defendant makes several arguments against predominance. First, Defendant relies upon *Diacakis* to assert the proposed class is overbroad and individual fact-specific inquiries will be required. ECF No. 84 at 36-39. The Court, *supra* § IV-A, previously explained why *Diacakis* is distinguishable from these facts. For those reasons, the Court rejects Defendant's argument regarding standing.

Next, Defendant argues that damages cannot be calculated on a class-wide basis. ECF No. 84 at 41-44. Defendant proffers the same arguments as in its motion to exclude Plaintiffs' expert testimony, including that Dr. Dennis' damage model does not measure the class claims, the model fails to distinguish between injured and uninjured class members, the price-premium model is insufficiently defined, and individualized economic inquiries are required. The Court, *supra* § II-B, rejects these arguments and concludes that criticisms of Plaintiffs' damages models are more appropriate when considering their weight, not admissibility.

The Court agrees with Plaintiffs that their GBL and express warranty claims use an objective standard that require no individualized inquiries. The Court also agrees that

Plaintiffs' damages models are appropriate at the class certification stage. Therefore, the Court finds that predominance is met for both the GBL and express warranty claims.

### 2. Superiority

Beyond predominance, the second requirement of Rule 23(b)(3) is that the class action must be "superior" to other available methods to fairly and efficiently adjudicate the controversy. Fed. R. Civ. P 23(b)(3). Factors to consider include "A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Plaintiffs argue that these factors weigh for finding the class action vehicle to be superior because the amounts to be recovered are modest for individuals and so they are individually unlikely to bring suit. ECF No. 68-1 at 43. Plaintiffs assert that they are not aware of any other litigation involving the Products, other than *Corbett*. *Id.* Plaintiffs also assert that this District is the appropriate forum given its substantial ties to Defendant. *Id.* Defendant challenges superiority because the class is not manageable and individual factual questions predominate. ECF No. 84 at 45. The Court finds these arguments meritless. The Court concludes that Plaintiffs have met their burden to show that a class action is the superior method to adjudicate the class members' claims.

///
///
///
///
///
///
///
///

16

3:23-cv-01318-JES-AHG

1

## V.    CONCLUSION

2          After due consideration and for the reasons discussed above, the Court **GRANTS**

3  **IN PART AND DENIES IN PART** the motion for class certification and **DENIES** the

4  respective *Daubert* motion. Only the New York class is certified. Certification of the

5  proposed California class is **DENIED** because those claims are barred. Plaintiffs' motion

6  to file documents under seal is **GRANTED**.

7          **IT IS SO ORDERED.**

8

Dated:  September 11, 2025

9

10                                         Honorable James E. Simmons Jr.
                                           United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:23-cv-01318-JES-AHG