1  Trenton R. Kashima (SBN No. 291405)
   **BRYSON HARRIS SUCIU**
2  **& DEMAY PLLC**
   19800 MacArthur Blvd., Suite 270
3  Irvine, CA 92612
   (212) 946-9389
4  tkashima@brysonpllc.com

5
   *Attorneys for Plaintiffs*
6  *and the Class*

7  [Additional Counsel Listed On Signature Page]

8
              **UNITED STATES DISTRICT COURT**
9
          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
10

| LINDA SUNDERLAND and BENJAMIN BINDER, individually and on behalf of all others similarly situated, | Case No: 3:23-cv-01318-JES-AHG |
|---|---|
| Plaintiffs, | **JOINT MOTION REGARDING APPROVAL OF CLASS NOTICE PLAN** |
| v. | |
| PHARMACARE U.S., INC., | |
| Defendant. | Judge:  Hon. James E. Simmons, Jr.<br>Ctrm:   Courtroom 4B |

                ***REDACTED FOR PUBLIC FILING***

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

I.  THE PROPOSED CLASS NOTICE PLAN SHOULD BE APPROVED .......... 1

    A.  Court Should Appoint Epiq as Class Notice Administrator ...................... 1

    B.  The Proposed Method of Distribution of Class Notice Satisfied Rule 23 and Due Process and Should be Approved ................................................ 1

    C.  Notice Design and Content Complies with Rule 23 .................................. 4

    D.  Opt-Out Period ............................................................................................ 5

II. DEFENDANT'S PROPOSED CHANGES ARE UNWARRANTED ................ 5

    A.  Defendant's Objection to the Language of Class Notice ........................... 5

    B.  Defendant's Objection to the Class Notice Plan ........................................ 7

DEFENDANT'S POSITION ........................................................................................... 8

PLAINTIFF'S NOTICE PLAN IS OVERBROAD ....................................................... 8

PLAINTIFF'S NOTICE DOES NOT ACCURATELY DESCRIBE THE CLAIMS ASSERTED ..................................................................................................................... 9

PLAINTIFF'S NOTICE FORMS DO NOT DESCRIBE RES JUDICATA CONSISTENTLY ......................................................................................................... 12

PLAINTIFF'S NOTICE FORMS DO NOT ACCURATELY IDENTIFY THE CLASS COUNSEL APPROVED BY THE COURT .................................................. 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Beck-Ellman v. Kaz USA, Inc.*,
  No. 3:10-CV-02134-H-DHB, 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013) ............... 2

*Chinitz v. Intero Real Est. Servs.*,
  No. 18-CV-05623-BLF, 2020 WL 7042871 (N.D. Cal. Dec. 1, 2020) ..................... 2

*Dennis v. Kellogg Co.*,
  No. 09–CV–1786–IEG (WMc), 2010 WL 4285011 (S.D. Cal. Oct.14, 2010) ...... 1, 2

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................................. 2

*Mandujano v. Basic Vegetable Products, Inc.*,
  541 F.2d 832 (9th Cir. 1976) .................................................................................... 2

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ................................................................................................. 1

*Patton v. Dollar Tree Stores, Inc.*,
  2017 WL 8233883, * 1 (C.D. Cal. Apr. 5, 2017) ................................................... 10

*Ross v. Trex Co.*,
  2013 WL 791229 (N.D. Cal. Mar. 4, 2013) .............................................................. 2

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020) ......................................................................... 7, 8

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*,
  322 F.3d 1064 (9th Cir. 2003) ................................................................................ 12

*Weeks v. Kellogg Co.*,
  2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ......................................................... 2

*Yeoman v. Ikea*,
  2013 WL 5944245 (S.D. Cal. Nov. 5, 2013) ........................................................... 9

**Rules**

Fed. R. Civ. Pro. 23 ........................................................................................... 1, 4, 13

**Treatises**

Manual for Complex Litigation (Fourth) (2004) ("Manual") .................................... 1

McLaughlin on Class Action ...................................................................................... 9

