# EXHIBIT A



1  Trenton R. Kashima (SBN No. 291405)
2  **BRYSON HARRIS SUCIU & DEMAY PLLC**
3  19800 MacArthur Blvd., Suite 270
   Irvine, CA 92612
4  (212) 946-9389
   tkashima@brysonpllc.com
5  **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
6  402 West Broadway St., Suite 1760
   San Diego, CA 92101
7  Tel: (619) 810-7047
   tkashima@milberg.com

8  *Attorneys for Plaintiffs and the Class*

9  [Additional Counsel Listed on Signature Page]

10

11                    **UNITED STATES DISTRICT COURT**

12            **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

13

14  LINDA SUNDERLAND and          Case No.:3:21-cv-00137-JES-AHG
    BENJAMIN BINDERLAREESE
15  WILSON and MELANIE WOHL,
    individually and on behalf of all others    **PLAINTIFFS' FIRST AMENDED**
16  similarly situated,                          **CLASS ACTION COMPLAINT**

17                    Plaintiffs,               **JURY TRIAL DEMANDED**

18              v.

19  PHARMACARE U.S., INC., a
    Delaware Corporation, and
20  PHARMACARE LABORATORIES
    PTY LTD., an Australian company,

21                    Defendant.

22

23

24

25

26

27

28

─────────────────────────────
FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs ~~Linda Sunderland~~LaReese Wilson and ~~Melanie Wohl~~Benjamin ~~Binder~~ (collectively "Plaintiffs"), through their undersigned attorneys, file this Class Action Complaint against Defendant PharmaCare U.S., Inc. ~~and Pharmacare Laboratories PTY Ltd.~~ ("Defendant~~s~~"), individually and on behalf of all others similarly situated, and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1.    This class action is brought individually by Plaintiffs on behalf of consumers who purchased Defendants' Elderberry Original Syrup, Sambucol Black Elderberry Sugar Free, Sambucol Black Elderberry Syrup for Kids, Sambucol Black Elderberry Effervescent Tablets, Sambucol Black Elderberry Chewable, Sambucol Black Elderberry Pastilles, Sambucol Black Elderberry Daily Immune Drink Powder, and Sambucol Black Elderberry Advanced Immune Syrup (collectively the "Elderberry Products" or the "Products") in California, New York, and nationwide (the "Class").

2.    Black elderberry, which is derived from a flowering plant called *Sambucus*, has become a popular dietary supplement in recent years.  The increased popularity of "natural remedies" drives sales of elderberry products. According to a report published by the American Botanical Council in 2019, sales of elderberry supplements more than doubled in the United States between 2017 and 2018 to a total of nearly $51 million. Between January and March of 2018, elderberry supplement sales were more than $100 million dollars in the US alone. Elderberry sales in the first half of 2020 grew by triple digits compared to sales during the same period in 2019, showing the greatest growth in the mainstream dietary supplement market, where it is currently the third top-selling herbal ingredient.  The mainstream dietary supplement market includes grocery stores, drug stores, and mass

First Amended Class Action Complaint

1   merchandisers such as club, dollar, and military stores.[1]

2       3.      According to IRI (now known as Circana), a market research firm that

3   tracks retail sales of supplements, in March 2020, sales of elderberry supplements

4   increased by 415% over the prior year as consumers sought products that might offer

5   protection from the novel coronavirus.[2]  The "immune support" dietary supplement

6   market, including supplements containing elderberry, is thus an extraordinarily fast-

7   growing segment of the dietary supplement market, in part due to the Coronavirus

8   Pandemic.

9       4.      With hundreds of elderberry supplement options available for

10  consumers to purchase, in order to stand out from the competition, Defendants

11  promote its Elderberry Products as "the most trusted brand sold worldwide" and

12  prominently displays a badge on its website proclaiming that its Products are the

13  "No. 1 Best Selling Black Elderberry in the US."[3]

14      5.      To further stand out from the competition, on the labels of its Elderberry

15  Products, as well as on its website and in other marketing directed at consumers,

16  Defendants state: "*Developed by a world renowned virologist*, Sambucol is the

17  *unique* black elderberry extract that has been used in scientific studies.  By using a

18  *proprietary method* of extraction, *only Sambucol can guarantee* consistent, immune

19  supporting properties in every serving."  (Emphasis added).  A reasonable consumer

20  would understand such claims to mean that the Elderberry Products contain a unique

21  elderberry extract, which has been developed by a virologist (thus, likely with anti-

22  viral properties), using a method of extraction that cannot be found in other

23  elderberry dietary supplements.

24  _____

25      [1]  https://www.globenewswire.com/news-release/2020/08/31/2086400/0/en/US-
    Herbal-Supplement-Sales-Increase-by-8-6-in-2019-Record-Breaking-Sales-
26  Predicted-for-2020.html.

27      [2]      https://www.nytimes.com/2020/03/23/well/live/coronavirus-supplements-
    herbs-vitamins-colds-flu.html.

28      [3]  https://sambucolusa.com/.

