UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

LINDA SUNDERLAND, individually and on behalf of all others similarly situated; BENJAMIN BINDER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

PHARMACARE U.S., INC., a Delaware Corporation; PHARMACARE LABORATORIES PTY LTD., an Australian company,

Defendants.

No. 23-CV-01318-JES-AHG

February 18, 2026

Courtroom 4B

San Diego, California

TRANSCRIPT OF PROCEEDINGS
(Motion Hearing)

BEFORE THE HONORABLE JAMES E. SIMMONS JR., DISTRICT JUDGE

COURT REPORTER: AMANDA M. LeGORE
RDR, CRR, CRC, FCRR, CACSR
U.S. District Court
333 West Broadway, Suite 420
San Diego, CA 92101
amanda_legore@casd.uscourts.gov

Reported by Stenotype: Transcribed by Computer

APPEARANCES:

FOR THE PLAINTIFFS:

TRENTON KASHIMA
Milberg Coleman, et al., PLCC
401 West C Street, Suite 1760
San Diego, CA 92101
(714)651-8845
tkashima@milberg.com

FOR THE DEFENDANTS:

GIOVANNA FERRARI
Seyfarth Shaw LLP
560 Mission Street, Suite 3100
San Francisco, CA 94105
(415)397-2823
gferrari@seyfarth.com

AARON BELZER
Seyfarth Shaw LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310)277-7200
abelzer@seyfarth.com

(Wednesday, February 18, 2026; 1:58 p.m.)

P R O C E E D I N G S

THE CLERK: We are back on the record in matter 2, 23-CV-1318, Sunderland, et al., versus PharmaCare U.S., Inc., et al., for a motion hearing.

THE COURT: All right. Good afternoon, everyone.

ATTORNEY KASHIMA: Good afternoon, your Honor.

ATTORNEY FERRARI: Good afternoon, your Honor.

THE COURT: I don't need appearances. I'm familiar with everyone, at this point.

All right. So we have a couple of different issues to address. Excuse me while I log into my tablet.

All right. So we have the, quote, joint motion -- oh, excuse me.

(Pause, referring.)

THE COURT: Yes, we have joint motion for -- regarding the approval of the class notice plan. We also have the motion that was filed in regards to substituting the class representative. The party representative, excuse me.

And I've read the motions. I've read the oppositions to the motion.

So a couple of questions. I guess I'll start with the motion to substitute the party representative first.

And I know there's a few other motions. There was a motion to add counsel. And so -- obviously, the Court was going to grant that. That's not opposed, obviously.

There's a motion to file documents under seal. I -- obviously, the Court is going to grant that. That's unopposed as well.

So the motion in regards to the substitution of the class representative, the law is pretty clear in regards to Rule 15; the Court liberally allowing amendment. The question is whether -- the defense has argued that there is both bad faith as well as prejudice to the defense to substitute these two individuals and for Ms. Sunderland.

And so the bad faith issue, I believe the argument is from -- is -- on the foundation of that argument, is that there were requests for answers, if I understand, submitted to Ms. Sunderland in regards to the product she purchased. And right after that request, the defense position is suddenly she asked to be removed as a class representative without any real discussion or explanation, other than just a vague statement that she was suffering medical issue -- or just medical issues, generally; without any more.

Further, the defense's position is that there's insufficient factual basis to grant that substitution in regards to when the plaintiffs were on notice that she was going to be -- request to not continue as the party

representative, as well as any further information that -- that she has provided that would support her request to be removed as a class representative. I shouldn't say "removed," but her refusal to continue as a class representative.

So did I state those positions correctly?

ATTORNEY FERRARI: On those two points, yes, your Honor.

THE COURT: Yes. I know there's other points regarding prejudice. The prejudice argument is mostly based on the time and financial prejudice, if I understand correctly, in having to restart discovery with the two new class representatives. So I understand that argument, but that is more financial, per se, in regards to these individuals. And the law is clear, that's not a basis for me to deny the motion. Just financial -- additional financial costs that may come to play in time.

The question is -- first of all, assuming the Court grants the motion, should the Court still, as the defense requests, order Ms. Sunderland to respond to the request for answers or not? Because my understanding is her potential answers could be used to support a motion to decertify the class or to further limit the class, based on the products that she purchased that these two class representatives did not purchase. So that is a -- that's a viable question, frankly, because it could potentially go to a future motion. So I'll

get the plaintiffs' position on that issue.