Pursuant to Fed. R. Civ. Pro. 23(c)(2)(B) and the December 7, 2025 Order Resolving Opposed Joint Motion (ECF No. 122), the parties submit their joint position regarding Class Notice:

## I.  THE PROPOSED CLASS NOTICE PLAN SHOULD BE APPROVED

After a court certifies a class under Federal Rule of Civil Procedure 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. Pro. 23(c)(2)(B). Class notice must afford potential class members the ability to "make an informed decision about their participation [in the litigation]." Manual for Complex Litigation (Fourth) § 21.311 at 289 (2004) ("Manual"). Here, Plaintiffs' proposed notice plan meets these requirements.

### A.  Court Should Appoint Epiq as Class Notice Administrator

As an initial matter, Plaintiffs have contracted with Epiq Systems, Inc. ("Epiq") to develop the following notice plan.[1] Epiq has extensive experience in providing class notice using proven, well accepted marketing tools. Epiq will not only help Plaintiffs implement the Class Notice plan, but provides the expertise to ensure that publication notice is targeted "based on market research about consumers who purchased the products." *Dennis v. Kellogg Co.*, No. 09–CV–1786–IEG (WMc), 2010 WL 4285011, *5–6 (S.D. Cal. Oct.14, 2010) *reversed on other grounds* 697 F.3d 858.

### B.  The Proposed Method of Distribution of Class Notice Satisfied Rule 23 and Due Process and Should be Approved

To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). There is no statutory or due process requirement that all class members receive actual notice; rather "individual notice must be provided to those class members who are identifiable through reasonable

---

[1] The notice plan is more fully detailed in Declaration of Cameron R. Azari, concurrently filed herewith ("Azari Decl.").

- 1 -

effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974); *see also Ross v. Trex Co.*, No. C 09-00670 JSW, 2013 WL 791229 at *1 (N.D. Cal. Mar. 4, 2013). "To comply with the spirit of [Rule 23(e)], it is necessary that the notice be given in a form and manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

Here, Defendant does not sell its products directly to consumers. Instead, Defendant sells its products through retailers and distributors, such as Emerson Group. Declaration of Trenton R. Kashima, Ex. O (ECF No. 68-10), at pp. 24:16-27:7. Accordingly, Defendant does not maintain the records of consumers' contact information. When a "class such as this that consists of persons with unknown addresses, notice by publication is reasonable." *Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *11 (C.D. Cal. Nov. 23, 2013).[2] Using Epiq's expertise, the proposed notice plan calls for a comprehensive media plan (digital notice and social media) online display advertising,[3] designed to reach over 70% of the Class with an average frequency of 3.0 each. Azari Decl., at ¶ 18; *see also Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7042871, at *2 (N.D. Cal. Dec. 1, 2020) ("The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable."); *Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-CV-02134-H-DHB, 2013 WL 1748729 at *3 (S.D. Cal. Jan. 7, 2013) (approving notice plan designed to reach at least 70% of class members).

---

[2] *Citing Dennis*, 2010 WL 4285011, *5–6 ("The proposed method of notice is reasonable… Because Defendant does not sell directly to consumers, there is no way to identify class members directly. Therefore, Defendant will publish a Publication Notice in targeted sources based on market research about consumers who purchased the products. The Publication Notice will appear in Parents Magazine and in on-line versions of local newspapers and television stations on 375 websites.").

[3] Internet advertising (including social media) is particularly well suited to reach members of the Class as 97% of adults in the United States are online and 84% of adults use social media. Azari Decl.. at ¶ 24. Thus, online advertising is more likely to reach members of the Class than traditional print media, which has a more limited circulation. For example, even the largest magazines only have a circulation of 22.5 million. *See* https://pressgazette.co.uk/publishers/magazines/biggest-us-magazines-by-circulation/.