- 2 -




Thus, Defendants warrant that all of the Products contain its proprietary, virologist developed, elderberry extract. However, such claims are false and misleading.

6. Here, Defendants advertise that the Elderberry Products were "developed by a world renowned virologist," a reference to Dr. Madeleine Mumcuoglu. Dr. Mumcuoglu and her company (Razei Bar Ltd.) originally trademarked the "Sambucol" branding, the same trademark that is currently owned by Defendants. *See* U.S. Trademark Nos. 75326070 and 74680785. Dr. Mumcuoglu also applied for patents for her Trademarked "Sambucol" Elderberry Extract. *See* U.S. Patent No. 4,742,046; Patent Application US2009/0186101 A1. This patented formulation was based on a specific cold pressed Elderberry Extract that contains a unique anti-viral compound, elderberry lectins.

7. While uniformly marketing the product as a unique formulation developed by a world-renowned virologist, Defendants have argued that its "unique" and "propriety" Elderberry Extract is simply run-of-the-mill Elderberry Juice during

- 3 -

First Amended Class Action Complaint

1   an ancillary litigation. Accordingly, Plaintiffs' counsel ordered testing to determine
2   if the Defendants' so-called "unique" and "propriety" Elderberry Extract was
3   actually the same "unique" and "propriety" formula developed by Dr. Mumcuoglu.
4   The results confirm it is not. There are no lectins in the Elderberry Products.

5       8.      With knowledge of growing consumer demand for supplements
6   containing elderberry, Defendants intentionally marketed and sold their illegal
7   Elderberry Products using false and misleading labeling and advertising.
8   Defendants' prominent and systematic mislabeling of the Products and its false and
9   deceptive advertising form a pattern of unlawful and unfair business practices that
10  harms the public and, if unstopped, could lead to substantial societal harm.

11      9.      Plaintiffs bring this suit to halt Defendants' unlawful sales and
12  marketing of its Elderberry Products and for damages they sustained as a result of
13  the illegal sales and false and misleading marketing. Declaratory and injunctive
14  relief is of particular importance given the likely consequences of Defendants'
15  actions.

16                              **PARTIES**
17      10.     Plaintiff ~~Linda Sunderland~~LaReese Wilson is a resident and citizen of
18  New York.

19      11.     Plaintiff ~~Sunderland~~ Wilson purchased Sambucol Black Elderberry
20  ~~Chewable Tablets~~Original Syrup over the last ~~two~~ five years, with her last purchase
21  in ~~March~~ November 202~~5~~3.

22      12.     Prior to and at the time of each purchase of the Sambucol Black
23  Elderberry ~~Chewable Tablets~~Original Syrup, Plaintiff ~~Sunderland~~ Wilson was
24  exposed to, saw, and relied upon Defendants' materially misleading representations
25  on the Products' packaging and labelling. She reviewed the product's labeling,
26  where she saw and relied on Defendants' claims that its elderberry ingredient was
27  developed by a world renowned virologist and was unique and propriety.

28      13.     By purchasing Defendants' illegally sold and falsely advertised

- 4 -

1  Elderberry Products, Plaintiff ~~Sunderland~~ Wilson suffered injury in fact and lost
2  money.

3       14.    Plaintiff ~~Sunderland~~ Wilson would like to continue purchasing
4  Defendants' Elderberry Products if they were legally sold supplements and if
5  Defendants' false and misleading statements were true. Plaintiff ~~Sunderland~~ Wilson
6  is, however, unable to rely on Defendants' representations in deciding whether to
7  purchase Defendants' products in the future.

8       15.    Plaintiff ~~Benjamin Binder~~Melanie Wohl is a resident and citizen of
9  ~~California~~New York.

10      16.    Plaintiff Wohl has purchased Sambucol Black Elderberry Original
11 Syrup throughout the years, from her first purchase being around April 2020 and
12 intermittently purchasing the Sambucol Elderberry Syrup from local pharmacies
13 every couple of months~~Plaintiff Binder purchased Sambucol Black Elderberry~~
14 ~~Original Syrup over the last four years, with his last purchase in June 2023~~.

15      17.    Prior to and at the time of each purchase of the Sambucol Black
16 Elderberry Original Syrup, Plaintiff ~~Binder~~ Wohl was exposed to, saw, and relied
17 upon Defendants' materially misleading representations on the Products' packaging
18 and labelling.  He reviewed the product's labeling, where he saw and relied on
19 Defendants' claims that its elderberry ingredient was developed by a world
20 renowned virologist and was unique and propriety.

21      18.    By purchasing Defendants' illegally sold and falsely advertised
22 Products, Plaintiff ~~Binder~~ Wohl suffered injury in fact and lost money.

23      19.    Plaintiff ~~Binder~~ Wohl would like to continue purchasing Defendants'
24 Products if they were legally sold supplements and if Defendants' false and
25 misleading statements were true. Plaintiff ~~Binder~~ Wohl is, however, unable to rely
26 on Defendants' representations in deciding whether to purchase Defendants'
27 products in the future.