And then the class action notice, that's a whole other issue, momentarily. I think we should start with -- I don't know if the parties have had any further discussions about the notice plan or not.

ATTORNEY KASHIMA: No, your Honor.

THE COURT: So it looks like -- looks like we're at a stalemate, at this point, regarding the class notice plan.

So let me start with the substitution issue. I think that's the -- that's the much more complicated issue, frankly, and has more foundation and standing -- not standing. But has a bigger impact on the case than the class notice plan itself.

So this is the plaintiffs' motion. I -- and, like I said, I know the Court, under Rule 15, has to liberally allow amendments. And just because a party representative no longer wishes to serve does not mean a court decertifies the class per se, as long as there is a viable class representative.

I didn't see any arguments from the defense -- and please correct me if I'm wrong -- that the two new proposed party representatives are not viable class representatives. So if they are -- there is that argument, I'm certainly willing to entertain it or not.

But let me hear from the plaintiffs in regards to the issue, frankly, whether the Court should order that Ms. Sunderland does respond to the requests for admissions that

were submitted or not, even if the Court were to grant the substitution.

ATTORNEY KASHIMA: Yes, your Honor.

And so moving to the discovery issue, first, that you identified is -- the request for admission, I think defense counsel has kind of made a mountain out of a molehill here.

The discovery requests all kind of focus around the request for admissions. And this can be found in defense counsel's declaration at Exhibit C.

And most of these admissions are things that really don't pertain to any particular plaintiff. For example, one of the admissions is who developed Sambucol. You know, this is an issue that we just fleshed out in discovery. Admit that certain statements don't appear on the label or do appear on the label. We've already hashed this out at class certification. Particularly at class certification at page 4, page 10, where plaintiff gives a detailed explanation of what language is on each of the labels.

And so these are not -- the answers to these subjects are not going to change. They can reissue with the new plaintiffs, and there's going to be no prejudice against them.

Same thing with, you know, the remainder of the admissions deal with who -- who was involved in the patent for Sambucol. You know, last couple of them. Again, this is something that plaintiff wouldn't have unique knowledge about.

And so there's no real issue here that's unique to Plaintiff Sunderland that needs to be answered immediately that can't be answered by the new plaintiffs. And the new plaintiffs would be happy to submit responses to this. As your Honor is likely aware, is we're having a hard time just contacting Ms. Sunderland. So the chances of us getting verified responses from her are probably slim to none.

THE COURT: Let me interrupt you in that respect. And I understand that, but the problem is she's still a party in this case.

ATTORNEY KASHIMA: Yes.

THE COURT: So the Court still has jurisdiction over her to enforce orders in this case, since she's still a named party. And the issue is not really whether it's -- having difficulty contacting her. The question is whether there are viable responses that need to be answered. And if the answer is yes, regardless of the difficulties, the Court can make orders, since she is under this Court's jurisdiction by asserting herself as the class representative.

So I understand that issue, but that's not a concern for me, frankly. That's a concern for the plaintiffs, if there's difficulties communicating with her; if the Court were to issue orders. But I don't think that -- that calculus -- that doesn't go into the Court's calculus as to whether to issue an order or not.

Secondarily, is there -- can you provide the Court more information as to when the plaintiffs learned of Ms. Sunderland's -- I guess I should phrase it -- refusal to be a class representative moving forward?

ATTORNEY KASHIMA: Yes, your Honor.

And so pretty much what is in my declaration is what happened. And so we contacted her, I think, early November. And I think this was in relation to, you know, defendants stating that they were going to issue some additional discovery and the discovery period closing. I think we were going to have a status call. And without disclosing confidences, at that point we received an email from our client, from Ms. Sunderland, stating that she no longer wanted to proceed. And it was due to personal reasons.

And so we tried to probe and get her on the phone. We asked her to schedule a call with us, which she did. And we scheduled that call on November 11th.

November 18th was when we were supposed to have that call. And that's when we got an email from Ms. Sunderland canceling the call, and stating that she no longer wanted to be a part of the case and didn't want to be contacted anymore.

And so on November 20th, that's when we informed defense counsel regarding what had happened. November 21st, we sent a follow-up email on that. And by December 5th we had a meet-and-confer, and by December 7th we filed this motion.