Internet Notice

Internet advertising has become a standard component in legal notice regimes. *Id.*, at ¶ 24. The proposed notice plan includes targeted digital advertising on the select advertising networks (*Google Display Network* and *Yahoo Audience Network – in English and Spanish*), which represents thousands of digital properties across all major content categories. *Id.*, at ¶ 25. The digital notices will also be placed on *Facebook* and *Instagram*.[4] *Id*. Combined, approximately 53 million targeted impressions will be served by Plaintiffs' online notice campaign. *Id.*, at ¶¶ 28-29. The advertising will target the same demographic that purchases the Sambucol products in New York.[5] *Id.* at ¶ 26. The proposed internet advertisements are attached as Exhibit B to Mr. Azari's Declaration. Clicking on these advertisements will link the reader to the informational website, where they can easily obtain detailed information about the case. *Id.* at ¶ 27. These advertisements will run for approximately six weeks. *Id.* at ¶ 29.

Additionally, Epiq will sponsor search listings on the three most frequently visited internet search engines: Google, Yahoo!, and Bing. *Id.* at ¶ 30. When search engine visitors search on selected common keyword combinations related to the case, the sponsored search listing created for the case will be generally displayed at the top of the visitor's website page prior to the search results or in the upper right-hand column of the web-browser screen[6] *Id*. The sponsored search listings will be targeted to New York and will link directly to the informational website.

Informational Press Releases

The Short Form Notice will be sent as a press release *via* Newswire's New York and New York Hispanic Newslines to both traditional (print, radio, TV) media outlets

---

[4] *Facebook* is the leading social networking site in the United States with 196 million users and *Instagram* has 171 million users. Azari Decl.. at ¶ 25.
[5] The advertisement campaign will target those who have shown an interest or affinity for content related to Sambucol, Black Elderberry Syrup, Homeopathic Immunity Products, Homeopathic Remedies, and/or Health/Wellness topics. Azari Decl.. at ¶ 26.
[6] *See* Exhibit C to the Declaration of Azari for the keyword combinations and sponsored search listings.

- 3 -

and online news sources. *Id.* at ¶ 31. These press releases will be sent to the New York media outlets in in English and Spanish. *Id*. The informational release will include the address of the informational website and the toll-free telephone number. *Id*. The press release will serve a valuable role by providing additional notice exposures beyond that which was provided by the paid media.

### Informational Website

Epiq will create and maintain a dedicated informational website with an easy to remember domain name. *Id.* at ¶ 32. Relevant documents including the information from the Long Form Notice, Complaint, Class Certification Order, and other Court documents, will be posted on the informational website. In addition, the informational website will include relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Class Members may opt-out (request exclusion), contact information for the Notice Administrator and Class Counsel, and how to obtain other case-related information. *Id*. Plaintiffs have reserved the URL, http://elderberryclassaction.com/, for these purposes. *Id.* at ¶ 32.[7]

**C.   Notice Design and Content Complies with Rule 23**

The notice documents have been written in plain language and comply with the requirements of Rule 23 and the Fed. Jud. Ctr.'s Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide. Fed. R. Civ. Pro. 23(c)(2)(B); https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0. The internet advertising and Short Form Notice directs Class members to an informational website with contains information from the Long Form Notice. The proposed Long Form Notice includes details regarding the Class Members' ability to opt-out and the deadline to do so, among other information. *Id.* at ¶¶ 36-37, Ex. F. Both the Long and Short Form Notices contain clear and

---

[7] Plaintiffs will provide the Court with login credentials for a preview of the informational website *via* email. To avoid confusion by publicly posting draft version of the class notice, the informational website will not be published until the day prior to issuance of the notice.

understandable summaries of the litigation and the options available. *Id.*

The informational website also includes the Complaint, Class Certification Order, and other Court documents. *Id.* at ¶ 32. In addition, the informational website will include relevant dates, FAQs, instructions for how Class Members may opt-out (request exclusion), contact information for the Notice Administrator (including a toll-free number) and Class Counsel, and how to obtain other case-related information. *Id.*

### D.  Opt-Out Period

To sufficiently allow completion of the notice plan and for potential class members to seek any additional information before making a decision to remain in the Class, Plaintiffs would propose a sixty-day (60) period, from the start of the distribution of Class Notice, to opt out.