28      ~~20.~~    Defendant PharmaCare U.S., Inc. is a Delaware corporation with its

- 5 -

principal place of business at 5030 Camino de la Siesta, Suite 200, San Diego,
California 92108.  Defendant PharmaCare U.S., Inc. is responsible for the marketing
and distribution of the Elderberry Products in the United States.    Defendant
PharmaCare U.S., Inc. is responsible for reviewing the accuracy of the Elderberry
Products labels sold in the United States, and will make periodic changes to such
labels.

21.20. Defendant Pharmacare Laboratories Pty Ltd. (or Pharm-A-Care
Laboratories Pty. Ltd.) is an Australian company with its principal place of business
at 18 Jubilee Ave Warriewood, 2102 Australia.  Defendant Pharmacare Pty Ltd.
(both individually and through its whole own subsidiaries) owns the Sambucol
trademark, is responsible for the formulation and manufacturing of the Elderberry
Products (both in the U.S. and internationally), and is responsible for the original
labels on the Elderberry Products.

**JURISDICTION AND VENUE**

22.21. This Court has original jurisdiction over this controversy pursuant to 28
U.S.C. § 1332(d).    The amount in controversy in this class action exceeds
$5,000,000, exclusive of interest and costs, there are tens of thousands of Class
members, and there are numerous Class members who are citizens of states other
than Defendants' states of citizenship.

23.22. This Court has personal jurisdiction over Defendant PharmaCare U.S.,
Inc.'s in this matter because Defendant is a resident of California, and Defendants'
acts and omissions giving rise to this action occurred in the state of California.

24.23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and
(c) because a substantial part of the events or omissions giving rise to Plaintiffs'
claims occurred in this District and because Defendants transact business and/or has
agents within this District and has intentionally availed themselves of the laws and
markets within this district.

**FACTUAL ALLEGATIONS**

- 6 -

Formatted: Font: 14 pt

25.24. This dispute arises out of Defendants' marketing of the Sambucol branded dietary supplements, which contains as its primary dietary ingredient, Black Elderberry extract.

26.25. Black Elderberry (also known as *Sambucus nigra*) is a flowering plant that produces small clusters of small black berries. Elderberries have been used for hundreds of years. However, raw elderberries, as well as elderberry seeds, stems, and leaves, contain a toxin, cyanogenic glycosides, that can cause serious illness and even death. Accordingly, elderberries have to be cooked before they can be used, in order to neutralize the cyanogenic glycosides. This is traditionally done by boiling the elderberries, using the resulting juice or mash. This method is also used to create traditional elderberry juices and extracts.

27.26. In May 3, 1988, a patent was filed by Madeleine Bliah (later known as Madeleine Mumcuoglu), U.S. Patent No. 4,742,046. Patent No. US4742046. This Patent described the use of *lectins* obtained from the *Sambucus nigra* plant for inhibiting the activity of enveloping viruses (particularly influenza virus type A). The Patent described the method of extraction for Dr. Mumcuoglu's therapeutic elderberry extract, which focused on isolating elderberry lectins (which Dr. Mumcuoglu claimed had anti-viral properties):

> elderberries from *Sambucus nigra I* may be pressed without crushing the seeds and the extract recovered by centrifugation and filtration. The extract should then be ultra-centrifuged. The lectins may be recovered from the extract by affinity chromatography on a Sepharose-galactose column followed by elution. The lactose may be removed (for example, by passage through a Sephadex G25 column). The desorbed material is then resubjected to affinity chromatography on a Sepharose-galactose column. The first two peaks recovered during desorption are dialyzed against water and lyophilized. The first peak comprises *Sambucus nigra II* lectin which is not appreciably adsorbed on to the Sepharose-galactose column and the second peak comprises *Sambucus nigra I* lectin

*Id.* at p. 4. The Patent warns that "[d]uring the drug processing the temperature

- 7 -

FIRST AMENDED CLASS ACTION COMPLAINT

1  should not exceed 70º C. since some lectins are destroyed by heat at that level." *Id.*

2  ~~28.~~27. This temperature limitation is an important note, as most pasteurization

3  process for commercial juice products will normally exceed this temperature. *See*

4  FDA, Guidance for Industry: Juice Hazard Analysis Critical Control Point Hazards

5  and  Controls  Guidance,  First  Edition  (2004),  available  at

6  https://www.fda.gov/regulatory-information/search-fda-guidance-

7  documents/guidance-industry-juice-hazard-analysis-critical-control-point-hazards-

8  and-controls-guidance-first  (recommended  pasteurization  for  fruit  juice  at  a

9  minimum of 71.1º C (160º F) for 6 seconds, but may be much higher).  This is likely

10  the reason for Dr. Mumcuoglu's specific method of extraction.

11  ~~29.~~28. Accordingly,  the  formula  that  Dr.  Mumcuoglu  developed,  which

12  Defendants touted in its marketing and labeling of the Elderberry Products, was not

13  traditional elderberry juice.  Instead, it was a method of isolating the lectins within

14  elderberries for their anti-viral properties.