So the first time we -- we found out about this was November 10th. Before that, we had been in contact with Ms. Sunderland. As you can see from this case, she was deposed. She had submitted declarations in the past. She had responded to discovery in the past. We had no indication that she wanted to withdraw at that time.

THE COURT: Okay. And I'm looking at the request for admissions. And it looks like several of the questions deal with the language on the -- the labeling for the lozenges in the requests for admissions. So is it the plaintiffs' position that any of the -- that the two new proposed parties can answer those questions as well?

ATTORNEY KASHIMA: Yes, your Honor. What is interesting about these admissions is it's stuff that's already covered in the class certification motion. As this Court ruled in its motion for class certification order, there is differences between the language of the different products. Some say, "Developed by world renowned virologist," with additional language. Some say "virologist developed." That's what these admissions are about, is nailing down which -- which claims are not on the label. And, by that case, nailing down which claims are on the label.

And so this has to deal with publicly facing labels that can be easily answered by any party. The same thing with the first request, as well, is who developed Sambucol. This is,

again, something that was in our class certification.

THE COURT: I'm not worried about that one. I'm more worried about the actual products. Like there's requests for admissions regarding the lozenges, regarding the chewable tablets, which are two of the products listed in the complaint and in the Court's order for class certification. Because, presumably, the class notice would include anybody who purchased any of these products.

ATTORNEY KASHIMA: Um-hmm.

THE COURT: So if the alleged fraudulent statements are included on all of the -- or not included on some of their products, then how could somebody reasonably rely on any false statements to purchase them? Which, presumably, would limit the class to not -- instead of the eight products mentioned, maybe less than eight.

ATTORNEY KASHIMA: Yeah. If I could draw the Court's attention to Docket Number 68-4, which is Appendix A to the class certification briefing. This is where we provided a list of all of the labels, and highlighted which label had which misrepresentation.

And as the Court acknowledged in its order, is some of the -- the -- the -- like the lozenges and chewable tablets had some of the claims but not all of them. And that's what these requests for admissions are asking.

They're not saying that the lozenges or the chewable

tablets did not say "virologist developed" in some form. It's just saying that some of the challenged claims weren't on these products; which is correct.

Again, the other thing, too, is they attach some labels from when they changed the product label in 2023, I believe. Yes. February 2023. To remove the challenged statements. And so that doesn't affect Sunderland because she purchased it before that period. Both in the complaint and at class certification, she acknowledged she purchased it for up to two years before that, the label change.

And so they're not saying that these -- these products should not be part of the class. What they're stating is that only some of the misrepresentations are on the products. And that's what these admissions are about. They're not saying that they -- these products never said virologist developed in any form on the label.

THE COURT: I'm sorry. I'm looking at the --

ATTORNEY KASHIMA: Oh.

THE COURT: -- the declarations from the two new proposed class representatives. And I'm just trying to refresh my memory as to the dates that the -- statement in the declaration, they purchased the listed products.

ATTORNEY KASHIMA: Yes, your Honor. Sorry. I'm just trying to bring that up right now.

THE COURT: I'm doing the same. So sorry. Having to

scroll up. Or "scroll down," I should say.

(Pause, referring.)

THE COURT: Basically, the question is, does it cover the same time frame that Ms. Sunderland covered?

ATTORNEY KASHIMA: It would, your Honor.

And I apologize. I -- my cell phone service isn't really helping me out, bringing up the document at this point.

THE COURT: You do not need to apologize.

ATTORNEY FERRARI: Both of the proposed new plaintiffs allege that they began purchases in 2020.

Ms. --

THE COURT: I see that Ms. Wilson says in March of 2020.

ATTORNEY FERRARI: Through 20 -- and those Ms. Wolhs says --

THE COURT: April.

ATTORNEY FERRARI: April 3, '25. And that does cover the time period by which Ms. Sunderland purchased.

And I'll wait until it's my turn to talk about what RFAs are asking.

THE COURT: Okay. I appreciate that update.

Sorry, Mr. Kashima. You can continue.

ATTORNEY KASHIMA: No, your Honor. And so I -- you know, I think that kind of covers what these -- you know, what the discovery is covering and why the discovery doesn't need to

be answered specifically by Ms. Sunderland; and why it wouldn't affect Ms. Sunderland's claim in the least.

And so propounding these -- I mean, forcing Ms. Sunderland to -- to answer these interrogatories, requests for productions, and admissions, just wouldn't be relevant to the ongoing claims in this case. And it's not something that the new plaintiffs could answer or that plaintiffs' counsel could provide answers for, at this point. Because most of the questions are just simply what was on the label and when were certain patents expired and who developed what.