## II.  DEFENDANT'S PROPOSED CHANGES ARE UNWARRANTED

### A.  Defendant's Objection to the Language of Class Notice

First, Defendant attempt to narrow the claims of the Class certified by the Court, as argued in Plaintiffs' Motion for Class Certification. For example, Defendant's wish to insert the following language:

> The individual who sued, Linda Sunderland (the "Plaintiff"), alleges that the Challenged Representations promise and/or mislead consumers into believing that Defendant's Sambucol® elderberry supplements contain an elderberry extract made using a process patented by Dr. Madeline Mumcuoglu, an Israeli virologist, designed to isolate certain antiviral proteins present in black elderberries, called lectins. Plaintiff claims that the Sambucol® elderberry supplements instead contain standard elderberry juice, rather than the patented lectin-rich extract.

However, Plaintiff's and the Class's claims are more basic than that Defendant's proffered language. Plaintiff do not only content that the labels are false because they do not use Dr. Mumcuoglu's patented lectin-rich extract, but because the products contain normal, everyday elderberry juice, which has been around for centuries. *See* Complaint, ECF No. 1 at ¶¶ 7 ("While uniformly marketing the product as a unique formulation developed by a world-renowned virologist, Defendants have argued that its

"unique" and "propriety" Elderberry Extract is simply run-of-the-mill Elderberry Juice during an ancillary litigation."); 35 ("…as it seems to be a judicial admission that the 'unique' and 'proprietary'" Elderberry Extract in the Elderberry Products (touted to have been developed by a virologist), was simply elderberry juice."); 38 ("Thus, Defendants could not have been unaware that the Elderberry Products did not contain an "unique" and "proprietary" Elderberry Extract, developed by a virologist. Instead, it contained simply elderberry juice.").

Indeed, Defendant attempted to improperly narrow the claims in a similar manner in the briefing on class certification. As Plaintiff noted in their reply:

> Defendant spills much ink misrepresenting Plaintiffs' "theory of deception." See Oppo at pp. 4-9. In an attempt to avoid certification and liability, Defendant cleaves the Challenged Representation from the context of the Complaint. Plaintiffs alleged that Defendant advertises that the Sambucol as "Virologist Developed," containing a "unique" elderberry extract (created utilizing a "proprietary method of extraction"). See Compl. ¶ 32-33. Read in context, the implication is plain, that a "Virologist Developed" a "unique" elderberry extract utilizing a "proprietary method of extraction." Certainly, it would be hard for a virologist to claim that she "developed" an elderberry extract if that same extract (manufactured in the same manner) previously existed. Any newly "developed" extract is definitionally distinct and novel.

Plaintiffs' Reply to Class Certification, ECF No. 94, at pp. 1-2 ("The 'Virologist Developed' claim is false and misleading because Defendant has conceded that the Products do not contain an elderberry extract that is chemically different from preexisting elderberry juice and that the elderberry extract is processed in a way that has always been used to create elderberry juice."); *see also* Defendant's Opposition to Motion for Class Certification, ECF No. 84, at p. (arguing that Plaintiff offers several "theory's of deception" which do not comport to the allegations in the Complaint). Defendant should not be able to relitigate this matter now.

Second, Defendant add language to the necessary to explain *res judicata* consistently. Yet the language offered by Plaintiff is the same as the language offered

in the prior case, *Corbett*. Additionally, the language is similar to the language offered in the Federal Judicial Center's class notice samples. *See https://www.fjc.gov/content/products-liability-class-action-certification-and-settlement-full-notice* (last visited on Dec. 17, 2025) at p. 7 ("Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against ABC about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you."). Additionally alternations are not needed.

Third, Defendant claims that Milberg Coleman Bryson Phillips Grossman PLLC was named class counsel, and not Mr. Suciu and Mr. Kashima. This is not true. If the Court examines the Notice of Motion for Plaintiff's Class Certification, it asked to appoint individuals, not a firm, as class counsel. *See* ECF No. 68, at p. 2. Accordingly, in granting Plaintiff's Motion, it certified Mr. Suciu and Mr. Kashima, not a whole firm.