15  ~~30.~~29. During this period, Dr. Mumcuoglu also started an Israeli health

16  products company, Razei Bar Ltd., to market her elderberry extract.  In April 1995,

17  Razei Bar Ltd. applied for a U.S. trademark, No. 74680785, on the word "Sambucol"

18  for "dietary supplements, namely liquid extracts and throat lozenges composed

19  primarily of elderberry juice."  The "Sambucol" trademark would eventually

20  become the property of Defendant PharmaCare Laboratories Pty Ltd.

21  ~~31.~~30. In  2009,  Dr.  Mumcuoglu  would  file  a  patent  application,  No.

22  US2009/0186101 A1, to test this same elderberry extract discussed in the above

23  patent as a novel method for the treatment of the avian flu virus.  Patent Application

24  US2009/0186101 A1.  In this patent application, Dr. Mumcuoglu would specifically

25  refer to her previous patented therapeutic elderberry extract using the trademarked

26  term "Sambucol."  *Id.*  Additionally, there is no doubt that these patents describe the

27  unique  "Sambucol"  elderberry  extract  that  Dr.  Mumcuoglu  developed  and

28  trademarked.

- 8 -

1    ~~32.~~31.In order to increase demand, the Elderberry Products' labeling
2    specifically advertises that the Products contained a "unique" and "proprietary"
3    elderberry extract "developed by a world renowned virologist."  The virologist
4    referenced was Dr. Mumcuoglu.  Defendants originally included Dr. Mumcuoglu's
5    name on some of the Products' labels, but this reference was removed.  It appears
6    that there is currently no connection between Dr. Mumcuoglu and Defendants or the
7    current version of the Elderberry Products.

8    ~~33.~~32.Nonetheless, Defendants continued to advertise on several of the
9    Products' labels that the Products were in fact virologist developed.  For example,
10   the label of the Products contained statements, such as:

11        •    the Products were "Virologist developed"
12        •    "Developed by a [world renowned] virologist, Sambucol® is the
13             unique black elderberry extract that has been used in scientific studies. By
14             using a proprietary method of extraction, only Sambucol® can guarantee
15             consistent, immune supporting properties in every serving."
16        •    "Developed by a world renowned virologist, Sambucol® is the
17             unique manufacturing process preserves and maximizes the naturally
18             occurring health benefits of the Black Elderberry."
19        •    "Developed by a world renowned virologist, Sambucol® has
20             been trusted by millions worldwide."
21   It is believed that Defendants included this language to build trust in the Sambucol
22   brand and gain a competitive advantage in the marketplace.

23   ~~34.~~33.At all relevant times, Defendants marketed its Products in a consistent
24   and uniform manner.  Each of the Class Products' labels specifically reference that
25   they were virologist developed and contained the same elderberry extracts.
26   Defendants sell the Products in all 50 states on its website and through various
27   distributors and retailers across the United States.

28   ~~35.~~34.For the first time during an ancillary litigation, Defendants' counsel

FIRST AMENDED CLASS ACTION COMPLAINT

1  revealed that these claims may be false. During a discovery hearing, where the

2  plaintiffs were seeking formulations for the Products, Defendants' counsel claimed

3  that:

4
5      I don't know why plaintiff is saying he needs the formulation for it to
       determine chemical analysis. You literally have the manufacturing
6      process for turning elderberries into elderberry juice, from which an
       expert should be able to opine on whether that results in any chemical
7      alteration to the elderberry juice.

8  *Corbett et al. v. Pharmacare U.S., Inc.*, No: 3:21-cv-00137-JES-AHG, ECF No. 119,

9  at p. 29:20-25. The import of this statement is significant, as it seems to be a judicial

10 admission that the "unique" and "proprietary" Elderberry Extract in the Elderberry

11 Products (touted to have been developed by a virologist), was simply elderberry

12 juice.

13      36.35. Notably, with respect to the virologist developed extract that

14 Defendants tout on its marketing and labeling, Dr. Mumcuoglu (the referenced

15 virologist) applied for two Patents for the use of an extract containing the *lectins*

16 obtained from the *Sambucus nigra* plant for inhibiting the activity of viruses, namely

17 the flu. Lectins are the defining component of Dr. Mumcuoglu's formula.

18      37.36. Plaintiffs testing of the Elderberry Products confirm that there are no

19 elderberry lectins in the Products. Therefore, Defendants are not using Dr.

20 Mumcuoglu's unique and proprietary formulation, which was developed (in part) to

21 retain the lectins. Accordingly, Defendants' "virologist developed" claims are

22 demonstrably false.

23      38.37. Defendants knew, or could not be unaware, of the falsity of the

24 Elderberry Products' labels as alleged herein. Defendants both reviewed and created

25 the labels on the Elderberry Products, as well as their formulations. Defendants also

26 purchased the ingredients within the Elderberry Products, including the Elderberry

27 Extract. Finally, Defendants were also aware of Dr. Mumcuoglu's Elderberry

28 Extract formulation (as it was in a publicly available patent) and her involvement in

- 10 -

1   the development of the Sambucol dietary supplements. Indeed, even during
2   Defendants' ownership of the Elderberry Products, some of the Products' labels still
3   referenced Dr. Mumcuoglu. Thus, Defendants could not have been unaware that the
4   Elderberry Products did not contain an "unique" and "proprietary" Elderberry
5   Extract, developed by a virologist. Instead, it contained simply elderberry juice.