THE COURT: All right. Anything else you wanted to address?

ATTORNEY KASHIMA: Unless you have additional questions, no, your Honor.

THE COURT: I do not on this issue, at this -- obviously, we have the other issues, but we'll discuss those momentarily.

Is there anything you would like to -- well, I know there's several things you would like to address.

ATTORNEY FERRARI: With respect to the discovery that Ms. Sunderland -- if the Court may remember, when Ms. Sunderland received document requests and in her deposition in this case, she only produced one picture of a bag of lozenges that she had tested that she purchased.

These RFAs are to have her aver and admit that on that

purchase -- because she doesn't have receipts -- if we're to believe her, that she bought that bag of lozenges, it doesn't include any of the statements that are part of the class certification.

And, of course, we were propounding that discovery in advance of the dispositive motion, to prove that she can't rely on the claims that are alleged.

And as this Court rightfully points out, that information is pertinent to -- if we end up trying this case and/or the scope of class notice for lozenges at least during a certain time period -- that only she can aver to these particular issues with her particular purchase.

And she's in New York. The current -- court currently has jurisdiction over her. But if she's not required to answer this discovery at this time, I can't haul her into court for trial and I can't -- well, the long arm of the law does not grab her. And she is currently a party. And because that affects both the scope of class notice, the products that are at issue, the potential trial of the class, and the scope of the dispositive motion, we think it's appropriate that she be deposed at this point. I'm sorry. That she answer this -- this discovery that was propounded on her in November of 2025.

ATTORNEY KASHIMA: Your Honor, if I may?

THE COURT: Well, let her finish first.

ATTORNEY KASHIMA: I'm sorry. I apologize.

ATTORNEY FERRARI: I'm finished.

THE COURT: Okay. Any other issues on --

ATTORNEY FERRARI: You raised prejudice earlier, and I would like to add that there is prejudice beyond starting the case anew after two and a half years.

We would, under the rules for '23, need to depose and conduct discovery. And the current schedule, as it is, requires us to have merits experts in the next two weeks.

And you also asked if it was our position on whether or not the plaintiffs were -- the two new proposed plaintiffs are viable plaintiffs to substitute into the class. We just don't know yet.

Those are very conclusory declarations. They're almost matchy-matchy, for lack of a better phrase. And we are entitled to test those allegations through discovery. And, indeed, I don't actually believe opposing counsel disagrees with our need for discovery. They've stated in their declarations that they will sit for depositions, and they will answer written discovery.

So that meets -- if the Court is inclined to substitute in the new plaintiffs, we would like to test their statements in their declaration, what they relied on, learn about their purchases, understand their receipts, what products they purchased, and then be able to handle experts and other motions.

THE COURT: And that's perfectly reasonable. If the Court were to grant this motion, it would be more than appropriate to obviously modify the scheduling orders that are currently in place, to allow the defense to conduct a deposition of each of the named representatives, as well as to submit requests for submissions and interrogatories.

So that is more than appropriate. I don't think the plaintiff is suggesting otherwise, if the Court were to grant this motion. And then -- and at some point after that is conducted, then obviously the Court will set a briefing schedule if the defense seeks to request a motion to decertify or motion in regards to the adequacy of these two representatives to represent the class or not.

And the reason why I asked that question beforehand, because if it is clear from the -- at this point, that these two individuals cannot represent the class, then the Court cannot allow them to substitute in. And I get that you haven't been able to conduct that analysis yet. But, at some point, you would be able to do so and then address that appropriately.

And I think that is more than fair to give the defense an opportunity to do such. If there were any opposition, then they obviously -- the Court would rule appropriately. But I don't think there's any opposition. If there were, I would have concerns if there were. But there is no opposition, and I think that is more than fair and appropriate to do so.

You want to respond to something?

ATTORNEY KASHIMA: Yes, your Honor. Just a quick point in the request for admissions.

I believe that counsel was referring to request for admission 6 and request for admission 9, which are about the labels. These labels point to labels that the defendant produced, not the labels that plaintiff produced.

And so, again, I just wanted to reiterate my point that all of the requests for admissions here are regarding publicly facing documents that have no connection to Ms. Sunderland's particular claims.