### B.  Defendant's Objection to the Class Notice Plan

Defendant suggests that the scope of the notice plan is overbroad and should be more limited and/or more targeted. Digital advertising, however, must often be served to a targeted individual multiple times in order to be considered effective. For example, for class notice, most courts based "reach" percentages on an individual receiving an advertisement impression at least three times. *See, e.g., Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 596 (N.D. Cal. 2020). Additionally, by its nature, advertising often has to reach a larger number of people (and wider audience) to be received by its targeted audience. Yet, Defendant offers no evidence-based reason that the proposed notice plan should be curtailed. Plaintiffs' notice plan is the result of market research ensuring the appropriate reach, as required by due process. It should not be disturbed based on the surmise of a party with a vested interest in limiting bad press.

# DEFENDANT'S POSITION

**PLAINTIFF'S NOTICE PLAN IS OVERBROAD:** Rule 23 requires the "best notice practicable" to class members—New York purchasers of Sambucol® elderberry supplements—not an advertising blitz. Plaintiff's proposed plan far exceeds what is necessary or reasonable. For example, for just one component of Plaintiff's proposed plan (paid media), Plaintiff seeks to generate **53.1M** digital notice impressions—meaning exposing 53.1M to an advertisement related to this action, Decl. of C. Azari, at 13—which is nearly three times the entire population of New York (approximately 20M)[8]. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The sole case Plaintiff cites to support her digital notice (*Schneider v. Chipotle*, 336 F.R.D. 588 (N.D. Cal. 2020)) is inapposite. There, the court approved a notice plan that targeted 2x the number of digital impressions (59,598,000) as the number of estimated class members (30,100,000). Further, *Schneider* approved a settlement notice plan, which does not implicate the same prejudice concerns.

Plaintiff's proposed digital notice is also insufficiently and inappropriately targeted. Plaintiff's propose these digital ads be shown broadly to "Adults 18+" or individuals with general interests such as "health/wellness," and even to those interested in unrelated topics like "homeopathic remedies." This approach bears no reasonable relationship to the certified class and risks reaching millions of people who have no

---

[8] *See* https://www.census.gov/popclock (estimating New York State population at 19,867,248 as of December 15, 2025).
[9] *See id*. (estimating U.S. population at 342,977,885 as of December 15, 2025).

- 8 -

connection or exposure to Sambucol® branded products. Courts have rejected such overbroad notice plans. *See Yeoman v. Ikea*, 2013 WL 5944245, at *6 (S.D. Cal. Nov. 5, 2013) (rejecting proposed method of notice because it "bears no reasonable relationship to the membership in the class.").

Plaintiff also fails to explain why multiple overlapping channels—Google Display Network, Yahoo Audience Network, Facebook, Instagram, sponsored search listings, and press releases to traditional and online news sources—are necessary.[10] *See* McLaughlin on Class Action § 5.81 ("courts properly have insisted that proponents of social media provide detail on the proposed use and reasoning behind use of a particular social media method". ); *id.* ("Objections to notice via social media on the basis of overbreadth and potential reputational harm to the defendant will be sustained where the proponent of social media notice fails to show that the relevant media is specifically targeted at class members or is otherwise likely to reach them.") Redundant advertising increases cost without improving precision and creates unnecessary reputational harm to PharmaCare. **This is not a settlement notice; no merits determination has been made and summary judgment and trial remain**. Many individuals who see these ads will never visit the case website or read the official notice, leaving them with a negative impression based solely on the advertisement. Such overreach is wasteful and prejudicial. The notice plan should be scaled back to meet Rule 23's requirements: targeted, efficient notice to class members—not a sweeping campaign aimed at the general public.