6        39.38. Defendants continue to falsely label its Elderberry Products as being
7   "virologist developed" and containing an "unique" and "proprietary" Elderberry
8   Extract. Yet, without complex and costly scientific testing, consumers would be
9   unable to determine that Defendant's labels are false. Without injunctive relief,
10   consumers will be unable to determine if Defendants' labels remain incorrect or if
11   the Elderberry Products actually use Dr. Mumcuoglu's formulation. Additionally,
12   Plaintiffs and other consumers continue to be injured by Defendants' fraudulent
13   business practices.

14        40.39. Additionally, Defendants cause consumers to suffer a monetary injury.
15   Each of the Elderberry Products do not contain the "unique" and "proprietary"
16   virologist developed Elderberry Extract, as advertised and warranted. Accordingly,
17   Plaintiffs and other claims members are entitled to the difference between the
18   Elderberry Products provided and the Elderberry Products as warranted.

19               **TOLLING AND ESTOPPEL ALLEGATIONS**

20        41.40. Defendants have actual knowledge, or should have actual knowledge,
21   that its Elderberry Products do not contain the "unique" and "proprietary" virologist
22   developed Elderberry Extract, as advertised and warranted for the reasons stated
23   above.

24        42.41. Although Defendants were aware of the deception in their advertising,
25   marketing, packaging, and sale of the Elderberry Products chemicals, it took no steps
26   to disclose to Plaintiffs or Class Members that their Products do not contain the
27   "unique" and "proprietary" virologist developed Elderberry Extract.

28        43.42. Despite their knowledge otherwise, Defendants have fraudulently

- 11 -

misrepresented the Elderberry Products contain the "unique" and "proprietary" virologist developed Elderberry Extract, actively concealing this fact from Plaintiffs and other Class Members.

~~44.~~43. Defendants have made, and continue to make, affirmative false statements and misrepresentations to consumers, regarding the inclusion of the purported "unique" and "proprietary" virologist developed Elderberry Extract in the Elderberry Products.

~~45.~~44. The exact formulation of the Elderberry Extract in the Elderberry Products is not reasonably detectible to Plaintiffs and Class Members.

~~46.~~45. At all times, Defendants actively and intentionally misrepresented the qualities and characteristics of the Elderberry Products, while concealing the true nature of the Elderberry Extract in its Products. Accordingly, Plaintiffs' and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

~~47.~~46. Defendants misrepresented the Elderberry Products and concealed the true nature of the Elderberry Extract in their Products for the purpose of delaying Plaintiffs and Class Members from filing a complaint on their causes of action.

~~48.~~47. As a result of Defendants' intentional misrepresentations and active concealment of the true nature of the Elderberry Extract in their Elderberry Products, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendants are estopped from relying on any statutes of limitations in light of its intentional misrepresentations and active concealment of the true nature of the Elderberry Extract in their Elderberry Products.

~~49.~~48. Further, the causes of action alleged herein did not occur until Plaintiffs and Class Members discovered that the Products contained PFAS chemicals. Plaintiffs only became aware of the true nature of the Elderberry Extract in their Products through Defendants' admission at a recent hearing before this Court. *Corbett et al. v. Pharmacare U.S., Inc*., No: 3:21-cv-00137-JES-AHG, ECF No. 119, at p. 29:20-25.  Prior to this admission, there was no publicly available information

FIRST AMENDED CLASS ACTION COMPLAINT

regarding the exact formulation of the Elderberry Extract in Defendants' Elderberry Products which would contradict Defendants' assertion that the Elderberry Extract in their Elderberry Products was a "unique" and "proprietary" virologist developed formulation.

## CLASS ACTION ALLEGATIONS

50.49. Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

**National Class:**

All persons in the United States who, during the relevant statute of limitations, purchased the Elderberry Original Syrup, Sambucol Black Elderberry Sugar Free, Sambucol Black Elderberry Syrup for Kids, Sambucol Black Elderberry Effervescent Tablets, Sambucol Black Elderberry Chewable Tablets, Sambucol Black Elderberry Pastilles, Sambucol Black Elderberry Daily Immune Drink Powder, and Sambucol Black Elderberry Advanced Immune Syrup for personal or household use and not for resale.

**California Subclass:**

All persons in California who, during the relevant statute of limitations, purchased the Elderberry Original Syrup, Sambucol Black Elderberry Sugar Free, Sambucol Black Elderberry Syrup for Kids, Sambucol Black Elderberry Effervescent Tablets, Sambucol Black Elderberry Chewable Tablets, Sambucol Black Elderberry Pastilles, Sambucol Black Elderberry Daily Immune Drink Powder, and Sambucol Black Elderberry Advanced Immune Syrup for personal or household use and not for resale.