And so they're not asking us what was on Ms. Sunderland's label. And rightfully so, because Ms. Sunderland first decided to purchase this product back in 2022. So asking about her last purchase is probably not as pertinent as her first. But, again, they're asking about publicly facing labels questions that don't require Ms. Sunderland's personal knowledge.

THE COURT: And my understanding from Ms. Ferrari is that during the deposition of Ms. Sunderland she talked about the lozenges she purchased. And she was shown labeling during that deposition. I haven't read that deposition testimony in months, so I apologize if I misquoted or misstated anything. But hearing from Ms. Ferrari, from my understanding, is that the product she was shown did not have -- that she says she purchased did not have any of the listed language.

And if she says that's the only products she purchased, then there's a question as to whether that's a viable -- whether that product should be included in the list and whether she's a viable representative for that class as well.

And the other two named replacements purchased a -- at, least according to their declarations. I don't know how they can answer that question as to whether -- what language is contained on the lozenges that Ms. Sunderland said she purchased. I know you said that any representatives who -- could answer that. But they didn't purchase that. How are they going to give a deposition or a declaration as to what was on the product they didn't purchase?

ATTORNEY KASHIMA: Your Honor, they've already asked that question. And that's not what's being asked in this admission. That's why I'm pointing it out. Is they've already asked what products she purchased. And if they wanted to bring up that they felt she didn't purchase a particular product with the challenged misrepresentations back in 2020, you know, that was their right to bring up at summary judgment. It was their right to bring up at class certification. They didn't. So --

THE COURT: We're not at summary judgment yet, so -- you say it was right to bring it up. We're not even there yet.

ATTORNEY KASHIMA: But, your Honor, if you actually look at the client's declaration in support of class certification -- this is Docket 68-18.

THE COURT: Um-hmm.

ATTORNEY KASHIMA: I think it's at paragraph 4, if I remember correctly.

Ms. Sunderland actually stated she purchased several different products. I think it was the chewable tablets, the lozenges, and also the -- the capsules. And so even if there's an issue with the lozenges, it doesn't -- it doesn't negate her -- her chewable tablets. And even if there's an issue with the chewable tablets, it doesn't negate her -- her standing with the others.

But on a more fundamental note, your Honor, what was on and not on the labels at any particular time is not something that's based off our client's memory. It's something that's based off defendants' manufacturing of the products. Of course, a label that didn't exist couldn't have been on the product back in 2020. They only removed the challenged language in 2023. So this idea that the plaintiff did purchase one of the products with the challenged language back in 2020 is difficult to square with the discovery that we have in this case.

THE COURT: Because I'm hearing two different things. So let me just ask the question, since I don't have it directly in front of me.

As far as the deposition, did Ms. Sunderland in her deposition admit she purchased multiple products or just the

lozenges?

ATTORNEY KASHIMA: Your Honor, I couldn't tell you one way or the other because I just don't remember. I will be honest. I haven't looked at the deposition in a year.

THE COURT: All right. Because I understand you're saying that her declaration to the class certification motion contains one thing, but she gave a deposition under penalty of perjury, which -- she did the declaration as well.

ATTORNEY KASHIMA: Yes. What I can tell you is the deposition was on February 27th, 2024, and that declaration was, I believe, in September 2024 because that's when we submitted class certification. So it would be rather odd for us to put something in a declaration that she didn't back up in her deposition.

So that's the only thing I can say, just because I -- at this point, your Honor, I -- out of candor, I just don't remember what was in the deposition. I remember what was in the declaration.

THE COURT: I know. Like I said, these -- these cases have been going for a while. The entire time I've been on this bench, so --

(Laughter.)

THE COURT: Excuse me. And -- see if I can find what I'm looking for.

(Pause, referring.)

ATTORNEY FERRARI: Your Honor, I'm asking the person who took the deposition, since that was a while ago. And the --

THE COURT: And, actually -- I'm sorry for interrupting you, Ms. Ferrari.

As I think about it, I don't think I actually had access to that deposition yet because it was -- I don't think it was attached to the class certification motion. Unless it was?

ATTORNEY FERRARI: Parts of it were.

THE COURT: Okay. I'm sorry. You were saying, Ms. Ferrari?

ATTORNEY FERRARI: I've asked the person who took the deposition to confirm for me because the discovery request -- the original discovery request said only chewables and lozenges. And she was not able to present any receipt prior to her deposition. And the only thing she produced as proof of purchase is a picture of a bag of Sambucol lozenges that she said looks like what she purchased. And it does not have any of the statements on it.