**PLAINTIFF'S NOTICE DOES NOT ACCURATELY DESCRIBE THE CLAIMS ASSERTED:** Plaintiff's proposed forms of notice do not accurately describe the theory of liability alleged in the operative Complaint and upon which the Court granted class certification. Plaintiff alleges, and the Court certified, claims that by

---

[10] In addition to 53.1M impressions of their digital notice, Plaintiff also proposes: sponsoring search listings on 3 search engines, issuing a press release to New York traditional and online news sources.

advertising its elderberry supplements as "unique," "proprietary," and "virologist developed," Defendant misled consumers into believing that Sambucol® branded elderberry supplements contain a virologist-patented extract that isolates the lectins found in black elderberries. Plaintiff's proposed notice, however, broadens the claims alleged to a more general challenge to the truthfulness of certain product descriptors ("unique," "proprietary," and "virologist developed"). This new theory materially alters the basis for certification and cannot be substituted without amendment and re-certification.

PharmaCare's proposed language, by contrast, reflects the actual theory alleged in Plaintiff's Complaint and adopts language from the Court's class certification order, so that potential class members can evaluate the claims asserted on their behalf and whether they would like to stay in the class represented by Class Counsel, or opt-out. Plainly, information accurately describing the claims asserted on their behalf is material to making informed, intelligent decision of whether to opt-out or remain a member of the class. *See Patton v. Dollar Tree Stores, Inc.*, 2017 WL 8233883, * 1 (C.D. Cal. Apr. 5, 2017) (explaining that class notice must have "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt-out or remain a member of the class.") (citations omitted).

Plaintiff's contention that Defendant is improperly "narrowing" the claims through the proposed class notice is incorrect. Defendant's proposed language faithfully tracks both the Court's articulation of Plaintiff's allegations in the Class Certification Order and Plaintiff's own repeated descriptions of her theory of liability.

First, the Court itself summarized Plaintiff's claims in terms materially identical to Defendant's proposed notice language. In certifying the Class, the Court explained:

> "Plaintiffs allege the Products refer to Dr. Mumcuoglu and her patented elderberry extract formula, but the extract used in the Products was not derived from her formula. Instead, Plaintiffs allege the Products are based on elderberry juice."

ECF No. 106 at 4:7–9 (citing ECF No. 68-1 at 14). The Court further noted that Plaintiff

alleges Defendant initially referenced Dr. Mumcuoglu on product labels, but that "there is currently no connection between Dr. Mumcuoglu and Defendants or the current version of the Elderberry Products." *Id*. at 4. Defendant's proposed notice language effectively mirrors this framing and therefore cannot plausibly be characterized as a *post hoc* effort to narrow the claims.

Second, Plaintiff's counsel's admissions—made repeatedly and unequivocally in the *Corbett* proceedings—confirm that the gravamen of Plaintiff's claims has always been that Defendant's labeling falsely represented the Products as using Dr. Mumcuoglu's patented process, when in fact the Products allegedly contain ordinary elderberry juice. At the hearing on the *Corbett* Plaintiffs' motion for leave to amend in the *Corbett* action, Plaintiff's counsel explained:

- "Here we believed, and rightfully so, **based on defendant's advertising**, **that this particular elderberry extract was developed using the patented process by Mrs. Mumcuoglu** … However, she actually patented this process in 1988, and **everything regarding defendant's marketing suggests that they're using her patented formula**. So we based our complaint based on that patent." (*Corbett*, June 14, 2023 Hearing Tr. Page 5, lines 21 to Page 6, line 3) (emphasis added).

- "What the elderberry extract is, whether it's unique and proprietary, and whether it was developed by this particular virologist is something that's already at issue in the NDI. That is why this is an alternative claim. **It's either developed by this virologist and it's an NDI, or it's not and it runs afoul of the packaging claims**. So this [the amended complaint] was in direct response to their defense." (*Corbett*, June 14, 2023 Hearing Tr. Page 11 at 11-18) (emphasis added).

- "Because it was only at that 31st hearing, the October 31st hearing that we were first put on notice that this is a different case; **that this isn't a patented formula developed by a world-renowned virologist as it states on the package**, it's just elderberry juice." (*Corbett*, June 14, 2023 Hearing Tr. Page 32, lines 11-16)

(emphasis added).