**New York CSubclass:**

All persons in New York who, during the relevant statute of limitations, purchased the Elderberry Original Syrup, Sambucol Black Elderberry Sugar Free, Sambucol Black Elderberry Syrup for Kids, Sambucol Black Elderberry Effervescent Tablets, Sambucol Black Elderberry Chewable Tablets, Sambucol Black Elderberry Pastilles, Sambucol Black Elderberry Daily Immune Drink Powder, and Sambucol Black Elderberry Advanced Immune Syrup for personal or household use and not for resale.

Specifically excluded from these definitions are: (1) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is

- 13 -

assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to amend the Class definition and Subclass definitions as necessary.

51.50. Certification of Plaintiffs' claims for class-wide treatment are appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence that individual Class members would use to prove those elements in individual actions alleging the same claims.

52.51. The Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of hundreds of thousands of consumers. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendants and its authorized retailers.

53.52. The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Elderberry Products that were manufactured, marketed, advertised, distributed, and sold by Defendants. Furthermore, the factual basis of Defendants' misconduct is common to all Class Members because Defendants have engaged in systematic fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

54.53. Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendants have acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

a.    Whether the Elderberry Products are advertised and warranted as containing a "unique" and "propriety" Elderberry Extract, developed by a virologist;

b.    Whether the claims Defendants made and is making regarding the Products are unfair or deceptive, specifically, whether the Elderberry Products

- 14 -

actually contain "unique" and "propriety" Elderberry Extract, developed by a virologist;

     c.    Whether Defendants knew or should have known that the representations and advertisements regarding the Products were false and misleading;

     d.    Whether Defendants have breached express warranties in the sale and marketing of the Elderberry Products;

     e.    Whether Defendants' conduct violates public policy;

     f.    Whether Defendants' acts and omissions violate California law;

     g.    Whether Defendants' acts and omissions violate New York law;

     h.    Whether the Plaintiffs and the Class Members suffered monetary injury, and, if so, what is the measure of the appropriate damages or, in the alternative, restitution;

     i.    Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

~~55.~~54. Plaintiffs will fairly and adequately protect the interests of Class Members. They have no interests antagonistic to those of Class Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

~~56.~~55. The elements of Rule 23(b)(2) are met. Defendants will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect. Defendants have acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

~~57.~~56. The elements of Rule 23(b)(3) are also met. Plaintiffs and Class

- 15 -

Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

58.57. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

59.58. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## CAUSES OF ACTION

### COUNT I
### California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")
### (On Behalf of the National Class and California Subclass)

60.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

61.   Plaintiffs bring this claim individually and on behalf of all members of the National Class and Plaintiff Binder brings this claim individually and on behalf of California Subclass against Defendants.

- 16 -

62. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

63. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute business acts and practices.

64. Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws: the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

65. Unfair: Defendants' conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

66. Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the False Advertising Law.

67. Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

68. Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. As set forth in detail above, Defendants have fraudulently labeled its Products as they have made false and misleading statements that are likely to mislead reasonable consumers.

69. Defendants profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

- 17 -

70.    Plaintiffs seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

71.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase the Products in the future if they can be assured that the Products are properly labeled and actually contain a virologist developed elderberry extract.

72.    Additionally, Plaintiffs seek restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and the Class. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

73.    On behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

**COUNT II**
**California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of the National Class and California Subclass)**

74.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

75.    Plaintiffs bring this claim individually and on behalf of all members of the National Class and Plaintiff Binder brings this claim individually and on behalf of California Subclass against Defendants.

76.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly

- 18 -

1  to dispose of real or personal property or to perform services" to disseminate any
2  statement "which is untrue or misleading, and which is known, or which by the
3  exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus.
4  & Prof. Code § 17500.

5      77.  As alleged in detail above, the advertisements, labeling, policies, acts,
6  and practices of Defendants relating to the Elderberry Products misled consumers
7  acting reasonably regarding the ingredients within said Products.

8      78.  Plaintiffs and the Class Members suffered injury in fact as a result of
9  Defendants' actions as set forth herein because they purchased the Products in
10  reliance on Defendants' labeling claims, when such claims were false.

11      79.  Defendants' business practices as alleged herein constitute deceptive,
12  untrue, and misleading advertising pursuant to the FAL because Defendants have
13  advertised the Products in a manner that is untrue and misleading, which Defendants
14  knew or reasonably should have known, and omitted material information from its
15  advertising.  For example, Defendants advertised that its Elderberry Products
16  contained a virologist developed extract, when it did not.

17      80.  Defendants profited from its sale of the falsely and deceptively
18  advertised Products to unwary consumers.

19      81.  Plaintiffs seek an order enjoining Defendant from continuing to
20  conduct business through fraudulent or unlawful acts and practices and to commence
21  a corrective advertising campaign.

22      82.  Defendant's conduct is ongoing and continuing, such that prospective
23  injunctive relief is necessary, especially given Plaintiffs' desire to purchase the
24  Products in the future if they can be assured that the Products are properly laberled
25  and actually contain a virologist developed elderberry extract.