So it's not a matter of when labels are changed. The actual purchase that she says she's relying on as a plaintiff, which matters in order for her to continue to be a class representative and typical of the class and to overcome a merits inquiry, is was there the language that she's alleging she relied on, to her detriment, that was false.

So all of that does matter. It does matter for the class, and it does matter for the trial, and it does matter for merits issues; to the extent she continues to be a plaintiff.

And, you know, just the timing of her stepping away from the case after these questions that would defeat her case on the merits is what we believe is -- satisfies the bad faith requirement.

THE COURT: Okay. Excuse me for a moment. I'm looking here. And, just from the titles, I don't see that I have the copies of the deposition in front of me. The motion for class certification, there's multiple declarations. But I don't believe I have a copy of the deposition or any excerpts from the deposition as part of the motion for class certification.

So I don't know that I would have seen it. I would expect to see that in a motion for summary judgment, but it's unlikely that I would see it in a motion for class certification, for obvious reasons. But I don't think I have a copy of that to where I can even review it on my own. I'm just relying on the parties' recitation of what occurred.

ATTORNEY KASHIMA: Yes, your Honor. And just to address what counsel just said is it was true that Plaintiff Sunderland did submit a picture of a product that she thought she purchased. But this was the -- the picture of the product wasn't the product that she purchased back in 2020. It was a

picture of a product that had been recently -- basically it was from a label from 2023.

THE COURT: Was all of that clear during the deposition?

ATTORNEY FERRARI: (Shakes head.)

ATTORNEY KASHIMA: You know, again, I just don't want to misstate what was in deposition because I honestly can't remember.

THE COURT: I understand. But therein lies the problem, though.

If Ms. Sunderland is producing a document that says it's similar to the product she purchased, then there's a question as to when this document she is producing was actually generated.

If it was generated from how she produced it -- purchased it in 2020 versus 2023 --

ATTORNEY KASHIMA: She admitted that that picture was not the product she purchased. She said it looked like the product she purchased.

ATTORNEY FERRARI: (Nods head.)

ATTORNEY KASHIMA: She took it after the fact. But, at that point, as -- you understand, your Honor, labels change. Especially from 2020 to when we filed this case in -- into 2023. I think there had been three or four label changes at that point.

So she probably remembers what she saw on the label in 2020, and just found a similar product. But, again, labels change. So she couldn't produce an exemplar.

THE COURT: I understand that completely.

ATTORNEY KASHIMA: Yeah.

THE COURT: So wouldn't that then be a point of clarification as to whether the product she purchased contained the information on it or not?

ATTORNEY KASHIMA: Well, your Honor, we already know the answer to that question. Because she said she started purchasing this back in 2020. Which, of course, the veracity of that isn't being challenged by defendant. At least that's not what I'm hearing. And we know what labels were on the product back in 2020.

And so, again, we know that the labels -- and this is set out in that Appendix A that I was talking about. Is we know the labels had a section -- I believe it was the side or the back of the label that said, you know -- a lot of flowery language about "Developed by a world renowned virologist. Only this can guarantee" -- you know, something along those -- that -- that line. But we've already produced evidence of what the label was, at that point.

But going back to the request for the admissions, if the request for admissions were actually asking about that, asking Plaintiff Sunderland what products she purchased and what was

on the label, I could see it being relevant. But that's not what's being asked in these requests for admission.

It's just -- they're just asking us to look at a label and confirm what language is and is not on the label.

THE COURT: Sorry. I'm looking at the Appendix A. Sorry.

ATTORNEY KASHIMA: No problem. So it's -- yeah. Appendix A is -- I think it's at page 25 to 32, would be the chewables and the lozenges.

And if I remember correctly, on that exhibit, the challenged language is highlighted in yellow; for the Court's --

THE COURT: Yes. All right.

Anything else you wanted to address on this motion?

ATTORNEY KASHIMA: No, that's it, your Honor.

THE COURT: Ms. Ferrari?

ATTORNEY FERRARI: So, your Honor, I don't know why people are not answering me at this point. However, I have a distinct recollection of putting in the picture of the lozenge purchase in opposition to class cert., and I'm trying to find it. And I have a distinct recollection that my partner -- and I want to use the right phrase -- asked Ms. Sunderland if the label that she had produced in response to the requests for production, the picture of the lozenges contained all of the statements that she relied on and looked like her purchase.