- "Because plaintiff was fully expecting that defendant surely must know whether the elderberry extract -- and we'll disclose at deposition -- **is this patented formula developed by the world-renowned virologist as advertised on their label or not**." (*Corbett*, June 14, 2023 Hearing Tr. Page 33, lines 5-10) (emphasis added).

These admissions are consistent with Defendant's proposed notice language, the allegations of the Complaint, and the Court's own understanding of Plaintiff's claims, and inconsistent with Plaintiff's current effort to recast the claims as a general challenge to the truthfulness of certain labeling claims untethered from alleged patented-process representations.

Indeed, Plaintiff's motion for sanctions in this very action further confirms the point. Plaintiff asked the Court to sanction Defendant for allegedly taking factually inconsistent positions—namely, that the elderberry extract in Defendant's products is not made using Dr. Mumcuoglu's patented lectin extraction method, while also asserting that the extract in the Products is the same extract used by Dr. Mumcuoglu when she owned the brand.  Such disclosures could not have, reasonably or in good faith, formed the basis for Plaintiff's sanctions motion—unless Plaintiff believed that her claims in this action were premised on Defendant falsely representing that the Products contained Dr. Mumcuoglu's *patented* elderberry extract. The sanctions motion thus underscores that the patented-process representation sits at the core of Plaintiff's theory of deception.

The Court should adopt PharmaCare's proposed language.

**PLAINTIFF'S NOTICE FORMS DO NOT DESCRIBE RES JUDICATA CONSISTENTLY**: References to the preclusive effect on both claims that were made and those that *could have* been made are necessary to explain res judicata consistently. *See, e.g., Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) ("Newly articulated claims based on the same nucleus of facts may

still be subject to a res judicata finding if the claims could have been brought in the earlier action."). Plaintiff agreed in one instance, but not others. Defendant assumes the inconsistency was inadvertent, and modifications proposed by PharmaCare are acceptable.

**PLAINTIFF'S NOTICE FORMS DO NOT ACCURATELY IDENTIFY THE CLASS COUNSEL APPROVED BY THE COURT:** Plaintiff's Notice Forms state that the Court appointed Nick Suciu III and Trenton R. Kashima of Bryson, Harris, Suciu, and DeMay PLLC as class counsel. This is not accurate. The Court's class certification order approved Plaintiff's counsel at that time as class counsel. Plaintiffs' counsel was Milberg Coleman Bryson Phillips Grossman PLLC.

Plaintiff's Notice Plan does not meet the requirements of Rule 23(c)(2)(B). An improved notice plan should at a minimum address the deficiencies identified by PharmaCare and incorporate PharmaCare's redlines to Plaintiff's proposed notice forms attached hereto as Exhibit A. PharmaCare's redlines to the notice forms apply equally to, and should be similarly incorporated into, any other form of proposed notice, including Plaintiff's informational release. PharmaCare requests a hearing on this joint motion.

DATED: December 18, 2025

Respectfully submitted,

By: /s/ Trenton Kashima

Trenton Kashima (CA SBN No. 291405)
**BRYSON HARRIS SUCIU & DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
(212) 946-9389
tkashima@brysonpllc.com

Nick Suciu III (*pro hac vice*)
**BRYSON HARRIS SUCIU & DEMAY PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (616) 678-2180

nsuciu@brysonpllc.com

Martha Geer (*pro hac vice*)
Luis Cardona (*pro hac vice*)
**BRYSON HARRIS SUCIU & DEMAY PLLC**
900 West Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
mgeer@brysonpllc.com
lcardona@brysonpllc.com

*Attorneys for Plaintiffs and the Class*

DATED: December 18, 2025         SEYFARTH SHAW LLP

By: /s/ Joseph J. Orzano
    Giovanna A. Ferrari
    Lawrence E. Butler
    Aaron Belzer
    Joseph J. Orzano

*Attorneys for Defendant PHARMACARE U.S., INC.*

# SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Joseph J. Orzano, counsel for Defendant, and that I have obtained Mr. Orzano's authorization to affix his electronic signature to this document.

Dated: December 18, 2025                     /s/ Trenton R. Kashima
                                             Trenton R. Kashima