26      83.  Additionally, Plaintiffs seek restitution if monetary damages are not
27  available. Indeed, restitution under the FAL can be awarded in situations where the
28  entitlement to damages may prove difficult. But even if damages were available,

- 19 -

FIRST AMENDED CLASS ACTION COMPLAINT

such relief would not be adequate to address the injury suffered by Plaintiffs and the Subclass. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

84.    On behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

**COUNT III**
**California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of the California Subclass)**

85.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

86.    Plaintiff Binder brings this claim individually and on behalf of the members of the California Subclass against Defendants.

87.    Defendants are a "person" under the CLRA, Cal. Civ. Code § 1761(c).

88.    Plaintiff Binder and California Subclass members are "consumers" under the CLRA, Cal. Civ. Code § 1761(d).

89.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

90.    Defendants' false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff Binder and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

- 20 -

FIRST AMENDED CLASS ACTION COMPLAINT

1    c.    § 1770(a)(9): advertising goods with intent not to sell them as
2    advertised; and

3    d.    § 1770(a)(16): representing the subject of a transaction has been
4    supplied in accordance with a previous representation when it has not.

5    91.    Defendants profited from the sale of the falsely, deceptively, and
6    unlawfully advertised Products to unwary consumers.

7    92.    Defendants' wrongful business practices constituted, and constitute, a
8    continuing course of conduct in violation of the CLRA.

9    93.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), concurrently
10    with the filing of this Complaint, Plaintiff Binder, through counsel, mailed
11    Defendants a letter by certified mail addressed to its headquarters (with a copy sent
12    to Defendants' counsel as well), providing notice of Defendants' alleged violations
13    of the CLRA, demanding that Defendants correct such violations, and providing
14    Defendants with the opportunity to correct its business practices.  Plaintiff Binder
15    specifically identified which provisions of Cal. Civ. Code § 1770 Defendants had
16    violated.

17    94.    Pursuant to California Civil Code § 1780, Plaintiff Binder seeks
18    injunctive relief, his reasonable attorneys' fees and costs, and any other relief that
19    the Court deems proper.  Should Defendant not respond to Plaintiff Binder's CLRA
20    Demand Letter, Plaintiff will amend his complaint to seek additional monetary
21    relief, which may include statutory damages.

22    **COUNT IIV**
23    **Violation of New York Deceptive Acts and Practices Law**
24    **(New York General Business Law §§ 349 and 350)**
25    **(On Behalf of Plaintiffs Sunderland and the New York CSubclass)**

25    95.59. Plaintiffs Sunderland reallege and repeat the allegations set forth in the
26    preceding paragraphs as if fully set forth herein.

27    96.60. By the acts and conduct alleged herein, Defendants committed
28

- 21 -

deceptive acts and practices in the State of New York by making the above alleged misrepresentations directed to consumers in New York

~~97.~~61. Plaintiffs and other members of the New York Class are "consumers" in accordance with New York General Business Law ("GBL") § 349.

~~98.~~62. Defendants' statements concerning the nature of the Elderberry Extract in the Elderberry Products, alleged above, were advertisements in accordance with GBL § 350.

~~99.~~63. Defendants' statements concerning the nature of the Elderberry Extract in the Elderberry Products, alleged above, were misleading in violation of GBL §§ 349 and 350.

~~100.~~64.    At all relevant times, Defendants conducted trade and commerce in New York and elsewhere within the meaning of GBL § 349, and profited from the sale of the Elderberry Products within New York.

~~101.~~65.    Section 349 allows a plaintiff to recover "actual damages or fifty dollars, whichever is greater." N.Y. Gen. Bus. L. §349(h). Section 350 allows a plaintiff to recover "actual damages or five hundred dollars, whichever is greater." Id. §350-e.

~~102.~~66.    As a direct and proximate result of Defendants' conduct, Plaintiffs and other members of the Class have suffered damages.

~~103.~~67.    Accordingly, Plaintiffs and the New York Subclass seek to enjoin the unlawful acts and practices described herein, to recover actual damages or statutory damages of fifty dollars and five hundred dollars under GBL §§ 349 and 350, respectively, whichever is greater, as well punitive damages and reasonable attorneys' fees and costs.

### COUNT VI
**Breach of Express Warranties**
**(On Behalf of the National Classes and Subclasses)**

~~104.~~68.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

- 22 -

1    ~~105.~~69.    Plaintiffs bring this claim individually and on behalf of the

2    members of the ~~National Class and the California and~~ New York Class<u>Subclasses</u>

3    against Defendants.

4    ~~106.~~70.    Through the Products' labels and advertising, Defendants made

5    affirmations of fact or promises, or description of goods, described above, which

6    were "part of the basis of the bargain," in that Plaintiffs and the Class Members

7    purchased the Products in reasonable reliance on those statements.