And she averred to that. And that's what's at issue, vis-a-vis the merits, in the sense that I believe he closed her out on that.

And then the discovery that was propounded after the class was certified with her as the New York class representative, for which she represents the entire class, does ask for issues related to all of the lozenges; for whom she represents for all of the products for that class period. And her answers are different than other class members, and we're entitled to that information.

ATTORNEY KASHIMA: Your Honor, if I can add a little bit of context, too, because I know what picture she's talking about.

THE COURT: Give me one second, please. I just want to make sure I'm looking at what was referred to.

ATTORNEY FERRARI: And -- and she never once mentioned the world "virologist" in her deposition, which seems to be what the claims are now.

THE COURT: Okay. Give me one second, please.

(Pause, referring.)

THE COURT: I'm looking at the opposition to the motion for class certification, and it refers to a declaration by Ms. Ferrari. But I don't see the actual declaration attached to the motion here, unless I'm just looking at the wrong filing.

ATTORNEY KASHIMA: Your Honor, if I remember correctly, we did file several things under seal. So it might have been in a separate filing.

THE COURT: Thank you.

Either way, the Court must obviously -- I was going to take this matter under submission, so I could make sure I assess properly the issue in regards to whether the Court should order any response to the requests for admissions from Ms. Sunderland or not. She is still under the jurisdiction of this Court, since she is still a party representative; until the Court relieves her or replaces her. And so the Court does have jurisdiction to make orders in regards to her. Whether the -- whether the plaintiffs can communicate with her or not, that's not for the Court to really decide. That's for the plaintiffs to figure a way out, since she is a party representative at this point and still under the jurisdiction of this Court.

So what I don't want to do is sit here on the bench and read things on the bench and waste your time, frankly. There was a -- some information submitted in regards to the deposition of Ms. Sunderland, so I want to go through that. It's been a very long time since I've gone through it.

So I do want to go through that, to make sure I'm understanding the parties' argument appropriately.

Any final comments on this issue before we move to the

class notice plan?

ATTORNEY KASHIMA: Yes, one quick comment, your Honor.

When you do find the reference, I believe that the picture she produced was only a picture of the front of the product. And the challenge language was on the back of the product.

So obviously, you know, she can't opine what's not seen on the picture. And so that was -- would be the only context that I would add to that situation.

THE COURT: Okay. Any final comments, Ms. Ferrari?

ATTORNEY FERRARI: I believe it is DKT 88-2, Exhibit B, as in boy.

THE COURT: 88-2.

ATTORNEY FERRARI: But Mr. Kashima is correct, that we filed a variety of things under seal. And so --

THE COURT: Which page did you say it was?

ATTORNEY FERRARI: That I can provide for you at a later date. I apologize.

THE COURT: Okay. (Laughing.)

ATTORNEY FERRARI: And I appreciate the opportunity to do so. I'll just note that we have merit expert disclosures due this Friday and rebuttals within one week.

And I don't know what the merits of -- of the new plaintiffs' claims are. And certainly I wouldn't want to be barred by -- or held to any disclosures that we make in the next ten days.

THE COURT: No. And like I said at the outset of this hearing, we will obviously modify the briefing schedule that has previously been set and the scheduling order that was previously set in this matter. I think that's more than appropriate for both parties.

ATTORNEY KASHIMA: Yes, your Honor. And so we wouldn't challenge that. You know, I think expert discovery, I don't think is going to change. Because even if we slot in new plaintiffs, there's a reasonable consumer standard. And they've submitted a survey expert as their expert. So I don't know how that would change how he did his survey because he already did his survey in this case.

But, you know, if they do find in discovery that there is additional information from these plaintiffs that would affect the, you know, expert testimony, we would allow them to supplement their reports, of course.

THE COURT: Well, I think in abundance of caution, without having conducted a deposition or any requests at this time, I think it would be appropriate just delay all schedulings that are in place.

What I don't want to do is get to the point where we don't make any modification and then, down the line, we're making a request. And then we're just delaying the case even further, at that point.

ATTORNEY KASHIMA: You know --

THE COURT: This case has been proceeding for almost three years now. So we need to move to either a trial or resolution in some manner in this case.