8    ~~107.~~71.    Plaintiffs and the Class Members have privity of contract with

9    Defendants through their purchase of the Elderberry Products, and through the

10   express warranties that Defendants issued to its customers. Defendants' warranties

11   accompanied the Elderberry Products and were intended to benefit end-users of the

12   Elderberry Products. To the extent that Plaintiffs and/or the Class Members

13   purchased the Elderberry Products from third-party retailers, privity is not required

14   because Plaintiffs and the Class Members are intended third-party beneficiaries of

15   the contracts between Defendants and third-party retailers, and because the express

16   warranty is intended to benefit purchasers or owners subsequent to the third-party

17   retailers. In other words, the contracts are intended to benefit the ultimate consumer

18   or user of the Elderberry Products.

19   ~~108.~~72.    Defendants breached the express warranties by selling

20   Elderberry Products that contain a "unique" and "propriety" Elderberry Extract,

21   developed by a virologist.

22   ~~109.~~73.    Plaintiffs and the Class Members would not have purchased the

23   Elderberry Products had they known that the Products are falsely labeled. Plaintiffs

24   and the Class Members relied on Defendants' misrepresentations and misstatements.

25   ~~110.~~74.    That breach actually and proximately caused injury in the form

26   of a portion of the purchase price that Plaintiffs and Class members paid for the

27   Elderberry Products.

28   ~~111.~~75.    Furthermore, Defendants had actual knowledge that the

- 23 -

Elderberry Products were falsely labeled because it has actual knowledge of the formulation of the Elderberry Products.

112.76.    Plaintiffs provided Defendants with notice of the alleged breach within a reasonable time after they discovered the breach or should have discovered it.

113.77.    As a result of Defendants' breach of warranty, Plaintiffs and the Class Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered against Defendants as follows:

A.    Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiffs as the class representatives, and designating the undersigned as class counsel;

B.    Enter an order awarding Plaintiffs and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law;

C.    Declare that Defendants arefinancially responsible for notifying all Class members of the mislabeling and misbranding of the Products;

D.    Declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products, or order Defendants to make full restitution to Plaintiffs and the members of the Class;

E.    Defendants shall audit and reassess all prior customer claims regarding the Products, including claims previously denied in whole or in part;

F.    An order awarding Plaintiffs and the Classes pre-judgment and post-judgment interest as allowed under the law;

- 24 -

G.   Grant reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, including expert witness fees; and

H.   Grant such other and further relief as this Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: [INSERT]                     Respectfully Submitted,

By:   /s/ Trenton Kashima
      Trenton R. Kashima (SBN 291405)
      BRYSON HARRIS SUCIU
      & DEMAY PLLC
      19800 MacArthur Blvd., Suite 270
      Irvine, CA 92612
      (212) 946-9389
      tkashima@brysonpllc.com
      MILBERG COLEMAN BRYSON
      PHILLIPS GROSSMAN PLLC
      402 West Broadway St., Suite 1760
      San Diego, CA 92101
      Tel: (619) 810-7047
      tkashima@milberg.com

Alex Straus (SBN 321366)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
280 s. Beverly Drive, Ste. PH
                     Beverly Hills, CA 902126
Tel: 865-247-0080
astraus@milberg.com.com

Rachel Soffin*
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel: 865-247-0080
rsoffin@ milberg.com

- 25 -
FIRST AMENDED CLASS ACTION COMPLAINT



1
2
3
4
5
6
7
8
9

Martha A. Geer (*pro hac vice*)*
Luis Cardona (*pro hac vice*)
BRYSON HARRIS SUCIU
& DEMAY PLLC
~~MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC~~
900 West Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
mgeer@brysonpllc.com
lcardona@brysonpllc.com
~~Facsimile: 919-600-5035~~
~~mgeer@milberg.com~~

10
11
12
13
14
15
16
17

Nick Suciu III (*pro hac vice*)*
BRYSON HARRIS SUCIU
& DEMAY PLLC
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (616) 678-2180
nsuciu@brysonpllc.com
~~MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC~~
~~6905 Telegraph Rd., Suite 115~~
~~Bloomfield Hills, MI 48301~~
~~Tel: 313-303-3472~~
~~nsuciu@milberg.com~~

18
19

*Pro Hac Vice pending*

20

*Counsel for Plaintiffs and the Class*

21
22
23
24
25
26
27
28

- 26 -

## DECLARATION OF TRENTON KASHIMA

I, Trenton R. Kashima, declare as follows:

1.      I am an attorney duly licensed and entitled to practice law in the state of California. I am an attorney of the law firm Milberg Coleman Bryson Phillips Grossman PLLC, attorneys for Plaintiffs in above-captioned action. I have personal knowledge of the facts stated herein, and if called to do so, could and would competently testify thereto.

2.      Based on information from the Elderberry Products' labels and other public sources (including Defendant's linkedin profile), Defendant PharmaCare U.S., Inc. has its principal place of business, is registered to do business and/or is in-fact doing business at 5030 Camino De La Siesta, Ste 200, San Diego, CA 92108, located within the County of San Diego.

3.      Accordingly, pursuant to California Code of Civil Procedure, section 1780, the Southern District of California is the proper venue for Plaintiffs' California Consumer Legal Remedies Act claims.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on [INSERT] in San Diego, California

_____
Trenton R. Kashima

FIRST AMENDED CLASS ACTION COMPLAINT