ATTORNEY KASHIMA: Understood. Sorry, your Honor. Judge Goddard just put us on a quick schedule, so I don't want to --

THE COURT: I understand. I understand

ATTORNEY KASHIMA: -- prejudice her order.

THE COURT: But Judge Goddard's order will be -- I know she likes to hold joint motions with other parties to file. So I don't -- I don't care, frankly, whether it's a joint motion or an opposed motion. The point is that we reach the right result, and we get the case moving forward.

ATTORNEY KASHIMA: Understood, your Honor.

THE COURT: That's the biggest thing for me.

So I hope -- won't belabor the issue. I don't want to waste your time reading documents and while we're having this hearing. Like I said, the Court will take the matter under submission.

As I said at the outset, Rule 15 allows general -- liberally to amend, unless the party representative cannot adequately represent the party.

To Ms. Ferrari's point, I understand that they have not had a chance to assess that. But to this point, the Court obviously can allow the substitution, contingent on any future

motions coming forward. To allow either requests to -- that these individuals cannot be party representatives or to decertify the class. But that would obviously take after discovery proceeds and after depositions of each of the named representatives.

And the Court will further decide whether to order Ms. Sunderland to respond to your request for admissions. And I will do that after reviewing the information that the parties have pointed the Court to today.

So I'm not going to issue an oral ruling. I'm going to submit a written ruling that addresses each of those issues.

You wanted to say one more thing, it looks like?

ATTORNEY FERRARI: Exhibit 8 to Ms. Sunderland's deposition is the label. Bates labeled "Sunderland 000001."

THE COURT: It is on page 102.

All right. So, like I said, I don't want to read it here in front of you and waste your time. But I appreciate that, and we'll review that. Let me take my notes.

All right. So let's move forward to the class notice plan that was proposed and then the objections to the class notice plan.

ATTORNEY KASHIMA: Your Honor, I'm not sure if that was on the docket for today. But --

THE COURT: Oh, I thought it was. I apologize.

ATTORNEY KASHIMA: I would be willing to postpone a

decision on notice until this is handled. Because, obviously, sending out notice to the class might not be the best idea while this issue is still up in the air.

THE COURT: I think that's appropriate. And I apologize. I thought it was on calendar today. I apologize it is not.

But, yes, so we'll address that matter. And if the parties like, I can just rule from the briefings that were submitted. I know there was a joint motion with each party stating their positions. If you want to argue the issue, I'm certainly welcome to give the parties an opportunity to argue those issues at a later date, not now. But I will defer to you. I'm open either way.

ATTORNEY KASHIMA: No objection to ruling on the papers, your Honor.

ATTORNEY FERRARI: We agree on ruling on the papers. We just -- I think we both agree, also, that it's premature, considering the current situation.

And if you didn't notice the alarm from this side of the room, all three of us were surprised.

THE COURT: Okay. No, I apologize.

(Laughter.)

THE COURT: I saw both motions were filed. I just assumed they were both on calendar today. So that's my -- you know what happens when you make assumptions. I did exactly

that. Sorry about that.

ATTORNEY FERRARI: Sorry that we gave you more work.

THE COURT: All right. So I appreciate that. So I'll take the matter under submission. I thank each of you for coming down here and for coming here. I know each of you are appearing from outside of this district.

ATTORNEY KASHIMA: Oh, no, your Honor. I'm based in San Diego.

THE COURT: Okay. So I saw the Texas address, so I assume --

ATTORNEY KASHIMA: Oh, I think you saw -- I do maintain an office out of Orange County, but not too far away.

THE COURT: You came from the Bay Area, so -- and I appreciate you coming down. Especially, the weather wasn't very accommodating. But I appreciate you coming down anyway.

ATTORNEY FERRARI: Thank you for having us.

ATTORNEY KASHIMA: Thank you.

THE COURT: Each of you have a wonderful afternoon.

ATTORNEY KASHIMA: You, too, your Honor.

ATTORNEY FERRARI: Thank you, your Honor.

THE CLERK: This court is now in recess.

THE COURT: All right. Thank you, all. And you don't have to wait for me. I have to unpack a lot of things. So thank you.

(Conclusion of proceedings at 2:40 p.m.)

--oOo--

I certify, by signing below, that the foregoing is a correct stenographic transcript of the oral proceedings had in the above-entitled matter this 25th day of February, 2026. A transcript without an original signature or conformed signature is not certified. I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

/S/ Amanda M. LeGore

______________________________________

AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290